MARK J. CONNOT (10010)
JOHN M. ORR (14251)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
Attorneys for Defendants *Brian F. Davis*
*and Davis Law Group, P.A.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SEAN K. CLAGGETT & ASSOCIATES, LLC
D/B/A CLAGGETT & SYKES LAW FIRM, A
NEVADA LIMITED LIABILITY COMPANY;
SEAN K. CLAGGETT, AN INDIVIDUAL,

Plaintiffs,

V.

DON C. KEENAN, AN INDIVIDUAL; D.C.,
KEENAN & ASSOCIATES, P.A. D/B/A
KEENAN LAW FIRM, A GEORGIA
PROFESSIONAL ASSOCIATION; KEENAN'S
KIDS FOUNDATION, INC., D/B/A KEENAN
TRIAL INSTITUTE AND/OR THE KEENAN
EDGE, A GEORGIA NON-PROFIT
CORPORATION; BRIAN F. DAVIS, AN
INDIVIDUAL; DAVIS LAW GROUP, P.A., A
NORTH CAROLINA PROFESSIONAL
ASSOCIATION; DAVID J. HOEY, AN
INDIVIDUAL; TRAVIS E. SHETLER, AN
INDIVIDUAL; WILLIAM ENTREKIN, AN
INDIVIDUAL; DOES I-X; AND ROE
BUSINESS ENTITIES XI-XX, INCLUSIVE,

Defendants.

Case No. 2:21-cv-02237

**DEFENDANTS' BRIAN F. DAVIS AND
DAVIS LAW GROUP, P.A. MOTION
TO DISMISS PLAINTIFFS' CLAIMS
AGAINST BRIAN F. DAVIS AND
DAVIS LAW GROUP, PA UNDER
FRCP 12(B)(6)**

128835761

Defendants Brian F. Davis ("Mr. Davis") and Davis Law Group, P.A. ("Davis Law Group" collectively referred to with Mr. Davis as "Davis Defendants"), by and through their counsel of record, Mark J. Connot and John M. Orr of the law firm Fox Rothschild LLP, move this Court to dismiss Plaintiffs' claims against the Davis Defendants under FRCP 12(b)(6). This Motion is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument the Court may entertain during the hearing on this matter.

## I.      INTRODUCTION

Plaintiffs Sean Claggett ("Mr. Claggett") and Sean K. Claggett & Associates, LLC dba Claggett and Sykes Law Firm's ("Claggett & Sykes," collectively referred to with Mr. Claggett as "Plaintiffs") claims against the Davis Defendants for intentional interference with contractual relations ("intentional interference") and civil conspiracy must be dismissed under FRCP 12(b)(6). On November 3, 2021, a civil action was filed in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C (the "Erne Matter"). The thrust of Plaintiffs' claims against the Davis Defendants is that they conspired with the other named defendants in this action to have Claggett & Sykes fired as counsel for Logan Erne. Plaintiffs allege that the Davis Defendants conspired to interfere with the retainer agreement (the "Agreement") between Claggett & Sykes and Logan Erne.

To assert an actionable intentional interference claim, Plaintiffs must show the existence of a valid and enforceable contract. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003). Plaintiffs' claims, however, all assume that the Agreement is valid. It is not. Claggett & Sykes' Medical Malpractice Contingency Fee Agreement violates NRS § 7.095 because it seeks to recover fees in excess of the statutorily mandated fee structure outlined in NRS § 7.095. The Agreement is, therefore, void and fatal to Plaintiffs' claims.

129115117.1

Moreover, Plaintiffs have not alleged that Mr. Davis or Davis Law Group did anything to actually cause Mr. Erne to terminate the Agreement with Claggett & Sykes. They have merely asserted bare bones allegations that Mr. Davis "convinced [Mr. Erne], upon false pretense, to terminate the attorney client relationship with Plaintiff." Compl. ¶ 156. These are mere legal conclusions couched as factual allegations. Plaintiffs do not allege any specific conversations or the specific content of such conversations that reflect Mr. Davis influenced or coerced Mr. Erne to terminate the Agreement. Even if Plaintiffs had, they make no allegations that these alleged conversations between Mr. Davis and Mr. Erne were the actual cause of Mr. Erne's decision to terminate the Agreement. Mr. Erne was ultimately the only person with power to terminate the Agreement, and Plaintiffs make no plausible allegations that Mr. Davis caused Mr. Erne to fire Claggett & Sykes.

Plaintiffs have not asserted a colorable claim for intentional interference or civil conspiracy because they have not suffered any actual damages. *Id.* Plaintiffs represented Mr. Erne under a contingent fee agreement wherein Claggett & Sykes would only recover a percentage of any settlement or judgment. The Erne Matter has not yet reached settlement or judgment. It is still pending and scheduled for trial on October 10, 2022. Consequently, Plaintiffs' damages at this point are wholly speculative. Plaintiffs, therefore, are not entitled to relief. *See K.J.B., Inv. v. Drakulich*, 107 Nev. 367, 811 P.2d 1305 (1991) (holding damages are speculative where there has been no final adjudication of the client's underlying case).

## II.     STATEMENT OF RELEVANT FACTS

Defendant Brian Davis is a resident of North Carolina where he is a licensed attorney and the founding partner of Defendant Davis Law Group, a North Carolina professional association. In or around May 23, 2017, Mr. Davis contacted Claggett & Sykes about serving as local counsel for Logan Erne in a medical malpractice case that arose in Clark County, Nevada. Compl. ¶ 56.

129115117.1

Claggett & Sykes agreed to act as local counsel, and unbeknownst to the Davis Defendants, Claggett and Sykes had Mr. Erne sign a Medical Malpractice Contingency Fee Agreement with Claggett & Sykes on May 31, 2017. Med. Mal. Fee Agreement, attached hereto as **Exhibit "A."** Mr. Erne was the only signatory to the Agreement. *Id.* Although NRS § 7.095 limits that amount of attorney's fees that an attorney may collect in a medical malpractice matter, the Agreement states:

> NRS 7.095. You have been given a copy of NRS 7.095, which limits fees which can be charged to the party of a medical malpractice case by their attorney. In our opinion, this statute is unconstitutional, as applied to the U.S. Constitution as well as the State of Nevada Constitution. We have explained to you that we will not represent you pursuant to the fee limitation of NRS 7.095, and that we will only represent you in accordance with the fees listed in this medical malpractice contingency fee agreement. We have advised you to contact an attorney of your choice regarding this issue prior to signing this agreement.

Ex. A. at p. 2. The Agreement provides that Claggett & Sykes may collect between 33%–50% of all amounts recovered via a settlement of judgment. *Id.*

Over the course of the litigation in the Erne Matter, Mr. Erne became dissatisfied with Plaintiffs' representation, so he chose to terminate the Agreement with Claggett & Sykes and to retain new counsel. Compl. ¶ 65. Mr. Erne terminated Claggett & Sykes on May 15, 2020. *Id.* Following its termination, Claggett & Sykes filed a Notice of Attorney's Lien in the Erne Matter. The lien is for a total $288,512.06. Notice of Attorney's Lien, attached hereto as **Exhibit "B."** The Erne Matter is still in active litigation and is currently scheduled for trial on October 10, 2022. Amended Order Setting Civil Jury Trial, July 1, 2021, attached hereto as **Exhibit "C."**

Rather than accept the simple truth that Mr. Erne was dissatisfied with Plaintiffs' representation, Plaintiffs allege that each of the Defendants in this matter were part of a cabal to sabotage Plaintiffs and cause Mr. Erne to terminate his Agreement with Claggett & Sykes. *See generally* Compl. With respect to Mr. Davis, Plaintiffs allege "Defendant Keenan asked or told

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Davis to fire Claggett & Sykes from the case." Compl. ¶ 66. Plaintiffs further allege that Mr. Davis "convinced the client, upon false pretenses, to terminate the attorney client relationship" with Claggett & Sykes. Compl. ¶ 156.

## III.    LEGAL ARGUMENT

### A.    Legal Standard Under NRCP 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when "there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). "In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party." *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79,

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

129115117.1

has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017).

**B.     The Court May Consider the Relevant Agreement Without Converting this Motion to Dismiss to one For Summary Judgment**

Generally, in the context of a motion to dismiss, review is limited to the contents in the complaint. *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). When matters outside the pleading are presented to and accepted by the court, the motion to dismiss is converted into one for summary judgment. However, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). Where a plaintiff fails to attach to the complaint documents referred to therein, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support the plaintiff's claim. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994) (overruled on other grounds). This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir.1998). Thus, a court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In this case, this Court may consider the Agreement between Mr. Erne and Claggett & Sykes without converting this Motion to one for summary judgment. This is because the Agreement forms the basis of Plaintiffs' intentional interference claim and is referred to throughout the Complaint. *See e.g.*, Compl ¶¶ 56, 154–157. Moreover, the Court may take judicial notice of the various documents and pleadings filed in the Erne Matter without converting this Motion to one for summary judgment because "[a] court may take judicial notice of matters of public record." *Mack*

*v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

**C.  Plaintiffs Have Failed to State a Claim for Intentional Interference Against the Davis Defendants.**

To assert a claim for intentional interference under Nevada law, Plaintiffs must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267.  Plaintiffs failed to allege that the Davis Defendants intentionally and actually interfered with the Agreement and caused Mr. Erne to terminate the Agreement with Plaintiffs. Plaintiffs' damages claim is also wholly speculative and not actionable.

**(1)  The Underlying Agreement is Illegal and Unenforceable**

A fundamental principle of contract law is that courts will not generally enforce illegal contracts and such contracts are void. *Local Union 525, United Association of Journeyman v. Stine*, 76 Nev 189, 210, 351 P.2d 965, 976; 17A Am. Jur. 2d Contracts § 317 (2004). "A party cannot exercise his or her contractual rights in violation of the law." 17A Am. Jur. 2d Contracts § 317 (2004). Thus, a court's preference for enforcing bargains may give way where a contract conflicts with the applicable law or violates or conflicts with a statute, rule of law, or public policy." *Id.* Nevada courts adhere to these principles and "have long refused to enforce contracts that are illegal or contravene public policy." *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 290, 300 P.3d 718, 723 (2013). In Nevada, "a contract is unenforceable on public policy grounds where the policy against enforcement of a contract clearly outweighs the interest in its enforcement." *Id.* (quoting *Picardi v. Eighth Judicial Dist. Court*, 127 Nev. ——, ——, 251 P.3d 723, 727 (2011)).

Although the Supreme Court of Nevada had not considered this precise issue, other jurisdictions have held that void contracts cannot serve as the basis for a tortious interference claim. *Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 770 (Tex. App. 2013) (a void contract may not be the subject of a tortious interference claim); *Advance Indus. Sec., Inc. v.*

*William J. Burns Int'l Detective Agency, Inc.*, 377 F.2d 236, 237 (5th Cir. 1967), (no tortious interference claim with a non-compete agreement that was void as a matter of Alabama law); *Hi-Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d 1359, 1362 (5th Cir. 1985)(holding a defendant cannot tortiously interfere with a void contract); *Gunnels v. Atlanta Bar Ass'n*, 12 S.E.2d 602, 610 (Ga. 1940) (no tortious interference with contract that was absolutely void as usurious).

In this case, Plaintiffs' Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095. This statute mandates the fee structure for professional negligence cases as follows:

> An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of: (a) Forty percent of the first $50,000 recovered; (b) Thirty-three and one-third percent of the next $50,000 recovered; (c) Twenty-five percent of the next $500,000 recovered; and (d) fifteen percent of the amount of recovery that exceeds $600,000.

NRS § 7.095. This statute proscribes the amount of a contingency fee that an attorney may collect from a client in a medical malpractice action and it does not allow for any exceptions to the statutory limitations.

The Supreme Court of Nevada has not specifically addressed whether NRS 7.095 may be waived. California Courts considering California's similar fee limitation statute have determined such contractual provisions are void and unenforceable. In *Fineberg v. Harney & Moore*, 255 Cal. Rptr. App. 299 (1989), the California Court of Appeals considered the legality of a fee agreement essentially identical to the one in this case and whether that agreement violated California Business and Professions Code § 6146, which contains identical limitations to those in NRS § 7.095. The fee agreement in *Fineberg* provided:

> Client has further been advised that attorneys are unwilling to accept representation herein under the provisions of said California Business and Professions Code § 6146, and client in order to obtain the services of said attorneys and in order to have action prosecuted as desired by client [ ], hereby waives the purported limitations on

129115117.1

> fees as set forth in said California Business and Professions Code § 6146, and hereby agrees to pay the fees as set forth in paragraph 3 below.
>
> "3. That as sole compensation for services rendered by said attorneys, the client will pay them 40 percent of any money or property paid, received or collected by action, compromise, or otherwise...."

*Id.* at 301. The court in *Fineberg* noted that § 6146 was enacted under California's Medical Injury Compensation Reform Act of 1975 ("MICRA"), which was aimed at mitigating "a perceived crisis caused by rapid increases in medical malpractice insurance premiums." *Id.* The court further highlighted that § 6146 was part of MICRA's purpose to reduce health insurance premiums and that the Supreme Court of California held that MICRA's fee limitations are "rationally related to the legislations' legitimate objective and therefore does not violate the due process or equal protection clauses." *Id.* (quoting *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931–932, 211 Cal.Rptr. 77, 695 P.2d 164)).

The *Fineberg* court rejected the attorney's argument that the California "[l]egislature intended to permit waivers of section 6146." *Id* at 303. The court held that "nothing in the legislative history of section 6146 [suggests] an intent to make the statute voidable." *Id.* The court further highlighted that MICRA's purpose was a "public one" and that "a law established for a public reason cannot be contravened by a private agreement." *Id.*

The *Fineberg* court's reasoning and analysis is persuasive and instructive in this case. NRS § 7.095 was enacted as part of the 2004 initiative to address Nevada's health care crisis. *See Tam v. Eighth Judicial Dist. Court,* 131 Nev. 792, 798, 358 P.3d 234, 239 (2015). Nevada's medical malpractice reform statutes embody the Legislature's express public policy goals to "stabilize Nevada's health care crisis and provide protection for both doctors and patients." *Id.* at 239 (finding constitutional NRS § 41A.035's noneconomic damages cap because it embodies the legislature's "express goal" to obviate the medical malpractice crisis). In actions against health care providers,

129115117.1

NRS § 7.095 mandates that "[a]n attorney shall not contract for or collect" a contingency fee "in excess of specified limits." NRS § 7.095. The statute's "shall not" language imposes a mandatory prohibition against attorneys contracting with clients in excess of the statute's limits. *See Washoe Med. Ctr. v. Dist. Ct.*, 122 Nev. 1298, 1303, 148 P.3d 790, 793 (2006) (ruling that the phrase "shall dismiss" in NRS § 41A.071 "is mandatory and does not denote judicial discretion."). Nothing in the plain language or the legislative history of Nevada's medical malpractice reform statutes suggests that the legislature intended for NRS 7.095 to be waivable.

The Agreement in this  case explicitly violates both the plain text and purpose of NRS § 7.095. It goes as far to characterize NRS § 7.095 as unconstituional and provides for attorney's fees to be as high as 50% of a judgment or settlement. Plaintiffs even implicitly acknowledge the illegality of  the Agreement by dismissing NRS § 7.095 as unconstituional. Plaintiffs' unbridled contempt for the law cannot be condoned by the court. "A party cannot exercise his or her contractual rights in violation of the law."  17A Am. Jur. 2d Contracts § 317. If Plaintiffs' position is that NRS § 7.095 is unconstituional, their recourse is in court, not imposing an unlawful fee agreement on unwitting consumers of legal services. Similar attempts to have clients waive NRS 7.095 have been found unethical by the state bar of Nevada. Bar Counsel Report, Case No. 0BC19-0438 (Aug. 17, 2020), attached here to as **Exhibit "D."** NRS § 7.095's purpose was a public one; partys may not contravene public policy via written agreements. The public's interest in lowering insurance premiums, providing greater access to healthcare, and providing protection to physicians far outweighs an attorney's interest in recouping greater fees in medical malpractice cases. *Sylver*, 129 Nev. at 290, 300 P.3d at 723. The Agreement, consequently, is void for violating Nevada's public policy.

Plaintiffs' Agreement is unlawful by its plain language and it further undermines the public policy of Nevada's medical malpractice reform statutes. Nevada courts refuse to enforce contracts

129115117.1

that are illegal and against public policy. *Id*. This Agreement is both illegal and violative of Nevada's public policy. It, therefore, cannot form the basis of Plaintiffs' intentional interference claim. As a result, this claim must be dismissed.

(2) **Plaintiffs Have Not Sufficiently Alleged that the Davis Defendants Caused Mr. Erne to Terminate the Agreement**

To state a claim for intentional interference, Plaintiffs must allege that the Davis Defendants actually interfered with the Agreement. Plaintiffs have not done so. Plaintiffs alleged "Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case." Compl. ¶ 66. Plaintiffs further allege that Mr. Davis "convinced the client, upon false pretenses, to terminate the attorney client relationship" with Claggett & Sykes. Compl. ¶ 156. Even when assumed true, these allegations amount to conclusory statements that lack any specifcity. Mr. Erne was the only person with the power to terminate the Agreement with Claggett & Sykes. Plaintiffs make no allegations about how Mr. Davis persuaded Mr. Erne to terminate the Agreement. Even if it were true that Mr. Davis encouraged Mr. Erne to terminate Claggett & Sykes, it is not plausibe to state that Mr. Davis *actually caused* Mr. Erne to terminate the Agreement. Mr. Erne is an autonomous human. Plaintiffs do not allege that Mr. Davis coerced or overpowered Mr. Erne's will to force him to terminate the Agreement. To terminate the Agreement was ultimately Mr. Erne's decision. As a result, no matter how much input Mr. Davis may have had in Mr. Erne's decision, it cannot be said that Mr. Davis actually *caused* Mr. Erne to terminate the Agreement. Plaintiffs allege no facts by which the Court could reasonably infer that Mr. Erne would not have terminated the Agreement but for Mr. Davis's alleged statements. For these reasons, Plaintiffs have failed to allege that Mr. Davis actually interfered with the Agreement.

(3) **Plaintiffs Damages Are too Speculative to Be Actionable**

To assert a cognizeable claim for intentional interference, Plaintiffs must allege that they were damaged as a result of the interference. *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. To be

compensable, damages must be appreciable and not speculative. *Nelson v. Burr*, No. 81456-COA, 2021 WL 3701471492, at * 3 (Nev. Ct. App. Aug. 18, 2021) (citing *Sorenson v. Pavlikowski*, 94 Nev. 440, 444, 581 P.2d 851, 854 (1978)). In the context of legal malpractice, the Supreme Court of Nevada has held that that "where it is too early to know whether damage has been sustained, a legal malpractice action is premature and should be dismissed." *Semenza v. Nev. Med. Liability Ins. Co.*, 104 Nev. 666, 666, 765 P.2d 184, 184 (1988).

Although this is not a legal malpractice suit, the same logic outlined in *Semenza* applies here. Plaintiffs represented Mr. Erne under a contingency agreement in the Erne Matter wherein Claggett & Sykes would recover a percentage of any settlement of judgment. Thus, Plaintiffs would not have any damages as a result of the termination of the Agreement until after the Erne Matter is settled or results in a judgment in Mr. Erne's favor. Until that point, Plaintiffs' damages are too remote and speculative to be compensable. This Court may take judicial notice of the fact that the Erne matter remains in active litigation and is currently scheduled for trial on October 10, 2022. As a result, Plaintiffs' intentional interference claim must be dimissed because their alleged damages are too remote and speculative at this time. *See id.*

To be sure, Plaintiffs have alleged damages in the form of the costs that they incurred litigating the Erne Matter prior to May 15, 2021. Ex. C. Those costs, however, have no causal relationship to the Davis Defendants' alleged intererence with the Agreement. Plaintiffs incurred these costs prior to Mr. Erne firing Claggett & Sykes. Moreover, Plaintiffs are not foreclosed from recovering these costs. Indeed, Plaintiffs have filed a Notice of Attorney's lien into the underlying case, and the Agreement otherwise obligates Mr. Erne to pay Claggett & Sykes' costs in litigating the case upon discharge of Claggett & Sykes. For these reasons, at this point, Plaintiffs have not sustained any damages related to their intentional interference claim. As a result, this claim must be dismissed.

129115117.1

### D.      Plaintiffs' Civil Conspiracy Claim Must Be Dismissed

To assert a cognizable claim for civil conspiracy, the plaintiff must show that "two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The plaintiff "must provide evidence of an explicit or tacit agreement between the alleged conspirators." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998). A "[c]ivil conspiracy is, fundamentally, a conspiracy to commit a tort." James L. Buchwalter, 54 CAUSES OF ACTION 2D 603, § 2 (database updated May 2018); *see Beck v. Prupis*, 529 U.S. 494, 501, 503 (2000) ("at common law, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious").

In this case, for the same reasons stated above regarding Plaintiffs' intentional interference claim, Plaintiffs cannot claim that the Davis Defendants conspired to tortiously interfere with the Agreement. This is because the Agreement itself is void and cannot form the basis of an intentional interference claim. Moreover, as outlined above, Plaintiffs have failed to allege any facts that the Davis Defendants acted intentionally to influence or cause Mr. Erne to fire Claggett & Sykes. Moreover, Plaintiffs have not suffered any damages as a result of any alleged conspiracy. Plaintiffs' damages are too remote and speculative while the Erne Matter is still pending. For these reasons, Plaintiffs' civil conspiracy claim must be dismissed.

## IV.      CONCLUSION

Based on the foregoing facts and analysis, Plaintiffs have failed to assert cognizable claims for intentional interference and civil conspiracy against Defendants Brian Davis and Davis Law Group. Plaintiffs' claims are premised on an invalid contract, and they have otherwise not sustained any damages. As a result, the Davis Defendants move this Court to dismiss Plaintiffs' claims

129115117.1

against Brian Davis and Davis Law Group.

Dated this 29th ay of December 2021.

FOX ROTHSCHILD LLP

*/s/ Mark J. Connot*
MARK J. CONNOT (10010)
JOHN M. ORR (14251)
1980 Festival Plaza Drive,
Suite 700
Las Vegas, NV 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
Attorneys *for Defendants Brian F. Davis and Davis Law Group, P.A.*

129115117.1

- 14 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 29th ay of December, 2021, and pursuant to FRCP 5(b), a copy of the foregoing **DEFENDANTS' BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A. MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, PA UNDER FRCP 12(B)(6)** was served via the Court's electronic filing system to the parties listed below:

> Jared B. Anderson, Esq.
> David J. Churchill, Esq.
> Injury Lawyers of Nevada
> 4001 Meadows Lane
> Las Vegas, Nevada 89107
> Tel: 702-868-8888
> jared@injurylawyersnv.com
> david@injurylawyersnv.com
> *Attorneys for Plaintiffs*

> */s/ Jineen DeAngelis*
> An Employee of Fox Rothschild LLP

129115117.1

- 15 -

EXHIBIT  A



4101 Meadows Lane, Suite 100 | Las Vegas, NV 89107

# MEDICAL MALPRACTICE CONTINGENCY FEE AGREEMENT

I Logan JErne (hereinafter "Client") hereby retain CLAGGETT & SYKES LAW FIRM, (hereinafter "The Firm") to prosecute a claim on behalf of ~~Sean Harding W Sykes~~ against Myself Summerlin Hospital and any person, entity or insurance company who may be liable for damages as a result of an incident occurring on the 26 day of April, 2017 ("the Claim"), and agree as follows:

**ATTORNEY'S FEE shall be either:**

1. **Thirty-Three and One-Third Percent (33 1/3%) of all amounts recovered for the Claim by settlement _before_ the start of Litigation (Litigation starts with the filing of a complaint or a private arbitration proceeding);**
2. **Forty Percent (40%) of all amounts recovered for the Claim by settlement _after_ the start of Litigation up until the first day of trial;**
3. **Forty-Five Percent (45%) of all amounts recovered for the Claim by settlement or judgment _after_ the first day of trial through the jury verdict; or**
4. **Fifty Percent (50%) of all amounts recovered by settlement or judgment after a verdict is entered in the event a motion for either a new trial or to amend the judgment is filed, in the event of an appeal to an Appellate Court, or if a new trial is required.**

**The fee is calculated on the gross recovery before deducting costs, medical bills, or liens. Should litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees, or if the client discharges The Firm, the Attorney's Fee shall be the greater of the above contingency fee or the Attorney's Hourly Rate whichever is greater. The Attorney Hourly Rates are as follows:**

| | |
|---|---|
| **Sean Claggett -** | **$750.00 per hour** |
| **Sam Harding -** | **$750.00 per hour** |
| **Jennifer Morales -** | **$750.00 per hour** |
| **William Sykes -** | **$750.00 per hour** |
| **Matthew Granda -** | **$650.00 per hour** |
| **Christian Augustin -** | **$400.00 per hour** |
| **Law Clerk -** | **$200.00 per hour** |
| **Paralegal -** | **$150.00 per hour** |

**The "Claim" includes and applies to any amounts recovered from third parties, uninsured motorist coverage, underinsured motorist coverage, and/or medical payments coverage ("medpay").**

**NRS 7.095.** YOU HAVE BEEN GIVEN A COPY OF NRS 7.095, WHICH LIMITS FEES WHICH CAN BE CHARGED TO THE PARTY OF A MEDICAL MALPRACTICE CASE BY THEIR ATTORNEY.  IN OUR OPINION, THIS STATUTE IS UNCONSTITUTIONAL, AS APPLIED TO THE U.S. CONSTITUTION, AS WELL AS THE STATE OF NEVADA CONSTITUTION. WE HAVE EXPLAINED TO YOU THAT WE WILL NOT REPRESENT YOU PURSUANT TO THE FEE LIMITATIONS OF NRS 7.095, AND THAT WE WILL ONLY REPRESENT YOU IN ACCORDANCE WITH THE FEES LISTED IN THIS MEDICAL MALPRACTICE CONTINGENCY FEE AGREEMENT. WE HAVE ADVISED YOU TO CONTACT AN ATTORNEY OF YOUR CHOICE REGARDING THIS ISSUE PRIOR TO SIGNING THIS AGREEMENT.

**ADVOCATES UNITED, LLC.** CLIENT ACKNOWLEDGES THAT HE/SHE IS RETAINING CLAGGETT & SYKES LAW FIRM AND IS NOT BEING REPRESENTED BY ADVOCATES UNITED, LLC, WHICH SHALL NOT PROVIDE ANY LEGAL SERVICES IN YOUR CASE.

**COSTS** advanced by the Firm are expenses necessary to prosecute the Claim and are to be deducted from the recovery **after** Attorney's fee.  In the event there is **no recovery**, the Firm shall receive **no reimbursement for costs**.  Cost include, but are not limited to: postage, facsimile, telephone, law clerk fees, photocopies, overnight mail fees, investigation expenses, photography and video expenses, evidence storage fees, messenger expenses, filing fees, service of process fees, bond fees, witness fees, expert fees, records fees, outside legal research and writing fees, internet data access fees, court reporter fees, travel expenses, arbitration fees, mediation fees, and jury fees. Additionally, Client agrees that the Firm may borrow funds from a lender to finance or pay such Court costs and litigation expenses and the interest charged by the lender on such borrowed funds will be added to the Court costs and litigation expenses to be deducted from the settlement or recovery.

All necessary costs and expenses incurred by the attorney in the investigation and litigation of client's case shall be deducted from client's portion of any and all sums collected or recovered after attorney's contingent fee is calculated as set forth above. Costs and expenses are defined as monies paid out by attorney on behalf of the client during the processing of client's claim.  Client expressly acknowledges that costs include payments made to independent law clerks and nurses who perform research on behalf of

attorney. Client is not required to pay attorney the costs and expenses incurred if client does not collect or recover any monies by way of judgment. Client may be liable for the payment of the opponent attorney's fees and will be liable for the opponent's costs as required by law if the case is lost. The Client will be charged and the Attorney will be credited an automatic $250.00 file and document handling fee towards Costs.

Any and all medical expenses incurred by the Client are payable by the Client, and the Attorney may withhold and pay from any recovery the sums necessary for such payment. Any and all liens, created by statute or contract, and obtained on behalf of client, i.e., hospital, doctors, workers compensation, insurance, etc., shall be paid in full, or as required by law or agreement, from the client's portion of any and all sums collected or recovered after attorney's contingent fee is calculated as set forth above. Should client's portion of any and all sums collected or recovered by way of settlement or judgment be insufficient to satisfy any and all liens in full, client may be solely responsible for the payment of such liens.

**WITHDRAWAL AND DISCHARGE.** Withdrawal by the Firm may be made at any time for any reason upon written notice to the Client's last known address. The Firm's discharge by Client before settlement of the Claim shall be upon written notice to the Firm. Upon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more. Upon withdrawal or discharge, the Firm may assert an attorney's lien on the Client's file and/or recovery to secure payment for the Firm's services, and Client hereby consents to said lien.

**OTHER COUNSEL** within the Firm, or outside counsel, may be associated or employed at the Firm's discretion to prosecute the Claim. The Firm will pay outside counsel's attorney fees out of its own attorney's fee.

**REFERRAL FEES** may be paid to other licensed attorneys and outside counsel. Client acknowledges and agrees that the Firm may, at its discretion, pay a portion of its attorney's fee to referring counsel, with the referring counsel receiving Twenty Percent (20%) of the Firm's attorney's fee in this matter, or less. These referral fees will be paid from the Firm's attorney's fee in this matter, and will not increase the total amount of attorney fees paid by the Client under this Agreement. **No referral fees can be paid to non-attorneys.**

**NO GUARANTEES** concerning success, value, or time to conclude the Claim can be made. The Firm cannot make any guarantees concerning the outcome of the Claim. **In**

the event of an unsuccessful lawsuit or litigation, Client may be liable for paying the opposing party's attorney's fees and costs.

**VALID CLAIM.**  Client understands that a suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.  **Client warrants that this is a valid claim.**

**LOANS OR ADVANCES** to Client by the Firm cannot be made prior to settlement of Claim.  **The Attorney strongly advises that the Client not obtain any prejudgment loans as an advance against the Client's claim.**  Additionally, the Firm will not assist Client in obtaining any sort of prejudgment loans.  Should Client desire the assistance of the Firm to assist in the preparation of documents for the purpose of obtaining a prejudgment loan, an hourly rate may be charged to the Client for all time spent on said work.

**SERVICES NOT COVERED BY THIS AGREEMENT.**  If additional legal services are requested by the Client, whether related or unrelated Client's claim(s) stated herein, and Client requests Attorney to perform such services, additional fee arrangements must be made by Attorney and Client, in writing.

**SETTLEMENT** of the Claim will not be made without Client's consent, but Client agrees to accept a reasonable settlement offer or an offer of available insurance policy limits.  Client also agrees, at the Firm's discretion, to a bench trial or mini-jury trial, or alternative dispute resolution (ADR), such as arbitration and mediation, to facilitate a timely resolution of the Claim.

**LIMITED POWER OF ATTORNEY** is expressly given by Client to the Firm to execute and/or sign Client's name and deposit into said Attorney's law firm IOLTA Trust Account any checks or drafts, and to execute any authorizations, drafts, releases and dismissals incidental to the Claim, and to sign and/or acknowledge all complaints, claims, settlements, election of award documents, compromises, order and any other documents as I could do myself.

**COOPERATION** by Client is essential.  Client agrees to promptly provide the Firm with all requested information, give notice of change of address and submit medical bills to Client's insurance companies and pay medical expenses as they are incurred unless other arrangements are made with medical providers.

**BANKRUPTCY.**  Client represents to Attorney that Client is not presently, nor do they contemplate filing for Bankruptcy protection; that they will inform Attorney should such a course of action be contemplated in the future. Client acknowledges that any recovery

obtained as a result of this claim are subject to such proceedings wherein they are to be scheduled as an asset by Client. Client understands that in the event of Client's bankruptcy, the Firm may be required to turn over Client's portion of the Claim recovery to the bankruptcy Trustee. Client further acknowledges that any expense which the attorney may incur to protect attorney's fees from said result shall be subtracted from the recovery that normally would flow to Client as his/her share of recovery.

**MEDICAL EXPENSES.**  Any and all medical expenses incurred by Client are payable by the Client, and the Firm may withhold from any recovery the sums necessary for payment of such medical expenses.  Client remains ultimately responsible to ensure that all medical bills are paid, as attorneys may be unaware of the existence of certain outstanding medical bills.

**SOCIAL MEDIA.**  The Client agrees to discontinue any use of social media sites during the pendency of the claim.  Continued use of social media sites during the pendency of this Claim can and probably will reduce the value of the Claim.  Client accepts full responsibility for any and all damage caused by social media use to this Claim.

**CLIENT ADVOCATE.**  The Firm employs a medical practitioner to serve in the role of Client Advocate. The Client Advocate will not provide any medical treatment to the Client and any medical information communicated between the Client and the Client Advocate is not to be considered medical advice or a plan for management of a medical condition. There is no doctor/patient relationship established between the Client and the Client Advocate and any information provided by the Client Advocate is not intended to replace advice given to you by any of your treating medical providers.

**FOCUS GROUPS.** The Client agrees to allow the Firm to conduct focus groups at various stages of the Claim, including, but not limited to, before filing a lawsuit, before trial, and during trial. Focus groups are vital to any case that proceeds to trial, and the Firm reserves the right to withdraw from representation if the Client does not allow the Firm to conduct focus groups. All costs incurred as a result of any focus groups will be paid by Client out of any recovery from the Claim. The Firm conducts focus groups through the services of Las Vegas Focus Groups, LLC d/b/a Paramount Focus Groups ("Paramount"). Paramount is solely owned by Sean K. Claggett. You have the right, and it is desirable for you, to seek the advice of independent legal counsel before the Firm conducts any focus groups on your Claim. You have 30 days from the date of signing this Retainer to advise the Firm if you do not want the Firm to conduct focus groups on your case. If you do not advise the Firm within 30 days, this Retainer shall act as your written consent to waive any conflicts that may exist with the Firm's use of Paramount and your written consent to the Firm's use of Paramount to conduct focus groups throughout the Claim.

I HAVE READ AND UNDERSTAND THE ABOVE AND ACCEPT ALL TERMS
AND CONDITIONS AS STATED ABOVE.

DATED this ___31___ day of ___May___, 2017.

_____
Client's Signature

_____
Client's Name (Please Print)

EXHIBIT  B

Electronically Filed
2/16/2021 12:55 PM
Steven D. Grierson
CLERK OF THE COURT

**LIEN**
Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
sclaggett@claggettlaw.com
jmorales@claggettlaw.com

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

LOGAN ERNE, an Individual,

Plaintiff,

v.

MARGARET WILLIAMS, LCPC an Individual;
MARILYN S. ABEL, CPC, an Individual;
ANTHONY QUINN, M.D., an Individual,
BRANDON PAYZANT, PAC, PHC OF
NEVADA, INC. DBA HARMONY
HEALTHCARE, a foreign corporation; and
SUMMERLIN HOSPITAL & MEDICAL
CENTER LLC, a limited liability company.;
DOES I through X; ROE BUSINESS ENTITIES
XI through XX, inclusive,

Defendants.

CASE NO.: A-18-773499-C

DEPT NO.: III

**NOTICE OF ATTORNEY'S LIEN**

NOTICE IS HEREBY GIVEN that CLAGGETT & SYKES LAW FIRM claims a lien for

its services upon the claims for relief on behalf of LOGAN ERNE, and any successor and/or

predecessor plaintiff in the above-referenced litigation, against any person, entity or insurance

company legally liable for damages as a result of the incident occurring on April 26, 2017, that is

now the subject of this lawsuit.

Claggett & Sykes Law Firm claims a lien and upon any and all property or gross amounts

recovered (the recovery) that may become available on behalf of LOGAN ERNE and any

successor and/or predecessor plaintiff in the above-referenced litigation:

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

| | |
|---|---|
| **Jennifer Morales, Esq.** | **97.20 hours/$72,900.00** |
| **Shannon L. Wise, Esq.** | **69.70 hours/$27,880.00** |
| **Samuel Harding, Esq.** | **23.05 hours/$17,287.50** |
| **Moises Garcia** | **32.50 hours/$4,875.00** |
| **Jocelyn Abrego** | **48.70 hours/$7,305.00** |
| **Total:** | **271.15 hours/$130,247.50** |

Claggett & Sykes Law Firm asserts a lien for attorney fees in the amount of **$130,247.50.**

Claggett & Sykes Law Firm also asserts a lien against LOGAN ERNE for all reasonable case costs advanced and incurred on behalf of the plaintiff in the amount of **$158,264.56**

Accordingly, Claggett & Sykes Law Firm asserts a total lien in this matter of **$288,512.06** for attorney fees and costs.

DATED this 16th day of February 2021.

CLAGGETT & SYKES LAW FIRM

*/s/ Sean K. Claggett*

Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 16th day of February 2021, I caused to be served a true and correct copy of the **NOTICE OF ATTORNEY'S LIEN** in the above-captioned case via the following methods pursuant to Rule 9 of the N.E.F.C.R. and N.R.C.P. 5:

| | |
|---|---|
| Robert C. McBride, Esq. <br> Gerald Tan, Esq. <br> CARROLL KELLY TROTTER FRANZEN <br> MCBRIDE & PEABODY <br> 8329 W. Sunset Road, Suite 260 <br> Las Vegas, NV 89113 <br> *Attorneys for Defendant Anthony Quinn, M.D.* | Travis E. Shetler, Esq. <br> LAW OFFICES OF TRAVIS E. SHETLER <br> 3202 W. Charleston Blvd <br> Las Vegas, NV 8902 <br> *Attorneys for Plaintiff* |
| S. Brent Vogel, Esq. <br> LEWIS BRISBOIS BISGAARD & SMITH, LLP <br> 6385 S. Rainbow Blvd., Suite 600 <br> Las Vegas, NV 89118 <br> *Attorneys for Defendants Margaret Williams, LCPC, Marilyn S. Abel, CPC, Brandon Payzant, PAC and PHC of Nevada, Inc., dba Harmony Healthcare.* | Brian F. Davis, Esq. <br> DAVIS LAW GROUP, PA <br> 135 Cherry Street, N <br> Asheville, NC 28801 <br> *Attorneys for Plaintiff* |
| Michael J. Shannon, Esq. <br> Brittany A. Lewis, Esq. <br> HALL PRANGLE & SCHOONVELD, LLC. <br> 1140 North Town Center Drive, Ste. 350 <br> Las Vegas, Nevada 89144 <br> *Attorneys for Defendant, Summerlin Hospital Medical Center, LLC* | **VIA Regular and Certified Mail** <br> Logan Erne <br> 51 Wilmington Street, <br> Asheville, North Carolina 28806 <br> *Plaintiff* |
| Candance C. Herling, Esq. <br> MESSNER REEVES, LLP <br> 8945 W. Russell Road #300 <br> Las Vegas, NV 89148 <br> *Attorneys for Defendant, Summerlin Hospital Medical Center, LLC* | |

*/s/ Moises Garcia*

_____
An Employee of Claggett & Sykes Law Firm

EXHIBIT  C

Electronically Filed
07/01/2021 11:12 AM

CLERK OF THE COURT

1 | ARJT

2

3

4

5 | EIGHTH JUDICIAL DISTRICT COURT
    CLARK COUNTY, NEVADA

6

7 | LOGAN ERNE, an Individual,                     Case No.:    A-18-773499-C
                                                  Dept. No.:   III
8 |              Plaintiff(s),
    vs.

9

10 | MARGARET WILLIAMS, LCPC an
     Individual; MARILYN S. ABEL, CPC, an
11 | Individual; ANTHONY QUINN, M.D., an
     Individual, BRANDON PAYZANT, PAC,
12 | PHC OF NEVADA, INC. DBA
     HARMONY HEALTHCARE, a foreign
13 | corporation; and SUMMERLIN
     HOSPITAL & MEDICAL CENTER LLC,
14 | a limited liability company; DOES I - X;
     ROE BUSINESS ENTITIES XI - XX,
15 | inclusive,

16 |              Defendant(s)

17

18

19 | **AMENDED ORDER SETTING**
    **CIVIL JURY TRIAL AND CALENDAR CALL**

20

21 | IT IS HEREBY ORDERED that:

22 | A.      The above-entitled case is set to be tried to a jury on a **five week stack** to begin,

23 | **Monday, October 10, 2022, at 10:30 a.m.**

24 | B.      A Pre-Trial Conference/Calendar Call with the designated attorneys and/or

**MONICA TRUJILLO**
DISTRICT COURT JUDGE
DEPARTMENT III
LAS VEGAS, NV 89155

1

parties in proper person will be held on **Thursday, September 29, 2022, at 1:30 p.m.** The designated trial attorney or parties in proper person, must be present, in person, and must be prepared to state when they are available within the stack to commence trial. Parties must bring to Calendar Call the following:

>  (1)  Typed Exhibit Lists;
>  (2)  List of depositions;
>  (3)  List of equipment needed for trial, including audiovisual equipment; and
>  (4)  Courtesy copies of any legal briefs on trial issues.

 C. The Pre-Trial Memorandum must be filed by 4:00 p.m. no later than **5 days prior to the Pre-Trial Conference/Calendar Call**, with a courtesy copy delivered or emailed to Department III. All parties (attorneys and parties in proper person), <u>MUST</u> comply with <u>all requirements</u> of Eighth Judicial District Court Rules (EDCR) 2.67, 2.68 and 2.69.

 Counsel must include in the Memorandum an identification of Orders on all Motions in Limine or Motions for Partial Summary Judgment previously made, a summary of any anticipated legal issues remaining, a brief summary of the opinions to be offered by any witness to be called to offer opinion testimony as well as any objections to the opinion testimony.

 D. All pre-trial motions, including motions in limine, must be in writing and **filed no later than August 19, 2022**, and must be heard not less than 14 days prior to trial. The parties must adhere to the requirements set forth in EDCR 2.47, particularly EDCR 2.47(b), which requires the lawyers to personally consult with one another by way of face-to-face meeting or via telephone conference before a motion in limine can be filed. Counsel are required to confer, pursuant to EDCR 2.47(b), **at least two weeks prior** to filing any motion in limine. If a personal or telephone conference was not possible, the attorney's declaration and/or affidavit attached to the pre-trial motion shall set forth the reasons. Should a party

and/or his or her attorney fail to abide by the requirements of EDCR 2.47(b) before filing his or her motion in limine, such motion will not be heard by the Court.

E.      In addition to depositions that are to be lodged with the Court pursuant to EDCR 2.69, if any party intends to use portions of a Deposition (transcript or video) in lieu of live testimony; the Parties must provide a designation (by page/line citation) of the portions of the testimony to be offered must be filed and served on the parties and the department **five (5) judicial days prior to the commencement of trial**. Any objections or counter-designations (by page/line citation) of testimony must be filed and served on the parties and the department, **three (3) judicial days prior to the commencement of trial**.

F.      Counsel **MUST** contact the Department no later than one week prior to trial to make arrangements to deliver or discuss marking exhibits. Exhibit guidelines are listed on the District Court Department III's website at www.clarkcountycourts.us or are available upon request.

G.      Counsel shall meet and discuss voir dire questions, jury instructions, and verdict forms. Counsel shall provide the Court an agreed upon set of jury instructions, voir dire questions, and proposed verdict forms, along with any additional jury instructions proposed by either side, via email, **no later than one (1) judicial day before trial**. If there are contested instructions, they should be sent to chambers with an explanation regarding the disagreement and the differing authority supporting positions.

H.      All discovery deadlines, initial expert and rebuttal expert disclosures, and deadlines to amend pleadings or add parties, and filing dispositive motions, are controlled by the Stipulation and Order to Continue Trial and Extend Discovery Deadlines (Ninth Request) and Stipulation and Order to Extend Discovery Deadlines (Tenth Request), entered into by the parties.

1         Pursuant to E.D.C.R. 2.35, a motion as to any discovery issues or deadlines must be

2   made before the Discovery Commissioner.

3         Counsel is required to advise the Court immediately when the case settles or is

4   otherwise resolved prior to trial. A stipulation which terminates a case by dismissal shall also

5   indicate whether a Scheduling Order has been filed and, if a trial date has been set, the date of

6   that trial.

7         Failure of the designated trial attorney or any party appearing in proper person to

8   appear for any court appearances or to comply with this Order shall result in any of the

9   following: (1) dismissal of the action (2) default judgment; (3) monetary sanctions; (4)

10  vacation of trial date; and/or any other appropriate remedy or sanction.

11

12

13                             **Dated this 1st day of July, 2021**

14

15

16                             **F8A 478 86DF 7159**

                                       **Monica Trujillo**

17                             **District Court Judge**

18

19

20

21

22

23

24

EXHIBIT  D

# Bar Counsel Report

In Re: JULIUS M. ENGEL
Bar No.: 8057
Case No.: 81768
Filed: 11/05/2020

**ORDER OF GRANTING MOTION TO FILE LATE RESPONSE, IMPOSING RECIPROCAL DISCIPLINE AND DISBARRING ATTORNEY**

*This is a petition for reciprocal discipline of attorney Julius M. Engel pursuant to SCR 114. On October 21, 2020, Engel moved for leave to file a late response to the petition. We grant this motion and direct the clerk to file the response Engel tendered with his motion. Engel is currently suspended from the practice of law in Nevada and has not sought reinstatement. In re Discipline of Engel, Docket No. 73119 (Order Imposing Reciprocal Discipline, Oct. 24, 2017).*

The record establishes that Engel has been disbarred from the practice of law in California. The documents submitted to this court from the California proceeding show that, while representing bankruptcy clients, Engel filed a defective payment plan resulting in the dismissal of his clients' bankruptcy petition. When he refiled the petition, he once again filed a defective payment plan and then failed to appear at two hearings, resulting again in the dismissal of his clients' bankruptcy petition. In responding to the California State Bar's inquiries, Engel falsely asserted that the bankruptcy petitions were dismissed because his clients failed to pay the bankruptcy trustee. Engel also accepted a client right before he was suspended in California and failed to inform the client of his suspension when she called after the suspension began, instead telling her he was working on her case. Additionally, he continued to advertise his legal services on his website and on the radio during his suspension. Lastly, he failed to comply with the notice requirements informing his clients and opposing counsel of his suspension and submitted a false statement to the California State Bar that he had complied with the notice requirement.

The California Hearing Department found Engel violated California Rule of Professional Conduct 3-110(A), similar to RPC 1.1 (competence); California Business and Professions Code § 6068(a) and § 6126, similar to RPC 5.5 (unauthorized practice of law); California Rules of Court 9.20(a), (e), similar to SCR 115 (notice of change in license status); and California Business and Professions Code§ 6106, similar to RPC 8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation). "[A] final adjudication in another jurisdiction that an attorney has engaged in misconduct conclusively establishes the misconduct for the purpose of a disciplinary proceeding in this state." SCR 114(5).

The California Supreme court ordered Engel disbarred from the practice of law. SCR 114(4) provides that this court shall impose identical reciprocal discipline unless the attorney demonstrates, or this court finds, that one of four exceptions applies. We conclude that none of the four exceptions is present in this case. Thus, we grant the petition for reciprocal discipline.

Accordingly, attorney Julius M. Engel is hereby disbarred from the practice of law in this state. Engel and the State Bar shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

In Re: SAMEER A. QADRI
Bar No.: 12631
Case No.: 80984
Filed: 10/23/2020

**ORDER IMPOSING RECIPROCAL DISCIPLINE AND DISBARRING ATTORNEY**

*This is a petition under SCR 114 to reciprocally discipline attorney Sameer A. Qadri, based on discipline imposed on him in California. Qadri was disbarred from the practice of law in California on January 22, 2015, and he did not self-report the discipline to the Nevada State Bar. He opposes this petition.*

The California State Bar's Notice of Disciplinary Charges alleged misconduct based on Qadri's representation of 40 clients who retained him for home loan modifications in 2012. Thereafter, Qadri and the California State Bar stipulated to the facts, conclusions of law, and disposition and order approving Qadri's involuntary inactive enrollment and disbarment.[1] The admitted facts establish that after a 90-day suspension from the practice of law in 2013, Qadri failed to file an affidavit under California RPC 9.20(c), confirming that he complied with provisions of that rule, which require that he notify clients and others of his suspension and return clients' papers and any unearned fees. Qadri violated California RPCs 1-300(B) (unauthorized practice of law in another jurisdiction) and 4-200(A) (fees for legal services) by performing loan modification legal services in jurisdictions where he is not licensed to practice law or charge and collect legal fees.[2] He violated California RPCs 3-700(A)(2) (termination of employment) and 3-700(D)(1) (release of file) by sending a letter to at least 16 clients informing them that he would not be performing any additional legal services on their behalf, but failing to return files to the 16 clients who requested their files.[3]

As found by the California State Bar Court and agreed to by Qadri, Qadri's acts of misconduct were willful in nature. Also, as stipulated, one mitigating circumstance (cooperative attitude by entering into a stipulation for discipline before trial) and three aggravating circumstances (prior disciplinary record, vulnerability of victims, and multiple offenses) apply. Under SCR 114(4), this court must impose identical reciprocal discipline unless the attorney demonstrates, or this court finds, that one of four exceptions applies. Qadri argues the third exception applies because the "the misconduct established warrants substantially different discipline in this state." SCR 114(4)(c) We disagree. Qadri has been suspended from the practice of law in Nevada since July 7, 2014, based on an earlier California disciplinary matter involving similar misconduct.[4] In re Discipline of Qadri, Docket No. 64797 (Order Imposing Reciprocal Discipline, July 7, 2014). Qadri failed

to report his subsequent 2015 California disbarment, which addressed Qadri's misconduct that harmed 40 vulnerable clients and involved the unauthorized practice of law and collection in multiple jurisdictions. Based on the duties violated, Qadri's willful mental state, the injury to his clients, the public, and the profession caused by his misconduct, and the three aggravating circumstances and one mitigating circumstance, see *In re Discipline of Lerner,* 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (listing factors to consider in determining appropriate discipline), we conclude disbarment is warranted. Thus, we grant the petition for reciprocal discipline. Accordingly, attorney Sameer A. Qadri is hereby disbarred from the practice of law in this state. Qadri and the State Bar shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

> **In Re: JOSEPH A. SCALIA**
> **Bar No.: 5123**
> **Case No.: 81672**
> **Filed: 10/15/2020**

## ORDER OF SUSPENSION

*This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that attorney Joseph A. Scalia be suspended from the practice of law for six months based on violations of RPC 1.3 (diligence), RPC 1.4 (communication), RPC 1.16 (declining or terminating representation), and RPC 3.2(a) (expediting litigation). Because no briefs have been filed, this matter stands submitted for decision based on the record. SCR 105(3)(b).*

The State Bar has the burden of showing by clear and convincing evidence that Scalia committed the violations charged. *In re Discipline of Drakulich,* 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). Here, however, the facts and charges alleged in the complaint are deemed admitted because Scalia failed to answer the complaint and a default was entered.[5] SCR 105(2). The record therefore establishes that Scalia violated the above-referenced rules by failing to prosecute a divorce case or appear at three hearings in the matter, which led to a default divorce decree being entered against his client. He also failed to keep his client reasonably informed of the status of her case or properly terminate his representation of her.

Turning to the appropriate discipline, we review the hearing panel's recommendation de novo. SCR 105(3)(b). Although we "must ... exercise independent judgment," the panel's recommendation is persuasive. *In re Discipline of Schaefer,* 117 Nev. 496, 515, 25 P.3d 191, 204 (2001). In determining the appropriate discipline, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner,* 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008).

Scalia violated duties owed to his client (diligence and communication), the legal system (expediting litigation), and the profession (improper withdrawal from representation). Scalia's mental state was negligent and his client and the legal profession were injured or potentially injured. Scalia's client had a default divorce decree entered against her and believed she remained married for three years thereafter. The baseline sanction for Scalia's misconduct, before consideration of aggravating and mitigating circumstances, is suspension. See Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards,* Standard 4.42(b) (Am. Bar Ass'n 2017) (recommending suspension when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client"). The panel found, and the record supports, two aggravating circumstances (pattern of misconduct and substantial experience in the practice of law) and two mitigating circumstances (personal or emotional problems and remorse). Considering all the factors, we conclude the recommended suspension is sufficient to serve the purpose of attorney discipline. See *State Bar of Nev. v. Claiborne,* 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (observing the purpose of attorney discipline is to protect the public, the courts, and the legal profession).

Accordingly, we hereby suspend attorney Joseph A. Scalia from the practice of law in Nevada for a period of six months commencing from the date of this order. Scalia shall also comply with all CLE Board requirements and resolve any outstanding fee disputes. Further, Scalia shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120, within 30 days from the date of this order. The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

> **In Re: HAROLD P. GEWERTER**
> **Bar No.: 499**
> **Case No.: 80198**
> **Filed: 10/26/2020**

## ORDER OF SUSPENSION

*This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that a previously stayed one-year suspension be imposed against attorney Harold P. Gewerter for his failure to comply with probation conditions.[6]*

On January 4, 2018, this court suspended Gewerter for one year, with the suspension stayed for two years subject to certain probation conditions approved by the hearing panel. *In re Discipline of Gewerter,* Docket No. 73529 (Order Approving Conditional Guilty Plea Agreement, Jan. 4, 2018). Those conditions included that "the opening of a grievance concerning which a Screening Panel ultimately determines

CONTINUED ON PAGE 38

CONTINUED FROM PAGE 37

# Bar Counsel Report

that a formal hearing is warranted ... shall be considered a breach of this stay." This condition applied to grievances, "including but not limited to matters involving any of [Gewerter's] trust accounts prior to [the conditional guilty plea agreement]." On June 26, 2019, a screening panel recommended proceeding to a formal hearing on a grievance, which involved Gewerter's trust account prior to the signing of the conditional guilty plea agreement. Thus, Gewerter breached the conditions of his probation and imposition of the one-year suspension previously stayed in Docket No. 73529 is necessary.

Accordingly, we hereby suspend attorney Harold P. Gewerter from the practice of law in Nevada for one year beginning from the date of this order. Additionally, Gewerter shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120, within 30 days from the date of this order. The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.[7]

> **In Re: JOSEPH IARUSSI**
> **Bar No.: 9284**
> **Case No.: 81338**
> **Filed: 10/23/2020**

### ORDER DENYING PETITION FOR TEMPORARY SUSPENSION AND APPROVING CONDITIONAL GUILTY PLEA AGREEMENT

Docket No. 79030 is a petition under SCR 111, in which the State Bar reported that attorney Joseph B. Iarussi had entered a guilty plea to possession of a controlled substance, a felony in violation of NRS 453.336. In that matter, we deferred a decision on whether to temporarily suspend Iarussi until after sentencing in the criminal case, and we referred the matter to the Southern Nevada Disciplinary Board for formal disciplinary proceedings. From that referral, and based on other unrelated conduct, Iarussi entered into a conditional guilty plea agreement in exchange for a stated form of discipline. Docket No. 81338 is an automatic review of the hearing panel's recommendation that this court approve that agreement pursuant to SCR 113. Under the agreement, Iarussi admitted to violating RPC 1.4 (communication), RPC 1.15 (safekeeping property), and RPC 8.4(b) (misconduct: committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness).

Iarussi has admitted to the facts and violations as part of the disciplinary conditional guilty plea agreement. The record therefore establishes that Iarussi knowingly violated RPC 8.4(b) by committing a criminal offense that adversely reflects on his fitness as a lawyer.[8] Additionally, the record establishes that Iarussi violated RPC 1.15 and RPC 1.4 by depositing settlement funds obtained on behalf of a minor into a bank account not approved as a trust account, waiting several years to petition the court for compromise of the minor's claim and to deposit the funds into a blocked account, and failing to communicate with the minor's representatives regarding the status of the case despite requests for such information. In exchange for his

guilty plea, Iarussi agreed to a one-year suspension from the practice of law and to pay the disciplinary proceeding costs.

Based on our review of the record, we approve the conditional guilty plea agreement.[9] SCR 113. Iarussi acted knowingly in violating the above-referenced rules; his conduct resulted in actual or potential injury to his client, the public, the legal system, and the profession; and the record supports the panel's findings of three aggravating circumstances (prior disciplinary offenses, vulnerability of victim, and substantial experience in the practice of law) and four mitigating circumstances (full and free disclosure to disciplinary authority/cooperative attitude, personal or emotional problems, imposition of other penalties, and remorse). See In re Discipline of Lerner, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (setting forth four factors to be considered in determining appropriate discipline: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors"). Considering the factors outlined in Lerner, we agree that the one-year suspension recommended in Docket No. 81338 is appropriate and serves the purpose of attorney discipline. See Standards for Imposing Lawyer Sanctions, Compendium of Professional Responsibility Rules and Standards, Standard 4.12 (Am. Bar Ass'n 2018) ("Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."); see also generally State Bar of Nev. v. Claiborne, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (observing that the purpose of attorney discipline is to protect the public, the courts, and the legal profession, not to punish the attorney).

Accordingly, we hereby suspend attorney Joseph Iarussi from the practice of law in Nevada for a period of one year commencing from the date of this order. Also, Iarussi must pay the costs of the disciplinary proceeding, including $2,500 under SCR 120 within 90 days from the date of this order.[10] The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

> **In Re: REINSTATEMENT OF WILLIAM M. O'MARA**
> **Bar No.: 837**
> **Case No.: 81073**
> **Filed: 10/23/2020**

### ORDER OF REINSTATEMENT

*This is an automatic review of a Northern Nevada Disciplinary Board hearing panel's recommendation to deny suspended attorney William M. O'Mara's petition for reinstatement. This court suspended O'Mara from the practice of law for one year in 2015, In re Discipline of O'Mara, Docket No. 67908 (Order of Suspension, Nov. 10, 2015), and dismissed his 2018 petition for reinstatement on his request, In re Reinstatement of O'Mara, Docket No. 75065 (Order Approving Stipulation and Dismissing Reinstatement Proceeding, Apr. 12, 2018).*

Our review of the petition for reinstatement is de novo. *Application of Wright*, 75 Nev. 111, 112-13, 335 P.2d 609, 610 (1959) (reviewing a petition for reinstatement de novo). Having considered the record, we agree with the hearing panel's conclusion that O'Mara satisfied most of the criteria set forth in SCR 116(2)(a)-(g) by clear and convincing evidence. We disagree, however, with the hearing panel's conclusion that O'Mara did not satisfy SCR 116(2)(f). And, although we appreciate the hearing panel's lingering concerns as to whether he fully "recognizes the wrongfulness and seriousness of the misconduct" that resulted in his suspension, see SCR 116(2)(d), we are convinced that given the specific and limited nature of that misconduct, those concerns can be ameliorated by requiring that his practice be supervised for a period of time. See SCR 116(5) (allowing for conditions on reinstatement). Because appropriate conditions may be imposed to address the remaining area of concern, we conclude there is "good and sufficient reason" why O'Mara should be reinstated even though he did not satisfy all of the criteria in SCR 116(2)(a)(g). SCR 116(2) (providing that if attorney does not satisfy all criteria stated in the rule, the attorney may be reinstated if he "presents good and sufficient reason why [he] should nevertheless be reinstated"); see also *Shoen v. State Bar of Nev.*, 136 Nev., Adv. Op. 30, 464 P.3d 402, 403-04 (2020) (acknowledging that "an attorney who cannot demonstrate the criteria still may be reinstated if [he] 'presents good and sufficient reason why [he] should be reinstated'" (quoting SCR 116(2))). Accordingly, we grant the petition for reinstatement.

Attorney William M. O'Mara is reinstated to the practice of law in Nevada effective on the date of this order. As a condition of his reinstatement, O'Mara must be supervised for a period of three years from the date of this order by a Nevada licensed attorney who is approved by the State Bar and has experience in estate planning. The attorney supervising O'Mara during that period shall counsel O'Mara on the Rules of Professional Conduct that he violated and provide periodic reports to the State Bar regarding O'Mara's practice. O'Mara shall also pay the costs of the reinstatement proceeding, including $2,500 under SCR 120, within 30 days from the date of this order, if he has not done so already.

It is so ORDERED.

> **In Re: JOSEPH J. WIRTH**
> **Bar No.: 10280**
> **Case No.: OBC19-0438**
> **Dated: 08/17/2020**

## LETTER OF REPRIMAND

To Joseph J. Wirth:

A Formal Hearing Panel of the Southern Nevada Disciplinary Board has reviewed your tender of a Conditional Guilty Plea pursuant to SCR 113 in the above-referenced grievance. The Panel accepted the Plea and, in accordance with it, determined that a Letter of Reprimand be issued for violation of Rule 1.5 (Fees) of the Rules of Professional Conduct (RPC).

FACTS

You were retained to pursue medical malpractice claims on behalf of a client. You were aware that NRS 7.095 governed the amount of attorney's fees available on a contingency basis for recovery of damages in a medical malpractice matter. NRS 7.095 states, in pertinent part:

1. An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of:

    (a) Forty percent of the first $50,000 recovered;
    (b) Thirty-three and one-third percent of the next $50,000 recovered;
    (c) Twenty-five percent of the next $500,000 recovered; and
    (d) Fifteen percent of the amount of recovery that exceeds $600,000.

The statute defines "recovery" as "the net sum recovered by the plaintiff after deducting any disbursements or costs incurred in connection with the prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and general and administrative expenses incurred by the office of the attorney are not deductible disbursements or costs."

You consulted with other lawyers in Las Vegas who represent plaintiffs in medical malpractice cases and, based solely on their representations to you that NRS 7.095 is routinely waived in fee agreements, asked your client to consent to waive the statutory limitations on attorney's fees in the medical malpractice case and pay you a fee equal to 40% of any gross recovery he received. Your client consented to the waiver. You did not review persuasive case law regarding whether the statutory limitation was waivable and you did not consider whether an attorney's fee that was greater than the statutory amount was an unreasonable fee.

At the conclusion of your client's case, you attempted to collect 40% of the $175,000 recovery as your attorney's fee. In an effort to try to finalize the distribution of your client's settlement funds, you agreed to reduce your fee to 35% of the gross recovery. Both amounts exceeded the amount allowed by NRS 7.095.

Your client filed a Fee Dispute with the State Bar of Nevada's Fee Dispute Arbitration Committee, claiming he neither agreed to nor waived the limitations of NRS 7.095. You voluntarily agreed to make the arbitration binding. The arbitrators found that NRS 7.095 limited the amount of attorney's fees that you could recover. You accepted the arbitrators' decision and promptly paid your client his amount due after deducting your attorney's fees consistent with the limitations of NRS 7.095. After you made full payment, the Chair of the Fee Dispute Panel, rather than the client, grieved to the State Bar.

CONTINUED ON PAGE 40

CONTINUED FROM PAGE 39

# Bar Counsel Report

## APPLICATION OF THE LAW

RPC 1.5 (Fees) states "(a) [a] lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses."

NRS 7.095 proscribes the amount of a contingency fee available to an attorney and it does not allow for any exceptions to the statutory limitations. This statutory limitation is consistent with the limitations placed on medical malpractice recoveries. The Panel recognizes that the prohibition on contracting around the limitations in NRS 7.095 has not been adjudicated by the Nevada Supreme Court. It also recognizes persuasive case law that suggests such contracts would be disallowed. See *Fineberg v. Harney & Moore*, 255 Cal. Rptr. 299,207 Cal.App.3d 1049 (Cal. App. 1989) (addressing California's substantially similar statute and finding "[a] law established for a public reason cannot be contravened by a private agreement."). You have cited to a 2019 decision from Judge Jim Crockett of the Eighth Judicial District Court in Clark County that held the limitations of NRS 7.095 can be waived by the client based on a knowing and voluntary consent. However, that matter settled before the Nevada Supreme Court could review the decision and we do not find it to be persuasive.

In addition, a client's consent to a particular fee cannot abrogate the unreasonableness of that fee. See *In re Sinnott*, 845 A.2d 373 (Vt. 2004).

Your contract for, and attempt to collect, a fee in the medical malpractice matter was in excess of the statutorily provided amount, and therefore, was unreasonable.

Standard 7.2 of the ABA Standards for Imposing Lawyer Sanctions provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." In this instance, you knew that NRS 7.095 limited the amount of fees you could earn and you specifically attempted to contract around the limitation. Your client would have been monetarily injured if you had collected the unreasonable fee. Thus, the appropriate baseline sanction for your violation of RPC 1.5 (Fees) is suspension.

The Panel takes into consideration your absence of related prior discipline, your cooperative attitude toward the disciplinary proceedings, the fact that you voluntarily paid the client the full amount due to him prior to any opening of a discipline investigation, and your expressed remorse. Based on the mitigating factors, the Panel finds that it is appropriate to deviate downward from the baseline sanction of a suspension and issue a Letter of Reprimand.

## REPRIMAND

Based upon the foregoing, you are hereby REPRIMANDED for your conduct related to representation of the foregoing client, which conduct violated RPC 1.5 (Fees) because you contracted for, and attempted to collect, a contingency fee in excess of the amount allowed by statute.

Finally, in accordance with Nevada Supreme Court Rule 120 you are assessed costs in the amount of $1,500 which is due on the 30th day after issue of this letter.

---

> **In Re: ANTHONY M. PAGLIA**
> **Bar No.: 11234**
> **Case No.: OBC20-0046**
> **Dated: 11/03/2020**

## LETTER OF REPRIMAND

To Anthony M. Paglia:

Attorney Edward Achrem ("Achrem") and you agreed to act as co-counsel on three (3) personal injury cases. The agreement was to share the workload and costs in exchange for sharing the attorney's fees.

In or about September 2019, the relationship with Achrem began to deteriorate and the agreement was terminated. Most of the clients in the personal injury cases chose to keep Achrem as their legal counsel.

On January 3, 2020, you sent a text to Achrem's paralegal, who had applied to Boyd Law School at the University of Nevada, Las Vegas ("Boyd"). You attended Boyd for law school. Your text told her that you were going to send a letter to Boyd's Dean of Admissions requesting that she never be accepted.

The text read as follows:

> I've written or supported two unlv law students in their successful efforts to get into law school.
>
> For you, I am drafting a letter that you never be accepted because you are helping Ed steal three cases from me.
>
> Please make this right with Ed by having him pay my fair 50-50 share per our original agreement. Don't be unethical and immoral. I will have to share what is happening to me and my family with UNLV admissions.
>
> My office will begin drafting the letter today. We will 'cc' you. Money I would be giving to my 6 month, 2 year old and five year old must now be given to an attorney to defend myself against greedy ed ache in my neck. Don't let Ed use you and tarnish your name here in my hometown. Are you getting kick backs for your stealing efforts?
>
> I'm having another UNLV law alum draft the letter for me today. I'll probably send the letter once a month until our three cases are settled just as a friendly reminder of you and Ed's evil stealing ways. I will cite the precious case where Ed failed to pay his lien or fair share.

The threatened letter to Boyd regarding the paralegal was drafted but never sent. However, you committed a potentially criminal act when your text included a threat to re-send the letter every month until the underlying civil cases were settled.

Accordingly, your text appears to be an attempt to obtain money from Achrem through acts of harassment, blackmail or extortion, not an expression of your opinion about a law school applicant to Boyd officials. However, Respondent's letter was never sent and, therefore, it did not impact her application to law school.

ABA Standard 5.13 states that "[r]eprimand is generally appropriate when a lawyer knowingly engages in conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

Accordingly, you are hereby Reprimanded for violating Rule of Professional Conduct 8.4(c) (Misconduct: Engaging

in conduct involving dishonesty, fraud, deceit or misrepresentation).

---

ENDNOTES:

1. The disbarment order also requires that Qadri pay $143,208.70 in restitution to his clients.
2. All but 1 of the 40 loan modification cases were for properties located outside of California or Nevada, the two states where Qadri is licensed.
3. California amended and renumbered its rules effective November 1, 2018. The Rules listed above are those that were in effect when Qadri was disciplined. Qadri's California rule violations are equivalent to RPC 1.5(a) (fees); RPC 1.16 (declining or terminating representation), RPC 5.5(a)(1) (unauthorized practice of law), and SCR 115 (notice of change of license status; winding down of practice). Qadri also violated California Business and Professions Code (BPC) § 6106.3 (accepting advance fees for loan modification services), for which there is no equivalent Nevada rule.
4. Qadri is also suspended for non-payment of license fees.
5. Despite the default, Scalia participated in the disciplinary proceedings and submitted evidence toward mitigation.
6. Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this matter. We remind the State Bar that hearing panel decisions should be served on the attorney under SCR 105(3)(a) and pursuant to SCR 109(1). As such, the best practice would be for the State Bar to serve the hearing panel's decision on the attorney separate from service of the record of bar proceedings filed in this court. Further, we remind the State Bar that certificates of service must accompany any document filed with this court. NRAP 25(d).
7. To the extent the parties' additional arguments are not addressed herein, we conclude they do not warrant a different result.
8. After accepting Iarussi's guilty plea in the criminal case, the district court stayed adjudication and placed Iarussi on probation for three years subject to a diversion program.
9. Because the conduct addressed in the petition for temporary suspension in Docket No. 79030 was subsequently addressed in Docket No. 81338 in reaching the conditional guilty plea agreement, and by the panel in recommending approval of the agreement, we deny as moot the petition for temporary suspension in Docket No. 79030.
10. The conditional guilty plea agreement included a condition that Iarussi must pay the costs of a previous disciplinary matter before applying for reinstatement, but as we explained in *Shoen v. State Bar of Nevada*, 136 Nev., Adv. Op. 30, 464 P.3d 402, 405 (2020), a 2018 amendment to SCR 116(2) renders such ad hoc reinstatement-based conditions unnecessary. The condition is not included in the panel's written recommendation to approve the agreement.

# TIP FROM THE BAR COUNSEL

## Diversity and Inclusion: Strengthening the Legal Profession

The Meeting of Waters is the confluence of two rivers, the Rio Negro and the Solimoes River, in the Brazilian Amazon. The two rivers' waters run side by side, one black and one cocoa in color, for six kilometers (3.7 miles) without mixing. Scientists credit this phenomenon to the differences in temperature, speed and sediment.

Sadly, like the Meeting of Waters, the legal profession has been slow to merge with new people of diverse backgrounds. The legal profession remains one of the least diverse of any profession.

American Bar Association National Surveys found that women in the legal profession rose only slightly from 30 percent to 35 percent, respectively, from 2007 to 2017. In those same surveys, both African Americans and Hispanic or Latino numbers, rose only from 4 percent to 5 percent each from 2007 to 2017. U.S. Census Bureau data indicates that African Americans and Hispanic or Latino individuals made up 13.3 percent and 17.8 percent of the total U.S. population, respectively, in 2016. Asian and Native Americans have even more disparate numbers.

What can we do? Studies show that diversity is good for business. Hiring and promotion are great ideas. But in the courtroom and across the table, we can be more professional and welcoming. In fact, anything less could be misconduct.

Take the case of *Florida Bar v. Martocci*, 791 So. 2d 1074 (2001). The Florida Supreme Court affirmed a public reprimand and two years of probation for a lawyer who told opposing counsel to "go back to Puerto Rico." The lawyer argued for a private reprimand, but the court reiterated an earlier holding:

[W]e find the conduct of the lawyers involved in the incident giving rise to these proceedings to be patently unprofessional. … We should be and are embarrassed and ashamed for all bar members that such childish and demeaning conduct takes place in the justice system. It is our hope that by publishing this opinion and thereby making public the offending and demeaning exchanges between these particular attorneys, that the entire bar will benefit and realize an attorney's obligation to adhere to the highest professional standards of conduct …

Interestingly, the court sanctioned the attorney under Rules of Professional Conduct (RPC) 8.4(d), conduct that is prejudicial to the administration of justice. Most states, like Nevada, have not adopted RPC 8.4(g), which explicitly prohibits discriminatory conduct. So, although Nevada does not have an explicit discrimination rule, we all must avoid discrimination under RPC 8.4(d). Better yet, we should actively promote diversity and inclusion.