JAMES J. PISANELLI (Nevada Bar No. 4027)
JJP@pisanellibice.com
DEBRA L. SPINELLI (Nevada Bar No. 9695)
DLS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Tel: (702) 214-2100

JOHN M. BOWLER (*Pro Hac Vice Forthcoming*)
john.bowler@troutman.com
LINDSAY MITCHELL HENNER (*Pro Hac Vice Forthcoming*)
lindsay.henner@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Ste. 3000
Atlanta, GA 30308
Telephone: (404) 885-3190/Facsimile: (404) 962-6513
*Attorneys for Defendants Don C. Keenan;*
*Keenan & Associates, P.A.; Keenan's Kids Foundation, Inc.,*
*David J. Hoey, and William Entrekin*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC DBA CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN CLAGGETT, AN INDIVIDUAL,<br><br>                    Plaintiffs,<br><br>vs.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHELTER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>                    Defendants. | CASE NO. 2:21-cv-02237-GMN-DJA<br><br><br>**DEFENDANTS DON C. KEENAN, KEENAN & ASSOCIATES, P.A., KEENAN'S KIDS FOUNDATION, INC., DAVID J. HOEY, AND WILLIAM ENTREKIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................................2

III.  LEGAL STANDARD.................................................................................................................5

     a.    Anti-SLAPP Motions to Dismiss .......................................................................5

     b.    Failure to State a Claim.......................................................................................6

     c.    Lack of Personal Jurisdiction ..............................................................................6

IV.   ARGUMENT .............................................................................................................................7

     a.    Claggett's Claims are Barred Under the Nevada Anti-SLAPP Statute ................7

          i.    The KKF Defendants' accused communications are good faith
              communications in furtherance of the right to petition............................8

          ii.   Claggett's claims have no probability of success as the April 27
              Email is protected by litigation privilege....................................................9

     b.    Claggett's Claims Should be Dismissed for Failure to State a Claim ................10

          i.    Claggett fails to properly state a claim for Defamation, Defamation
              Per Se, or Civil Conspiracy to Defame against the KKF Defendants. ....11

          ii.   Claggett fails to properly state a claim for Intentional Interference or
              Conspiracy to Interfere against the KKF Defendants. ............................13

          iii.  Piercing the Corporate Veil is Not a Separate Cause of Action .............14

     c.    Claggett's Claims are Barred for Failure to Plead Them as Compulsory
         Counterclaims in the Georgia Action .................................................................14

     d.    Claggett's Claims Should be Dismissed for Lack of Personal
         Jurisdiction .........................................................................................................17

          i.    There is no general jurisdiction over the KKF Defendants ....................17

          ii.   There is no specific jurisdiction over the KKF Defendants....................18

              1.    Defendants Did Not Purposefully Direct Activities to Nevada ...19

              2.    Jurisdiction in Nevada Would Be Unreasonable ........................21

     e.    In the Alternative, Venue Should be Transferred to the Northern District of
         Georgia, Atlanta Division ..................................................................................22

          i.    The Northern District of Georgia is an adequate, alternative forum
              that is available to the Plaintiff. ................................................................23

          ii.   The balance of private and public interest factors weigh in the
              favor of transferring the case to the Northern District of Georgia..........23

          iii.  The Court may still transfer the case pursuant to 28 U.S.C. § 1406........24

V.    CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Sanson*,
   136 Nev. 83, 458 P.3d 1062 (2020) ................................................................. 8

*Ademiluyi v. Phillips*,
   2:14-cv-005-7, 2015 WL 5146898 (D. Nev. Sept. 2, 2015) ...............................10

*Agnir v. Gryphon Solutions, LLC*,
   Case No.: 12-CV-04470-LHK, 2013 U.S. Dist. LEXIS 113575
   (N.D. Cal. Aug. 8, 2013) ...................................................................................16

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ............................................................24

*Allstate Ins. Co. v. Belsky*,
   Case No. 2:15-cv-02265-MMD-CWH, 2017 U.S. Dist. LEXIS 224167
   (D. Nev. Mar. 31, 2017)...............................................................................5, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................6

*Banerjee v. Cont'l Inc., Inc.*,
   Case No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 17387
   (D. Nev. Feb. 1, 2018) .......................................................................................10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................6

*Bellagio, LLC v. Bellagio Car Wash & Express Lube*,
   Case No. 2:14-cv-01362-JCM-PAL, 2015 WL 4076493 (D. Nev. July 1,2015) ...............19

*Brennan v. Cadwell Sanford Deibert & Garry LLP & Cup O'Dirt LLC*,
   Case No.: 2:20-cv-00799-JAD-VCF, 2021 U.S. Dist. LEXIS 20221
   (D. Nev. Feb. 2, 2021) .......................................................................................21

*Bristol-Meyers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017).................................................................................18, 23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................7, 17, 19

*Caesars World, Inc. v. Milanian*,
   247 F. Supp. 2d 1171 (D. Nev. 2003)................................................................16

*Carter v. Willowrun Condominium Ass'n*,
   179 Ga. App. 257 (1986) ...................................................................................11

ii

*Cashman v. Colo. Cas. Ins. Atty. Lien Co.*,
   2:10-cv-01852-RLH-GWF, 2011 U.S. Dist. LEXIS 58517 (D. Nev. June 1, 2011)......13, 14

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc. (VESI)*,
   125 Nev. 374, 213 P.3d 496 (2009) ....................................................................10, 11

*Clover Gifts v. Airs Fragrance Prods.*,
   2:05-CV-1084-RCJ-(LRL), 2006 U.S. Dist. LEXIS 114912 (D. Nev. Mar. 2, 2006) .........20

*Cohn v. Ritz Transp., Inc.*,
   No. 2:11-cv-1832-JCM-RJJ, 2012 U.S. Dist. LEXIS 22912, 2012 WL 600819
   (D. Nev. Feb. 23, 2012) ....................................................................................15

*Coke v. Sassone*,
   135 Nev. 8, 432 P.3d 746 (2019) ........................................................................8

*Collins v. Union Fed. Savings & Loan*,
   99 Nev. 284, 662 P.2d 610 (1983) ......................................................................12

*Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*,
   114 Nev. 1304, 971 P.2d 1251 (1998) .................................................................12

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ......................................................................17, 21

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ...............................................................................23

*Dring v. Sullivan*,
   423 F. Supp. 2d 540 (D. Md. 2006) ......................................................................20

*Dye v. Autumn Breeze Holding*,
   NO. 1:05-CV-0450-BBM, 2005 U.S. Dist. LEXIS 59525 (N.D. Ga. Aug. 11, 2005) .........16

*Executive Mgmt. v. Ticor Title Ins. Co.*,
   114 Nev. 823, 963 P.2d 465 (1998) ...............................................................14, 15

*Fink v. Oshins*,
   118 Nev. 428, 49 P.3d 640 (2002) ...................................................................9, 10

*Gonzalez v. US Human Rights Network*,
   512 F. Supp. 3d 944 (D. Ariz. Jan .11, 2021) ........................................................19

*Great W. Land & Cattle Corp. v. District Court*,
   86 Nev. 282 (1970) ..........................................................................................16

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408 (1984) .........................................................................................17

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ...............................................................................6

*In re Icenhower*,
    755 F.3d 1130 (9th Cir. 2014) ....................................................................................1

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................................7

*J.J. Indus., LLC v. Bennett*,
    119 Nev. 269, 71 P.3d 1264 (2003) ........................................................................13

*Jacobs v. Adelson*,
    130 Nev. 408, 325 P.3d 1282 ( 2014) ......................................................................10

*John v. Douglas Cty. Sch. Dist.*,
    125 Nev. 746, 219 P.3d 1276 (2009), *superseded by statute on other ground*.................5, 6

*Keenan's Kids Found., Inc. v. Sean Claggett*,
    Case No. 1:20-cv-01702-WMR (N.D. Ga.) . [*See* Complaint, GA Doc. 1.] ............... *passim*

*Lauck v. Cty. of Campbell*,
    No. CV-21-08036-PCT-MTL, 2021 U.S. Dist. LEXIS 124670 (D. Ariz. July 2, 2021)......21

*Lockman Found v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) ....................................................................................23

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ........................................................................22, 23, 24

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ............................................................................22, 23

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ...................................................................................6

*Mao v. Sanum Invs, Ltd*,
    No. 2:14-CV-00721-RCJPAL, 2014 WL 5292982 (D. Nev. Oct. 15, 2014) ......................24

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ............................................................................17, 18

*Mattel, Inc. v. MGA Entm't, Inc.*,
    705 F.3d 1108 (9th Cir. 2013) .................................................................................15

*MedCapGroup, LLC v. Mesa Pharm., Inc.*,
    2:14-cv-00674-RCJ-NJK, 2014 U.S. Dist. LEXIS 103907 (D. Nev. July 30, 2014) ..........18

*Metabolic Res., Inc. v. Ferrell*,
    693 F.3d 795 (9th Cir. 2012) .....................................................................................5

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) .................................................................................20

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
   No. CV-10-1068-PHX-GMS, 2011 U.S. Dist. LEXIS 12150 (D. Ariz. Jan. 31, 2011) .......19

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
   52 F.3d 267 (9th Cir. 1995) ..................................................................................................19

*Panavision Int'l L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ................................................................................................7

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ..............................................................................................17

*Rosen Materials of Nev., LLC v. MDA LLC*,
   No. 2:17-CV-01687, 2018 WL 3232832 (D. Nev. Feb. 7, 2018) .........................................24

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ..............................................................................................................17

*Schwarzenegger v. Fred Martin Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................................7, 18, 19

*Scott v. Gill*,
   907 F.2d 155 (9th Cir. 1990) ................................................................................................24

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ................................................................................................7

*Siegel v. Warner Bros. Entm't Inc.*,
   581 F. Supp. 2d 1067 (C. D. Cal. 2008) ..............................................................................14

*Smith v. Craig*,
   Case No.: 2:19-cv-00824-GMN-EJY, 2020 U.S. Dist. LEXIS 38774
   (D. Nev. Mar. 4, 2020)..........................................................................................................12

*So. Constr. Co. v. United States ex rel. Pickard*,
   371 U.S. 57 (1962) ................................................................................................................15

*Tensor Law P.C. v. Rubin*,
   2:18-cv-01490-SVW-SK, 2019 U.S. Dist. LEXIS 131942 (C.D. Cal. Apr. 10, 2019) ........14

*Vail v. Pioneer Mut. Life Ins. Co.*,
   2:10-CV-233 JCM, 2010 U.S. Dist. LEXIS 107994 (D. Nev. Oct. 6, 2010) .......................11

*Verizon Delaware, Inc. v. Covad Commc'n Co.*,
   377 F.3d 1081 (9th Cir.2004) ..................................................................................................5

*Vested Hous. Grp., LLC v. Principal Real Estate Inv'rs, LLC*,
   648 F. App'x 646 (9th Cir. 2016) ....................................................................................12, 14

*Wang v. Nev. Sys. of Higher Educ.*,
   Case No. 3:18-cv-00075-MMD-CBC, 2018 U.S. Dist. LEXIS 189632
   (D. Nev. Nov. 6, 2018) ..........................................................................................................11

*Waterfall Homeowners Ass'n v. Viega. Inc.*,
  283 F.R.D. 571 (D. Nev. 2012)..................................................................................14

*Williams v. Wiggins*,
  No. CV-19-03482-PHX-SPL, 2019 U.S. Dist. LEXIS 173380 (D. Ariz. Oct. 7, 2019) ......20

*Winer v. Strickland*,
  2:13-cv-0231-JAD-CWH, 2017 U.S. Dist. LEXIS 184960 (D. Nev. Nov. 7, 2017) ...........14

*Wood v. Safeway, Inc.*,
  121 Nev. 724, 121 P.3d 1026 (2005) ...........................................................................6

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..................................................................................................7

*Ziglar v. Abbasi*,
  137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017) ..................................................................12

**Statutes**

28 U.S.C. § 1404 .................................................................................................22, 2324

NRS 14.065 ................................................................................................................7

NRS 41.637 ............................................................................................................8, 10

NRS 41.650 ................................................................................................................5

NRS 41.660 ................................................................................................................5

NRS 41.670 ................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b) ....................................................................................................6

Fed. R. Civ. P. 13(a)...................................................................................................15

Fed. R. Evid. 201 ........................................................................................................1

1    Defendants Don C. Keenan ("Keenan"), D.C. Keenan & Associates ("Keenan Law

2  Firm"), Keenan's Kids Foundation, Inc. ("KKF"), David J. Hoey ("Hoey") and William

3  Entrekin ("Entrekin"), collectively referred to hereafter as the "KKF Defendants," respectfully

4  move the Court to dismiss all counts of the Complaint filed by Plaintiffs Sean K. Claggett &

5  Associates, LLC and Sean K. Claggett.

6  **I.    INTRODUCTION**

7    This case lodges a belated and improper grievance against KKF for pleading that

8  Plaintiff Sean Claggett violated KKF's rights in a prior suit in the Northern District of Georgia,

9  *Keenan's Kids Found., Inc. v. Sean Claggett*, Case No. 1:20-cv-01702-WMR (N.D. Ga.) (the

10 "Georgia Action"). [*See* Complaint, GA Doc. 1.].[1] Thinly veiled behind vague references to

11 "false statements" and "false pretenses," Plaintiffs allege only that the very facts that formed the

12 basis of KKF's trade secret misappropriation claim in the Georgia Action now constitute

13 (i) defamation and (ii) intentional interference to the extent the contentions in the Georgia

14 Action allegedly caused a client to discharge Plaintiffs as legal representation. For several

15 reasons, Plaintiffs' Complaint should be dismissed in its entirety.

16    First, allowing tort claims based on allegations made in a lawsuit would inappropriately

17 chill the right to file suit in violation of anti-SLAAP laws. Plaintiffs assert nothing more than

18 that the KKF Defendants shared with other interested persons the basis for the Georgia Action.

19 Regardless, the Complaint further fails to plead necessary elements of defamation and

20 intentional interference with a contract. For example, the Complaint does not even assert that

21 any particular allegedly defamatory statement is in fact false. Nor does the Complaint allege that

22 any conduct by the KKF Defendants caused the breach of a contract. Further still, the claims

23 here arise from the same facts forming the basis of the Georgia Action pleadings and therefore

24 must have been brought as compulsory counterclaims in the Georgia Action. They were not and

25 are now waived under federal and state law. This action is an end run around waiver.

26 ───────────────

27    [1] For clarity, references to "GA Doc." in the citations that follow refer to the docket number of items filed in the Georgia Action, and "NV Doc." refers to filings in this case. The Court may take judicial notice of the Georgia Action docket as "court filings and other matters of public record." *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014); *see also*

28 Fed. R. Evid. 201.

1

Second, there is no basis for this Court to exercise personal jurisdiction over the KKF Defendants in Nevada. None of the KKF Defendants reside in or have substantial contacts with Nevada. The only relevance of Nevada to the dispute is the fact that, by happenstance, Plaintiffs are located in Nevada. This is insufficient to hale the KKF Defendants into Court here. Instead, the focus of the dispute is the KKF Defendants' conduct in Georgia and the allegations in the Georgia Action. To the extent the Court finds any basis for personal jurisdiction, in the alternative the Court should transfer this case to the Northern District of Georgia Court that KKF and Sean Claggett previously appeared before directly regarding the alleged defamatory statements. That Court is best suited for, and most interested in, resolving the instant dispute.

## II.   FACTUAL BACKGROUND

On April 21, 2020, Defendant KKF filed a complaint against Plaintiff Sean K. Claggett in the Northern District of Georgia alleging that Mr. Claggett misappropriated KKF's trade secret voir dire techniques by using those techniques in Mr. Claggett's own voir dire seminars without authorization. [GA Doc. 1.] On May 18, 2020, Mr. Claggett filed a motion to dismiss the Georgia Action. [GA Doc. 9.] KKF thereafter filed a First Amended Complaint on June 10, 2020, in lieu of a response to Mr. Claggett's motion, asserting the same trade secret misappropriation claim along with supplemental factual detail. [GA Doc. 11.] On June 23, 2020, Mr. Claggett filed a motion to dismiss the First Amended Complaint [GA Doc. 13], which the Northern District of Georgia Court denied on August 8, 2020 [GA Doc. 22].

Mr. Claggett answered the First Amended Complaint in the Georgia Action on August 21, 2020, denying liability and asserting defenses. [GA Doc. 23] Mr. Claggett did not assert any counterclaims against KKF. [*Id*.] Five months later, on February 3, 2021, KKF filed a motion for voluntary dismissal of the Georgia Action without prejudice. [GA Doc. 37.] In support of its motion to dismiss, KKF contended that after filing the lawsuit, Mr. Claggett had seemingly ceased incorporating objectionable content violative of KKF's trade secrets in his seminars, ceased using KKF's name and reputation in association with Mr. Claggett's teachings, was not at the time offering objectionable content on his own or through third party. KKF was therefore satisfied that the lawsuit had achieved its intended effect. [*Id.*]

2

1      Mr. Claggett contested the motion for voluntary dismissal on the basis that he did not

2  misappropriate any trade secrets of KKF, had not changed his teaching techniques during the

3  lawsuit, and would not do so in the future. [GA Doc. 38 at 2, n.1.] The Northern District of

4  Georgia Court held a hearing on KKF's motion on April 27, 2021. [GA Doc. 43.] A ruling issued

5  from the bench granting Mr. Claggett ten days to amend his Answer in the Georgia Action to

6  assert new counterclaims in order to reach a merits judgment, or else KKF's motion to dismiss

7  would be granted. [*Id.*] Mr. Claggett did not file any counterclaims, and the Georgia Action was

8  dismissed without prejudice on May 28, 2021. [*See* GA Docs. 44, 45.]

9      On November 3, 2021, Mr. Claggett and his law firm Sean K. Claggett & Associates

10  (collectively "Claggett") filed the instant suit in Nevada state court (the "Nevada Action").

11  [NV Doc. 1, Attach. 1, Ex. A & Compl. (hereafter, "Compl.")] Defendants noticed removal of

12  the case to this Court on December 22, 2021. [NV Doc. Dkt. 1.] Specifically, the Complaint in

13  the Nevada Action alleges as follows. Mr. Claggett was an instructor for KKF's Trial College

14  and attended destination trainings on KKF course material. [Compl. ¶¶ 29, 31.] Mr. Claggett's

15  relationship with KKF ended in 2018, and he thereafter began teaching trial courses for third

16  party Trojan Horse Method. [*Id.* ¶¶ 34, 41-42, 44.] One such course focused specifically on voir

17  dire methods. [*Id.* ¶ 46.] KKF then filed a lawsuit against Mr. Claggett alleging misappropriation

18  of those same voir dire methods from KKF courses. [*Id.* ¶ 48.] On April 27, 2020, Defendant

19  Entrekin sent an email (the "April 27 Email") – allegedly at Defendant Keenan's direction –

20  stating that:

21      (i)      Claggett hosted seminars revealing protected information that he received from

22              Defendant Keenan Law Firm and while an instructor for KKF's Trial College;

23      (ii)     a lawsuit had been filed in Georgia as a result;

24      (iii)    Claggett's misconduct continued after the Georgia Action was filed;

25      (iv)     Claggett's teachings were incorrect; and

26      (v)      Claggett failed to protect the teachings from harmful dissemination.

27  [Compl. ¶ 51.] A few weeks later, on May 15, 2020, Claggett alleges a client terminated their

28  attorney-client relationship with him due to KKF's allegations. [*Id.* at ¶ 65.]

The substance of the Nevada Action arises from the same facts forming the basis of the Georgia Action. In KKF's First Amended Complaint in the Georgia Action, KKF *also* alleges:

(i) Claggett was an instructor for KKF's Trial College and attended destination trainings on KKF course material [GA Doc. 11 ¶¶ 113, 14, 17, 61, 65];

(ii) Claggett's relationship with KKF ended in 2018, and he thereafter began teaching trial courses for third party Trojan Horse Method [*Id.* ¶¶ 15-16];

(iii) One such course focused specifically on voir dire methods [*Id.*];

(iv) Claggett's seminars revealed protected information he received from Keenan and while an instructor for KKF's Trial College [*Id.* ¶¶ 15, 49, 67, 75-80];

(v) Claggett failed to properly protect the substance of the teachings from harmful dissemination [*Id.* ¶¶ 75-81, 99-101, 122-23];

(vi) Claggett's misconduct occurred after repeated notice of ongoing confidentiality obligations [*Id.* ¶¶ 54, 68]; and

(vii) the lawsuit was filed in Georgia as a result of Claggett's misconduct [*Id.* at ¶ 49]. To the extent KKF's Complaint did not expressly allege that Claggett was KKF's methods improperly, Claggett himself pleads that the relationship with KKF had broken down due to his failure to strictly follow KKF's teachings. [Compl. ¶¶ 34, 48]. KKF did not include Defendant Entrekin's April 27 Email in its Georgia Action pleadings as Claggett has done in the Nevada Action. But Defendant Entrekin's email does not contain new facts – it conveys the same facts that KKF pleaded in the Georgia Action. Likewise, Claggett's allegations in the Nevada Action regarding his termination following the Georgia Action and the April 27 Email are based on the same facts KKF pleaded in the Georgia Action.

Claggett's Complaint in the Nevada Action confirms on its face that Claggett was in full possession of all of the facts alleged therein by May of 2020 [Compl. ¶ 65], months prior to the filing of his Answer in the Georgia Action on August 21, 2020. Yet, Claggett did not assert any counterclaims in the Georgia Action. Even when specifically granted a belated opportunity to assert counterclaims in the Georgia Action and continue to litigate the merit of KKF's allegations now at issue in the Nevada Action, Claggett declined. [*See* GA Docs. 43, 44.]

## III.   LEGAL STANDARD

### a.   Anti-SLAPP Motions to Dismiss.

In 1993, Nevada enacted anti-SLAPP legislation for the express purpose of curtailing Strategic Lawsuits Against Public Policy ("SLAPP") – "'meritless suit[s] filed primarily to chill the defendant's exercise of First Amendment rights.'" *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 752, 219 P.3d 1276, 1280 (2009) (quotations omitted), *superseded by statute on other ground*; *see also Metabolic Res., Inc. v. Ferrell*, 693 F.3d 795, 800 (9th Cir. 2012) (purpose of permitting dismissal of meritless claims under the anti-SLAPP statute is to eliminate chilling the valid exercise of freedom of speech). "Nevada's anti-SLAPP statute filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions." *John*, 125 Nev. at 755, 219 P.3d at 1282. To prevent SLAPP lawsuits, the Nevada statute provides "immunity from any civil action" for "good faith communication[s]" related to certain types of speech addressing "in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.650.[2]

To assert immunity under the anti-SLAPP statute, the "person against whom the action is brought may file a special motion to dismiss . . . [within] 60 days after service of the complaint." NRS 41.660.[3] "The movant has the burden of showing, by a preponderance of evidence, that the claim is the type covered by the statute, and the burden then shifts to the party bringing the claim to show prima facie evidence demonstrating a probability of prevailing." *Allstate Ins. Co. v. Belsky*, Case No. 2:15-cv-00265-MMD-CWH, 2017 U.S. Dist. LEXIS 224167, at *7-8 (D. Nev. Mar. 31, 2017). After meeting the burden, Claggett can avoid dismissal only by showing with evidence a probability of prevailing on his claims. *John*, 125 Nev. at 754, 219 P.3d at 1282.[4]

[2] Absent this, "unscrupulous lawyers and litigants will be encouraged to use meritless lawsuits to discourage the exercise of first amendment rights." *Metabolic Res.*, 693 F.3d at 800.

[3] The 9th Circuit has explicitly held that the federal court may apply anti-SLAPP statutes. *See Verizon Delaware, Inc. v. Covad Commc'n Co.*, 377 F.3d 1081, 1091 (9th Cir.2004) ("[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims.").

[4] Contemporaneously with their anti-SLAPP motion, the KKF Defendants have submitted herein other grounds upon which the Court can dismiss Claggett's claims. However,

1   If Claggett is unable to meet his burden, the Court "must dismiss the action and that

2   dismissal operates as an adjudication upon the merits" *Id.* Under Nevada law, Claggett cannot

3   overcome the special motion to dismiss "on the gossamer threads of whimsy, speculation and

4   conjecture." *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1030 (2005) (internal

5   quotations omitted). Instead, he must provide more than general allegations and conclusions; it

6   must submit specific factual evidence "demonstrating the existence of a genuine factual issue."

7   *Id*. Upon dismissal, the statute provides for an award of reasonable costs and attorney's fees, as

8   well as discretionary punitive damages and a statutory award up to $10,000 to the moving

9   parties. NRS 41.670.

10   **b.** **Failure to State a Claim.**

11   Under Fed. R. Civ. P. 12(b)(6), Claggett's Complaint must be dismissed if his allegations

12   fail to set forth a set of facts which, if true, would entitle him to his requested relief. *Bell Atlantic*

13   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

14   (holding that a claim must be facially plausible in order to survive a motion to dismiss). The

15   Complaint must raise the right to relief beyond the speculative level, and Claggett must provide

16   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

17   will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

18   On a motion to dismiss, the Court accepts as true Claggett's well-pleaded factual allegations and

19   construes all factual inferences in the light most favorable to Claggett. *See Manzarek v. St. Paul*

20   *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court is not required

21   to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

22   **c.** **Lack of Personal Jurisdiction.**

23   Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move

24   to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In response to such a motion,

25   Claggett bears the burden of establishing this Court's jurisdiction over Defendants. *See Sher v.*

26   *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). When no federal statute governs personal

27

28   the Court "can proceed directly to [this] anti-SLAPP motion without any interferences from a
motion to dismiss." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

jurisdiction, the district court applies the law of the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with … the Constitution of the United States." NRS 14.065. Thus, the due process clause of the Fourteenth Amendment is the relevant constraint on Nevada's authority to bind a nonresident defendant to a judgment of its courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A court determines sufficient minimum contacts either through specific jurisdiction, where interaction with the forum relating to the cause of action gives rise to the claims, or general jurisdiction, where contacts with the forum are systematic and continuous. *See, e.g., Int'l Shoe Co.*, 326 U.S. at 316.

For either specific or general jurisdiction, "the constitutional touchstone remains whether the [the KKF Defendants] purposefully established 'minimum contacts' in the forum [s]tate." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotation omitted). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). If there are minimum contacts, a court must still determine that exercising personal jurisdiction would not offend the "traditional notions of fair play and justice." *Int'l Shoe Co.*, 326 U.S. at 316.

## IV.   ARGUMENT

### a.   Claggett's Claims are Barred Under the Nevada Anti-SLAPP Statute.

The KKF Defendants ask this Court to dismiss Claggett's claims for defamation, intentional interference with contractual relations, civil conspiracy, and alter ego. The foundation of all allegations in Claggett's Complaint in the Nevada Action is premised on the allegations KKF made in the Georgia Action. Those allegations are immune from civil liability

under the Nevada anti-SLAPP statute because (i) the KKF Defendants have an absolute right to petition a judicial body, such as the Northern District of Georgia, on allegations of trade secret violations, and (ii) Claggett cannot show any probability of success on his claims because the KKF Defendants' communications related to judicial proceedings and are privileged.

### i. The KKF Defendants' accused communications are good faith communications in furtherance of the right to petition.

The Nevada anti-SLAPP statute defines a good faith communication in furtherance of the right to petition as any one or more of a list of acts that in relevant part include the following:

3. **a written or oral statement made in direct connection with an issue under consideration by a** legislative, executive or **judicial body**, or any other official proceeding authorized by law, which is truthful or is made without knowledge of its falsehood; or

4. a communication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood.

NRS 41.637 (emphasis added). The filing of the Georgia Action, the allegations therein, and communications conveying the allegations therein, are statements "made in direct connection with an issue under consideration by a ... judicial body."[5] As set forth below, Claggett's claims in the instant case arise solely from statements made in connection with issues that were at the time under consideration by the Northern District of Georgia in the Georgia Action.

Claggett's Counts I and II for Defamation and Defamation Per Se offer vague and conclusory allegations that the KKF Defendants made or caused to be made "false and defamatory statements concerning [Claggett]" in the April 27 Email, although Claggett does not

---

[5] Alternatively, the April 27 Email is a good-faith communication in furtherance of the right to free speech regarding a matter of public concern, which includes any communication (1) "made in direct connection with an issue of public interest," (2) "in a place open to the public or in a public forum," and (3) "which is truthful or is made without knowledge of its falsehood." NRS 41.637(4). What falls within the public interest is "broadly" defined. *Coke v. Sassone*, 135 Nev. 8, 14, 432 P.3d 746, 751 (2019). The public has an interest in attorney's conduct, like Claggett, beyond mere curiosity. *Abrams v. Sanson*, 136 Nev. 83, 87-88, 458 P.3d 1062, 1066-67 (2020) (collecting cases). Claggett alleges the April 27 Email was sent broadly to a listserv, which is a public forum. *Id.* Further, because "there is no such thing as a false idea," opinion statements like those regarding Claggett in the April 27 Email "are statements made without knowledge of their falsehood under Nevada's anti-SLAPP statutes." *Id.* at 809, 458 P.3d at 1068.

8

plead that any particular statement was in fact false or why. [Compl.¶¶ 72, 99.] Count IV for Intentional Interference is premised on Claggett's firing "upon false pretenses" that are also not specified. [*Id.* ¶ 156.] Read in even a light *beyond* that most favorable to Claggett, the only alleged "statements concerning" Claggett that could arguably contain "false pretenses" are (i) in the April 27 Email by Defendant Entrekin recounting allegations in the Georgia Action [*id.* ¶ 52], and (ii) *potentially* in the course of other non-specified communications about "what Mr. Claggett had done" to KKF [*id.* ¶ 65]; another reference to the Georgia Action allegations.[6]

There are no Counts in Claggett's Complaint that depend on facts unique to the Nevada Action, only claims taking issue with allegations in the Georgia Action and the KKF Defendants' recounting of the allegations after the Georgia Action was filed but before Claggett had filed his Answer. As such, the KKF Defendants' complained-of behavior implicates the Nevada anti-SLAPP statute as good faith communications in connection with an issue under consideration by a judicial body. *Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS 224167 at * 10.

### ii.    Claggett's claims have no probability of success as the April 27 Email is protected by litigation privilege.

The Nevada Supreme Court has recognized "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged" so long as they are "in some way pertinent to the subject controversy." *See*, *e.g.*, *Fink v. Oshins*, 118 Nev. 428, 342-33, 49 P.3d 640, 643 (2002) (quoting *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983); *see also Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc. (VESI)*, 125 Nev. 374, 382, 213 P.3d 496, 502 (2009); *Hampe v. Foote*, 47 P.3d 438, 440 (2002) ("An absolute privilege bars any civil litigation based on the underlying, communication."). Whether this litigation privilege applies to any given case presents a question of law. *Fink*, 118 Nev. at 433, 49 P.3d at 643-44. Litigation privilege is applied liberally, "resolving any doubt in favor of its relevancy or pertinency" and is broad and

---

[6] Further tying Claggett's Complaint to the Georgia Action, Claggett alleges each KKF Defendant acted in the scope of their employment for Defendant KKF (plaintiff in the Georgia Action) when they purportedly defamed and interfered with Claggett. [Compl.¶¶ 75-77, 159.]

absolute, as it precludes liability even if knowingly false statements are published with ill will towards the opposing party.[7] *Id*. at 434, 49 P.3d at 643-44. Here, the litigation privilege applies to both Claggett's defamation and intentional interference claims.

Litigation privilege applies to communications made by either an attorney or a non-attorney that are related to ongoing litigation or future litigation contemplated in good faith. *VESI*, 125 Nev. at 383, 213 P. 3d at 502; *Ademiluyi v. Phillips*, 2:14-cv-005-7, 2015 WL 5146898, at *6 (D. Nev. Sept. 2, 2015); *Jacobs v. Adelson*, 130 Nev. 408, 413, 325 P.3d 1282, 1285 ( 2014) ("[T]he privilege applies to communications made by either an attorney or a nonattorney. . . ."). Claggett's defamation and interference claims focus on allegedly "false" statements and pretenses by the KKF Defendants during ongoing litigation of the Georgia Action by way of the April 27 Email and unspecified communications prior to Claggett's firing as counsel for one client. [cite] A review of the April 27 Email and Claggett's Complaint show that the only thing being referenced is the fact that the Georgia Action was filed and what was alleged in the Georgia Action Complaint. [Compl.¶¶ 51, 65.] Claggett has further failed to allege at any time that the Georgia Action Complaint was itself defamatory or a false pretense.

Claggett's defamation, defamation per se, and intentional interference claims should be dismissed under Nevada's anti-SLAPP statute, NRS 41.637(3). *See Banerjee v. Cont'l Inc., Inc.*, Case No. 2:17-cv-00466-APG-GWF, 2018 U.S. Dist. LEXIS 17387, at *7-20 (D. Nev. Feb. 1, 2018) (dismissing defamation and intentional interference claims under anti-SLAPP statute based on privilege). Because these tort claims are not viable and underly Claggett's Counts III and V for Civil Conspiracy, Counts III and V must also be dismissed. *Id*. at *18-19 ("Under Nevada [ ]law, to establish a civil conspiracy claim, a plaintiff must show the commission of an underlying tort.").

**b.**     **Claggett's Claims Should be Dismissed for Failure to State a Claim.**

Beyond privilege immunity, Claggett's claims fail to plead facts necessary to survive a

---

[7] As a matter of policy, "in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Circus Circus Hotels*, 99 Nev. at 61, 657 P.2d at 104.)

1   motion to dismiss. Each claim is addressed in turn below.

2      **i.**  **Claggett fails to properly state a claim for Defamation, Defamation**
3          **Per Se, or Civil Conspiracy to Defame against the KKF Defendants.**

4     To show defamation Claggett must prove four elements: "(1) a false and defamatory

5   statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least

6   negligence; and (4) actual or presumed damages." *VESI*, 125 Nev. at 385, 213 P.3d at 503-04.

7   If the statement "imputes a person's lack of fitness for trade, business, or profession, or tends to

8   injure the plaintiff in his or her business, it is deemed defamation per se," which means the Court

9   may presume damages. *Id.*, 213 P.3d at 503.

10     First, Claggett's defamation claim fails because it shows on its face that the April 27

11   Email was not "an unprivileged publication to a third person." The allegations in the April 27

12   Email were "already published in every sense of the word" in the Georgia Action complaints,

13   which were publicly filed. *Vail v. Pioneer Mut. Life Ins. Co.*, 2:10-CV-233 JCM (LRL), 2010

14   U.S. Dist. LEXIS 107994, at *4 (D. Nev. Oct. 6, 2010). The April 27 Email was also not

15   published to genuine "third persons" because, according to Claggett's Complaint, it went out in

16   a closed environment only to members of KKF's listservs, which are exclusively available to

17   KKF course instructors and attendees. [Compl. ¶¶ 30, 49.] *See, e.g.*, *Wang v. Nev. Sys. of Higher*

18   *Educ.*, Case No. 3:18-cv-00075-MMD-CBC, 2018 U.S. Dist. LEXIS 189632, at *11 (D. Nev.

19   Nov. 6, 2018) (agreeing that "communications between members of the same organization" are

20   not publications to third persons); *see also Carter v. Willowrun Condominium Ass'n*, 179 Ga.

21   App. 257, 258 (1986) (noting information has been found not published via communications

22   between members of corporations, unincorporated groups, and associations.").

23     Claggett further fails to plead that any particular statement in the April 27 Email is false.

24   Claggett simply copied and pasted the entire April 27 Email into his Complaint without

25   comment. Claggett does not deny that Defendant Keenan created KKF's course materials.

26   Claggett does not deny that the course information is KKF's protected and confidential property.

27   Claggett does not deny that he used KKF's course materials in his own seminars, thereby

28   improperly disseminating them without authorization. Claggett does not deny that he was

1  warned to stop his conduct. Claggett does not deny that he taught KKF's methods incorrectly.

2  Claggett does not deny that the Georgia Action was necessary to stop his misconduct. There are

3  no other substantive allegations in the April 27 Email. A vague and conclusory statement that

4  the April 27 Email is "false and defamatory" is insufficient to survive a motion to dismiss. The

5  Complaint leaves open that the April 27 Email is true and therefore cannot plausibly allege

6  defamation. *See, e.g.*, *Smith v. Craig*, Case No.: 2:19-cv-00824-GMN-EJY, 2020 U.S. Dist.

7  LEXIS 38774, at *25-26 (D. Nev. Mar. 4, 2020).

8        As to civil conspiracy, absent a valid underlying tort, Claggett's civil conspiracy claim

9  related to his defamation allegations must be dismissed. *See Vested Hous. Grp., LLC v. Principal*

10  *Real Estate Inv'rs, LLC*, 648 F. App'x 646, 649 (9th Cir. 2016). Alternatively, Claggett further

11  cannot state a claim for civil conspiracy to defame against agents of the same entity, KKF. "An

12  actionable civil conspiracy consists of a combination of two or more persons who, by some

13  concerted action, intend to accomplish an unlawful objective for the purpose of harming another,

14  and damage results from the act or acts." *Consol. Generator-Nev., Inc. v. Cummins Engine Co.,*

15  *Inc.*, 114 Nev. 1304, 971 P.2d 1251, 1256 (1998) (citations omitted). "When two agents of the

16  same legal entity make an agreement in the course of their official duties, however, as a practical

17  and legal matter their acts are attributed to their principal. And it then follows that there has not

18  been an agreement between two or more separate people." *Ziglar v. Abbasi*, 137 S. Ct. 1843,

19  1867, 198 L. Ed. 2d 290 (2017) (citations omitted).

20        The foregoing principles, as applied here, show KKF and its employees are legally

21  incapable of conspiring with themselves. *Collins v. Union Fed. Savings & Loan*, 99 Nev. 284,

22  662 P.2d 610, 622 (1983). Claggett's defamation claims plead that Defendants Keenan, Hoey,

23  and Entrekin, were all employees of KKF[8] acting in the scope of their employment with respect

24  to the complained-of defamatory conduct. [Compl.¶¶ 75-77.] Claggett goes on to plead that,

25  acting for KKF, Defendant Keenan authorized the complained-of conduct attributed to

26

27        [8] Claggett also alleges Defendants Keenan and Entrekin were employees of Defendant
Keenan Law Firm acting in the scope of their employment, and that Defendant Keenan is the

28  alter ego of Keenan Law Firm who authorized the conduct. [Compl.¶¶ 79, 80, 95.]

1    Defendants Keenan, Hoey, and Entrekin. [Compl.¶ 93.] Further confirming that none of the

2    conduct reflects a concerted action by two *different and separate entities*, Claggett pleads that

3    Defendant Keenan and Defendant KKF share a unity of interest and are not severable. [Compl.¶

4    216.] Defendants Keenan, Hoey, and Entrekin, are therefore all alleged to be agents of the same

5    principal, KKF, and cannot be found to have conspired with one another as a matter of law.

6          **ii.    Claggett fails to properly state a claim for Intentional Interference or**
           **Conspiracy to Interfere against the KKF Defendants.**
7

8          In Nevada, to state a claim for intentional interference with contractual relationships, a

9    plaintiff must allege: "(1) a valid and existing contract; (2) the defendant's knowledge of the

10   contract; (3) intentional acts intended or designed to disrupt the contractual relationship;

11   (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119

12   Nev. 269, 274, 71 P.3d 1264, 1267 (2003). The defendant's "mere knowledge of the contract is

13   insufficient to establish that the defendant intended or designed to disrupt the plaintiff's

14   contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to

15   induce the other party to breach the contract with the plaintiff." *Id.* at 276, 71 P.3d at 1268.

16         Here, the contract with which Claggett alleges the KKF Defendants interfered was for

17   provision of legal services by Claggett to one of his now former clients (the "Las Vegas Client").

18   [Compl.¶¶ 65, 154.] Because of the delicate nature of an attorney-client relationship, Claggett

19   cannot state a plausible claim for interference because he cannot show that the Las Vegas Client

20   was contractually bound to continue to retain him. "[T]he Nevada Supreme Court has long

21   recognized that a client has an unconditional right to discharge his attorney with or without

22   cause." *Cashman v. Colo. Cas. Ins. Atty. Lien Co.*, No. 2:10-cv-01852-RLH-GWF, 2011 U.S.

23   Dist. LEXIS 58517, at *5-6 (D. Nev. June 1, 2011). As such, Claggett's termination (whether

24   allegedly induced by the KKF Defendants or not) cannot constitute a "breach" disruption of

25   Claggett's contract with the Las Vegas Client. There are also no allegations of what was said,

26   or how specifically, any KKF Defendant caused Claggett's termination to plausibly plead

27

28

13

interference, and no allegations plausibly pleading damage.[9]

Based on the foregoing failures, Claggett cannot maintain his tortious interference claim. *See, e.g.*, *Tensor Law P.C. v. Rubin*, 2:18-cv-01490-SVW-SK, 2019 U.S. Dist. LEXIS 131942, at *27-31 (C.D. Cal. Apr. 10, 2019) (analyzing similar tortious interference claim involving attorney-client agreement where, as in Nevada, client has absolute right to discharge with or without cause). As to civil conspiracy, absent a valid underlying tort, the claim related to interference allegations must also be dismissed. *Vested Hous. Grp.*, 648 F. App'x at 649.

### iii.   Piercing the Corporate Veil is Not a Separate Cause of Action.

Piercing the corporate veil – or the "alter ego doctrine" – is not an independent cause of action. *Waterfall Homeowners Ass'n v. Viega. Inc.*, 283 F.R.D. 571, 579 (D. Nev. 2012); *see also Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067, 1074 (C. D. Cal. 2008) ("[T]he alter ego doctrine, sometimes referred to as piercing the corporate veil doctrine, is not a cause of action onto itself…."). Instead, piercing the corporate veil is a procedural means to seek remedies by attaching personal liability. *Winer v. Strickland*, 2:13-cv-0231-JAD-CWH, 2017 U.S. Dist. LEXIS 184960, at *9 (D. Nev. Nov. 7, 2017) (citing cases). Absent viable claims for defamation or tortious interference, Claggett's "claim" for a remedy through piercing the corporate veil should be dismissed.

### c.   Claggett's Claims are Barred for Failure to Plead Them as Compulsory Counterclaims in the Georgia Action.

Claggett's claims in this case arise from the same facts forming the basis of the Georgia Action pleadings and must have been brought as compulsory counterclaims in the Georgia Action. Because they were not lodged as counterclaims in the Georgia Action, the claims are forever waived and must be dismissed. In Nevada, "[r]elated to the common law doctrines of issue and claim preclusion is the law of compulsory counterclaims, labeled by one commentator as 'preclusion by rule.'" *Executive Mgmt. v. Ticor Title Ins. Co.*, 114 Nev. 823, 841-842, 963

---

[9] The ordinary remedy for loss of an attorney-client contract lies in quantum meruit principles to recover monies for work performed. *Cashman*, 2011 U.S. Dist. LEXIS 58517 at *5-6. Claggett has not alleged the Las Vegas Client has unpaid invoices and only broadly pleads unspecified general, special, and punitive damages. [Compl.¶¶ 165-66, 169.]

P.2d 465, 477 (1998) (citing Allan D. Vestal, Res Judicata/Preclusion 158 (1969)). Nevada's

civil procedure rule on compulsory counterclaims, NRCP 13(a), "mirrors the language of its

federal counterpart," Fed. R. Civ. P. 13(a), which provides that a pleading:

> shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed R. Civ. P. 13(a).

"The purpose of NRCP 13(a) is to make an 'actor' of the defendant so that circuity of

action is discouraged and the speedy settlement of all controversies between the parties can be

accomplished in one action." *Exec. Mgmt.*, 114 Nev. at 842, 963 P.2d at 478. The Supreme

Court has similarly held,

> [t]he requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was **particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint**.

*So. Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60 (1962) (emphasis added) (citing

approvingly *United States v. Eastport S. S. Corp.*, 255 F.2d 795, 801-02 (1958), which held

failure to plead a counterclaim once prior action is commenced is fatal to maintenance of a later

suit even where no judgment had been rendered in the prior action).

Courts in the Ninth Circuit use a "logical relationship" test to decide whether a

counterclaim arises out of the same transaction or occurrence as an initial claim. *Mattel, Inc. v.

MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). A logical relationship exists when "the

same operative facts serve as the basis of both claims or the aggregate core of facts upon which

the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel*, 705

F.3d at 1110 (internal citation omitted). In other words, there must be "a substantial overlap

between the facts." *Cohn v. Ritz Transp., Inc.*, No. 2:11-cv-1832-JCM-RJJ, 2012 U.S. Dist.

LEXIS 22912, 2012 WL 600819, at *1 (D. Nev. Feb. 23, 2012). Here, a logical relationship

plainly exists with the Georgia Action. The alleged defamation and the "false pretenses" used

to secure Claggett's wrongful termination all come directly from the factual underpinnings of the trade secret claim KKF lodged against Claggett in the Georgia Action. Indeed, Claggett specifically alleges here that he was defamed and that his contract was terminated *because* he was accused of that same misappropriation. [Compl.¶¶ 65,72, 99, 156.] Claggett was aware of all of the related conduct before he filed his Answer. [Compl.¶ 65]; Keenan Decl. ¶ 37.

As a result, and "[a]s long as the facts of the later asserted claim 'are sufficiently related to subject matter of the original action, they must be barred [in the later action] as compulsory claims [to the original action].'" *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1201 (D. Nev. 2003). Because the asserted defamation and interference claims substantially overlap with and are related to the subject matter of the Georgia Action, they were compulsory in the Georgia Action, and Claggett as the compulsory counter-claimant "forced to plead his claim or lose it." [10] *Great W. Land & Cattle Corp. v. District Court*, 86 Nev. 282, 285 (1970) (noting it would be inequitable for an original defendant to have indefinite time to bring a compulsory counterclaim); *see also Dye v. Autumn Breeze Holding*, NO. 1:05-CV-0450-BBM, 2005 U.S. Dist. LEXIS 59525, at *36 (N.D. Ga. Aug. 11, 2005) ("Failure to assert a compulsory counterclaim results in a waiver of or bar to future assertion of that claim.").

Claggett not only failed to plead *any* counterclaims in the Georgia Action, but specifically declined to add any counterclaims in the Georgia Action when granted special leave to do so for the purposes of reaching judgment on the veracity of KKF's misappropriation allegations. [*See* GA Docs. 43, 44.] More specifically, had Claggett asserted his compulsory claims in the Georgia Action, the same parties would have litigated the same issue presented here of whether KKF's allegations of Claggett's misappropriation were true or false. Claggett therefore waived and is barred from maintaining in this action claims against KKF and its agents, collectively the KKF Defendants, related to the allegations pleaded in the Georgia Action.

---

[10] *See also*, *e.g.*, *Agnir v. Gryphon Solutions, LLC*, Case No.: 12-CV-04470-LHK, 2013 U.S. Dist. LEXIS 113575, at *25-26 (N.D. Cal. Aug. 8, 2013) (analyzing similar California procedural rule on compulsory counterclaims, finding the relevant inquiry is whether a claim should have been brought in a previous action, even if it ended in dismissal without prejudice).

1

### d.     Claggett's Claims Should be Dismissed for Lack of Personal Jurisdiction.[11]

2

To survive a motion to dismiss for lack of personal jurisdiction, Claggett must make "a

3 prima facie showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154

4 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001). Not only has Claggett

5 not met his burden of establishing a *prima facie* case for personal jurisdiction, he cannot. As set

6 forth in the accompanying declarations of Defendants Keenan, Keenan Law Firm, Keenan's

7 Kids Foundation, Hoey, and Entrekin, they lack any sufficient relevant contacts in Nevada.

8

A personal jurisdiction analysis is governed by the Due Process Clause of the Fourteenth

9 Amendment, which limits the power of a state's courts over defendants who do not consent to

10 jurisdiction. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Personal

11 jurisdiction is limited to defendants that have "certain minimum contacts with [a state] such that

12 the maintenance of a suit does not offend 'traditional notions of fair play and substantial

13 justice.'" *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l*

14 *Shoe Co.*, 326 U.S. at 316). Moreover, the contacts must arise out of relationships that the

15 "defendant himself" created with the forum state. *Burger King*, 471 U.S. at 475.

16

The "minimum contacts" inquiry is defendant-focused and is not satisfied by

17 demonstrating contacts between the plaintiff and the forum state. *See Helicopteros Nacionales*

18 *de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Burger King*, 471 U.S. at 478. The

19 defendant's contacts with the forum may be intertwined with his transactions or interactions

20 with the plaintiff or other parties, but a defendant's relationship with a plaintiff or third party,

21 standing alone, is an insufficient basis for jurisdiction. *See Rush v. Savchuk*, 444 U.S. 320, 332

22 (1980). Here, exercising either general or specific jurisdiction over the KKF Defendants would

23 violate due process and "traditional notions of fair play and substantial justice."

24

### i.     There is no general jurisdiction over the KKF Defendants.

25

General jurisdiction allows "a defendant to be haled into court in the forum state to

26

27

28

---

[11] Defendants Keenan, Keenan Law Firm, Keenan's Kids Foundation, Hoey, and Entrekin have each submitted herewith a declaration in support of their motion to dismiss for lack of personal jurisdiction and/or a discretionary transfer to the Northern District of Georgia, Atlanta Division.

1    answer for any of its activities anywhere in the world." *Martinez*, 764 F.3d at 1066. "For an

2    individual, the 'paradigm forum' for the exercise of general jurisdiction is the 'individual's

3    domicile,' or, for corporations, 'an equivalent place, one in which the corporation is fairly

4    regarded as at home.'" *Bristol-Meyers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017)

5    (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846,

6    180 L. Ed. 2d 796 (2011)). When deciding if a corporation is "at home" in a state, "the place of

7    incorporation and principal place of business are paradigm . . . bases for general jurisdiction."

8    *See Daimler AG*, 571 U.S. at 137 (quotation omitted). Here, it is undisputed that individual

9    Defendants Keenan, Hoey, and Entrekin are domiciled outside Nevada. [Compl. ¶¶ 4, 9, 11.] It

10   is also undisputed that the principal place of business for Defendants Keenan Law Firm and

11   KKF is the state of Georgia. [Compl. ¶¶ 5-6.]

12       Because the "paradigm [] bases for general jurisdiction" in Nevada have not been met,

13   Claggett must present substantial evidence to establish that the KKF Defendants are at home in

14   the state. *See Daimler AG*, 571 U.S. at 137 (quoting *Goodyear Dunlop*, 564 U.S. at 919).

15   Claggett's Complaint fails to allege any facts sufficient to meet this exacting standard, and

16   instead pleads conclusorily that Defendants KKF and Keenan Law Firm are "doing business in

17   Clark County, Nevada." [Compl. ¶¶ 5-6.] This is insufficient for general jurisdiction.

18   *MedCapGroup, LLC v. Mesa Pharm., Inc.*, 2:14-cv-00674-RCJ-NJK, 2014 U.S. Dist. LEXIS

19   103907, *10 (D. Nev. July 30, 2014) ("It is clear there is no general personal jurisdiction over

20   Mesa, a California corporation, in Nevada, because Mesa is not alleged to be 'at home' in

21   Nevada, but is only alleged to 'conduct[] business' in Nevada, however extensively.").

22       **ii.    There is no specific jurisdiction over the KKF Defendants.**

23       For specific personal jurisdiction, it must be shown that: (1) the defendant has performed

24   some act or transaction within the forum or purposefully availed himself of the privileges of

25   conducting activities within the forum; (2) the plaintiff's claim arise out of or results from the

26   defendant's forum-related activities; and (3) the exercise of jurisdiction over the defendant is

27   reasonable. *Schwarzenegger*, 374 F.3d at 801-02. "The plaintiff bears the burden of satisfying

28   the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal

1  jurisdiction is not established in the forum state." *Id.* at 802 (citation omitted). "If any of the

2  three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due

3  process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

4  Ninth Circuit courts treat "purposeful availment" and "purposeful direction" as separate

5  methods of analysis. *Bellagio, LLC v. Bellagio Car Wash & Express Lube*, Case No. 2:14-cv-

6  01362-JCM-PAL, 2015 WL 4076493, at *6 (D. Nev. July 1,2015). Hence, under the first

7  element of the specific jurisdiction test, the plaintiff must establish that the defendant either

8  (1) purposely availed himself of the privilege of conducting his activities in the forum or

9  (2) purposefully directed his activities toward the forum. *See, e.g., Schwarzenegger*, 374 F.3d

10 at 802. "A purposeful availment analysis is most often used in suits sounding in contract" and a

11 "purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."

12 *Id.* Because Claggett alleges that the suit arises from the torts of defamation, civil conspiracy,

13 and intentional interference, the purposeful direction test applies here.

14                **1.**    **Defendants Did Not Purposefully Direct Activities to Nevada**

15 Purposeful direction "requires that the defendant . . . have (1) committed an intentional

16 act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely

17 to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co v.*

18 *Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Actions may be directed at the forum state even if

19 they occurred elsewhere. *Id.* However, "random, fortuitous, or attenuated contacts" are

20 insufficient to create the requisite connection with the forum. *Burger King*, 471 U.S. at 475

21 (internal quotation marks omitted).

22 With respect to his defamation claims, Claggett alleges that the KKF Defendants sent or

23 caused to be sent the April 27 Email to "all of the state [KKF] listservs," distributing it to lawyers

24 "across the country." [Compl. ¶¶ 49-50.] This allegation does not convey any targeting of the

25 state of Nevada, and calls, emails, and other similar forms of communication "simply do not

26 qualify as purposeful activity invoking the benefits and protection of the [forum] state."

27 *Gonzalez v. US Human Rights Network*, 512 F. Supp. 3d 944, 956 (D. Ariz. Jan .11, 2021) (citing

28 *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)); *see also*, *e.g.*, *Neuromechanical,*

*LLC v. Kiro Kids Pty. Ltd.*, No. CV-10-1068-PHX-GMS, 2011 U.S. Dist. LEXIS 12150, *10-11 (D. Ariz. Jan. 31, 2011) (listserv communications not "directed" to forum state sufficient to establish jurisdiction); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 543-549 (D. Md. 2006) (alleged defamatory communication distributed by listserv did not establish specific jurisdiction, particularly where the communication focused on plaintiff's national activities).

Moreover, Claggett cannot show that "but for" an alleged distribution of the April 27 Email into Nevada specifically, his injury would not have occurred. *Clover Gifts v. Airs Fragrance Prods.*, 2:05-CV-1084-RCJ-(LRL), 2006 U.S. Dist. LEXIS 114912, at *14-15 (D. Nev. Mar. 2, 2006). In addition to alleging nationwide distribution of the April 27 Email, Claggett's allegations of injury are broad (reputational and monetary) and not specified as focused in Nevada. [Compl. ¶¶ 82, 102, 127, 184.] As a result, Claggett "likely would have suffered their losses regardless of any of [the KKF Defendants'] alleged contacts with the forum." *Id*. Similar issues have been evaluated in another district court within the Ninth Circuit:

> It is entirely plausible that the Plaintiff could bring identical claims against the Defendants had the April Email only been distributed to parties outside of Arizona. Although the Plaintiff may argue that the majority of his harm was experienced in Arizona, the Court cannot find that his injury did not occur elsewhere. With identical content and intent behind the distribution of the April Email, the Plaintiff can still bring claims against the Defendants in another forum, and the Defendants' act of sending the allegedly defamatory April Email does not create a cause of action specific to Arizona.

*Williams v. Wiggins*, No. CV-19-03482-PHX-SPL, 2019 U.S. Dist. LEXIS 173380, at *12-13, (D. Ariz. Oct. 7, 2019). So too with Claggett's claims here.

With respect to Claggett's intentional interference claims, lodged against Defendants KKF, Keenan Law Firm, and Keenan as an individual, there are likewise no acts targeted toward the state of Nevada. Claggett alleges only that Keenan communicated with Defendant Davis in North Carolina about a North Carolina family client regarding a case that, again by happenstance, was filed in the state of Nevada. [Compl. ¶¶ 56, 66.] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146, (9th Cir. 2017) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). None of the foregoing

allegations are "substantial" or sufficient to secure personal jurisdiction.

In any event, Claggett's claims arise from the parties' relationship outside of Nevada in connection with the Georgia Action. "Were [Claggett] anywhere else in the country, the [Georgia Action] litigation and its paper trail would have followed [him] and implicated 'by happenstance' any forum where [Claggett] happened to be." *Brennan v. Cadwell Sanford Deibert & Garry LLP & Cup O'Dirt LLC*, Case No.: 2:20-cv-00799-JAD-VCF, 2021 U.S. Dist. LEXIS 20221, at *8-9 (D. Nev. Feb. 2, 2021). "[E]ven in cases where a plaintiff alleges that the defendants intentionally sent fraudulent documents into the forum state that relate to the defendants' previous relationship in another state, courts do not find the express aiming requirement met." *Lauck v. Cty. of Campbell*, No. CV-21-08036-PCT-MTL, 2021 U.S. Dist. LEXIS 124670, at *10-11 (D. Ariz. July 2, 2021) (citing *Pringle v. Cardall*, No. 2:18-CV-2035 WBS KJN, 2019 U.S. Dist. LEXIS 146800, 2019 WL 4054104 (E.D. Cal. Aug. 28, 2019), *aff'd*, 837 F. App'x 556 (9th Cir. 2021)). KKF's misappropriation claims in the Georgia Action only tangentially implicate Nevada by the "happenstance of [Claggett's] residence" here. *Id.* The KKF Defendants are not subject to specific personal jurisdiction in this forum.

### 2. Jurisdiction in Nevada Would Be Unreasonable.

The exercise of personal jurisdiction over the KKF Defendants would also be unreasonable. In determining reasonableness, courts consider a number of factors. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). These factors are:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* Here, all of the factors weigh against exercising specific jurisdiction. As explained above, there is no allegation of purposeful interjection into Nevada affairs. The Northern District of Georgia is an appropriate alternative forum (*see infra* Section IV(e)(i)), has already been presented with the facts underlying this action, and would have the strong interest in adjudicating this dispute primarily implicating Georgia residents, not this Court. Claggett's interest in

convenient and effective relief was set aside when he failed to raise his counterclaims to the Georgia Action, but regardless the Georgia Court that previously heard these facts could resolve the issues in dispute more efficiently. As a result, jurisdiction in Nevada is unreasonable.

e. **In the Alternative, Venue Should be Transferred to the Northern District of Georgia, Atlanta Division.**

Even if personal jurisdiction somehow existed over the KKF Defendants for all claims and venue were somehow appropriate, transfer to the Northern District of Georgia is warranted pursuant to 28 U.S.C. § 1404.

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Ninth Circuit's decision in *Loya v. Starwood Hotels & Resorts Worldwide, Inc*., 583 F.3d 656, 664 (9th Cir. 2009), guides the Court's analysis of the requirements relevant to the inquiry to transfer venue as permitted under 28 U.S.C. § 1404(a).

Under the *Loya* framework, the first requirement for a forum non conveniens dismissal is that "an adequate alternative forum is available to the plaintiff." *Id.; Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). The Supreme Court has held "that an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." *Id.* (citation omitted). In the Ninth Circuit, "[t]his threshold test is met . . . [when a] Defendant[] ha[s] indicated that they are amendable to service of process . . . in the alternative forum." *Lueck*, 236 F.3d at 1143. The second requirement is a showing that the balance of private and public interests favors dismissal. *Loya*, 583 F.3d at 664.

Private interest factors include: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of hostile witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive." *See id.*; *see also Lueck*, 236 F.3d at 1143 (granting motion to transfer); *Piper Aircraft*, 454 U.S. at 254 n.22. Public interests include:

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having

1    a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law.

2    *Loya*, 583 F.3d at 664; *see also Lueck*, 236 F.3d at 1143. Here, transfer is appropriate and the

3    factors weigh strongly in favor of transfer to the Northern District of Georgia, which has strong

4    ties to, and a strong interest in, the adjudication of this case.

5    
6    **i.   The Northern District of Georgia is an adequate, alternative forum that is available to the Plaintiff.**

7    The threshold consideration under 28 U.S.C. § 1404(a) is whether there is an alternative

8    forum available to the Plaintiff. *Lockman Found v. Evangelical Alliance Mission*, 930 F.2d 764,

9    767 (9th Cir. 1991); *Loya*, 583 F.3d at 664. This action meets the Ninth Circuit's threshold test

10   because the above Defendants have indicated that they are "amenable to service of process" in

11   the alternative forum for the Northern District of Georgia. *See generally* Kennan Decl.; Hoey

12   Decl. ¶ 37; Entrekin Decl. ¶ 28; *Lueck*, 236 F.3d at 1143. The KKF Defendants are also either

13   businesses operating in Georgia or those businesses' employees, are subject to personal

14   jurisdiction in the Northern District of Georgia – Atlanta Division, and venue is proper. *See*

15   *Bristol-Meyers*, 137 S. Ct. at 1776. Therefore, the first requirement for a forum non conveniens

16   dismissal under the *Loya* framework has been satisfied.

17   
18   **ii.   The balance of private and public interest factors weigh in the favor of transferring the case to the Northern District of Georgia.**

19   Here, the balance of private and public interests favors transfer to the Northern District

20   of Georgia. In deciding to transfer venue, access to "crucial documents and witnesses" is of

21   utmost importance. *See Lueck*, 236 F.3d at 1146; *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,

22   61 F.3d 696, 703 (9th Cir. 1995) (finding that a case is "best" litigated in an alternate venue

23   where primary parties are located, "key infringing conduct" occurred, and a majority of records

24   and witnesses involved in the case are available). The prior Georgia Action, the locus of the

25   alleged conduct occurred where Defendants do business, and Defendants Keenan Law Firm and

26   KKF, are all present in Georgia, thus crucial documents and witnesses are primarily in Georgia,

27   not Nevada. *See* Kennan Decl.,¶¶ 5, 12, 54; [Compl. ¶¶ 48-49, 51, 66]. The KKF Defendants

28   will also be substantially inconvenienced by defending this case in Nevada, including for health

23

1    reasons and due to travel restrictions. Keenan Decl. ¶ 55; Entrekin Decl. ¶ 28; Hoey Decl. ¶ 37.

2            A case should be decided in the state that has "a substantial interest in the dispute." *In*

3    *re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1203 (C.D. Cal.

4    2004); *see also Mao v. Sanum Invs, Ltd*, No. 2:14-CV-00721-RCJPAL, 2014 WL 5292982, at

5    *3 (D. Nev. Oct. 15, 2014) (holding that "public interest factors favor dismissal" where "the

6    Court will incur considerable time and expense in resolving [the] dispute even though the case

7    is only tangentially related to the forum through [the plaintiff's] status as a resident of Nevada");

8    *see also Loya*, 583 F.3d at 664. The KKF Defendants do not do business in Nevada, their

9    principal place of business and state of incorporation is Georgia, and they conduct businesses in

10   Georgia. Kennan Decl. ¶¶ 5, 12, 54. This is a Georgia-focused dispute, and the citizens of

11   Georgia have the more substantial local interest in deciding it.

12           **iii.    The Court may still transfer the case pursuant to 28 U.S.C. § 1406.**

13           Transfer under 28 U.S.C. § 1404 is only appropriate where a court has jurisdiction over

14   the defendant. *See Rosen Materials of Nev., LLC v. MDA LLC*, No. 2:17-CV-01687, 2018 WL

15   3232832, at *5 (D. Nev. Feb. 7, 2018). Even absent personal jurisdiction, the Court, in its

16   discretion, may in the interest of justice and pursuant to 28 U.S.C. § 1406, transfer the case to a

17   district in which it could have been brought. *See* 28 U.S.C. § 1406(a); *Scott v. Gill*, 907 F.2d

18   155 (9th Cir. 1990) (noting that if a court finds "that it lack[s] personal jurisdiction" then the

19   district court may "transfer[] the action" to a venue in which the suit could have been brought);

20   *see also Rosen Materials*, 2018 WL 3232832 at *4.

21

22

23

24

25

26

27

28

                                                24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.     CONCLUSION

For all of the foregoing reason, each of Claggett's Counts I-VI of the Complaint should be dismissed. In the alternative, the KKF Defendants respectfully request that the Court transfer this case to the Northern District of Georgia – Atlanta Division.

RESPECTFULLY SUBMITTED this 29th day of December, 2021.

PISANELLI BICE PLLC

By:   _/s/ James J. Pisanelli_
      James J. Pisanelli, Esq., #4027
      Debra L. Spinelli, Esq., #9695
      400 South 7th Street, Suite 300
      Las Vegas, Nevada  89101

      John M. Bowler, Esq.
      (*Pro Hac Vice Forthcoming*)
      Lindsay Mitchell Henner, Esq.
      (*Pro Hac Vice Forthcoming*)
      TROUTMAN PEPPER HAMILTON
       SANDERS LLP
      600 Peachtree Street, N.E., Ste. 3000
      Atlanta, GA 30308

      *Attorneys for Defendants Don C. Keenan;*
      *Keenan & Associates, P.A.; Keenan's Kids*
      *Foundation, Inc., David J. Hoey, and*
      *William Entrekin*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Pisanelli Bice PLLC and that on the 29th day of December 2021, and pursuant to Fed. R. Civ. P. 5, a copy of the foregoing **DEFENDANTS DON C. KEENAN, KEENAN & ASSOCIATES, P.A., KEENAN'S KIDS FOUNDATION, INC., DAVID J. HOEY, AND WILLIAM ENTREKIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** was served via the Court's electronic filing system to the parties listed below:

Jared B. Anderson, Esq.
David J. Churchill, Esq.
Injury Lawyers of Nevada
4001 Meadows Lane
Las Vegas, Nevada 89107


_____/s/ Kimberly Peets_____
An Employee of Pisanelli Bice PLLC