JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702:868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>                    Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>                    Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br><br>**PLAINTIFFS' MOTION TO REMAND** |

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

SYKES LAW FIRM and SEAN K. CLAGGETT, by and through their attorneys of record,

- 1 -

Injury Lawyers of Nevada, hereby file their Motion to Remand. This Motion is based upon the records and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument made by counsel at the hearing of this matter.

Dated this 14th day of January 2022.

INJURY LAWYERS OF NEVADA

/s/ *Jared Anderson*

Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

## INTRODUCTION

This case arises out of Defendants' disparagement of Plaintiffs and intentional interference with the contractual relationship Claggett & Sykes Law Firm had with its client, Logan Erne, the plaintiff in the underlying personal injury lawsuit. A central figure in the effort to interfere with Claggett & Sykes' contractual relationship with Erne is Defendant Travis Shetler, a Nevada resident and attorney. Despite Shetler being a defendant, thus creating a lack of diversity, Defendants removed this case to federal court. Plaintiffs now seek remand.

On November 3, 2021, Plaintiffs filed their initial Complaint in the Eighth Judicial District Court of the State of Nevada, Case No. A-21-843639-C. *See* Complaint attached hereto as Exhibit 1. Defendants Brian F. Davis and Davis Law Group, P.A., filed their Notice of Removal and Petition for Removal on December 22, 2021. *See* Notice of Removal attached hereto as Exhibit 2; ECF No. 1. Thereafter, on January 12, 2022, Plaintiffs filed an Amended Complaint. *See* ECF No. 12. Pursuant to 28 U.S.C. § 1447, Plaintiffs Sean K.

Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm and Sean Claggett move the Court to issue an order remanding this case to state court. Defendants cannot meet their burden in establishing diversity jurisdiction and, therefore, the Court lacks subject matter jurisdiction. The Court should grant remand for the following reasons:

1. Lack of subject matter jurisdiction in the federal courts cannot be waived and a motion to remand for lack of subject matter jurisdiction may be made at any time. *See, e.g., Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1374 (9th Cir. 1987) *cert. denied*, 484 U.S. 850 (1987); 28 U.S.C. § 1447. If at any time before final judgment it appears that the district court lacks subject matter over a case that has been removed to federal court, the case must be remanded to state court. *See* 28 U.S.C. § 1447. This Court lacks subject matter jurisdiction over the instant case because Plaintiffs and Defendant Travis Shetler are all citizens of Nevada. As such, Defendants cannot establish diversity jurisdiction within 28 U.S.C. § 1332 and this Court lacks subject matter jurisdiction thus necessitating remand of the action to state court.

2. On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Further, the defendant seeking removal on the basis of a fraudulent joinder must demonstrate the plaintiff could not possibly recover against the party whose joinder is questioned. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). All disputed questions of fact are resolved in the plaintiff's favor. *See Kruso*, 872 F.2d at 1426. "**If there is a possibility that a state court would find that the complaint states a cause of**

**action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court**." *Hunter*, 582 F.3d at 1046 (emphasis added). The Ninth Circuit recently clarified that "[b]ecause the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *GranCare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018) (citations omitted). Here, Plaintiffs have alleged three claims for relief against Defendant Shetler arising out of his involvement in Defendants' concerted efforts to have Claggett & Sykes Law Firm fired off the underlying Nevada personal injury case: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; and (3) civil conspiracy. *See* Amended Complaint, ECF No. 12 at ¶¶ 57 – 77, 160 – 251. Plaintiffs' Amended Complaint specifically notes Shetler's involvement in the conspiracy, including that upon information and belief, Defendant Don Keenan and/or Defendant Brian Davis recruited Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client. ECF No. 10 at ¶ 75. Thereafter, Shetler and Keenan called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. *Id*. at ¶ 72. When that failed, Shetler agreed to step in as new local Las Vegas counsel on the case. *Id*. at ¶ 77. As a result of Defendants' wrongful and unjustified conduct, the client did, in fact, terminate the ongoing and prospective contractual relationship with Plaintiffs. *See id*. at ¶¶ 160-251.

3. In their Petition, Defendants wholly ignore the applicable standard and fail to demonstrate that Plaintiffs cannot possibly recover against Shetler. *See GranCare, LLC*, 889 F.3d 543. Instead, Defendants rely on conclusory statements and a self-serving declaration from Shetler and invite the Court to take a deep dive into the factual allegations underlying Plaintiffs' claims. "Such a review, however, is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 159365, *9 (Nov. 24, 2015) (citing *Hunter*, 582 F.3d at 1044) ("a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant and…the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden"). Therefore, because Defendants cannot show that Plaintiffs' claims against Shetler will "obviously" fail, the Court should grant remand.

**STATEMENT OF FACTS**

## I.   BACKGROUND OF DEFENDANT DON KEENAN, THE KEENAN TRIAL INSTITUTE, AND THE KEENAN EDGE

Defendant Don Keenan is an attorney who co-authored a trial advocacy book with jury consultant David Ball entitled: Reptile the 2009 Manual of the Plaintiff's Revolution. *See* Amended Complaint, ECF No. 12 at ¶ 19. In the years following the release of the book, Keenan and Ball began conducting seminars to expand on the material in the book. *Id*. at ¶ 21. In or around 2013 or 2014, Keenan and Ball created the Keenan Ball Trial College ("KBC") – a trial college for plaintiff's lawyers based on the Reptile book. *Id*. at ¶ 22. KBC instructors are trial lawyers from around the country who volunteer to teach at the course. *Id*. at ¶ 23. Defendant David Hoey was named the "Dean" of the KBC. *Id*. at ¶ 24.

Sometime around 2017 or 2018, Keenan began to phase out use of the Reptile name and began calling it the Keenan Edge. *Id*. at ¶ 25. Upon information and belief, Keenan also phased out Ball's involvement. *Id*. Additionally, in or around 2018/2019, Keenan changed the name of the Keenan Ball Trial College to The Keenan Trial Institute. *Id.* at ¶ 26. According to Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all materials taught through those ventures. *Id.* at ¶ 28.

## II.   BACKGROUND OF CLAGGETT & SYKES LAW FIRM'S INVOLVEMENT WITH KEENAN

Plaintiff Sean Claggett is a trial lawyer in Las Vegas and the founding partner of Claggett & Sykes Law Firm. *Id*. at ¶ 31. Mr. Claggett also owns a focus group company based in Las Vegas. *Id*. In or around 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC. *Id*. at ¶ 32. Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC. *Id*. at ¶ 33. Mr. Claggett and his partners, William Sykes and Matthew Granda, also managed the Nevada Reptile listserv, an email listserv for Nevada plaintiff's attorneys who had attended Reptile seminars and/or KBC courses. *Id*. at ¶ 34. Mr. Claggett became one of the best-known instructors at KBC and became very close with Keenan. *Id*. at ¶ 36.

In 2018, the relationship between Mr. Claggett and Keenan began to suffer. *Id*. at ¶ 38. Mr. Claggett was conducting trials that, according to Keenan, did not strictly follow Keenan's teachings. *Id*. Keenan made clear that his instructors were not to conduct trials outside of the confines of what he taught, or, as Keenan put it, not to "go off the reservation." *Id*. Keenan, usually through his lead instructors, Hoey and Mindy Bish, enforced strict loyalty to the Reptile, and only the Reptile. *Id*. at ¶ 39.

Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all attorneys from Claggett & Sykes Law Firm were resigning from being KBC instructors and listserv moderators. *Id*. at ¶ 45.

### III.    KEENAN AND HIS CO-DEFENDANTS DISPARAGE MR. CLAGGETT

After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other attorneys at Claggett & Sykes Law Firm began attending other trial courses. *Id*. at ¶ 48. Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. *Id*. at ¶ 49. These programs were done under the name "Case Analysis." *Id*. In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. *Id*. at ¶ 50. Mr. Claggett did not receive any money for teaching this course. *Id*. Also, during the COVID-19 shutdown, Mr. Claggett volunteered his time and frequently taught webinars through Case Analysis. *Id*. at ¶ 51.

In April 2020, Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire methods. *Id*. at ¶ 52. Shortly thereafter, on April 27, 2020, Defendant William Entrekin sent an email to all of the state Reptile listservs. *Id*. at ¶ 53. The content of the email was written by Hoey. *Id*. Upon information and belief, Hoey wrote the email at the direction of Keenan. *Id*. The email stated:

> All-
>
> I write to you all as the Dean of the Keenan Trial Institute.
>
> KTI prides itself on the quality of what it teaches by trained faculty and co-deans.
>
> The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats…………Claggett doesn't care and it hurts us all.

Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.

You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

*Id*. at ¶ 55.

## IV.   DEFENDANTS CONSPIRE TO HAVE CLAGGETT AND SYKES LAW FIRM FIRED FROM A NEVADA PERSONAL INJURY CASE

Defendant Brian Davis is a North Carolina-based attorney who also serves as an instructor at The Keenan Trial Institute. *Id*. at ¶ 57. In or around 2017, Davis asked Claggett & Sykes to co-counsel with him and his law firm on a personal injury case in Las Vegas. *Id*. at ¶ 60. The client's family was originally from North Carolina and had retained Davis and his firm. *Id*. Thereafter, the client retained Claggett & Sykes and in 2018, Claggett & Sykes

filed a complaint in the Eighth Judicial District Court of the State of Nevada entitled *Logan Erne v. Margaret Williams, et al.*, Case No. A-18-773499-C. *Id*. at ¶ 62.

Over the course of representing the client from 2018, to 2020, Claggett & Sykes completed extensive discovery and engaged in substantial motion practice, including opposing a motion for summary judgment. *Id*. at ¶ 63. In all, Claggett & Sykes incurred close to $150,000.00 in costs litigating the matter. *Id*. at ¶ 64. Between 2018 and May 2020, neither the client, the client's family, Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes' representation or handling of the case. *Id*. at ¶ 66. In fact, as late as April 28, 2020, Claggett & Sykes' lawyers had phone calls with Davis about the case and all was well. *Id*. at ¶ 67.

On or about May 14, 2020 – less than three weeks after Keenan, Hoey, and Entrekin sent the email about Mr. Claggett to the Keenan listservs – Davis asked Mr. Claggett and Claggett & Sykes' lead medical malpractice partner, Jennifer Morales, for a phone call. *Id*. at ¶ 68. The next day when they spoke, Davis stated that the client had decided to fire Claggett & Sykes. *Id*. at ¶ 69. When Mr. Claggett and Ms. Morales asked why, Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. *Id*. After Mr. Claggett and Ms. Morales pointed out that the notices were prepared and ready to be served, Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. *Id*. Mr. Claggett and Ms. Morales explained this was also incorrect. *Id*. Finally, Davis admitted that he was firing Claggett & Sykes for what Mr. Claggett had allegedly done to Keenan's Reptile group. *Id*.

Upon information and belief, Keenan asked or told Davis to fire Claggett & Sykes from the case. *Id*. at ¶ 70. This belief is supported by the fact that Mr. Claggett has spoken with at least one other former KBC instructor who said that after Mr. Claggett left the

Reptile group, Keenan told the former instructor that he should fire Mr. Claggett off a case in which Mr. Claggett and the former instructor were co-counsel. *Id*. Alternatively, upon information and belief, Davis fired Claggett & Sykes due to Keenan, Hoey, and Entrekin's April 27, 2020 email. *Id*. at ¶ 71.

Shetler, a Nevada resident and instructor at The Keenan Trial Institute, also participated in the conspiracy to have Claggett & Sykes fired off the *Erne* case. Upon information and belief, Shetler had communications with Keenan and/or Davis in furtherance of their conspiracy to interfere with Plaintiffs' relationship with the client. *Id*. at ¶ 73. Upon information and belief, Keenan held one or more meetings with Davis and/or Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes relationship with the client. *Id*. at ¶ 74. Upon information and belief, during those discussions, Keenan and/or Davis recruited Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client. *Id*. at ¶ 75. Upon information and belief, Keenan and Shetler called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes Law Firm. *Id*. at ¶ 72. Shetler eventually agreed to act as local counsel in the *Erne* matter. *Id*. at ¶ 77.

## LEGAL STANDARDS

### I.   LEGAL STANDARD GOVERNING REMOVAL AND REMAND

The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, grants federal district courts original jurisdiction over all civil actions "between ... citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89-90, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005). "[W]e have read the statutory formulation 'between . . . citizens of different States'

to require complete diversity between all plaintiffs and defendants." *Id.*, 546 U.S. at 89 (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996)).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a): "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Because the court's jurisdiction is limited by the constitution and 28 U.S.C. §§ 1331, 1332, '[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court.'" *Jenkins v. Prime Washington, LLC*, 2020 U.S. Dist. LEXIS 154082, *2 (D. Nev. Aug. 24, 2020) (quoting *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998)).

The standards governing removal are well-established and stringent. Because the right of removal is "entirely a creature of statute," and because removal itself is done in "derogation of state sovereignty," federal courts are required to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002); *U.S. ex rel. Walker v. Gunn*, 511 F.2d 1024, 1027 (9 Cir. 1975); *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

The proper vehicle for challenging removal to federal court is a motion to remand. *See* 28 U.S.C. § 1447(c). A federal court must order remand if there is any defect which

causes federal jurisdiction to fail, or if there is any defect in the removal procedure. *See id*. The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 109 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). When considering the propriety of removal, the Ninth Circuit has explained: **"[w]e strictly construe the removal statute against removal jurisdiction."** *Gaus*, 980 F.2d at 566 (emphasis added). In furtherance of the "strong presumption" against removal jurisdiction, the Ninth Circuit has further emphasized that, **"the defendant always has the burden of establishing that removal is proper."** *Id*. (emphasis added). A "court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence." *Id*. at 567. Jurisdiction may not be maintained by "mere averments." *Id*. **"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."** *Id*. at 566 (emphasis added).

## II. LEGAL STANDARDS GOVERNING CLAIMS OF FRAUDULENT JOINDER

When a non-diverse party has been joined as a defendant, in the absence of a substantial federal question, the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. *See* 28 U.S.C. § 1447(c). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). "There is a presumption against finding fraudulent joinder, and the defendants who assert that [a] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Greene v. Wyeth*, 344 F. Supp. 2d 674, 681 (D. Nev. 2004) (citing *Plute v. Roadway Package System,*

*Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)). Indeed, "**if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court**." *Hunter*, 582 F.3d at 1046 (emphasis added) (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)).

The Ninth Circuit recently explained that "while the party seeking removal is entitled to present additional facts that demonstrate that a defendant has been fraudulently joined…in many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined." *GranCare*, 889 F.3d at 549 (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits." *GranCare*, 889 F.3d at 549. "**Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction**." *Id.* (emphasis added) (citing *Bell v. Hood*, 327 U.S. 678, 682-83, 66 S. Ct. 773, 90 L. Ed. 939 (1946); *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984)). "The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we 'strictly construe the removal statute,' and reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *GranCare*, 889 F.3d at 550 (citing *Gaus*, 980 F.2d 564, 566 (9th Cir. 1992)).

Thus, here, Defendants bear a heavy burden of proving fraudulent joinder, and "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). If a plaintiff "states even a colorable claim against the [non-diverse] defendant, joinder is proper and the case should be remanded to state court." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). As discussed above, "the standard for fraudulent joinder is higher than Rule 56 summary judgment or Rule 12(b)(6) dismissal; the standard is not whether Plaintiff will succeed on the merits of the claims but whether the failure of the claims is 'obvious according to the settled rules of the state.'" *Ansara*, 2015 U.S. Dist. LEXIS 159365, at *9 (quoting *Morris*, 236 F.3d at 1067); *see also Ritchey*, 139 F.3d at 1318. Here, Defendants have not met this substantial burden.

## LEGAL ARGUMENT

### I.    REMAND IS PROPER BECAUSE DEFENDANTS CANNOT ESTABLISH DIVERSITY JURISDICTION.

Remand is proper because diversity jurisdiction does not exist in this matter. As stated above, removal statutes must be strictly construed in favor of state court jurisdiction. *See Gaus*, 980 F.2d at 566. Moreover, any doubts about removability are resolved in favor of remanding the case to state court. *See id*. Here, Plaintiffs' Amended Complaint pleads that Travis Shetler, a knowing participant in the conspiracy to have Claggett & Sykes fired from the *Erne* matter, is a citizen of the State of Nevada. *See* Complaint, ECF No. 12 at ¶ 14. Likewise, the Amended Complaint explains that at all times relevant herein, Plaintiff Sean Claggett was and is a Nevada citizen and that Plaintiff Sean K. Claggett & Associates,

LLC d/b/a Claggett & Sykes Law Firm was and is domiciled in Nevada. *Id.* at ¶¶ 6-7. These facts are not in dispute as Defendants even concede "[t]he only Defendant that is not diverse from Plaintiffs is Mr. Shetler." *See* Petition, ECF No. 1 at 5:9-10. Given that complete diversity does not exist between all plaintiffs and defendants, the Court lacks subject matter jurisdiction and, as such, the Court must remand this case to state court. *See* 28 U.S.C. § 1447(c).

## II.   DEFENDANTS CANNOT DEMONSTRATE THAT PLAINTIFFS FRAUDULENTLY JOINED SHETLER TO THIS ACTION

Although Defendants admit that Shetler is a non-diverse Defendant, they argue instead that Shetler was "fraudulently joined…for the sole purpose of defeating diversity jurisdiction." *See* Petition, ECF No. 1 at 5:10-11. However, the defendant seeking removal to the federal court on the basis of a fraudulent joinder must "show that the individuals joined in the action cannot be liable on any theory. *Ritchey*, 139 F.3d at 1318. The inquiry is not whether a defendant can propound defenses against a cause of action; rather, the inquiry is whether "there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants[.]" *Hunter*, 582 F.3d at 1046.

Simply put, in determining whether joinder is proper, the Court "must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). Nevada's pleading standard is set forth in NRCP 8, which states that a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" NRCP 8(a). Nevada is a notice-pleading jurisdiction, and a pleading is sufficient so long as it gives fair notice of the nature and basis of the claim. *Crucil v. Carson City*, 95 Nev. 583, 585 (1979). Pleadings are liberally construed to place into issue any matter which is fairly noticed to the adverse party. *Chavez v. Robberson Steel*

*Co.*, 94 Nev. 597, 599 (1978). In this regard, "the pleading of conclusions, either of law or fact, is sufficient so long as the pleading gives fair notice of the nature and basis of the claim." *Crucil*, 95 Nev. at 585.

If this matter was at a motion to dismiss stage, a Nevada court would be required to accept all allegations within Plaintiffs' Amended Complaint as true and to construe the pleadings liberally drawing every fair inference in favor of Plaintiffs. *San Diego Prestressed Concrete Co. v. Chicago Title Ins.*, 92 Nev. 569, 573 (1976). The Amended Complaint could not be dismissed unless it appeared "beyond a doubt" that Plaintiffs could prove no set of facts which, if accepted, would entitle them to relief. *Blackjack Bonding v. City of Las Vegas Mun. Court*, 116 Nev. 1213, 1217 (2000). Judged under this standard, the allegations contained in Plaintiffs' Amended Complaint adequately notice claims against Defendant Shetler and satisfy NRCP 8(a)'s liberal standard.

Recall, however, that while the burden on a defendant at the motion to dismiss stage is rigorous, the burden on Defendants to prove fraudulent joinder is even higher. *See Ansara*, 2015 WL 7573195 at *2; *GranCare*, 889 F.3d at 549. As discussed above, to establish fraudulent joinder, Defendants must demonstrate by clear and convincing evidence that there is no possibility, based on the pleadings, that Plaintiffs can state any of their causes of action against Defendant Shetler in Nevada state court. *Hamilton Materials*, 494 F.3d at 1206. Moreover, this deficiency must be obvious according to the well-settled rules of the State of Nevada. *Ritchey*, 139 F.3d at 1318. Here, the removing Defendants have not and cannot meet their burden of demonstrating that Plaintiffs fraudulently joined Defendant Shetler to this action.

///

///

**A.      Plaintiffs Plead a Cognizable Claim for Intentional Interference with Contractual Relations Against Defendant Shetler**

Plaintiffs' first claim against Shetler is for intentional interference with contractual relations. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)).

In their Petition, Defendants erroneously state that "Plaintiffs failed to allege that Mr. Shetler intentionally and actually interfered with the Agreement and caused Mr. Erne to terminate the Agreement with Plaintiffs." Petition, ECF No. 1 at 5:26-28. In doing so, Defendants simply ignore the detailed factual allegations contained within Plaintiffs' Complaint, as well as the properly pleaded causes of action. *See* Amended Complaint, ECF No. 12 at ¶¶ 18-77, 160-191.

In fact, Plaintiffs alleged that "[t]here existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff [Erne] related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada." *Id*. at ¶ 161. Defendants knew of this agreement and, nevertheless, conspired to have Claggett & Sykes terminated from the *Erne* case. *Id*. at ¶¶ 57-77, 164-167. As to Defendant Shetler, specifically, upon information and belief, he coordinated with Defendant Keenan and/or Defendant Davis to contact at least one other attorney in Las Vegas in an attempt to replace Claggett & Sykes. *Id*. at ¶¶ 72-75. When that attempt – and potentially others – was unsuccessful, Shetler agreed to step in as local counsel on the *Erne* matter. *Id*. at ¶ 77. As a direct and proximate result of Defendants' intentional acts designed to disrupt the contractual relationship between Plaintiffs and Erne,

the client did in fact terminate the contract relationship between himself and Plaintiffs. *Id*. at ¶¶ 165-167. At this stage, these allegations must be taken as true. *See Kruso*, 872 F.2d at 1426.

Defendants' Petition lacks any sort of legal argument for why removal is appropriate and instead relies entirely on factual disputes that are wholly inappropriate at this stage of the case. In fact, Plaintiffs' Amended Complaint alleges that Mr. Shetler: (1) knew of the contractual relationship between Plaintiffs and Mr. Erne; (2) acted with the intent to disrupt said contractual relationship; and (3) did, in fact, contribute to the termination of the subject agreement. *See* Complaint, Ex. 1 at ¶¶ 18-77, 160-191. Shetler, a Keenan Trial Institute instructor, is alleged to have conspired with the Keenan Defendants – including Don Keenan, himself – as well as the Davis Defendants in carrying out their intended interference with Plaintiffs' contractual relationship with Mr. Erne. Shetler's motivation for interfering with Plaintiffs' agreement is plain and obvious as Shetler stood to benefit from an increased standing with the Keenan Defendants, as well as the newfound remuneration he would receive serving as local counsel for Mr. Erne. *See J.J. Indus., LLC*, 119 Nev. at 274-277 (explaining that inquiry into the "motive or purpose" of the interfering defendant may be used to demonstrate the defendant "intended or designed to disrupt the plaintiff's contractual relationship"). Moreover, Defendants' assertion that "there is no logical or factual nexus between Mr. Shetler making a phone call to an attorney and Mr. Erne's decision to terminate Claggett & Sykes" is belied by both common sense as well as the fact that any attempt to terminate and replace Claggett & Sykes would necessarily involve Mr. Erne's acquiescence and agreement.

Next, in their Petition, Defendants attach a declaration from Defendant Shetler disputing the factual allegations in Plaintiffs' Complaint. *See* Petition, ECF No. 1 at 6.

However, as this Court has explained previously, "[s]uch a review…is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara*, 2015 U.S. Dist. LEXIS 159365 at *9 (citing *Hunter*, 582 F.3d at 1044) ("a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant and…the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden"). Further, "a denial, even a sworn denial of allegations does not prove their falsity[.]" *Grancare, LLC*, 889 F.3d at 551. As such, Shetler's self-serving declaration should be disregarded and the mere fact that he disputes the specific allegations in Plaintiffs' Amended Complaint is further indication this case should be remanded to state court for discovery and further fact finding.

Simply, in light of Nevada's notice pleading standard, Defendants cannot demonstrate that it is not possible for a state court to find that Plaintiffs have sufficiently stated their intentional interference with contractual relations claim against Shetler. As such, diversity jurisdiction does not exist in this case, and the Court should remand this matter back to state court.

**B.     Plaintiffs Plead a Cognizable Claim for Intentional Interference with Prospective Economic Advantage Against Defendant Shetler**

Plaintiffs have also brought a claim against Shetler for intentional interference with prospective economic advantage related to his efforts to interfere with Claggett & Sykes' ongoing and prospective contractual relationship with Erne. "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to

harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 88-89 (1993) (citing *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987)).

Here, Plaintiffs have alleged that Shetler, along with the Keenan Defendants and Davis Defendants, knowingly and intentionally interfered with Plaintiffs' ongoing and prospective contractual relationship between Plaintiff and Erne by which Claggett & Sykes would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit. *See* Amended Complaint, ECF No. 12 at ¶¶ 193-199. As a result of Defendants' wrongful and unjustified conduct, Erne terminated the relationship with Claggett & Sykes and Plaintiff was harmed and denied fees and remuneration it otherwise would have been entitled to as a result of its representation in the *Erne* matter. *Id*. at ¶¶ 196-199.

Also, as discussed above, to the extent Shetler disputes any of the factual allegations underlying Plaintiffs' claim for intentional interference with prospective economic advantage, such disputes are inappropriate at this stage and, instead, further demonstrate that remand is appropriate. *See Ansara*, 2015 U.S. Dist. LEXIS 159365 at *9 (citing *Hunter*, 582 F.3d at 1044).

### C. Plaintiffs Plead a Cognizable Claim for Civil Conspiracy Against Defendant Shetler

Finally, Plaintiffs brought a claim against Shetler for civil conspiracy arising out of his concerted efforts with his Co-Defendants to have Claggett & Sykes Law Firm fired off the *Erne* case. In Nevada, "[a]n actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consol.*

*Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993) (citing *Sutherland,* 105 Nev. at 196, 772 P.2d at 1290)). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (citing 16 AM.JUR. 2D, *Conspiracy*, § 57 (1998)). The essence of civil conspiracy is damages which result from the tort underlying the conspiracy, not the legal relationship between the tortfeasor and the victim.  See 16 AM. JUR. 2D, *Conspiracy*, § 57 (1998); *Flowers*, 266 F. Supp. 2d at 1249. As the Supreme Court of California noted, "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, **irrespective of whether or not he was a direct actor and regardless of the degree of his activity**." *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 40 (1989) (emphasis added).

In this case, Plaintiffs have alleged that Shetler, Keenan, and Davis "intended to accomplish an unlawful objective together with the purpose of harming Plaintiff." *See* Amended Complaint, ECF No. 12 at ¶ 225. Specifically, "these Defendants acted with the objective of intentionally interfering with Plaintiff's contractual relations and prospective contractual relations by causing Plaintiff's client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff." *Id*. Further, "[t]he association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff." *Id*. at ¶ 226. "Defendants conspired with each other to unlawfully interfere with Plaintiff's contract and/or prospective contractual relationship with its client so as to cause Plaintiff's client to terminate Plaintiff's

representation and to replace Plaintiff with Defendant Shetler." *Id.* at ¶ 227. Again, these

allegations must be taken as true. *See Kruso*, 872 F.2d at 1426. Taken together, along with

the rest of Plaintiffs' factual contentions, Plaintiffs have stated a cognizable claim for civil

conspiracy against Defendant Shetler and, therefore, Defendants cannot prove fraudulent

joinder.

As discussed above, although Shetler disputes these factual allegations, all factual

disputes must be resolved in favor of Plaintiffs and a substantive inquiry into the factual

underpinnings of Plaintiffs' claims is improper at this stage. *Id.*; *see also Hunter*, 582 F.3d at

1044. Further, to the extent Defendants contend Plaintiffs' factual allegations are insufficient

at this early point in the case, Plaintiffs are not required to prove their entire case in their

Amended Complaint, alone. Instead, Plaintiffs have more than satisfied Nevada's liberal

pleading standard and placed all Defendants, including Nevada resident Shetler, on notice of

the relevant claims against them. *See Hay*, 678 P.2d at 674. As such, Defendants cannot

establish fraudulent joinder and the Court must remand this case back to state court.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court grant their

Motion to Remand in its entirety.

Dated this 14th day of January 2022.

INJURY LAWYERS OF NEVADA

/s/ *Jared Anderson*

_____

Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

## CERTIFICATE OF SERVICE

I certify that on the 14th day of January, 2022, I served a true and correct copy of the

above and foregoing PLAINTIFFS' **MOTION TO REMAND**  on the parties via the

Court's Electronic filing system to all parties listed in CM/ECF service listed for this case:

*/s/Lili Salonga*
_____

An employee of Injury Lawyers of Nevada

# EXHIBIT "1"

Electronically Filed
11/3/2021 5:16 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiff*

CASE NO: A-21-843639-C
Department 15

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | Case No.<br><br>Dept. No.<br><br>**COMPLAINT**<br><br>**Jury Demand**<br><br>**Exempt from Arbitration – Declaratory Relief Action** |

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

SYKES LAW FIRM and SEAN K. CLAGGETT by and through their attorneys of record,

- 1 -

DAVID CHURCHILL, ESQ. and JARED ANDERSON, ESQ. of the law firm INJURY

LAWYERS OF NEVADA, bring their causes of action against Defendants, DON C.

KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM;

KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE

KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY;

TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS

ENTITIES XI-XX, inclusive, and each of them, and alleges as follows:

<div align="center"><strong>JURISDICTION, VENUE, AND PARTIES</strong></div>

1.      This Court has jurisdiction over this matter under NRS 14.065 and NRS

4.370(1), as the facts alleged occurred in Clark County, Nevada and involve an amount in

controversy in excess of $15,000.00. Venue is proper pursuant to NRS 13.040, as

Defendants, or any one of them, resided in Clark County, Nevada at the commencement of

this action.

2.      At all times relevant herein, Plaintiff Sean K. Claggett & Associates, LLC

d/b/a Claggett & Sykes Law Firm (hereinafter "Plaintiff" or "Claggett & Sykes"), was and is

a limited liability company organized and existing under the laws of the State of Nevada and

doing business in Clark County, Nevada.

3.      At all times relevant herein, Plaintiff Sean K. Claggett (hereinafter "Plaintiff"

or "Mr. Claggett") was and is a resident of Clark County, Nevada.

4.      Upon information and belief, at all times relevant herein, Defendant Don C.

Keenan (hereinafter "Defendant" or "Keenan"), was and is a resident of Walton County,

Florida.

5.      Upon information and belief, at all times relevant herein, Defendant D. C.

Keenan & Associates P.A. d/b/a Keenan Law Firm (hereinafter "Defendant" or "Keenan

Law Firm"), was and is a professional association organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

6.      Upon information and belief, at all times relevant herein, Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge (hereinafter "Defendant" or "Keenan's Kids Foundation," "Keenan Trial Institute," or "Keenan Edge"), was and is a non-profit corporation organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

7.      Upon information and belief, at all times relevant herein, Defendant Brian F. Davis (hereinafter "Defendant" or "Davis"), was and is a resident of Buncombe County, North Carolina.

8.      Upon information and belief, at all times relevant herein, Defendant Davis Law Group, P.A. (hereinafter "Defendant" or "Davis Law Group"), was and is a professional association organized and existing under the laws of the State of North Carolina and doing business in Clark County, Nevada.

9.      Upon information and belief, at all times relevant herein, Defendant David J. Hoey (hereinafter "Defendant" or "Hoey"), was and is a resident of Middlesex County, Massachusetts.

10.     Upon information and belief, at all times relevant herein, Defendant Travis E. Shetler (hereinafter "Defendant" or "Shetler"), was and is a resident of Clark County, Nevada.

11.     Upon information and belief, at all times relevant herein, Defendant William Entrekin (hereinafter "Defendant" or "Entrekin"), was and is a resident of Lumpkin County, Georgia.

12.     Plaintiffs do not know the true names of Defendants Does I through X and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiffs.  Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

13.     Plaintiffs do not know the true names of Defendants Roe Business Entities XI through XX and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX, are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

14.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

**Background of Defendant Keenan, The Keenan Trial Institute, and the Keenan Edge**

15.     Defendant Keenan is a lawyer who co-authored a trial advocacy book with jury consultant David Ball entitled: Reptile the 2009 Manual of the Plaintiff's Revolution.

16.     Keenan has released several books following the Reptile, mainly books that compile his weekly blog articles.

17.     In the years following the release of the book, Defendant Keenan and Mr. Ball began conducting seminars to expand on the material in the book.

18.     In or around 2013 or 2014, Defendant Keenan and Mr. Ball created the Keenan Ball Trial College ("KBC"), which was a trial college for plaintiff's lawyers based on the Reptile book.

19.     KBC instructors are trial lawyers from around the country who volunteer, with no pay, to instruct at the course.

20.     Defendant Hoey was named the "Dean" of the Keenan Ball Trial College.

21.     Sometime around 2017 or 2018, Defendant Keenan began to phase out use of the Reptile name and began calling it the Keenan Edge. Upon information and belief, Defendant Keenan also phased out Mr. Ball's involvement.

22.     Sometime around 2018 or 2019, Defendant Keenan changed the name of Keenan Ball Trial College to The Keenan Trial Institute.

23.     Upon information and belief, Defendant Shetler is an instructor at The Keenan Trial Institute.

24.     According to Defendant Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all of the material taught through those ventures.

25.     Defendant Keenan says that the Keenan's Kids Foundation is a non-profit organization. Defendant Keenan claims he makes no money off his Reptile or Edge books, or off his Keenan Trial Institute. Defendant Keenan claims he donates all of his proceeds to the Keenan Trial Institute.

26.     Upon information and belief, based on publicly available tax records, Keenan's Kids Foundation made over $2,000,000 in revenue in 2018 from the Keenan Trial Institute and The Keenan Edge ventures. Less than $40,000 of that went to "kids." Upon information and belief, the remainder of the money went to operating The Keenan Trial Institute and The Keenan Edge ventures. Upon information and belief, Keenan uses this money to fund his private jet and to pay his wife a salary of $70,000 a year, despite her having no involvement in the Keenan Trial Institute or The Keenan Edge. Upon information and belief, Keenan Trial College and The Keenan Edge have no paid employees. All staff that organize, manage, and operate Keenan Trial College and The Keenan Edge are employees of Keenan's Kids Foundation.

**Background of Claggett & Sykes's Involvement in the Reptile**

27.     Mr. Claggett is a trial lawyer in Las Vegas. He is the founding partner of Claggett & Sykes Law Firm. Mr. Claggett also owns a focus group company based in Las Vegas.

28.     In about 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC.

29. Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC.

30. Mr. Claggett and his partners, William Sykes and Matthew Granda also managed the Nevada Reptile listserv, which is an email listserv for Nevada plaintiff's lawyers who had attended Reptile seminars and/or KBC courses.

31. The Nevada listserv was one of the largest and most active listservs in the nation.

32. Mr. Claggett became one of the best-known instructors at KBC and became very close with Defendant Keenan. In 2016, Mr. Claggett was one of four KBC instructors who got invited to attend a trip to Greece with Defendant Keenan to participate in an intense multi-day training on Reptile material.

33. Around that same time Defendant Keenan co-counseled in Nevada on one of Claggett & Sykes's cases.

34. In 2018, the relationship between Mr. Claggett and Defendant Keenan began to suffer. Mr. Claggett was conducting trials that, according to Defendant Keenan, did not strictly follow Keenan's teachings. Defendant Keenan made clear that his instructors were not to conduct trials outside of the strict confines of what he taught; as he put it, not to "go off the reservation."

35. Defendant Keenan, usually through his lead KBC instructors, Defendant Hoey and Mindy Bish, enforced strict loyalty to the Reptile, and only the Reptile. For example, a KBC instructor attended another trial college and sent an email to his state's listserv stating that he found the course useful and recommended the college to others. Defendant Keenan immediately banned this instructor from all things Reptile.

36.     Another example occurred when Mr. Claggett conducted a product liability trial in 2018, where his co-counsel Sam Harding gave an opening statement that lasted over an hour, and where Mr. Claggett settled with one of the defendants before trial—both are against Defendant Keenan's teachings.

37.     Shortly after the trial, KBC conducted a course in Las Vegas. Defendant Keenan appeared via videoconference and announced to all the participants, that he was so disturbed that one of his instructors would give an opening statement over an hour that he had lost sleep and that it went against the Reptile teachings. Defendant Keenan said all of this while one of Claggett & Sykes's lawyers was an instructor at that same KBC course.

38.     Later in 2018, one of Defendant Keenan's fellows (Keenan has a system where he invites lawyers to conduct a "fellowship" with his law firm for a year for $30,000), sent an email to the Nevada Reptile listserv lambasting anyone who would charge more than $250 per hour to conduct a focus group. The fellow also stated that Defendant Keenan or others from his organization would come to Las Vegas and conduct focus groups for $250. Upon information and belief, the fellow sent this email at Defendant Keenan's direction. Upon information and belief, neither Defendant Keenan nor his KBC staff ever lived up to the promise to come to Nevada to conduct these focus groups.

39.     Upon information and belief, this email was a direct attack on Mr. Claggett's focus group company.

40.     Around the same time, Mr. Claggett learned that Defendant Keenan was requiring all of the KBC instructors to sign agreements where if they did not volunteer at least three times a year to teach KBC courses that they would have to pay a fine of $25,000.00.

41.     Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all the attorneys at Claggett & Sykes were resigning from being KBC instructors and listserv moderators.

42.     Keenan and/or his KBC staff immediately removed Claggett & Sykes attorneys from the Nevada listserv.

43.     Upon information and belief, after removing the Claggett & Sykes lawyers from the listserv, participation in the Nevada Reptile listserv declined significantly.

**Mr. Claggett's Involvement with Case Analysis**

44.     After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other lawyers at Claggett & Sykes began to attend other trial courses, such as the Trojan Horse Method, Mark Lanier's Trial Academy, and Rick Friedman's Ethos.

45.     Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. These programs were done under the name, Case Analysis.

46.     In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. Mr. Claggett did not receive any money for teaching this course.

47.     During the COVID-19 shutdown, the Trojan Horse Method/Case Analysis founder organized daily, free webinars for plaintiff's lawyers across the country. Mr. Claggett volunteered his time and frequently taught two webinars a week between March and June of 2020.

48.     In April 2020, Defendant Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire methods. This was somewhat ironic in that Mr. Claggett and his team of

lawyers were chastised and essentially excommunicated from the Reptile group for "going off the reservation" of the way Keenan required trials to be conducted.

49.     On April 27, 2020, Defendant Entrekin, sent an email to all of the state Reptile listservs. The content of the email was written by Defendant Hoey. Upon information and belief, Defendant Hoey wrote the email at the direction of Defendant Keenan.

50.     Upon information and belief, the email went out to over 4,000 lawyers across the country.

51.     The email stated:

All-

I write to you all as the Dean of the Keenan Trial Institute.

KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

> There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats............Claggett doesn't care and it hurts us all.
>
> Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.
>
> You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

52.     In May 2020, The Keenan Edge took out an advertisement in the State Bar of Nevada's magazine, Nevada Lawyer. Upon information and belief, this was the first advertisement The Keenan Edge had ever published in Nevada.

**Defendant Davis, Defendant Davis Law Group, and Defendant Shetler's Involvement**

53.     Defendant Davis is an attorney based in North Carolina. He is also an instructor at the KBC and/or Keenan Trial Institute.

54.     Upon information and belief, Defendant Davis is an owner, officer, and/or director of Davis Law Group, a law firm based in Asheville, North Carolina.

55.     Mr. Claggett met Defendant Davis through the Reptile and KBC courses.

56.     In or around 2017, Defendant Davis asked Claggett & Sykes to co-counsel with him and his law firm on a medical malpractice case in Las Vegas. The client's family was originally from North Carolina and retained Defendant Davis and Davis Law Group.

57.     At the same time, Mr. Claggett asked Defendant Davis to speak with a client who had a potential case in North Carolina. That client retained Defendant Davis and Defendant Law Group, and Defendant Davis filed a lawsuit on behalf of the client in North Carolina.

58.     The Las Vegas client retained Claggett & Sykes and in 2018, Claggett & Sykes filed a complaint on behalf of the client.

59.     Over the course of representing the Las Vegas Client from 2018 to 2020, Claggett & Sykes completed the following discovery (in addition to substantial motion practice at the outset of the case, including a motion for summary judgment)

- Forty (40) Supplements to NRCP 16.1 Disclosures;
- Interrogatories to Dr. Anthony Quinn;
- Requests for Admissions to Dr. Anthony Quinn;
- Requests for Production to Dr. Anthony Quinn;
- Interrogatories to PA Brandon Payzant;
- Requests for Admissions to PA Brandon Payzant;
- Requests for Production to PA Brandon Payzant;
- Two Sets of Interrogatories to Harmony Healthcare;
- Requests for Admissions to PA Harmony Healthcare;
- Two Sets of Requests for Production to Harmony Healthcare;
- Interrogatories to Margaret Williams LCPC;
- Requests for Admissions to Margaret Williams LCPC;
- Requests for Production to Margaret Williams LCPC;
- Interrogatories to Marilyn Abel CPC;
- Requests for Admissions to Marilyn Abel CPC;
- Requests for Production to Marilyn Abel CPC;
- Two Sets of Interrogatories to Summerlin Hospital;
- Requests for Admissions to Summerlin Hospital;
- Three Set of Requests for Production to Summerlin Hospital;
- Depositions of:
    a.  Marilyn Abel;
    b.  Dr. Hammonds;
    c.  Andrew Erne;
    d.  Logan Erne;
    e.  Amber Kerns;
    f.  Kim Mullenix;
    g.  Brandon Payzant, PAC;
    h.  Dr. Quinn;
    i.  Dr. Trombley;
    j.  Dr. Vanduzer;
    k.  Margaret Williams, LCPC
- Subpoenaed LVMPD for the 911 call
- Draft NRCP 30(b)(6) Notice, Summerlin Hospital;
- Draft NRCP 30(b)(6) Notice, Harmony Healthcare;
- Located, requested, and received medical records from all forty-six (46) treating providers;
- Evaluated and outlined all medical records;
- Drafted EDCR 2.34 letters to Dr. Quinn, Summerlin Hospital, and Harmony Healthcare requiring that they update their discovery responses;
- Retained the following expert witnesses:
    a.  Dr. Burroughs, Hospital Administrator;

  b. Dr. Corvin, Psychiatry
  c. Deborah Dominick, RN, Behavior Health Administrator;
  d. Cynthia Wilhelm, CLCP
  e. Dr. Reynard, Eye Doctor; and
  f. Vicki Hutman, LCPC

60. Claggett & Sykes incurred close to $150,000.00 in costs on the case.

61. Defendant Davis was responsible for retaining a hand doctor expert and never did so.

62. Between 2018 and May 2020, neither the client, the client's family, Defendant Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes's representation.

63. In fact, as late as April 28, 2020, Claggett & Sykes lawyers had phone calls with Defendant Davis about the case and everything was fine.

64. On or about May 14, 2020—less than three weeks after Defendant Keenan, Defendant Hoey, and Defendant Entrekin sent the email about Mr. Claggett to the Keenan listservs—Defendant Davis asked Mr. Claggett and Claggett & Sykes's lead medical malpractice partner, Jennifer Morales, for a phone call. They spoke the next day.

65. During the May 15, 2020 phone call, Defendant Davis stated that the client had decided to fire Claggett & Sykes. Mr. Claggett and Mrs. Morales asked why, and Mr. Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. After Mr. Claggett & Mrs. Morales pointed out that the notices were ready to go, Defendant Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. Mr. Claggett & Mrs. Morales pointed out that this was also incorrect. Mr. Claggett & Mrs. Morales asked Defendant Davis what was really going on and Mr. Davis said that he was firing Claggett & Sykes for what Mr. Claggett had done to the Reptile group.

- 13 -

66.     Upon information and belief, Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case. This belief is based on the fact that Mr. Claggett has spoken with at least one other former KBC instructor who said that after Mr. Claggett left the Reptile, Defendant Keenan told the former instructor that he should fire Mr. Claggett off a in which case Mr. Claggett and the former instructor were co-counsel.

67.     Alternatively, upon information and belief, Defendant Davis fired Claggett & Sykes due to Defendant Keenan, Defendant Hoey, and Defendant Entrekin's April 27, 2020 email.

68.     As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.

69.     Further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, and not due to Claggett & Sykes's performance on the case, is that during the May 15, 2020 phone call, Defendant Davis also informed Mr. Claggett and Mrs. Morales that he was withdrawing from the North Carolina case that Mr. Claggett had referred to him. Mr. Davis ultimately did not withdraw from that case but upon information and belief convinced the client to fire Claggett & Sykes from representation.

70.     Defendant Davis and/or the client chose to retain Defendant Shetler as new local Las Vegas counsel. Upon information and belief, Defendant Shetler is a Keenan Trial Institute instructor.

## FIRST CLAIM FOR RELIEF

## (Defamation)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. D/B/A Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. D/B/A Keenan Trial Institute Or The Keenan Edge; Defendant David J. Hoey; And Defendant William Entrekin**

71.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

72.     In the April 27, 2020 email, Defendants, and each of them, made and/or caused to be made unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

73.     Defendants made and/or caused to be made unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States.

74.     Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

75.     Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in

the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

76.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

77.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

78.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

79.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

80.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

81. Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

82. Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

83. As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual special damages and/or will continue to suffer actual special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

84. Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

85. Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

86. Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

87. Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

88.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

89.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

90.     Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

91.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

92.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

93.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

94.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

95.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

96.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

97.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### (Defamation Per Se)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

98.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

99.     In the April 27, 2020 email, Defendants, and each of them, made, or upon information and belief, caused to be made, unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

100.    Defendants made, and/or caused to be made, unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States.

101.    Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

102.    Additionally, the statements made, or caused to be made, by Defendants were defamatory per se, as the statements involved allegations or imputations injurious to Plaintiff in his trade, business, or profession.

103.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

104.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

105.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

106.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

107.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

108.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

109.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

110.    Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual and/or presumed general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

111.    As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual and/or presumed special damages and/or will continue to suffer actual and/or presumed special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

112.   Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

113.   Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

114.   Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

115.   Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

116.   Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

117.   Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

118.   Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

119.   Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

120.   Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

121.   Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

122.   Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

123.   Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

124.   Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

125.   The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

///

///

### THIRD CLAIM FOR RELIEF

#### (Civil Conspiracy)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

126.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

127.    Defendant Keenan, Defendant Hoey, and Defendant Entrekin, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective defaming Plaintiff and causing harm to his reputation in the community and his reputation as a lawyer.

128.    The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff by defaming him.

129.    Upon information and belief, Defendants conspired with each other to publish a false, unprivileged, defamatory statement about Plaintiff to thousands of lawyers across the United States.

130.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

131.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

132.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

133.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

134.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

135.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

136.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

137.     Defendants' actions in conspiring to defame Plaintiff is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

138.     As a further actual and proximate or legal result of Defendants' actions in conspiring to defame Plaintiff, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

139.     Defendant Keenan's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

140.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

141.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

142.     Defendant Hoey's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

143.    Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

144.    Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

145.    Defendant Entrekin's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

146.    Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

147.    Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

148.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

149.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

150.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

151.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

152.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FOURTH CLAIM FOR RELIEF

**(Intentional Interference with Contractual Relations)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

153.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

154.    There existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada.

155.    Defendant Davis had knowledge of this valid contract because he referred the client to Plaintiff and was co-counsel on the case. Upon information and belief, the

remaining Defendants also had knowledge of the contract or had reason to know of its existence.

156.     Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the contractual relationship. Specifically, upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

157.     Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the contract.

158.     Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

159.     Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

160.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

161.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course

1  and scope of his employment with Keenan Law Firm at the time of his aforementioned

2  actions.

3          162.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's

4  actions and for any and all damages flowing therefrom.

5          163.    Upon further information and belief, at the time of his actions alleged above,

6  Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group

7  and was in the course and scope of his employment with Defendant Davis Law Group at the

8  time of his aforementioned actions.

9          164.    Defendant Davis Law Group is vicariously liable for Defendant Davis's

10  actions and for any and all damages flowing therefrom.

11          165.    Defendants' intentional interference is an actual and proximate or legal cause

12  of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand

13  Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law

14  Firm are vicariously liable for any such damages caused by the conduct of Defendant

15  Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by

16  the conduct of Defendant Davis.

17          166.    As a further actual and proximate or legal result of Defendants' intentional

18  interference, Plaintiff has suffered special damages and/or will continue to suffer special

19  damages into the future. The exact amount of such past and future damages is unknown at

20  this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages

21  in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation

22  and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the

23  conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any

24  such damages caused by the conduct of Defendant Davis.

167.    Defendant Keenan's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

168.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

169.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

170.    Defendant Davis's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

171.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

172.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

173.    Defendant Shetler's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

174.    Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

175.    Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

176.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

177.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

178.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

179.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

180.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

181. Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

182. The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FIFTH CLAIM FOR RELIEF

### (Civil Conspiracy)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; and Defendant Travis E. Shetler**

183. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

184. Defendant Keenan, Defendant Davis, and Defendant Shetler, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective of intentionally interfering with Plaintiff's contractual relations by causing Plaintiff's client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff.

185. The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff.

186.    Upon information and belief, Defendants conspired with each other to unlawfully interfere with Plaintiff's contract with its client so as to cause Plaintiff's client to terminate Plaintiff's representation and to replace Plaintiff with Defendant Shetler.

187.    Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

188.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

189.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

190.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

191.    Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

192.    Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

193.    Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

194.    As a further actual and proximate or legal result of Defendants' actions in conspiring to  intentionally interfere with Plaintiff's contractual relations, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

195.    Defendant Keenan's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

196.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

197.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

198.    Defendant Davis's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

199.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

200.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

201.    Defendant Shetler's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

202.    Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

203.    Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

204.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or

ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

205.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

206.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

207.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

208.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

209.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

210.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief - Reverse Piercing the Corporate Veil/Alter Ego)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm and Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; and Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge**

211.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

212.    Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan Law Firm.

213.    Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan Law Firm that Keenan Law Firm could not operate separate and apart from Defendant Keenan and is effectively inseparable from Keenan.

214.    Adherence to the fiction of separation between Defendant Keenan and Keenan Law Firm would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

215.    Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan's Kids Foundation.

216.    Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan's Kids Foundation that Keenan's Kids Foundation could not operate separate and apart from Keenan and is effectively inseparable from Keenan.

217.    Adherence to the fiction of separation between Defendant Keenan and Keenan's Kids Foundation would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

218.    A justiciable controversy exists as to the unity of interest between Defendant Keenan and Keenan's Kids Foundation.

219.    Plaintiff seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant Keenan's Kids Foundation, Inc.

220.    Plaintiff also seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant D.C. Keenan & Associates, P.A.

221.    The actions of Defendant have forced Plaintiff to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable sum as attorney's fees and costs of suit.

WHEREFORE, Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN CLAGGETT, expressly reserving their right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demands judgment against Defendants, DON C. KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM; KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY; TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive, and each of the defendants as follows:

1.    For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2.    For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

3.    For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4.    For declaratory relief;

- 39 -

5.      For reasonable attorney's fees;

6.      For costs of suit incurred;

7.      For a jury trial on all issues so triable; and

8.      For such other relief as to the Court seems just and proper.

DATED this  3rd  day of  November  2021.


JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
*Attorneys for Plaintiffs*

# EXHIBIT "2"

**Electronically Filed**
**12/22/2021 4:32 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

1  **RMFC**
   MARK J. CONNOT (10010)
2  JOHN M. ORR (14251)
   **FOX ROTHSCHILD LLP**
3  1980 Festival Plaza Drive, #700
   Las Vegas, Nevada 89135
4  (702) 262-6899 tel
   (702) 597-5503 fax
5  mconnot@foxrothschild.com
   jorr@foxrothschild.com
6  *Attorneys for Defendants Brian F. Davis*
   *and Davis Law Group, P.A.*

7

8                          DISTRICT COURT

9                     CLARK COUNTY, NEVADA

10

11  SEAN K. CLAGGETT & ASSOCIATES,        Case No.  A-21-843639-C
    LLC D/B/A CLAGGETT & SYKES LAW        Dept.  15
12  FIRM, A NEV ADA LIMITED LIABILITY
    COMPANY; SEAN K. CLAGGETT, AN
13  INDIVIDUAL,                           **NOTICE OF REMOVAL TO FEDERAL**
                                          **COURT**
14                         Plaintiffs,
          V.
15
    DON C. KEENAN, AN INDIVIDUAL; D.C.,
16  KEENAN & ASSOCIATES, P.A. D/B/A
    KEENAN LAW FIRM, A GEORGIA
17  PROFESSIONAL ASSOCIATION;
    KEENAN'S KIDS FOUNDATION, INC.,
18  D/B/A KEENAN TRIAL INSTITUTE
    AND/OR THE KEENAN EDGE, A
19  GEORGIA NON-PROFIT CORPORATION;
    BRIAN F. DAVIS, AN INDIVIDUAL;
20  DAVIS LAW GROUP, P.A., A NORTH
    CAROLINA PROFESSIONAL
21  ASSOCIATION; DAVID J. HOEY, AN
    INDIVIDUAL; TRAVIS E. SHETLER, AN
22  INDIVIDUAL; WILLIAM ENTREKIN, AN
    INDIVIDUAL; DOES I-X; AND ROE
23  BUSINESS ENTITIES XI-XX, INCLUSIVE,

24                         Defendants.

25

26       **PLEASE TAKE NOTICE** that a Petition for Removal of this action was filed by

27  Defendants Brian F. Davis and Davis Law Group, P.A. (collectively "Davis Defendants"), on

28  December 22, 2021, in the United States District Court for the District of Nevada.  A copy of the

1   Petition for Removal is attached hereto as Exhibit 1, and is served and filed herewith.   The filing

2   of this Notice of Removal with the Clerk of this Court effectuates the removal of this action in

3   accordance with 28 U.S.C. § 1446(d).

4         DATED this 22nd day of December, 2021.

5

6                                            **FOX ROTHSCHILD LLP**

7

8                                            */s/ Mark J. Connot*
                                             MARK J. CONNOT (10010)
9                                            JOHN M. ORR (14251)
                                             Festival Plaza Drive, Suite 700
10                                           Las Vegas, NV 89135
                                             (702) 262-6899 tel
11                                           (702) 597-5503 fax
                                             mconnot@foxrothschild.com
12                                           jorr@foxrothschild.com
                                             *Attorneys for Defendants Brian F. Davis*
13                                           *and Davis Law Group, P.A.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 22nd day of December, 2021, and pursuant to FRCP 5(b), a copy of the foregoing **NOTICE OF REMOVAL TO FEDERAL COURT** was served via the Court's electronic filing system to the parties listed below:

Jared B. Anderson, Esq.
David J. Churchill, Esq.
Injury Lawyers of Nevada
4001 Meadows Lane
Las Vegas, Nevada 89107
Tel: 702-868-8888
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiffs*

*/s/ Doreen Loffredo*
An Employee of Fox Rothschild LLP

# EXHIBIT 1

# EXHIBIT 1

1   MARK J. CONNOT (10010)
    JOHN M. ORR (14251)
2   **FOX ROTHSCHILD LLP**
    1980 Festival Plaza Drive, #700
3   Las Vegas, Nevada 89135
    (702) 262-6899 tel
4   (702) 597-5503 fax
    mconnot@foxrothschild.com
5   jorr@foxrothschild.com
    *Attorneys for* Defendants *Brian F. Davis*
6   *and Davis Law Group, P.A.*

7

           UNITED STATES DISTRICT COURT
8
              DISTRICT OF NEVADA
9

10

11   SEAN K. CLAGGETT & ASSOCIATES, LLC    Case No.
    D/B/A CLAGGETT & SYKES LAW FIRM, A
    NEVADA LIMITED LIABILITY COMPANY;    (Removal from District Court, Clark County
12   SEAN K. CLAGGETT, AN INDIVIDUAL,    Nevada, Case No. A-21-843639-C
                                    Department 15)
13                 Plaintiffs,
14   V.    **PETITION FOR REMOVAL**

15   DON C. KEENAN, AN INDIVIDUAL; D.C.,
    KEENAN & ASSOCIATES, P.A. D/B/A
16   KEENAN LAW FIRM, A GEORGIA
    PROFESSIONAL ASSOCIATION; KEENAN'S
17   KIDS FOUNDATION, INC., D/B/A KEENAN
    TRIAL INSTITUTE AND/OR THE KEENAN
18   EDGE, A GEORGIA NON-PROFIT
    CORPORATION; BRIAN F. DAVIS, AN
19   INDIVIDUAL; DAVIS LAW GROUP, P.A., A
    NORTH CAROLINA PROFESSIONAL
20   ASSOCIATION; DAVID J. HOEY, AN
    INDIVIDUAL; TRAVIS E. SHETLER, AN
21   INDIVIDUAL; WILLIAM ENTREKIN, AN
    INDIVIDUAL; DOES I-X; AND ROE
22   BUSINESS ENTITIES XI-XX, INCLUSIVE,

23                Defendants.

24

25        Defendants Brian F. Davis and Davis Law Group, P.A., by and through their counsel of

26   record, Mark J. Connot and John M. Orr of the law firm Fox Rothschild LLP, petition to remove

27   this action from the Eighth Judicial District Court for Clark County, Nevada, to the United States

28   District Court for the District of Nevada pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support

thereof, Defendants submit the following memorandum of points and authorities.

**A.    INTRODUCTION**

On November 3, 2021, a civil action was filed in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C. A true and correct copy of the Complaint and Summons served on Mr. Davis and Davis Law Group is attached hereto as **Exhibit "A**." The thrust of Plaintiffs' claim against Defendants Brian F. Davis and Davis Law Group, P.A. is that they conspired with other defendants in that action to have Claggett & Sykes fired as counsel for Logan Erne, the plaintiff in a medical malpractice lawsuit filed in the Clark County, Nevada Eighth Judicial Court on April 25, 2018, styled *Logan Erne v. Margaret Williams LCPC et al*, Case. No. A-18-773499-C (the "Erne Matter").

This Court has jurisdiction over this matter under 28 U.S.C. § 1332. Each of the Defendants to this action are diverse from both Plaintiffs with the exception of Defendant Travis Shetler. Plaintiffs, however, fraudulently joined Mr. Shetler for the sole purpose of defeating diversity jurisdiction. His citizenship should, therefore, be disregarded for purposes of assessing diversity under § 1332. Plaintiffs asserted claims against Mr. Shetler for intentional interference with contractual relations ("intentional interference") and civil conspiracy. As set forth below, Plaintiffs failed to state cognizable claims against Mr. Shetler, and this failure was obvious. To state a claim for intentional interference under Nevada law, Plaintiffs must show, *inter alia*, that Mr. Shetler intentionally acted to disrupt the agreement between Plaintiffs and Mr. Erne and that such acts actually disrupted the agreement. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003).

Plaintiffs' sole factual allegation against Mr. Shetler is that he "called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes." Compl. ¶ 68. This attorney apparently refused to accept the case. *Id.* When assumed true, this allegation does not amount to an actionable claim for intentional interference. Moreover, the evidence referenced herein shows that Mr. Shetler took no intentional steps to interfere with the relevant agreement, let alone any actions that actually caused the termination of Claggett & Sykes. As a result, this Court

should conclude that Plaintiffs fraudulently joined Mr. Shetler and that his citizenship should not be considered for purposes of assessing diversity jurisdiction. Because the remaining Defendants are all diverse from the Plaintiffs, and given the amount in controversy exceeds $75,000, this case should be removed to the District of Nevada.

**B.     STATEMENT OF RELEVANT FACTS**

Defendant Brian Davis is a resident of North Carolina where he is a licensed attorney and the founding partner of Defendant Davis Law Group, a North Carolina professional association. In or around May 23, 2017, Mr. Davis contacted Claggett & Sykes about serving as local counsel for Logan Erne in a medical malpractice case that arose in Clark County, Nevada. Compl. ¶ 56. Claggett & Sykes agreed to act as local counsel, and Mr. Erne signed a Medical Malpractice Contingency Fee Agreement with Claggett & Sykes on May 31, 2017. Med. Mal. Fee Agreement, attached hereto as **Exhibit "B."** Mr. Erne was the only signatory to the Agreement. *Id.* Claggett & Sykes filed the Erne Matter in the Clark County Eighth Judicial Court on April 25, 2018, Erne Matter Compl., attached hereto as **Exhibit "C."** Over the course of the litigation in the Erne Matter, Mr. Erne became dissatisfied with Claggett & Sykes representation, so he chose to terminate the Agreement with Claggett & Sykes and to retain new counsel. Compl. ¶ 65. Mr. Erne terminated Claggett & Sykes on May 15, 2020. *Id*. On or around May 17, 2020, Mr. Davis contacted Defendant Travis Shetler to inquire whether he would be willing to serve as local counsel for Mr. Erne to replace Claggett & Sykes. Shetler, T., ¶ 10, Dec. 20, 2021, attached hereto as **Exhibit "D."** Mr. Shetler agreed. Prior to May 17, 2020, Mr. Davis and Mr. Shetler never discussed the Erne Matter or Claggett & Sykes representation of Mr. Erne. *Id.* ¶¶ 10–11. Mr. Shetler had no other communications with any other person relative to the Erne Matter prior to May 15, 2020. *Id.*

Rather than accept the simple truth that Mr. Erne was dissatisfied with Plaintiffs' representation, Plaintiffs allege that each of the Defendants in this matter were part of a cabal to sabotage Plaintiffs and cause Mr. Erne to terminate his Agreement with Claggett & Sykes. *See generally* Compl. With respect to Mr. Shetler, Plaintiffs allege that he called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Compl. ¶ 68. Mr. Shetler's attempt was fruitless, however. This unidentified attorney refused to accept the case.

1  *Id.* Plaintiffs do not allege that Mr. Shetler ever had any communications with any other named

2  Defendant (or anyone else) prior to May 17, 2020, about the Erne Matter. Mr. Shetler's first

3  communication with Mr. Davis was on May 17, 2020, two days after Mr. Erne terminated Claggett

4  & Sykes. Ex. D. ¶ 10.

5  **C.    LEGAL ARGUMENT**

6    **1.    This Court has Jurisdiction Over this Matter Under 28 U.S.C. § 1332(a)(1)**

7    Section 1332 provides jurisdiction to federal courts where the amount in controversy

8  exceeds $75,000 and where there is complete diversity of citizenship, i.e. each of the plaintiffs must

9  be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis,* 519 U.S. 61,

10  68, (1996). One exception, however, to the requirement of complete diversity is where a non-

11  diverse defendant has been "fraudulently joined." *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190,

12  1193 & n. 1 (9th Cir.1988). Joinder of a non-diverse defendant is deemed fraudulent, and the

13  defendant's presence in the lawsuit is ignored for purposes of determining diversity, "[i]f the

14  plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious

15  according to the settled rules of the state." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339

16  (9th Cir.1987). In asserting fraudulent joinder, the defendant "is entitled to present the facts

17  showing the joinder to be fraudulent." *Id.*

18    **(a)    The Amount in Controversy Exceeds $75,000**

19    Federal courts apply the "legal certainty" test to determine whether a complaint meets

20  § 1332(a)'s amount in controversy requirement. *See Pachinger v. MGM Grand Hotel–Las Vegas,*

21  *Inc.*, 802 F.2d 362, 363–64 (9th Cir.1986) (adopting the "legal certainty" test). Under this test, "the

22  sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* Plaintiffs'

23  claimed damages in this case exceed $75,000. Plaintiffs' claimed damages include, but may not be

24  limited to, the reputational harm to Mr. Claggett and Claggett & Sykes and the contingent fees and

25  costs that could be potentially recovered by the Plaintiffs in the Erne Matter. Plaintiffs filed a Notice

26  of Attorney's lien in the Underlying Case for $288,512.06, which includes $158,264.46 in costs.

27  Notice of Attorney's Lien, attached hereto as **Exhibit "E."** Based on this, Plaintiffs' claims far

28  exceed § 1332's $75,000 threshold.

**(b)     Each of the Defendants in this Action Are Diverse from the Plaintiffs**

Defendant Don Keenan ("Mr. Keenan") is a resident of Walton County, Florida. Compl. ¶ 4. Defendant D.C. Keenan & Associates P.A. dba Keenan Law Firm is a professional association organized under the laws of Georgia. Compl. ¶ 5. Defendant Keenan's Kids Foundation, Inc. dba Keenan Trial Institute is a non-profit corporation organized and existing under the laws of the State of Georgia. Compl. ¶ 5. Defendant David J. Hoey is a resident of Middlesex, Massachusetts. Compl. ¶ 9. Defendant William Entrekin is a resident of Lumpkin County, Georgia. Compl. ¶ 11. Plaintiff Sean Claggett is a resident of Clark County, Nevada. Compl. ¶ 3. Plaintiff Claggett & Sykes is a limited liability company existing under the laws of Nevada. Compl. ¶ 2. The only Defendant that is not diverse from Plaintiffs is Mr. Shetler. Plaintiffs, however, fraudulently joined Mr. Shetler for the sole purpose of defeating diversity jurisdiction. His presence in the lawsuit should, therefore, be ignored for the purposes of considering diversity.

**(c)     Plaintiffs Fraudulently Joined Mr. Shetler to Defeat Federal Jurisdiction**

Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe,* 811 F.2d at 1339. In asserting fraudulent joinder, the defendant "is entitled to present the facts showing the joinder to be fraudulent." *Id.* In this case, Plaintiffs failed to allege an actionable claim for intentional interference and civil conspiracy against Mr. Shetler.

**i.     Plaintiffs Failed to State a Claim for Intentional Interference Against Mr. Shetler**

To assert a claim for intentional interference under Nevada law, the plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. Plaintiffs failed to allege that Mr. Shetler intentionally and actually interfered with the Agreement and caused Mr. Erne to terminate the Agreement with Plaintiffs. Plaintiffs' sole allegation relative to Mr. Shetler is:

> As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, **Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.**

Compl. ¶ 68. When assumed true, these allegations reflect that Mr. Shetler did nothing to *actually* interfere with the Agreement. In fact, the Complaint alleges the attorney Mr. Shetler spoke with did not agree to take the case. Moreover, there is no logical or factual nexus between Mr. Shetler making a phone call to an attorney and Mr. Erne's decision to terminate Claggett & Sykes. The Complaint does not allege that Mr. Shetler communicated with or encouraged Mr. Erne to terminate the Agreement with Mr. Claggett. Indeed, Mr. Erne was the only person with power to terminate the Agreement. The allegations in the Complaint make no showing that Mr. Shetler did anything to cause or influence Mr. Erne's decision to terminate the Agreement.

Not only does the Complaint fail to allege that Mr. Shetler did anything to cause Mr. Erne to fire Claggett & Sykes, Mr. Shetler in fact did nothing to interfere with the agreement. Contrary to the Complaint's allegations, Mr. Shetler was never on a phone call with Mr. Keenan where they discussed the Erne Matter with a different attorney in an effort to replace Claggett & Sykes. Ex. D. ¶ 9. Mr. Shetler otherwise had no communications relative to the Erne matter until May 17, 2020, two days after Mr. Erne terminated Claggett & Sykes, when he spoke with Mr. Davis about substituting into the case as new counsel. *Id.* ¶ 10. Mr. Shetler could not interfere with a contract that had already been terminated, especially when he had no prior knowledge of the contract. Based on the foregoing, Plaintiffs' intentional interference claim against Mr. Shetler is so attenuated, so contradicted by the evidence, that this Court can conclude that Plaintiffs fraudulently joined Mr. Shetler for the sole purpose of defeating diversity jurisdiction. Mr. Shetler's presence in this lawsuit, therefore, should be disregarded for purposes of assessing diversity jurisdiction.

/ / /

/ / /

ii.     **Plaintiffs Failed to State a Claim for Civil Conspiracy Against Mr. Shetler**

To assert a cognizable claim for civil conspiracy, the plaintiff must show that "two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The plaintiff "must provide evidence of an explicit or tacit agreement between the alleged conspirators." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998).

In this case, for the same reasons stated above regarding Plaintiffs' intentional interference claim, Plaintiffs have failed to allege any facts that Mr. Shetler acted intentionally to influence or cause Mr. Erne to fire Claggett & Sykes. Indeed, the only action Plaintiffs allege that Mr. Shetler took was to talk to another attorney about replacing Claggett & Sykes. But Plaintiffs allege that this attorney refused to accept the case, and Mr. Shetler's written declaration definitively disproves this allegation Ex. D. ¶ 9. Even when assumed true, this allegation does nothing to show that Mr. Shetler did anything to actually damage Plaintiffs or cause Mr. Erne to terminate the agreement with Claggett & Sykes. Plaintiffs allege no facts that show Mr. Shetler attempted to influence or encourage Mr. Erne to terminate the agreement. Plaintiffs further allege no facts indicating an explicit or tacit agreement between Mr. Shetler and anyone else to encourage Mr. Erne to terminate the agreement. For these reasons, Plaintiffs failed to state an actionable claim for civil conspiracy against Mr. Shetler.

**D.     CONCLUSION**

Based on the foregoing, it is obvious that Plaintiffs fraudulently joined Defendant Travis Shetler for purposes of defeating diversity jurisdiction. Plaintiffs failed to state an actionable claim against Mr. Shetler for intentional interference and civil conspiracy. As a result, Mr. Shetler's citizenship should not be considered for purposes of the Court's jurisdictional analysis. Because all other Defendants are diverse from both Plaintiffs, and given the amount in controversy exceeds $75,000, Defendants request this action be removed to the District of Nevada.

/ / /

**E.    CONSENT OF SERVED DEFENDANTS**

    Defendants Brian Davis and Davis Law Group, P.A. have obtained the consent of all properly served Defendants to remove this action.

    DATED this 22nd day of December, 2021.

                              **FOX ROTHSCHILD LLP**


                              */s/ Mark J. Connot*
                              MARK J. CONNOT (10010)
                              JOHN M. ORR (14251)
                              Festival Plaza Drive, Suite 700
                              Las Vegas, NV 89135
                              (702) 262-6899 tel
                              (702) 597-5503 fax
                              mconnot@foxrothschild.com
                              *Attorneys for Defendants Brian F. Davis and Davis Law Group, P.A.*

1

2

3

4

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 22nd day of December, 2021, and pursuant to FRCP 5(b), a copy of the foregoing **PETITION FOR REMOVAL** was served via the Court's electronic filing system to the parties listed below:

5

6

7

8

9

Jared B. Anderson, Esq.
David J. Churchill, Esq.
Injury Lawyers of Nevada
4001 Meadows Lane
Las Vegas, Nevada 89107
Tel: 702-868-8888
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiffs*

10

11

12

*/s/ Doreen Loffredo*
An Employee of Fox Rothschild LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  A

SUMM

<div align="center">

### DISTRICT COURT
### CLARK COUNTY, NEVADA

</div>

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | CASE NO.: A-21-843639-C<br>DEPT NO.: XV<br><br><br><br>**SUMMONS** |

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT:** A civil Complaint has been filed by the plaintiff against you for the relief set forth in the Complaint.

<div align="center">

### DAVIS LAW GROUP, P.A.

</div>

1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following:
    a.  File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court.
    b.  Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond, your default will be entered upon application of the plaintiff and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.   The State of Nevada, its political subdivisions. agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Issue at the direction of:

INJURY LAWYERS OF NEVADA

JARED B. ANDERSON, ESQ.  (SBN: 9747)
4001 Meadows Lane
Las Vegas, NV 8917
*Attorney for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT

By: _____ 11/8/2021
Deputy Clerk                    Date
Regional Justice Center     A-21-843639-C
200 Lewis Ave.
Las Vegas, NV  89155
Robyn Rodriguez

SUMM

# DISTRICT COURT
## CLARK COUNTY, NEVADA

SEAN K. CLAGGETT & ASSOCIATES, LLC
D/B/A CLAGGETT & SYKES LAW FIRM, A
NEVADA LIMITED LIABILITY COMPANY;
SEAN K. CLAGGETT, AN INDIVIDUAL,

Plaintiffs,

v.

DON C. KEENAN, AN INDIVIDUAL; D.C.
KEENAN & ASSOCIATES, P.A. D/B/A
KEENAN LAW FIRM, A GEORGIA
PROFESSIONAL ASSOCIATION; KEENAN'S
KIDS FOUNDATION, INC., D/B/A KEENAN
TRIAL INSTITUTE AND/OR THE KEENAN
EDGE, A GEORGIA NON-PROFIT
CORPORATION; BRIAN F. DAVIS, AN
INDIVIDUAL; DAVIS LAW GROUP, P.A., A
NORTH CAROLINA PROFESSIONAL
ASSOCIATION; DAVID J. HOEY, AN
INDIVIDUAL; TRAVIS E. SHETLER, AN
INDIVIDUAL; WILLIAM ENTREKIN, AN
INDIVIDUAL; DOES I-X; AND ROE
BUSINESS ENTITIES XI-XX, INCLUSIVE,

Defendants.

CASE NO.: A-21-843639-C
DEPT NO.: XV

## SUMMONS

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT:** A civil Complaint has been filed by the plaintiff against you for the relief set forth in the Complaint.

### BRIAN F. DAVIS

1.     If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following:
   a.     File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court.
   b.     Serve a copy of your response upon the attorney whose name and address is shown below.

2.     Unless you respond, your default will be entered upon application of the plaintiff and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.     If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.   The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Issue at the direction of:

**INJURY LAWYERS OF NEVADA**

JARED B. ANDERSON, ESQ. (SBN: 9747)
4001 Meadows Lane
Las Vegas, NV 8917
*Attorney for Plaintiff*

**STEVEN D. GRIERSON**
CLERK OF COURT

By: _Robyn Rodriguez_ ___ 11/8/2021
Deputy Clerk                        Date
Regional Justice Center
200 Lewis Ave.
Las Vegas, NV 89155
Robyn Rodriguez

Electronically Filed
11/3/2021 5:16 PM
Steven D. Grierson
CLERK OF THE COURT

1

**COMP**
JARED B. ANDERSON, ESQ. (SBN: 9747)
2   DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
3   4001 Meadows Lane
Las Vegas, Nevada 89107
4   Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
5   david@injurylawyersnv.com
*Attorneys for Plaintiff*

CASE NO: A-21-843639-C
Department 15

6                   DISTRICT COURT

7               CLARK COUNTY, NEVADA

8   SEAN K. CLAGGETT & ASSOCIATES,        Case No.
LLC D/B/A CLAGGETT & SYKES LAW
9   FIRM, A NEVADA LIMITED LIABILITY      Dept. No.
COMPANY; SEAN K. CLAGGETT, AN
10   INDIVIDUAL,                           **COMPLAINT**

11                   Plaintiffs,           **Jury Demand**

12   v.                                    **Exempt from Arbitration – Declaratory
Relief Action**
13   DON C. KEENAN, AN INDIVIDUAL; D.C.
KEENAN & ASSOCIATES, P.A. D/B/A
14   KEENAN LAW FIRM, A GEORGIA
PROFESSIONAL ASSOCIATION;
15   KEENAN'S KIDS FOUNDATION,  INC.,
D/B/A KEENAN TRIAL INSTITUTE
16   AND/OR THE KEENAN EDGE, A
GEORGIA NON-PROFIT CORPORATION;
17   BRIAN F. DAVIS, AN INDIVIDUAL;
DAVIS LAW GROUP, P.A., A NORTH
18   CAROLINA PROFESSIONAL
ASSOCIATION; DAVID J. HOEY, AN
19   INDIVIDUAL; TRAVIS E. SHETLER, AN
INDIVIDUAL; WILLIAM ENTREKIN, AN
20   INDIVIDUAL; DOES I-X; AND ROE
BUSINESS ENTITIES XI-XX, INCLUSIVE,

21                   Defendants.

22

23       Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

24   SYKES LAW FIRM and SEAN K. CLAGGETT by and through their attorneys of record,

- 1 -

DAVID CHURCHILL, ESQ. and JARED ANDERSON, ESQ. of the law firm INJURY

LAWYERS OF NEVADA, bring their causes of action against Defendants, DON C.

KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM;

KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE

KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY;

TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS

ENTITIES XI-XX, inclusive, and each of them, and alleges as follows:

## JURISDICTION, VENUE, AND PARTIES

1.      This Court has jurisdiction over this matter under NRS 14.065 and NRS

4.370(1), as the facts alleged occurred in Clark County, Nevada and involve an amount in

controversy in excess of $15,000.00. Venue is proper pursuant to NRS 13.040, as

Defendants, or any one of them, resided in Clark County, Nevada at the commencement of

this action.

2.      At all times relevant herein, Plaintiff Sean K. Claggett & Associates, LLC

d/b/a Claggett & Sykes Law Firm (hereinafter "Plaintiff" or "Claggett & Sykes"), was and is

a limited liability company organized and existing under the laws of the State of Nevada and

doing business in Clark County, Nevada.

3.      At all times relevant herein, Plaintiff Sean K. Claggett (hereinafter "Plaintiff"

or "Mr. Claggett") was and is a resident of Clark County, Nevada.

4.      Upon information and belief, at all times relevant herein, Defendant Don C.

Keenan (hereinafter "Defendant" or "Keenan"), was and is a resident of Walton County,

Florida.

5.      Upon information and belief, at all times relevant herein, Defendant D. C.

Keenan & Associates P.A. d/b/a Keenan Law Firm (hereinafter "Defendant" or "Keenan

Law Firm"), was and is a professional association organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

6.     Upon information and belief, at all times relevant herein, Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge (hereinafter "Defendant" or "Keenan's Kids Foundation," "Keenan Trial Institute," or "Keenan Edge"), was and is a non-profit corporation organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

7.     Upon information and belief, at all times relevant herein, Defendant Brian F. Davis (hereinafter "Defendant" or "Davis"), was and is a resident of Buncombe County, North Carolina.

8.     Upon information and belief, at all times relevant herein, Defendant Davis Law Group, P.A. (hereinafter "Defendant" or "Davis Law Group"), was and is a professional association organized and existing under the laws of the State of North Carolina and doing business in Clark County, Nevada.

9.     Upon information and belief, at all times relevant herein, Defendant David J. Hoey (hereinafter "Defendant" or "Hoey"), was and is a resident of Middlesex County, Massachusetts.

10.     Upon information and belief, at all times relevant herein, Defendant Travis E. Shetler (hereinafter "Defendant" or "Shetler"), was and is a resident of Clark County, Nevada.

11.     Upon information and belief, at all times relevant herein, Defendant William Entrekin (hereinafter "Defendant" or "Entrekin"), was and is a resident of Lumpkin County, Georgia.

12. Plaintiffs do not know the true names of Defendants Does I through X and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiffs. Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

13. Plaintiffs do not know the true names of Defendants Roe Business Entities XI through XX and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX, are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

14.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

**Background of Defendant Keenan, The Keenan Trial Institute, and the Keenan Edge**

15.    Defendant Keenan is a lawyer who co-authored a trial advocacy book with jury consultant David Ball entitled: Reptile the 2009 Manual of the Plaintiff's Revolution.

16.    Keenan has released several books following the Reptile, mainly books that compile his weekly blog articles.

17.    In the years following the release of the book, Defendant Keenan and Mr. Ball began conducting seminars to expand on the material in the book.

18.    In or around 2013 or 2014, Defendant Keenan and Mr. Ball created the Keenan Ball Trial College ("KBC"), which was a trial college for plaintiff's lawyers based on the Reptile book.

19.    KBC instructors are trial lawyers from around the country who volunteer, with no pay, to instruct at the course.

20.    Defendant Hoey was named the "Dean" of the Keenan Ball Trial College.

21.    Sometime around 2017 or 2018, Defendant Keenan began to phase out use of the Reptile name and began calling it the Keenan Edge. Upon information and belief, Defendant Keenan also phased out Mr. Ball's involvement.

22.    Sometime around 2018 or 2019, Defendant Keenan changed the name of Keenan Ball Trial College to The Keenan Trial Institute.

23.    Upon information and belief, Defendant Shetler is an instructor at The Keenan Trial Institute.

- 5 -

24.     According to Defendant Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all of the material taught through those ventures.

25.     Defendant Keenan says that the Keenan's Kids Foundation is a non-profit organization. Defendant Keenan claims he makes no money off his Reptile or Edge books, or off his Keenan Trial Institute. Defendant Keenan claims he donates all of his proceeds to the Keenan Trial Institute.

26.     Upon information and belief, based on publicly available tax records, Keenan's Kids Foundation made over $2,000,000 in revenue in 2018 from the Keenan Trial Institute and The Keenan Edge ventures. Less than $40,000 of that went to "kids." Upon information and belief, the remainder of the money went to operating The Keenan Trial Institute and The Keenan Edge ventures. Upon information and belief, Keenan uses this money to fund his private jet and to pay his wife a salary of $70,000 a year, despite her having no involvement in the Keenan Trial Institute or The Keenan Edge. Upon information and belief, Keenan Trial College and The Keenan Edge have no paid employees. All staff that organize, manage, and operate Keenan Trial College and The Keenan Edge are employees of Keenan's Kids Foundation.

**Background of Claggett & Sykes's Involvement in the Reptile**

27.     Mr. Claggett is a trial lawyer in Las Vegas. He is the founding partner of Claggett & Sykes Law Firm. Mr. Claggett also owns a focus group company based in Las Vegas.

28.     In about 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC.

29.     Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC.

30.     Mr. Claggett and his partners, William Sykes and Matthew Granda also managed the Nevada Reptile listserv, which is an email listserv for Nevada plaintiff's lawyers who had attended Reptile seminars and/or KBC courses.

31.     The Nevada listserv was one of the largest and most active listservs in the nation.

32.     Mr. Claggett became one of the best-known instructors at KBC and became very close with Defendant Keenan. In 2016, Mr. Claggett was one of four KBC instructors who got invited to attend a trip to Greece with Defendant Keenan to participate in an intense multi-day training on Reptile material.

33.     Around that same time Defendant Keenan co-counseled in Nevada on one of Claggett & Sykes's cases.

34.     In 2018, the relationship between Mr. Claggett and Defendant Keenan began to suffer. Mr. Claggett was conducting trials that, according to Defendant Keenan, did not strictly follow Keenan's teachings. Defendant Keenan made clear that his instructors were not to conduct trials outside of the strict confines of what he taught; as he put it, not to "go off the reservation."

35.     Defendant Keenan, usually through his lead KBC instructors, Defendant Hoey and Mindy Bish, enforced strict loyalty to the Reptile, and only the Reptile. For example, a KBC instructor attended another trial college and sent an email to his state's listserv stating that he found the course useful and recommended the college to others. Defendant Keenan immediately banned this instructor from all things Reptile.

36.     Another example occurred when Mr. Claggett conducted a product liability trial in 2018, where his co-counsel Sam Harding gave an opening statement that lasted over an hour, and where Mr. Claggett settled with one of the defendants before trial—both are against Defendant Keenan's teachings.

37.     Shortly after the trial, KBC conducted a course in Las Vegas. Defendant Keenan appeared via videoconference and announced to all the participants, that he was so disturbed that one of his instructors would give an opening statement over an hour that he had lost sleep and that it went against the Reptile teachings. Defendant Keenan said all of this while one of Claggett & Sykes's lawyers was an instructor at that same KBC course.

38.     Later in 2018, one of Defendant Keenan's fellows (Keenan has a system where he invites lawyers to conduct a "fellowship" with his law firm for a year for $30,000), sent an email to the Nevada Reptile listserv lambasting anyone who would charge more than $250 per hour to conduct a focus group. The fellow also stated that Defendant Keenan or others from his organization would come to Las Vegas and conduct focus groups for $250. Upon information and belief, the fellow sent this email at Defendant Keenan's direction. Upon information and belief, neither Defendant Keenan nor his KBC staff ever lived up to the promise to come to Nevada to conduct these focus groups.

39.     Upon information and belief, this email was a direct attack on Mr. Claggett's focus group company.

40.     Around the same time, Mr. Claggett learned that Defendant Keenan was requiring all of the KBC instructors to sign agreements where if they did not volunteer at least three times a year to teach KBC courses that they would have to pay a fine of $25,000.00.

41. Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all the attorneys at Claggett & Sykes were resigning from being KBC instructors and listserv moderators.

42. Keenan and/or his KBC staff immediately removed Claggett & Sykes attorneys from the Nevada listserv.

43. Upon information and belief, after removing the Claggett & Sykes lawyers from the listserv, participation in the Nevada Reptile listserv declined significantly.

**Mr. Claggett's Involvement with Case Analysis**

44. After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other lawyers at Claggett & Sykes began to attend other trial courses, such as the Trojan Horse Method, Mark Lanier's Trial Academy, and Rick Friedman's Ethos.

45. Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. These programs were done under the name, Case Analysis.

46. In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. Mr. Claggett did not receive any money for teaching this course.

47. During the COVID-19 shutdown, the Trojan Horse Method/Case Analysis founder organized daily, free webinars for plaintiff's lawyers across the country. Mr. Claggett volunteered his time and frequently taught two webinars a week between March and June of 2020.

48. In April 2020, Defendant Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire methods. This was somewhat ironic in that Mr. Claggett and his team of

lawyers were chastised and essentially excommunicated from the Reptile group for "going off the reservation" of the way Keenan required trials to be conducted.

49. On April 27, 2020, Defendant Entrekin, sent an email to all of the state Reptile listservs. The content of the email was written by Defendant Hoey. Upon information and belief, Defendant Hoey wrote the email at the direction of Defendant Keenan.

50. Upon information and belief, the email went out to over 4,000 lawyers across the country.

51. The email stated:

All-

I write to you all as the Dean of the Keenan Trial Institute.

KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

> There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats............Claggett doesn't care and it hurts us all.
>
> Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.
>
> You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

52.     In May 2020, The Keenan Edge took out an advertisement in the State Bar of Nevada's magazine, Nevada Lawyer. Upon information and belief, this was the first advertisement The Keenan Edge had ever published in Nevada.

**Defendant Davis, Defendant Davis Law Group, and Defendant Shetler's Involvement**

53.     Defendant Davis is an attorney based in North Carolina. He is also an instructor at the KBC and/or Keenan Trial Institute.

54.     Upon information and belief, Defendant Davis is an owner, officer, and/or director of Davis Law Group, a law firm based in Asheville, North Carolina.

55.     Mr. Claggett met Defendant Davis through the Reptile and KBC courses.

56.     In or around 2017, Defendant Davis asked Claggett & Sykes to co-counsel with him and his law firm on a medical malpractice case in Las Vegas. The client's family was originally from North Carolina and retained Defendant Davis and Davis Law Group.

57.     At the same time, Mr. Claggett asked Defendant Davis to speak with a client who had a potential case in North Carolina. That client retained Defendant Davis and Defendant Law Group, and Defendant Davis filed a lawsuit on behalf of the client in North Carolina.

58.     The Las Vegas client retained Claggett & Sykes and in 2018, Claggett & Sykes filed a complaint on behalf of the client.

59. Over the course of representing the Las Vegas Client from 2018 to 2020, Claggett & Sykes completed the following discovery (in addition to substantial motion practice at the outset of the case, including a motion for summary judgment)

- Forty (40) Supplements to NRCP 16.1 Disclosures;
- Interrogatories to Dr. Anthony Quinn;
- Requests for Admissions to Dr. Anthony Quinn;
- Requests for Production to Dr. Anthony Quinn;
- Interrogatories to PA Brandon Payzant;
- Requests for Admissions to PA Brandon Payzant;
- Requests for Production to PA Brandon Payzant;
- Two Sets of Interrogatories to Harmony Healthcare;
- Requests for Admissions to PA Harmony Healthcare;
- Two Sets of Requests for Production to Harmony Healthcare;
- Interrogatories to Margaret Williams LCPC;
- Requests for Admissions to Margaret Williams LCPC;
- Requests for Production to Margaret Williams LCPC;
- Interrogatories to Marilyn Abel CPC;
- Requests for Admissions to Marilyn Abel CPC;
- Requests for Production to Marilyn Abel CPC;
- Two Sets of Interrogatories to Summerlin Hospital;
- Requests for Admissions to Summerlin Hospital;
- Three Set of Requests for Production to Summerlin Hospital;
- Depositions of:
  a. Marilyn Abel;
  b. Dr. Hammonds;
  c. Andrew Erne;
  d. Logan Erne;
  e. Amber Kerns;
  f. Kim Mullenix;
  g. Brandon Payzant, PAC;
  h. Dr. Quinn;
  i. Dr. Trombley;
  j. Dr. Vanduzer;
  k. Margaret Williams, LCPC
- Subpoenaed LVMPD for the 911 call
- Draft NRCP 30(b)(6) Notice, Summerlin Hospital;
- Draft NRCP 30(b)(6) Notice, Harmony Healthcare;
- Located, requested, and received medical records from all forty-six (46) treating providers;
- Evaluated and outlined all medical records;
- Drafted EDCR 2.34 letters to Dr. Quinn, Summerlin Hospital, and Harmony Healthcare requiring that they update their discovery responses;
- Retained the following expert witnesses:
  a. Dr. Burroughs, Hospital Administrator;

b.   Dr. Corvin, Psychiatry
c.   Deborah Dominick, RN, Behavior Health Administrator;
d.   Cynthia Wilhelm, CLCP
e.   Dr. Reynard, Eye Doctor; and
f.   Vicki Hutman, LCPC

60.     Claggett & Sykes incurred close to $150,000.00 in costs on the case.

61.     Defendant Davis was responsible for retaining a hand doctor expert and never did so.

62.     Between 2018 and May 2020, neither the client, the client's family, Defendant Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes's representation.

63.     In fact, as late as April 28, 2020, Claggett & Sykes lawyers had phone calls with Defendant Davis about the case and everything was fine.

64.     On or about May 14, 2020—less than three weeks after Defendant Keenan, Defendant Hoey, and Defendant Entrekin sent the email about Mr. Claggett to the Keenan listservs—Defendant Davis asked Mr. Claggett and Claggett & Sykes's lead medical malpractice partner, Jennifer Morales, for a phone call. They spoke the next day.

65.     During the May 15, 2020 phone call, Defendant Davis stated that the client had decided to fire Claggett & Sykes. Mr. Claggett and Mrs. Morales asked why, and Mr. Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. After Mr. Claggett & Mrs. Morales pointed out that the notices were ready to go, Defendant Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. Mr. Claggett & Mrs. Morales pointed out that this was also incorrect. Mr. Claggett & Mrs. Morales asked Defendant Davis what was really going on and Mr. Davis said that he was firing Claggett & Sykes for what Mr. Claggett had done to the Reptile group.

- 13 -

66.     Upon information and belief, Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case. This belief is based on the fact that Mr. Claggett has spoken with at least one other former KBC instructor who said that after Mr. Claggett left the Reptile, Defendant Keenan told the former instructor that he should fire Mr. Claggett off a in which case Mr. Claggett and the former instructor were co-counsel.

67.     Alternatively, upon information and belief, Defendant Davis fired Claggett & Sykes due to Defendant Keenan, Defendant Hoey, and Defendant Entrekin's April 27, 2020 email.

68.     As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.

69.     Further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, and not due to Claggett & Sykes's performance on the case, is that during the May 15, 2020 phone call, Defendant Davis also informed Mr. Claggett and Mrs. Morales that he was withdrawing from the North Carolina case that Mr. Claggett had referred to him. Mr. Davis ultimately did not withdraw from that case but upon information and belief convinced the client to fire Claggett & Sykes from representation.

70.     Defendant Davis and/or the client chose to retain Defendant Shetler as new local Las Vegas counsel. Upon information and belief, Defendant Shetler is a Keenan Trial Institute instructor.

## FIRST CLAIM FOR RELIEF

## (Defamation)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. D/B/A Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. D/B/A Keenan Trial Institute Or The Keenan Edge; Defendant David J. Hoey; And Defendant William Entrekin**

71.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

72.     In the April 27, 2020 email, Defendants, and each of them, made and/or caused to be made unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

73.     Defendants made and/or caused to be made unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States.

74.     Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

75.     Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in

the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

76.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

77.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

78.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

79.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

80.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

81.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

82.     Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

83.     As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual special damages and/or will continue to suffer actual special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

84.     Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

85.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

86.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

87.     Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

- 17 -

88.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

89.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

90.     Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

91.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

92.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

93.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

94.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

95.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

96.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

97.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### (Defamation Per Se)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

98.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

99.     In the April 27, 2020 email, Defendants, and each of them, made, or upon information and belief, caused to be made, unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

100.     Defendants made, and/or caused to be made, unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States.

- 19 -

101.    Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

102.    Additionally, the statements made, or caused to be made, by Defendants were defamatory per se, as the statements involved allegations or imputations injurious to Plaintiff in his trade, business, or profession.

103.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

104.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

105.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

106.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

- 20 -

107.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

108.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

109.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

110.    Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual and/or presumed general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

111.    As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual and/or presumed special damages and/or will continue to suffer actual and/or presumed special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

- 21 -

112.    Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

113.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

114.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

115.    Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

116.    Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

117.    Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

118.    Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

119.    Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

120.    Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

121.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

122.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

123.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

124.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

125.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

///

///

### THIRD CLAIM FOR RELIEF

#### (Civil Conspiracy)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

126.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

127.    Defendant Keenan, Defendant Hoey, and Defendant Entrekin, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective defaming Plaintiff and causing harm to his reputation in the community and his reputation as a lawyer.

128.    The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff by defaming him.

129.    Upon information and belief, Defendants conspired with each other to publish a false, unprivileged, defamatory statement about Plaintiff to thousands of lawyers across the United States.

130.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

- 24 -

131.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

132.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

133.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

134.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

135.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

136.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

137.  Defendants' actions in conspiring to defame Plaintiff is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

138.  As a further actual and proximate or legal result of Defendants' actions in conspiring to defame Plaintiff, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

139.  Defendant Keenan's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

140.  Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

141.  Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

142.  Defendant Hoey's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

143.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

144.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

145.     Defendant Entrekin's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

146.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

147.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

148.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

149.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

150.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

151.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

152.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

153.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

154.    There existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada.

155.    Defendant Davis had knowledge of this valid contract because he referred the client to Plaintiff and was co-counsel on the case. Upon information and belief, the

- 28 -

remaining Defendants also had knowledge of the contract or had reason to know of its existence.

156. Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the contractual relationship. Specifically, upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

157. Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the contract.

158. Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

159. Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

160. Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

161. Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course

and scope of his employment with Keenan Law Firm at the time of his aforementioned

actions.

162.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's

actions and for any and all damages flowing therefrom.

163.     Upon further information and belief, at the time of his actions alleged above,

Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group

and was in the course and scope of his employment with Defendant Davis Law Group at the

time of his aforementioned actions.

164.     Defendant Davis Law Group is vicariously liable for Defendant Davis's

actions and for any and all damages flowing therefrom.

165.     Defendants' intentional interference is an actual and proximate or legal cause

of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand

Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law

Firm are vicariously liable for any such damages caused by the conduct of Defendant

Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by

the conduct of Defendant Davis.

166.     As a further actual and proximate or legal result of Defendants' intentional

interference, Plaintiff has suffered special damages and/or will continue to suffer special

damages into the future. The exact amount of such past and future damages is unknown at

this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages

in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation

and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the

conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any

such damages caused by the conduct of Defendant Davis.

167. Defendant Keenan's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

168. Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

169. Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

170. Defendant Davis's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

171. Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

172. Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

173. Defendant Shetler's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

174. Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

175.     Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

176.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

177.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

178.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm

179.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

180.     Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

181. Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

182. The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### FIFTH CLAIM FOR RELIEF

### (Civil Conspiracy)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; and Defendant Travis E. Shetler**

183. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

184. Defendant Keenan, Defendant Davis, and Defendant Shetler, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective of intentionally interfering with Plaintiff's contractual relations by causing Plaintiff's client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff.

185. The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff.

186. Upon information and belief, Defendants conspired with each other to unlawfully interfere with Plaintiff's contract with its client so as to cause Plaintiff's client to terminate Plaintiff's representation and to replace Plaintiff with Defendant Shetler.

187. Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

188. Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

189. Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

190. Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

191. Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

192. Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

193.     Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

194.     As a further actual and proximate or legal result of Defendants' actions in conspiring to  intentionally interfere with Plaintiff's contractual relations, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

195.     Defendant Keenan's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

196.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

197.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

- 35 -

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

198.    Defendant Davis's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

199.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

200.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

201.    Defendant Shetler's actions in conspiring to intentionally interfere with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

202.    Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

203.    Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

204.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or

1  ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant

2  Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant

3  Keenan's Kids Foundation.

4  205.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously

5  liable for punitive damages for the wrongful acts of Defendant Keenan.

6  206.    Upon information and belief, Defendant Keenan is an officer, director, or

7  managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the

8  wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was

9  expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law

10  Firm.

11  207.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable

12  for punitive damages for the wrongful acts of Defendant Keenan.

13  208.    Upon information and belief, Defendant Davis is an officer, director, or

14  managing agent of Defendant Davis Law Group, and expressly authorized or ratified the

15  wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was

16  expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law

17  Group.

18  209.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable

19  for punitive damages for the wrongful acts of Defendant Davis.

20  210.    The actions of Defendants have forced Plaintiffs to retain counsel to represent

21  them in the prosecution of this action, and they are therefore entitled to an award of a

22  reasonable amount as attorney's fees and costs of suit.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief - Reverse Piercing the Corporate Veil/Alter Ego)

- 37 -

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm and Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; and Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge**

211.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

212.    Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan Law Firm.

213.    Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan Law Firm that Keenan Law Firm could not operate separate and apart from Defendant Keenan and is effectively inseparable from Keenan.

214.    Adherence to the fiction of separation between Defendant Keenan and Keenan Law Firm would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

215.    Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan's Kids Foundation.

216.    Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan's Kids Foundation that Keenan's Kids Foundation could not operate separate and apart from Keenan and is effectively inseparable from Keenan.

217.    Adherence to the fiction of separation between Defendant Keenan and Keenan's Kids Foundation would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

218.    A justiciable controversy exists as to the unity of interest between Defendant Keenan and Keenan's Kids Foundation.

- 38 -

219.    Plaintiff seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant Keenan's Kids Foundation, Inc.

220.    Plaintiff also seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant D.C. Keenan & Associates, P.A.

221.    The actions of Defendant have forced Plaintiff to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable sum as attorney's fees and costs of suit.

WHEREFORE, Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN CLAGGETT, expressly reserving their right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demands judgment against Defendants, DON C. KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM; KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY; TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive, and each of the defendants as follows:

1.    For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2.    For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

3.    For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4.    For declaratory relief;

5.  For reasonable attorney's fees;

6.  For costs of suit incurred;

7.  For a jury trial on all issues so triable; and

8.  For such other relief as to the Court seems just and proper.

DATED this _3rd_ day of _November_ 2021.


JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
*Attorneys for Plaintiffs*

EXHIBIT  B



4101 Meadows Lane, Suite 100 | Las Vegas, NV 89107

## MEDICAL MALPRACTICE CONTINGENCY FEE AGREEMENT

I _Logan JErne_ (hereinafter "Client") hereby retain CLAGGETT & SYKES LAW FIRM, (hereinafter "The Firm") to prosecute a claim on behalf of ~~Sean Claggett W. Sykes~~ ←against Myself _Summerlin Hospital_ and any person, entity or insurance company who may be liable for damages as a result of an incident occurring on the _26_ day of _April_, _2017_ ("the Claim"), and agree as follows:

**ATTORNEY'S FEE shall be either:**

1. **Thirty-Three and One-Third Percent (33 1/3%) of all amounts recovered for the Claim by settlement <u>before</u> the start of Litigation (Litigation starts with the filing of a complaint or a private arbitration proceeding);**
2. **Forty Percent (40%) of all amounts recovered for the Claim by settlement <u>after</u> the start of Litigation up until the first day of trial;**
3. **Forty-Five Percent (45%) of all amounts recovered for the Claim by settlement or judgment <u>after</u> the first day of trial through the jury verdict; or**
4. **Fifty Percent (50%) of all amounts recovered by settlement or judgment after a verdict is entered in the event a motion for either a new trial or to amend the judgment is filed, in the event of an appeal to an Appellate Court, or if a new trial is required.**

**The fee is calculated on the gross recovery before deducting costs, medical bills, or liens. Should litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees, or if the client discharges The Firm, the Attorney's Fee shall be the greater of the above contingency fee or the Attorney's Hourly Rate whichever is greater. The Attorney Hourly Rates are as follows:**

| | |
|---|---|
| **Sean Claggett -** | **$750.00 per hour** |
| **Sam Harding -** | **$750.00 per hour** |
| **Jennifer Morales -** | **$750.00 per hour** |
| **William Sykes -** | **$750.00 per hour** |
| **Matthew Granda -** | **$650.00 per hour** |
| **Christian Augustin -** | **$400.00 per hour** |
| **Law Clerk -** | **$200.00 per hour** |
| **Paralegal -** | **$150.00 per hour** |

Tel. 702.655.2346 | Fax 702.655.3763 | claggettlaw.com

The "Claim" includes and applies to any amounts recovered from third parties, uninsured motorist coverage, underinsured motorist coverage, and/or medical payments coverage ("medpay").

NRS 7.095. YOU HAVE BEEN GIVEN A COPY OF NRS 7.095, WHICH LIMITS FEES WHICH CAN BE CHARGED TO THE PARTY OF A MEDICAL MALPRACTICE CASE BY THEIR ATTORNEY. IN OUR OPINION, THIS STATUTE IS UNCONSTITUTIONAL, AS APPLIED TO THE U.S. CONSTITUTION, AS WELL AS THE STATE OF NEVADA CONSTITUTION. WE HAVE EXPLAINED TO YOU THAT WE WILL NOT REPRESENT YOU PURSUANT TO THE FEE LIMITATIONS OF NRS 7.095, AND THAT WE WILL ONLY REPRESENT YOU IN ACCORDANCE WITH THE FEES LISTED IN THIS MEDICAL MALPRACTICE CONTINGENCY FEE AGREEMENT. WE HAVE ADVISED YOU TO CONTACT AN ATTORNEY OF YOUR CHOICE REGARDING THIS ISSUE PRIOR TO SIGNING THIS AGREEMENT.

ADVOCATES UNITED, LLC. CLIENT ACKNOWLEDGES THAT HE/SHE IS RETAINING CLAGGETT & SYKES LAW FIRM AND IS NOT BEING REPRESENTED BY ADVOCATES UNITED, LLC, WHICH SHALL NOT PROVIDE ANY LEGAL SERVICES IN YOUR CASE.

COSTS advanced by the Firm are expenses necessary to prosecute the Claim and are to be deducted from the recovery after Attorney's fee. In the event there is no recovery, the Firm shall receive no reimbursement for costs. Cost include, but are not limited to: postage, facsimile, telephone, law clerk fees, photocopies, overnight mail fees, investigation expenses, photography and video expenses, evidence storage fees, messenger expenses, filing fees, service of process fees, bond fees, witness fees, expert fees, records fees, outside legal research and writing fees, internet data access fees, court reporter fees, travel expenses, arbitration fees, mediation fees, and jury fees. Additionally, Client agrees that the Firm may borrow funds from a lender to finance or pay such Court costs and litigation expenses and the interest charged by the lender on such borrowed funds will be added to the Court costs and litigation expenses to be deducted from the settlement or recovery.

All necessary costs and expenses incurred by the attorney in the investigation and litigation of client's case shall be deducted from client's portion of any and all sums collected or recovered after attorney's contingent fee is calculated as set forth above. Costs and expenses are defined as monies paid out by attorney on behalf of the client during the processing of client's claim. Client expressly acknowledges that costs include payments made to independent law clerks and nurses who perform research on behalf of

attorney. Client is not required to pay attorney the costs and expenses incurred if client does not collect or recover any monies by way of judgment. Client may be liable for the payment of the opponent attorney's fees and will be liable for the opponent's costs as required by law if the case is lost. The Client will be charged and the Attorney will be credited an automatic $250.00 file and document handling fee towards Costs.

Any and all medical expenses incurred by the Client are payable by the Client, and the Attorney may withhold and pay from any recovery the sums necessary for such payment. Any and all liens, created by statute or contract, and obtained on behalf of client, i.e., hospital, doctors, workers compensation, insurance, etc., shall be paid in full, or as required by law or agreement, from the client's portion of any and all sums collected or recovered after attorney's contingent fee is calculated as set forth above. Should client's portion of any and all sums collected or recovered by way of settlement or judgment be insufficient to satisfy any and all liens in full, client may be solely responsible for the payment of such liens.

**WITHDRAWAL AND DISCHARGE.** Withdrawal by the Firm may be made at any time for any reason upon written notice to the Client's last known address. The Firm's discharge by Client before settlement of the Claim shall be upon written notice to the Firm. Upon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more. Upon withdrawal or discharge, the Firm may assert an attorney's lien on the Client's file and/or recovery to secure payment for the Firm's services, and Client hereby consents to said lien.

**OTHER COUNSEL** within the Firm, or outside counsel, may be associated or employed at the Firm's discretion to prosecute the Claim. The Firm will pay outside counsel's attorney fees out of its own attorney's fee.

**REFERRAL FEES** may be paid to other licensed attorneys and outside counsel. Client acknowledges and agrees that the Firm may, at its discretion, pay a portion of its attorney's fee to referring counsel, with the referring counsel receiving Twenty Percent (20%) of the Firm's attorney's fee in this matter, or less. These referral fees will be paid from the Firm's attorney's fee in this matter, and will not increase the total amount of attorney fees paid by the Client under this Agreement. **No referral fees can be paid to non-attorneys.**

**NO GUARANTEES** concerning success, value, or time to conclude the Claim can be made. The Firm cannot make any guarantees concerning the outcome of the Claim. **In**

**the event of an unsuccessful lawsuit or litigation, Client may be liable for paying the opposing party's attorney's fees and costs.**

**VALID CLAIM.** Client understands that a suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process. **Client warrants that this is a valid claim.**

**LOANS OR ADVANCES** to Client by the Firm cannot be made prior to settlement of Claim. **The Attorney strongly advises that the Client not obtain any prejudgment loans as an advance against the Client's claim.** Additionally, the Firm will not assist Client in obtaining any sort of prejudgment loans. Should Client desire the assistance of the Firm to assist in the preparation of documents for the purpose of obtaining a prejudgment loan, an hourly rate may be charged to the Client for all time spent on said work.

**SERVICES NOT COVERED BY THIS AGREEMENT.** If additional legal services are requested by the Client, whether related or unrelated Client's claim(s) stated herein, and Client requests Attorney to perform such services, additional fee arrangements must be made by Attorney and Client, in writing.

**SETTLEMENT** of the Claim will not be made without Client's consent, but Client agrees to accept a reasonable settlement offer or an offer of available insurance policy limits. Client also agrees, at the Firm's discretion, to a bench trial or mini-jury trial, or alternative dispute resolution (ADR), such as arbitration and mediation, to facilitate a timely resolution of the Claim.

**LIMITED POWER OF ATTORNEY** is expressly given by Client to the Firm to execute and/or sign Client's name and deposit into said Attorney's law firm IOLTA Trust Account any checks or drafts, and to execute any authorizations, drafts, releases and dismissals incidental to the Claim, and to sign and/or acknowledge all complaints, claims, settlements, election of award documents, compromises, order and any other documents as I could do myself.

**COOPERATION** by Client is essential. Client agrees to promptly provide the Firm with all requested information, give notice of change of address and submit medical bills to Client's insurance companies and pay medical expenses as they are incurred unless other arrangements are made with medical providers.

**BANKRUPTCY.** Client represents to Attorney that Client is not presently, nor do they contemplate filing for Bankruptcy protection; that they will inform Attorney should such a course of action be contemplated in the future. Client acknowledges that any recovery

obtained as a result of this claim are subject to such proceedings wherein they are to be scheduled as an asset by Client. Client understands that in the event of Client's bankruptcy, the Firm may be required to turn over Client's portion of the Claim recovery to the bankruptcy Trustee. Client further acknowledges that any expense which the attorney may incur to protect attorney's fees from said result shall be subtracted from the recovery that normally would flow to Client as his/her share of recovery.

**MEDICAL EXPENSES.**  Any and all medical expenses incurred by Client are payable by the Client, and the Firm may withhold from any recovery the sums necessary for payment of such medical expenses.  Client remains ultimately responsible to ensure that all medical bills are paid, as attorneys may be unaware of the existence of certain outstanding medical bills.

**SOCIAL MEDIA.**  The Client agrees to discontinue any use of social media sites during the pendency of the claim.  Continued use of social media sites during the pendency of this Claim can and probably will reduce the value of the Claim.  Client accepts full responsibility for any and all damage caused by social media use to this Claim.

**CLIENT ADVOCATE.**  The Firm employs a medical practitioner to serve in the role of Client Advocate. The Client Advocate will not provide any medical treatment to the Client and any medical information communicated between the Client and the Client Advocate is not to be considered medical advice or a plan for management of a medical condition. There is no doctor/patient relationship established between the Client and the Client Advocate and any information provided by the Client Advocate is not intended to replace advice given to you by any of your treating medical providers.

**FOCUS GROUPS.** The Client agrees to allow the Firm to conduct focus groups at various stages of the Claim, including, but not limited to, before filing a lawsuit, before trial, and during trial. Focus groups are vital to any case that proceeds to trial, and the Firm reserves the right to withdraw from representation if the Client does not allow the Firm to conduct focus groups. All costs incurred as a result of any focus groups will be paid by Client out of any recovery from the Claim. The Firm conducts focus groups through the services of Las Vegas Focus Groups, LLC d/b/a Paramount Focus Groups ("Paramount"). Paramount is solely owned by Sean K. Claggett. You have the right, and it is desirable for you, to seek the advice of independent legal counsel before the Firm conducts any focus groups on your Claim. You have 30 days from the date of signing this Retainer to advise the Firm if you do not want the Firm to conduct focus groups on your case. If you do not advise the Firm within 30 days, this Retainer shall act as your written consent to waive any conflicts that may exist with the Firm's use of Paramount and your written consent to the Firm's use of Paramount to conduct focus groups throughout the Claim.

I HAVE READ AND UNDERSTAND THE ABOVE AND ACCEPT ALL TERMS AND CONDITIONS AS STATED ABOVE.

DATED this ___31___ day of ___May___, 2017.

_____
Client's Signature

_____
Client's Name (Please Print)

EXHIBIT  C

Electronically Filed
4/25/2018 4:00 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**

Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
Matthew S. Granda, Esq.
Nevada Bar No. 012753
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
sclaggett@claggettlaw.com
jmorales@jmoraleslawfirm.com
mgranda@claggettlaw.com
*Attorneys for Plaintiff*

DISTRICT COURT

CLARK COUNTY, NEVADA

LOGAN ERNE, an Individual,

Plaintiff,

v.

MARGARET WILLIAMS, LCPC an Individual; MARILYN S. ABEL, CPC, an Individual; ANTHONY QUINN, M.D., an Individual, BRANDON PAYZANT, PAC, HARMONY HEALTHCARE, LLC, a limited liability company; and SUMMERLIN HOSPITAL & MEDICAL CENTER LLC, a limited liability company. ; DOES I through X; ROE BUSINESS ENTITIES XI through XX, inclusive,

Defendants.

CASE NO.: A-18-773499-C

DEPT NO.: Department 24

**COMPLAINT**

**Arbitration Exemption (Medical Malpractice/ Professional Negligence)**

COMES NOW, Plaintiff, LOGAN ERNE, by and through his attorneys of record, CLAGGETT & SYKES LAW FIRM, for his causes of action against Defendants, MARGARET WILLIAMS, LCPC, MARILYN S. ABEL, CPC intern, BRANDON PAYZANT, PAC, ANTHONY QUINN, M.D., HARMONY HEALTHCARE LLC and SUMMERLIN HOSPITAL AND MEDICAL

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

CENTER LLC, DOES I through X; ROE BUSINESS ENTITIES XI through XX; and each of them, and alleges as follows:

1.     At all times relevant herein, Plaintiff, Logan Erne (hereinafter "LOGAN") was a resident of Clark County, Nevada and is currently residing in North Carolina.

2.     Upon information and belief, at all times relevant herein, Defendant, Margaret Williams, LCPC (hereinafter "WILLIAMS" or "Defendant"), was and is a LCPC (licensed counselor) in the State of Nevada, and a resident of Clark County, Nevada.

3.     Upon information and belief, at all times relevant herein, Defendant, Marilyn S. Abel, (hereinafter "ABEL" or "Defendant"), was and is a CPC intern (licensed counselor) in the State of Nevada, and a resident of Clark County, Nevada

4.     Upon information and belief, at all times relevant herein, Defendant, ANTHONY QUINN, M.D. (hereinafter "QUINN" or "Defendant"), was and is a psychiatrist (licensed counselor) in the State of Nevada, and a resident of Clark County, Nevada.

5.     Upon further information and belief, at all times relevant herein, Harmony Healthcare, LLC (hereinafter "HARMONY" or "Defendant") was and is a limited liability company existing pursuant to the laws of the State of Nevada, and doing business in the State of Nevada, County of Clark.

6.     Upon further information and belief, at all times relevant herein, SUMMERLIN HOSPITAL & MEDICAL CENTER LLC (hereinafter "SUMMERLIN" or "Defendant") was and is a limited liability company existing pursuant to the laws of the State of Nevada, and doing business in the State of Nevada, County of Clark.

7.     That the true names or capacities, whether corporate, associate, individual or otherwise, of Defendants, DOES I through X, inclusive, were and now are physicians including but not limited to any psychiatrist and/or physician supervising Margaret Williams LCPC and MARILYN ABEL, CPC intern pertaining to the evaluation of LOGAN ERNE including surgeons, registered nurses, licensed vocational nurses, practical nurses, registered technicians, aides, attendants, physician's assistants, CRNAs, or paramedical personnel holding themselves out as duly licensed to practice their professions under and by virtue of the laws of the State of Nevada, and were and are now engaged in

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

the practice of their professions in the State of Nevada, and are unknown to Plaintiffs who, therefore, sues said Defendants by such fictitious names. Plaintiffs are informed and believes, and thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and proximately caused injury and damages thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to insert the true names and capacities of DOES I through X when the same have been ascertained and to join such Defendants in this action.

8.  That the true names or capacities of Defendants, ROE BUSINESS ENTITIES XI through XX, inclusive, are unknown to Plaintiffs who, therefore, sues said Defendants by such fictitious names. Defendants designated herein as ROE BUSINESS ENTITIES XI through XX, and each of them, are corporations, firms, partnerships, associations, other medical entities, including but not limited to nursing staffing companies and/or registry nursing companies, emergency physician services group, predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the treatment, diagnosis, surgery, and/or other provision of medical care to Plaintiff herein, and/or otherwise responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Plaintiff is informed and, on that basis believes and thereon alleges, that each of the Defendants designated as a ROE BUSINESS ENTITY is in some manner negligently, vicariously, and/or statutorily responsible for the events and happenings referred to and caused damages to Plaintiff as herein alleged. Plaintiff will seek leave of the Court to amend this Complaint to insert the true names of such Defendants when the same have been ascertained.

9.  Defendants are agents, servants, employees, employers, trade venturers, and/or partners of each other. At the time of the incident described in this Complaint, Defendants were acting within the color, purpose and scope of their relationships, and by reason of their relationships,

Defendants may be jointly and severally and/or vicariously responsible and liable for the acts and omissions of their co-Defendants.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

10.     The Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein, and incorporates the same herein by reference.

11.     On March 25, 2017 Logan moved to Las Vegas to live with his father, Joe Erne (herein after Mr. Erne).

12.     Shortly after moving to Las Vegas, Logan told his father that he was having thoughts of sacrificing the family dog and himself.

13.     Mr. Erne took Logan to Summerlin Hospital emergency room and reported symptoms including strange behavior, agitation, flat affect, paranoia, auditory and visual hallucinations, and delusions.

14.     Mr. Erne told the medical providers at Summerlin Hospital that Logan had a history of self-harm and that on the day of the emergency room admission, Logan had locked family members out of the house as a result of paranoia.

15.     During the emergency room admission, Logan underwent an assessment by Margaret Williams, LCPC.

16.     Logan told the medical providers at Summerlin Hospital that he felt something in his head.

17.     Logan was prescribed medications at Summerlin Hospital.

18.     Mr. Erne indicated that their family did not feel safe, and Logan was certified for admission to a mental health facility.

19.     Margaret Williams, LCPC called Mr. Erne reporting that Logan downplayed the facts that he told her.

20.     Margaret Williams, LCPC reported to Mr. Erne that she did not believe that Logan was a risk of harm to himself and he could either call Logan a taxi or come and get him.

21.     Margaret Williams, LCPC told Mr. Erne to take Logan to Harmony Healthcare office for counseling, follow up with a psychiatrist on Monday April 17, 2017.

Page 4 of 16

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

22.     Mr. Erne took Logan to Harmony Health Care on April 17, 2017 per Margaret Williams recommendation.

23.     On April 17, 2017, Marilyn Abel, CPC diagnosed LOGAN with major depressive disorder, recurrent, unspecified, anxiety disorder, unspecified, and attention deficit disorder, predominantly inattentive type.  She reported symptoms consistent with depression but indicated that there were not any psychotic symptoms.  Other findings include but are not limited to morbid dreams, "bad thoughts" that would not stop.  She also reported that Logan thought he had a tumor in his head during his hospitalization.

24.     The same day, Brandon Payzant, PAC, met with Logan for approximately 15 minutes at Harmony Health Care.  He reported Logan's symptoms as depression, possibly angry mood, low energy, insomnia, hopelessness, worthlessness, and recurrent suicidal ideation without a plan.  He also noted dysthymic mood and blunted affect.  He diagnosed Logan with Major Depressive Disorder Recurrent ADHD, inattention.  His treatment plan consisted of psychotherapy, a return visit in four weeks, and a prescription for Zoloft.

25.     On April 25, 2017, Dr. Quinn noted that LOGAN had a history of auditory hallicuniations and paranoia.  Dr. Quinn documentaed that LOGAN had a paranoid mood and blunted affect. Dr. Quinn knew that LOGAN was actively psychotic.  Dr. Quinn ordered LOGAN to get his blood drawn and prescribed Zyprexa, an antipsychotic medication but his instructions of when to begin taking medicaiton was not clear.

26.     On April 26, 2017, LOGAN completely amputated his right hand and stabbed himself in the right eye in an attempt to enucleate his eyeball due to beliefs that he was possessed by demons and his actions would "cast them out".

27.     LOGAN was transported to UMC trauma on April 26, 2017 and remained hospitalized until he was stable for discharge on May 16, 2017.

///

///

///

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

# FIRST CLAIM FOR RELIEF

## (NEGLIGENCE)

**Against Defendants MARGARET WILLIAMS, LCPC, MARILYN ABEL, CPC AND**

**HARMONY HEALTHCARE, LLC**

28. Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein, and incorporate the same herein by reference.

29. Defendant MARGARET WILLIAMS, LCPC owed a duty of care to Plaintiff, consistent with care prescribed in the counseling field to properly assess, monitor, guide, support, institute proper therapuetic techniques, and recommend treatment for patients suffering from mental health conditions to protect the patient from self harm and protect the public.

30. Defendant MARGARET WILLIAMS, LCPC breached her duty of care when she failed to properly diagnose, assess, monitor, guide, support, institute proper therapuetic techniques and to recommend and/or institute a treatment plan to protect LOGAN who suffered from a mental health condition from self mutilation.

31. Defendant MARILYN ABEL, CPC intern, owed a duty of care to LOGAN, consistent with care prescribed in the counseling field and  by Certified Professional Counselors to properly assess, monitor, guide, support, institute, proper therapuetic techniques and recommend treatment for patients suffering from mental health conditions to protect the patient from self mutiliation and protect the public.

32. Defendant MARILYN ABEL, CPC, breached her duty of care when she failed to properly diagnose, assess, monitor, guide, support, institute proper therapuetic techniques and recommend and/or institute a treatment plan to protect LOGAN who suffered from a mental health condition from self mutilation.

33. Defendant HARMONY HEALTHCARE, LLC owed a duty of care to LOGAN consistent with other mental health facilities including but not limited to institute proper policies, procedures, and/or protocols to coordinate care of its patients, and to asesses diagnose, monitor, and treat patients with mental health conditions.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

34.     Defendant HARMONY HEALTHCARE, LLC breached its duty of care when it failed to institute proper policies, procedures, and/or protocols to coordinate care of its patients. Defendant HARMONY HEALTHCARE, LLC also breached its duty of care when it failed to institute proper policies, procedures, and/or protocols to properly assess, diagnose, monitor, and treat patients with mental health conditions.

35.     Upon information and belief, the employees, servants, or agents of Defendant HARMONY HEALTHCARE, LLC including MARILYN ABEL, MARGARET WILLIAMS, BRANDON PAYZANT, and ANTHONY QUINN improperly diagnosed, assessed, monitored, guided, supported, and/ or failed to instituted proper therapeutic techniques, and treatment.

36.     Defendant HARMONY HEALTHCARE, LLC is vicariously liable for its employees', servants', or agents' negligence, and any and all damages flowing therefrom.

37.     Upon further information and belief, MARILYN ABEL, MARGARET WILLIAMS, BRANDON PAYZANT, and ANTHONY QUINN and, and each of them, were employees, servants or agents of, HARMONY HEALTHCARE, LLC at the time of the aforementioned event.

38.     Defendant HARMONY HEALTHCARE, LLC is vicariously liable for MARILYN ABEL, MARGARET WILLIAMS, BRANDON PAYZANT, and ANTHONY QUINN'S negligence, and any other employee(s) of HARMONY HEALTHCARE, LLC involved in diagnosing, assessing, monitoring, guiding, supporting, instituting proper therapeutic techniques and recommending and/or instituting a treatment plan for LOGAN who suffered from a mental health condition.

39.     As a direct and proximate result of the aforesaid negligence and carelessness of Defendants Plaintiff was injured, receiving injuries to the tissue, bones and joints of his body. Plaintiff thereby experienced great pain and anxiety to his body and mind, sustaining injuries and damages in the sum in excess of Ten Thousand Dollars ($10,000.00).

40.     As a further direct and proximate result of the aforesaid negligence and carelessness of Defendants, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of his injuries, and will continue to incur damages for future medical treatment necessitated by the incident-related injuries he has suffered.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

41.     As a further proximate result of the aforementioned negligence and carelessness of Defendants, Plaintiff was required to, and did, employ physicians, surgeons, and other health care providers to examine, treat, and care for him and did incur medical and incidental expenses thereby. The exact amount of such expenses is unknown at this present time, but Plaintiff alleges that he has suffered special damages in excess of Ten Thousand Dollars ($10,000.00).

42.     As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff suffered and will continue to suffer lost wages and/or loss of earning capacity, in an amount to be proven at trial.

43.     The actions of Defendants, and each of them, have forced Plaintiff to retain counsel to represent him in the prosecution of this action, and he is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### (PROFESSIONAL NEGLIGENCE)

**Against All Defendants**

**(Margaret Williams, Marilyn Abel, Brandon Payzant, Anthony Quinn, Harmony Healthcare, and Summerlin Hospital and Medical Center )**

44.     The Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein, and incorporates the same herein by reference.

45.     Defendant Margaret Williams, LCPC owed a duty of care to LOGAN to render medical care and treatment in a professional manner consistent with the standard of care[1] prescribed in her counseling field.

46.     Defendant Marilyn Abel, PCP intern, owed a duty of care to LOGAN to render medical care and treatment in a professional manner consistent with the standard of care[2] prescribed in her counseling field.

_____

[1] See Affidavit of Donald A. Misch, M.D.
[2] Id.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

47. Brandon Payzant, PAC, owed a duty of care to LOGAN to render medical care and treatment in a professional manner consistent with the standard of care[3] prescribed in his field treating mental health patients.

48. ANTHONY QUINN, MD, owed a duty of care to LOGAN to render medical care and treatment in a professional manner consistent with the standard of care prescribed in his field of psychiatry.

49. Defendant HARMONY HEALTHCARE LLC owed a duty of care to LOGAN, consistent with the standard of care[4] prescribed in the mental health field, to institute proper policies, procedures, and/or protocols to coordinate care of its patients. Defendant HARMONY HEALTHCARE, LLC also owed a duty of care to institute policies, procedures, and/or protocols to properly assess, diagnose, monitor, and treat its patients with mental health conditions.

50. Defendant SUMMERLIN HOSPITAL AND MEDICAL CENTER LLC owed a duty of care to LOGAN, consistent with the standard of care[5] prescribed by hospitals treating mental health patients in the emergency room, to institute proper policies, procedures, and/or protocols to properly assess, diagnose, monitor, and treat patients with mental health conditions.

51. Defendant MARGARET WILLIAMS, LCPC, fell below the standard of care[6] by failing to perform an adequate evaluation of LOGAN in the emergency room at SUMMERLIN HOSPITAL AND MEDICAL CENTER, LLC including but not limited to failing to recognize clear signs of psychosis, failure to determine the nature and substance of auditory and visual hallucinations, failure to recognize multiple signs of schizophrenia, failure to identify several red flags for the potential of physical violence to self, failure to make a recommendation for psychiatric hospitalization, and failure to coordinate care with employees of Harmony Healthcare and Summerlin Hospital.

52. Defendant MARILYN ABEL, PCP intern, fell below the standard of care [7] when she failed to obtain additional information regarding the emergency room visit and failed to conduct an

---

[3] See Affidavit of Donald A. Misch, M.D.
[4] Id.
[5] Id.
[6] Id.
[7] Id.

Page 9 of 16

appropriate mental health evaluation, make an appropriate diagnosis, or undertake an appropriate treatment plan on April 17, 2017.

53.    Defendant BRANDON PAYZANT, PAC, fell below the standard of care[8] when he failed to render medical care and treatment in a professional manner consistent with the standard of care[9] prescribed in his field treating mental health patients including failing to conduct an appropriate mental health evaluation, make an appropriate diagnosis, or undertake an appropriate treatment plan on April 17, 2017.

54.    Defendants' actions, and each of them, caused LOGAN to require medical treatment and LOGAN has suffered permanent injuries as a result.

55.    Defendants Marilyn S. Abel, Brandon Payzant, Margaret Williams, and Anthony Quinn, M.D, were employees, agents, and/or servants, or were otherwise acting in the scope of their employment of Defendant Harmony Healthcare when they provided mental health treatment to LOGAN. Defendants Marilyn S. Abel, Brandon Payzant, Margaret Williams, and Anthony Quinn, M.D were under Harmony Healthcare's control, and in the furtherance of Defendant's interest at the time Defendants actions and/or inactions caused injuries to LOGAN.

56.    Defendant Harmony Healthcare, in the capacity of a mental health facility, owed LOGAN a duty to employ staff adequately trained in the care and treatment of patients consistent with the degree of skill and learning possessed by competent personnel practicing in the United States of America under the same or similar circumstances.

57.    Defendant Summerlin Hospital in the capacity of a hospital, by and through its employees, agents and/or servants including Timothy Vanduzer M.D., Brandon Brown PAC, and Margaret Williams were employees, agents, and/or servants, or were otherwise acting in the scope of their employment of Summerlin Hospital when they provided mental health treatment to LOGAN.

58.    Defendant Summerlin Hospital in the capacity of a hospital, providing medical care to the public owed Logan a duty to employ staff adequately trained in the care and treatment of patients consistent with the degree of skill and learning possessed by competent emergency medical personnel

---

[8] See Affidavit of Donald A. Misch, M.D.
[9] Id.

Page 10 of 16

practicing treating mental health patients in the United States of America under the same or similar circumstances.

59.     At all relevant times mentioned herein, Defendants knew or in the exercise of reasonable care should have known, that the provisions of medical care and treatment was of such a nature that, if it was not properly given, was likely to injure the person to whom it was given.

60.     Defendants, and each of them, fell below the standard of care[10] for a health care provider who possesses the degree of professional learning, skill, and ability of other similar health care providers in failing to properly evaluate and treat Logan resulting in significant injuries. The allegations against Defendants are supported by the Affidavit of

61.     Plaintiff thereby experienced great pain, suffering, and anxiety to his body and mind, sustaining injuries and damages in the sum in excess of Ten Thousand Dollars ($10,000.00).

62.     As a further direct and proximate result of the aforesaid negligence and carelessness of Defendants, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of his injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries he has suffered.

63.     As a further proximate result of the aforementioned negligence and carelessness of Defendants, the Plaintiff was required to, and did, employ physicians, surgeons, and other health care providers to examine, treat, and care for him and did incur medical and incidental expenses thereby. The exact amount of such expenses is unknown at this present time, but Plaintiff alleges that he has suffered special damages in excess of Ten Thousand Dollars ($10,000.00).

64.     As a further direct and proximate result of the negligence and carelessness of Defendants, Plaintiff has suffered, and will continue to suffer, pain, suffering, and loss of enjoyment of life in an amount to be proven at trial.

65.     Defendant's failure to properly evaluate and treat Logan's mental health condition, proximately caused Plaintiff to suffer permanent injuries.

---

[10] See Affidavit of Donald A. Misch, M.D.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

66.     As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff suffered and will continue to suffer lost wages and/or loss of earning capacity, in an amount to be proven at trial.

67.     The actions of the Defendants have forced Plaintiff to retain counsel to represent him in the prosecution of this action, and he is therefore entitled to an award of a reasonable amount as attorney fees and costs of suit.

### THIRD CLAIM FOR RELIEF

**(Negligent Hiring, Training, and Supervision)**

**Against Defendants SUMMERLIN HOSPITAL AND MEDICAL CENTER and HARMONY HEALTHCARE, LLC.**

Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein, and incorporates the same herein by reference.

68.     Defendant Harmony Healthcare hired, trained, supervised, and/or retained employees to adequately evaluate and treat mental health patients, within the appropriate standard of care.[11]

69.     Defendant Summerlin Hospital and Medical Center hired, trained, supervised, and/or retained employees to adequately evaluate and treat mental health patients, within the appropriate standard of care.[12]

70.     The Defendants, and each of them, had a duty to hire, properly train, properly supervise, and properly retain competent employees, agents, independent contractors and representatives.

71.     Upon information and belief, Defendants, and each of them, breached their duty by improperly hiring, improperly training, improperly supervising and improperly retaining incompetent employees regarding assessing, diagnosing, monitoring, evaluating, and treating mental health patients.

72.     Defendants' breach of the applicable standard of care[13] directly resulted in Plaintiff sustaining significant injuries, that are likely permanent.

---

[11] See Affidavit of Donald A. Misch, M.D.
[12] Id.
[13] Id.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

73.     Plaintiff thereby experienced great pain, suffering, and anxiety to his body and mind, sustaining injuries and damages in the sum in excess of Ten Thousand Dollars ($10,000.00).

74.     As a further direct and proximate result of the aforesaid negligence and carelessness of Defendants, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of his injuries, and will continue to incur damages for future medical treatment necessitated by incident-related injuries he has suffered.

75.     As a further proximate result of the aforementioned negligence and carelessness of Defendants, the Plaintiff was required to, and did, employ physicians, surgeons, and other health care providers to examine, treat, and care for him and did incur medical and incidental expenses thereby. The exact amount of such expenses is unknown at this present time, but Plaintiff allege that he has suffered special damages in excess of Ten Thousand Dollars ($10,000.00).

76.     As a further direct and proximate result of the negligence and carelessness of Defendants, Plaintiff has suffered, and will continue to suffer, pain, suffering, and loss of enjoyment of life in an amount to be proven at trial.

77.     As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff suffered and will continue to suffer lost wages and/or loss of earning capacity, in an amount to be proven at trial.

78.     The actions of the Defendants have forced the Plaintiff to retain counsel to represent him in the prosecution of this action, and he is therefore entitled to an award of a reasonable amount as attorney fees and costs of suit.

## FOURTH CLAIM FOR RELIEF

**(Vicarious Liability, Corporate Negligence and Ostensible Agency)**

**Against Defendant SUMMERLIN HOSPITAL MEDICAL CENTER, LLC AND HARMONY HEALTHCARE, LLC.**

79.     The Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein, and incorporates the same herein by reference.

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

80.     Employers, masters and principals are vicariously liable for the torts committed by their employees, servants and agents if the tort occurs while the employee, servant, or agent was acting in the course and scope of employment.

81.     The Defendants were the employers, masters, principals, and/or ostensible agents of each other, the remaining Defendant, and other employees, agents, independent contractors and/or representatives who failed to adequately diagnose and treat Logan's mental health condition.

82.     Defendants' breach of the applicable standard of care directly resulted in Plaintiff sustaining significant injuries including but not limited to an amputated right hand and loss of vision in his right eye.

83.     Plaintiff thereby experienced great pain, suffering, and anxiety to his body and mind, sustaining injuries and damages in the sum in excess of Ten Thousand Dollars ($10,000.00).

84.     As a further direct and proximate result of the aforesaid negligence and carelessness of Defendants, Plaintiff has incurred damages, both general and special, including medical expenses as a result of the necessary treatment of his injuries and will continue to incur damages for future medical treatment necessitated by incident-related injuries he has suffered.

85.     As a further proximate result of the aforementioned negligence and carelessness of Defendants, the Plaintiff was required to, and did, employ physicians, surgeons, and other health care providers to examine, treat, and care for him and did incur medical and incidental expenses thereby. The exact amount of such expenses is unknown at this present time, but Plaintiff alleges that he has suffered special damages in excess of Ten Thousand Dollars ($10,000.00).

86.     As a further direct and proximate result of the negligence and carelessness of Defendants, Plaintiff has suffered, and will continue to suffer, pain, suffering, and loss of enjoyment of life in an amount to be proven at trial.

87.     As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff suffered and will continue to suffer lost wages and a loss of earning capacity, in an amount to be proven at trial.

88.     Defendants failure to properly and timely provide medical care and treatment to Plaintiff directly and proximately caused Plaintiff to sustain significant injuries including but not

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

limited to an amputated right hand, loss of vision in his right eye, and an extended recovery period for which Defendants are vicariously liable.[14]

89.     The actions of the Defendants have forced Plaintiff to retain counsel to represent him in the prosecution of this action, and he is therefore entitled to an award of a reasonable amount as attorney fees and costs of suit.

WHEREFORE, Plaintiff, LOGAN ERNE, expressly reserves his right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demand judgment against Defendants MARGARET WILLIAMS, LCPC, MARILYN S. ABEL, ANTHONY QUINN, M.D., HARMONY HEALTHCARE LLC and SUMMERLIN HOSPITAL AND MEDICAL CENTER LLC,

DOES I through X; ROE BUSINESS ENTITIES XI through XX; and each of them against Defendants,; DOES I through X; ROE BUSINESS ENTITIES XI through XX, inclusive and each of the defendants as follows:

1.     For general damages, in an amount in excess of Ten Thousand Dollars ($10,000.00), to be set forth and proven at the time of trial;

2.     For special damages in an amount in excess of Ten Thousand Dollars ($10,000.00), to be set forth and proven at the time of trial;

3.     For reasonable attorney's fees;

4.     For costs and disbursements of this suit; and

///
///
///
///
///
///
///
///

---

[14] See Affidavit of Donald A. Misch, M.D.

5.      For such other relief as to the Court seems just and proper.

DATED this 25th day of April, 2018.

CLAGGETT & SYKES LAW FIRM

*/s/ Jennifer Morales*

_____

Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
Matthew S. Granda, Esq.
Nevada Bar No. 012753
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
*Attorneys for Plaintiff*

EXHIBIT  D

DECLARATION OF TRAVIS E. SHETLER, ESQ.

I, TRAVIS SHETLER, ESQ., declare as follows:

1.      I have personal knowledge of the facts set forth herein, except as to those stated

on information and belief and, as to those, I am informed and believe them to be true.  If called

as a witness, I could and would competently testify to the matters stated herein.

2.      I am a Defendant in a Nevada state court action styled *Sean Claggett &*

*Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al* (Case No.

A-21-843639-C).

3.      I am the attorney of record for Logan Erne in the Nevada state court action styled

*Logan Erne v. Marilyn Abel et al.* (Case No. A-18-773499-C) (the "Erne Matter").

4.      This declaration is submitted in support of Defendants Brian F. Davis' and Davis

Law Group's Petition for Removal.

5.      Plaintiffs allege in this case that I was part of a conspiracy with the other

Defendants to have Plaintiffs Claggett & Sykes and Sean Claggett fired as Mr. Erne's counsel in

the Erne Matter. Plaintiffs also allege that I intentionally interfered with the representation

agreement between Claggett & Sykes and Mr. Erne.

6.      I have reviewed my internal records, including and especially the retainer

agreement that Mr. Erne signed to have me represent him in the Erne Matter.

7.      Mr. Erne executed this agreement on or about May 29, 2020.

8.      Plaintiffs allege in this matter that I was part of an effort along with the other

Defendants to have Claggett & Sykes fired as Mr. Erne's attorney. Plaintiffs specifically allege in

Paragraph 68 of the Complaint that I was on a phone call with Defendant Don Keenan "in an

DocuSign Envelope ID: 5E9FBD7A-E42A-4A2A-BC96-249B3A2FBE9E

attempt to find new counsel to replace Claggett and Sykes."

9.      I was never on a phone call with Mr. Keenan at any time where we discussed the Erne Matter with another attorney in an attempt to replace Claggett & Sykes as Mr. Erne's counsel.

10.     I had no knowledge of the Erne Matter or Claggett & Sykes' involvement in the Erne Matter until May 17, 2020, after Mr. Erne fired Claggett & Sykes. It was on this date when Defendant Brian Davis contacted me about substituting in as counsel in the Erne Matter.

11.     I never had any discussions with anyone, including any of the named Defendants in this matter, prior to May 17, 2020, about the Erne matter.

12.     I never had any discussions with any person, including any of the named Defendants in this action, about firing Claggett & Sykes.

13.     I never made any statements to anyone, including any of the named Defendants in this matter or Mr. Erne, to suggest, let alone encourage, the firing of Claggett & Sykes.

14.     I never took any steps to intentionally interfere with the agreement between Mr. Erne and Claggett & Sykes.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed on December 20 , 2021.



DocuSigned by:

*Travis Shetler*

CAB892C7EBD84CF...

_____

TRAVIS SHETLER, ESQ.

# EXHIBIT  E

Electronically Filed
2/16/2021 12:55 PM
Steven D. Grierson
CLERK OF THE COURT

**LIEN**
Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
sclaggett@claggettlaw.com
jmorales@claggettlaw.com

### DISTRICT COURT
### CLARK COUNTY, NEVADA

LOGAN ERNE, an Individual,

        Plaintiff,

v.

MARGARET WILLIAMS, LCPC an Individual;
MARILYN S. ABEL, CPC, an Individual;
ANTHONY QUINN, M.D., an Individual,
BRANDON PAYZANT, PAC, PHC OF
NEVADA, INC. DBA HARMONY
HEALTHCARE, a foreign corporation; and
SUMMERLIN HOSPITAL & MEDICAL
CENTER LLC, a limited liability company.;
DOES I through X; ROE BUSINESS ENTITIES
XI through XX, inclusive,

        Defendants.

CASE NO.: A-18-773499-C

DEPT NO.: III

**NOTICE OF ATTORNEY'S LIEN**

      NOTICE IS HEREBY GIVEN that CLAGGETT & SYKES LAW FIRM claims a lien for its services upon the claims for relief on behalf of LOGAN ERNE, and any successor and/or predecessor plaintiff in the above-referenced litigation, against any person, entity or insurance company legally liable for damages as a result of the incident occurring on April 26, 2017, that is now the subject of this lawsuit.

      Claggett & Sykes Law Firm claims a lien and upon any and all property or gross amounts recovered (the recovery) that may become available on behalf of LOGAN ERNE and any successor and/or predecessor plaintiff in the above-referenced litigation:

| Jennifer Morales, Esq. | 97.20 hours/$72,900.00 |
|---|---|
| Shannon L. Wise, Esq. | 69.70 hours/$27,880.00 |
| Samuel Harding, Esq. | 23.05 hours/$17,287.50 |
| Moises Garcia | 32.50 hours/$4,875.00 |
| Jocelyn Abrego | 48.70 hours/$7,305.00 |
| Total: | 271.15 hours/$130,247.50 |

Claggett & Sykes Law Firm asserts a lien for attorney fees in the amount of **$130,247.50.**

Claggett & Sykes Law Firm also asserts a lien against LOGAN ERNE for all reasonable case costs advanced and incurred on behalf of the plaintiff in the amount of **$158,264.56**

Accordingly, Claggett & Sykes Law Firm asserts a total lien in this matter of **$288,512.06** for attorney fees and costs.

DATED this 16th day of February 2021.

CLAGGETT & SYKES LAW FIRM

*/s/ Sean K. Claggett*

_____

Sean K. Claggett, Esq.
Nevada Bar No. 008407
Jennifer Morales, Esq.
Nevada Bar No. 008829
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on the 16th day of February 2021, I caused to be served a true and correct copy of the **NOTICE OF ATTORNEY'S LIEN** in the above-captioned case via the following methods pursuant to Rule 9 of the N.E.F.C.R. and N.R.C.P. 5:

| | |
|---|---|
| Robert C. McBride, Esq.<br>Gerald Tan, Esq.<br>CARROLL KELLY TROTTER FRANZEN<br>MCBRIDE & PEABODY<br>8329 W. Sunset Road, Suite 260<br>Las Vegas, NV 89113<br>*Attorneys for Defendant Anthony Quinn, M.D.* | Travis E. Shetler, Esq.<br>LAW OFFICES OF TRAVIS E. SHETLER<br>3202 W. Charleston Blvd<br>Las Vegas, NV 8902<br>*Attorneys for Plaintiff* |
| S. Brent Vogel, Esq.<br>LEWIS BRISBOIS BISGAARD & SMITH,<br>LLP<br>6385 S. Rainbow Blvd., Suite 600<br>Las Vegas, NV 89118<br>*Attorneys for Defendants Margaret Williams,<br>LCPC, Marilyn S. Abel, CPC, Brandon<br>Payzant, PAC and PHC of Nevada, Inc., dba<br>Harmony Healthcare.* | Brian F. Davis, Esq.<br>DAVIS LAW GROUP, PA<br>135 Cherry Street, N<br>Asheville, NC 28801<br>*Attorneys for Plaintiff* |
| Michael J. Shannon, Esq.<br>Brittany A. Lewis, Esq.<br>HALL PRANGLE & SCHOONVELD, LLC.<br>1140 North Town Center Drive, Ste. 350<br>Las Vegas, Nevada 89144<br>*Attorneys for Defendant, Summerlin Hospital<br>Medical Center, LLC* | **VIA Regular and Certified Mail**<br>Logan Erne<br>51 Wilmington Street,<br>Asheville, North Carolina 28806<br>*Plaintiff* |
| Candance C. Herling, Esq.<br>MESSNER REEVES, LLP<br>8945 W. Russell Road #300<br>Las Vegas, NV 89148<br>*Attorneys for Defendant, Summerlin Hospital<br>Medical Center, LLC* | |

*/s/ Moises Garcia*

_____
An Employee of Claggett & Sykes Law Firm

CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
702-655-2346 • Fax 702-655-3763

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm; Sean K. Claggett

**DEFENDANTS**

See Attachment 1

**(b)** County of Residence of First Listed Plaintiff   Clark County, Nevada
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Walton County, Florida
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jared B. Anderson, David J. Churchill, Injury Lawyers of Nevada, 4001 Meadows Lane, LV, NV 89107, Tel: 702-868-8888

Attorneys *(If Known)*

See Attachment 1

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### PRISONER PETITIONS

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
State law claims for intentional Interference with contract and civil conspiracy

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   December 22, 2021

SIGNATURE OF ATTORNEY OF RECORD   /s/ Mark J. Connot

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# ATTACHMENT 1

## I.  DEFENDANTS

Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; David J. Hoey; Travis E. Shetler, William Entrekin

## ATTORNEYS

Mark J. Connot
John M. Orr
Fox Rothschild LLP
1980 Festival Plaza Drive
Suite 700
Las Vegas, NV  89135
Tel: 702-262-6899
Attorneys for Brian F. Davis and Davis Law Group, P.A.