MARK J. CONNOT (10010)
JOHN M. ORR (14251)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
*Attorneys for Defendants Brian F. Davis*
*and Davis Law Group, P.A.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br>V.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C., KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | Case No. 2:21-cv-02237<br><br>**DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, PA UNDER FRCP 12(B)(6)** |

Defendants Brian F. Davis ("Mr. Davis") and Davis Law Group, P.A. ("Davis Law Group" collectively referred to with Mr. Davis as "Davis Defendants"), by and through their counsel of record, Mark J. Connot and John M. Orr of the law firm Fox Rothschild LLP, move this Court to dismiss Plaintiffs' First Amended Complaint (ECF No. 12) against the Davis Defendants under FRCP 12(b)(6). This Motion is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument the Court may entertain during the hearing on this matter.

I.  **INTRODUCTION**

Plaintiffs Sean Claggett ("Mr. Claggett") and Sean K. Claggett & Associates, LLC dba Claggett and Sykes Law Firm's ("Claggett & Sykes," collectively referred to with Mr. Claggett as "Plaintiffs") claims against the Davis Defendants for intentional interference with contractual relations ("intentional interference"), intentional interference with prospective economic advantage ("prospective economic advantage"), and civil conspiracy must be dismissed under FRCP 12(b)(6). On November 3, 2021, a civil action was filed in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C (the "Erne Matter"). The thrust of Plaintiffs' claims against the Davis Defendants is that they conspired with the other named defendants in this action to have Claggett & Sykes fired as counsel for Logan Erne. Plaintiffs allege that the Davis Defendants conspired to interfere with the retainer agreement (the "Agreement") between Claggett & Sykes and Logan Erne.

Plaintiffs must show the existence of a valid and enforceable contract to assert an actionable intentional interference claim. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003). Plaintiffs' claims all assume that the Contingency Agreement is valid. It is not. Claggett & Sykes' Medical Malpractice Contingency Fee Agreement violates NRS § 7.095 because it seeks to recover fees in excess of those allowed in NRS § 7.095. The Contingency Agreement is therefore void and fatal to Plaintiffs' claims. Plaintiffs' intentional interference against the Davis Defendants is also not actionable because the Davis Defendants were not strangers to the Agreements. At all relevant times, they were acting as Mr. Erne's agent and had a legitimate, pecuniary interest in the

- 2 -

1  Agreement, given the Davis Defendants were co-counsel with Plaintiffs and splitting fees.

2  Furthermore, Plaintiffs' claims are not actionable because they have not suffered any actual damages. *Id.* The Contingency Agreement states that Plaintiffs would only recover a percentage of any settlement or judgment. The Erne Matter has not yet reached settlement or judgment. It is pending and scheduled for trial on October 10, 2022. Consequently, Plaintiffs' damages at this point are wholly speculative. Plaintiffs are therefore not entitled to relief. *See K.J.B., Inv. v. Drakulich*, 107 Nev. 367, 811 P.2d 1305 (1991) (holding damages are speculative where there has been no final adjudication of the client's underlying case).

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Defendant Brian Davis is a resident of North Carolina where he is a licensed attorney and the founding partner of Defendant Davis Law Group, a North Carolina professional association. In or around May 23, 2017, Mr. Davis contacted Claggett & Sykes about serving as local counsel for Logan Erne in a medical malpractice case that arose in Clark County, Nevada. FAC ¶¶ 57–62. Claggett & Sykes agreed to act as local counsel, and unbeknownst to the Davis Defendants, Claggett and Sykes had Mr. Erne sign a Medical Malpractice Contingency Fee Agreement (the "the Contingency Agreement") with Claggett & Sykes on May 31, 2017. Med. Mal. Fee Agreement, attached hereto as **Exhibit "A."** Although NRS § 7.095 limits that amount of attorney's fees that an attorney may collect in a medical malpractice matter, the Agreement states:

> NRS 7.095. You have been given a copy of NRS 7.095, which limits fee which can be charged to the party of a medical malpractice case by their attorney. In our opinion, this statute is unconstitutional, as applied to the U.S. Constitution as well as the State of Nevada Constitution. We have explained to you that we will not represent you pursuant to the fee limitation of NRS 7.095, and that we will only represent you in accordance with the fees listed in this medical malpractice contingency fee agreement. We have advised you to contact an attorney of your choice regarding this issue prior to signing this agreement.

Ex. A. at p. 2. Despite the clear statutory limitations on fees, the Agreement provides that Claggett & Sykes may collect between 33%–50% of all amounts recovered via a settlement or judgment. *Id.*

The Davis Defendants, Plaintiffs, and Mr. Erne also executed a Joint Representation and Fee-Spilt Agreement ("Fee-Split Agreement" referred to with the Contingency Agreement as the "Agreements."). Joint Representation and Fee-Split Agreement, attached hereto as **Exhibit "B."** The Fee-Split Agreement states: "[t]his Agreement incorporates, by reference, the Claggett & Sykes Contingency Fee Agreement with the Client, and any fee agreement executed between the Client and Associated Counsel." Ex. B ¶ 2. The Fee-Split Agreement also provides that the Davis Defendants and Claggett & Sykes would split the attorney fee in the Erne Matter "50/50". Ex B ¶ 4. Additionally, the Fee-Split Agreement "incorporates, by reference, the Claggett & Sykes Contingency Fee Agreement with the Client, and any fee agreement executed between the Client and Associated Counsel." Ex. B ¶ 2.

Over the course of the litigation in the Erne Matter, Mr. Erne became dissatisfied with Plaintiffs' representation. He then chose to terminate the Agreements with Claggett & Sykes and to retain new counsel. FAC ¶ 69. The Davis Defendants then terminated Claggett & Sykes on May 15, 2020. *Id.* Following its termination, Claggett & Sykes filed a Notice of Attorney's Lien in the Erne Matter. The lien is for a total $288,512.06. Notice of Attorney's Lien, attached hereto as **Exhibit "C."** The Erne Matter is still in active litigation. It is currently scheduled for trial on October 10, 2022. Amended Order Setting Civil Jury Trial, July 1, 2021, attached hereto as **Exhibit "D."**

Rather than accept the simple truth that Mr. Erne was dissatisfied with Plaintiffs' representation, Plaintiffs allege that each of the Defendants in this matter were part of a cabal to sabotage Plaintiffs and cause Mr. Erne to terminate his Agreement with Claggett & Sykes. *See generally* FAC. Plaintiffs filed their initial Complaint on November 3, 2021, in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C. The Davis Defendants then filed a Petition for Removal on December 22, 2021 (the "Petition."). The Davis Defendants then filed a Motion to Dismiss Plaintiffs' Complaint on December 29, 2021. ECF No. 7. In their Motion to Dismiss, the Davis Defendants argued, *inter alia*, that Plaintiffs' claims must be dismissed because the Contingency Agreement that forms the basis of Plaintiffs' claims is illegal

| | |
|---|---|
| 1 | and void under Nevada law. ECF No. 7 pp. 7–10. D.C. Defendants Keenan & Associates, P.A., |
| 2 | William Entrekin, David J. Hoey, Don C. Keenan, and Keenan's Kids Foundation, Inc. also filed a |

1  and void under Nevada law. ECF No. 7 pp. 7–10. D.C. Defendants Keenan & Associates, P.A.,
2  William Entrekin, David J. Hoey, Don C. Keenan, and Keenan's Kids Foundation, Inc. also filed a
3  Motion to Dismiss, ECF No. 8, wherein they sought to dismiss Plaintiffs' Complaint, or to transfer
4  this matter to United States District Court – Northern District of Georgia, Atlanta Division.

After the Davis Defendants highlighted the insufficiency of the initial Complaint in their Petition and Motion to Dismiss, Plaintiffs filed the FAC on January 12, 2022, mooting the pending motions to dismiss. Plaintiffs then filed a Motion to Remand on January 14, 2022. ECF No. 13. Plaintiffs' Motion to Remand is still pending before the Court.

### III. LEGAL ARGUMENT

#### A. Legal Standard Under NRCP 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when "there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). "In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party." *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79,

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard

- 5 -

is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017).

        **B.**       **The Court May Consider the Agreements Without Converting this Motion to Dismiss to one For Summary Judgment**

Generally, in the context of a motion to dismiss, review is limited to the contents in the complaint. *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). When matters outside the pleading are presented to and accepted by the court, the motion to dismiss is converted into one for summary judgment. However, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). Where a plaintiff fails to attach to the complaint documents referred to therein, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support the plaintiff's claim. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994) (overruled on other grounds). This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir.1998). Thus, a court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In this case, this Court may consider the Agreements between the Davis Defendants, Mr. Erne, and Claggett & Sykes without converting this Motion to one for summary judgment. Plaintiffs' claims are based on the Agreements, and they referred to throughout the FAC. FAC ¶¶ 161, 163, 225. Moreover, the Court may take judicial notice of the various documents and pleadings filed in the Erne Matter without converting this Motion to one for summary judgment because "[a] court may take judicial notice of matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

**C.    Plaintiffs Have Failed to State a Claim for Intentional Interference Against the Davis Defendants.**

To assert a claim for intentional interference under Nevada law, Plaintiffs must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. The Supreme Court of Nevada has held that in order to prevail on an intentional interference claim, the plaintiff must "demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* at 276, 71 P.3d at 1268. "The tort duty not to interfere with the contract falls only on strangers – interlopers who have no legitimate interest in the scope or course of the contract's performance." *O'Brien v. XPO CNW*, Inc., 362 F. Supp. 3d 778, 785 (N.D. Cal. 2018). Under Nevada law, "a party cannot, as a matter of law, tortiously interfere with its own contract." *Blanck v. Hager*, 360 F.Supp.2d 1137, 1154 (D.Nev.2005); *Bartsas Realty, Inc. v. Nash*, 81 Nev. 325, 327, 402 P.2d 650 (1965) ("Of course the first theory, that of tortious interference with the oral agreement is wholly unsound, for the defendants' breach of their own contract with the plaintiff is not a tort"). Similarly, "agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party." *Blanck*, 360 F.Supp.2d at 1154 (citing *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911–12 (D.Nev.1993)).

Plaintiffs' intentional interference claim must be dismissed for three reasons. First, the Contingency Agreement is illegal and void under Nevada law. Second, the Davis Defendants' were not strangers to the Contingency Agreement, so they could not tortiously interfere with it. Third, Plaintiffs have not incurred any actionable damages as a result of Mr. Erne terminating the Agreements. For these reasons, Plaintiffs' intentional interference claim must be dismissed.

**(1)    The Underlying Agreement is Illegal and Unenforceable**

A fundamental principle of contract law is that courts will not generally enforce illegal contracts and such contracts are void. *Local Union 525, United Association of Journeyman v. Stine*, 76 Nev 189, 210, 351 P.2d 965, 976; 17A Am. Jur. 2d Contracts § 317 (2004). "A party cannot

exercise his or her contractual rights in violation of the law." 17A Am. Jur. 2d Contracts § 317 (2004). "A court's preference for enforcing bargains may give way where a contract conflicts with the applicable law or violates or conflicts with a statute, rule of law, or public policy." *Id.* Nevada courts adhere to these principles and "have long refused to enforce contracts that are illegal or contravene public policy." *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 290, 300 P.3d 718, 723 (2013). In Nevada, "a contract is unenforceable on public policy grounds where the policy against enforcement of a contract clearly outweighs the interest in its enforcement." *Id.* (quoting *Picardi v. Eighth Judicial Dist. Court*, 127 Nev. ——, ——, 251 P.3d 723, 727 (2011)).

Although the Supreme Court of Nevada has not considered this precise issue, other jurisdictions have held that void contracts cannot form the basis for a tortuous interference claim. *Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 770 (Tex. App. 2013) (a void contract may not be the subject of a tortious interference claim); *Advance Indus. Sec., Inc. v. William J. Burns Int'l Detective Agency, Inc.*, 377 F.2d 236, 237 (5th Cir. 1967), (no tortious interference claim with a non-compete agreement that was void as a matter of Alabama law); *Hi-Line Elec. Co. v. Dowco Elec. Prod.*, 765 F.2d 1359, 1362 (5th Cir. 1985) (holding a defendant cannot tortuously interfere as a matter of law with a void contract); *Gunnels v. Atlanta Bar Ass'n*, 12 S.E.2d 602, 610 (Ga. 1940) (no tortious interference with contracts that were absolutely void as usurious).

In this case, Plaintiffs' Contingency Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095. This statute mandates the fee structure for professional negligence cases as follows:

> An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of: (a) Forty percent of the first $50,000 recovered; (b) Thirty-three and one-third percent of the next $50,000 recovered; (c) Twenty-five percent of the next $500,000 recovered; and (d) fifteen percent of the amount of recovery that exceeds $600,000.

NRS § 7.095. This statute proscribes the amount of a contingency fee that an attorney may collect from a client in a medical malpractice action and it does not allow for any exceptions to the statutory limitations.

The Supreme Court of Nevada has not specifically addressed whether NRS 7.095 may be waived. California Courts considering California's similar fee limitation statute have determined such contractual provisions are void and unenforceable. In *Fineberg v. Harney & Moore*, 255 Cal. Rptr. App. 299 (1989), the California Court of Appeals considered the legality of a fee agreement essentially identical to the one in this case and whether that agreement violated California Business and Professions Code § 6146, which contains identical limitations to those in NRS § 7.095. The fee agreement in *Fineberg* provided:

> Client has further been advised that attorneys are unwilling to accept representation herein under the provisions of said California Business and Professions Code § 6146, and client in order to obtain the services of said attorneys and in order to have action prosecuted as desired by client [ ], hereby waives the purported limitations on fees as set forth in said California Business and Professions Code § 6146, and hereby agrees to pay the fees as set forth in paragraph 3 below.
>
> "3. That as sole compensation for services rendered by said attorneys, the client will pay them 40 percent of any money or property paid, received or collected by action, compromise, or otherwise...."

*Id.* at 301. The court in *Fineberg* noted that § 6146 was enacted under California's Medical Injury Compensation Reform Act of 1975 ("MICRA"), which was aimed at mitigating "a perceived crisis caused by rapid increases in medical malpractice insurance premiums." *Id.* The court further highlighted that § 6146 was part of MICRA's purpose to reduce health insurance premiums and that the Supreme Court of California held that MICRA's fee limitation is "rationally related to the legislations' legitimate objective and therefore does not violate the due process or equal protection clauses." *Id.* (quoting *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931–932, 211 Cal.Rptr. 77, 695 P.2d 164)).

1       The *Fineberg* court rejected the attorney's argument that the Caifornia "[l]egislature
2 intended to permit waivers of section 6146." *Id* at 303. The court held that "nothing in the legislative
3 history of section 6146 [suggests] an intent to make the statute voidable." *Id.* The court further
4 highlighted that MICRA's purpose was a "public one" and that "a law established for a public
5 reason cannot be contravened by a private agreement." *Id.*

6       The *Fineberg* court's reasoning and analysis is persuasive and instructive in this case. NRS
7 § 7.095 was enacted as part of the 2004 voter initiative to address Nevada's health care crisis. *See*
8 *Tam v. Eighth Judicial Dist. Court,* 131 Nev. 792, 798, 358 P.3d 234, 239 (2015). Nevada's medical
9 malpractice reform statutes embody the Legislature's express public policy goals to "stabilize
10 Nevada's health care crisis and provide protection for both doctors and patients." *Id.* at 239 (finding
11 constitutional NRS § 41A.035's noneconomic damages cap because it embodies the legislature's
12 "express goal" to obviate the medical malpractice crisis). In actions against health care providers,
13 NRS § 7.095 mandates that "[a]n attorney shall not contract for or collect" a contingency fee "in
14 excess of specified limits." NRS § 7.095. The statute's "shall not" language imposes a mandatory
15 prohibition against attorneys contracting with clients in excess of the statute's limits. *See Washoe*
16 *Med. Ctr. v. Dist. Ct.*, 122 Nev. 1298, 1303, 148 P.3d 790, 793 (2006) (ruling that the phrase "shall
17 dismiss" in NRS § 41A.071 "is mandatory and does not denote judicial discretion."). Nothing in
18 the plain language or the legislative history of Nevada's medical malpractice reform statutes
19 suggests that the legislature intended for NRS 7.095 to be waivable.

20       The Contingency Agreement in this case violates both the plain text and purpose of NRS §
21 7.095. It states that it is Claggett's "opinion" that NRS § 7.095 as unconstitutional and provides for
22 attorney's fees to be as high as 50% of a judgment or settlement. Plaintiffs implicitly acknowledge
23 the illegality of the Contingency Agreement by stating that it is Claggett & Sykes' opinion that
24 NRS § 7.095 is unconstitutional. This one-sided assessment of NRS § 7.095 does validate the
25 Contingency Agreement . "A party cannot exercise his or her contractual rights in violation of the
26 law." 17A Am. Jur. 2d Contracts § 317. If Plaintiffs' position is that NRS § 7.095 is
27 unconstitutional, their recourse is to challenge the same in court, not to unilaterally impose an
28 unlawful fee agreement on unwitting consumers of legal services. Similar attempts to have clients

waive NRS 7.095 have been found to be in violation of the Nevada Rules of Professional Conduct and unethical by the State Bar of Nevada. Bar Counsel Report, Case No. 0BC19-0438 (Aug. 17, 2020), attached hereto as **Exhibit "E."** NRS § 7.095's purpose was a public one; parties may not contravene public policy and clear statutory mandates via written agreements. The public's interest in lowering insurance premiums, providing greater access to healthcare, and providing protection to physicians far outweighs an attorney's interest in recouping greater fees in medical malpractice cases. *Sylver*, 129 Nev. at 290, 300 P.3d at 723. The Contingency Agreement, consequently, is void as a matter of law.

### (2) The Davis Defendants Are Parties to the Agreement

Even if it were true that the Davis Defendants induced or influenced Mr. Erne to terminate the Contingency Agreement, Plaintiffs' intentional interference claim fails because the Davis Defendants are parties to the Contingency Agreement. Under Nevada law, "a party cannot, as a matter of law, tortiously interfere with its own contract." *Blanck*, 360 F.Supp.2d 1137; *Nash*, 81 Nev. at 327, ("Of course the first theory, that of tortious interference with the oral agreement is wholly unsound, for the defendants' breach of their own contract with the plaintiff is not a tort"). An agent that is acting within the 'scope of his employment cannot tortiously interfere with a contract to which the principal is a party." *Blanck*, 360 F.Supp.2d at 1154.

The Agreements reflect that the Davis Defendants were parties to the Contingency Agreement because the Fee-Split Agreement incorporates the Contingency Agreement by reference. Ex A; Ex B. On May 15, while acting as counsel for Mr. Erne, Mr. Davis informed Plaintiffs that that the client had decided to fire Claggett & Sykes. *Id.* ¶ 69. The FAC's allegations reflect the Davis Defendants were Mr. Erne's agents at the time Mr. Erne fired Claggett & Sykes as counsel. Moreover, the Davis Defendants had a legitimate interest in the Agreements because the Fee-Split Agreement provided that the Davis Defendants and Claggett & Sykes would split the attorney fee, if any, in the Erne Matter "50/50." For these reasons, the Davis Defendants were parties to the Agreements. Their alleged breach or interference with the Agreements, therefore, is not actionable as an intentional interference claim.

### (3) Plaintiffs' Damages Are too Speculative to Be Actionable

To assert a cognizable claim for intentional interferenc, Plaintiffs must allege that they were damaged as a result of the interference. *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. To be compensable, damages must be appreciable and unspeculative. *Nelson v. Burr*, No. 81456-COA, 2021 WL 3701471492, at * 3 (Nev. Ct. App. Aug. 18, 2021) (citing *Sorenson v. Pavlikowski*, 94 Nev. 440, 444, 581 P.2d 851, 854 (1978)). In the context of legal malpractice, the Supreme Court of Nevada has held that that a "where it is too early to know whether damage has been sustained, a legal malpractice action is premature and should be dismissed." *Semenza v. Nev. Med. Liability Ins. Co.*, 104 Nev. 666, 666, 765 P.2d 184, 184 (1988).

Although this is not a legal malpractice suit, the same logic outlined in *Semenza* applies here. Plaintiffs represented Mr. Erne under a contingency agreement in the Erne Matter wherein Claggett & Sykes would recover a percentage of any settlement of judgment. Plaintiffs, therefore, would not have any damages as a result of the termination of the Agreement until after the Erne Matter is settled or results in a judgment in Mr. Erne's favor. Until then, Plaintiffs' damages are too remote and speculative to be actionable. This Court may take judicial notice of the fact that the Erne matter remains in active litigation and is currently scheduled for trial on October 10, 2022. As a result, Plaintiffs' intentional interference claim must be dimissed because their alleged damages are too remote and speculative at this time. *See id.*

To be sure, Plaintiffs have alleged damages in the form of the costs that they incurred litigating the Erne Matter prior to May 15, 2021. Ex. E. Those costs, however, have no causal relationship to the Davis Defendants' alleged intereference with the Agreements. Plaintiffs allegedly incurred these costs prior to Mr. Erne firing Claggett & Sykes. Moreover, Plaintiffs are not foreclosed from recovering these alleged costs. Indeed, Plaintiffs have filed a Notice of Attorney's lien in the underlying case. For these reasons, Plaintiffs have not sustained any damages related to their intentional intereference claim. This claim must be dismissed.

/ /

/ /

/ /

### D. Plaintiffs' Prospective Economic Advantage Claim Is Not Actionable

To prevail on a prospective economic advantage claim, Plaintiffs must show:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Wichinsky v. Mosa*, 109 Nev. 84, 87–88, 847 P.2d 727, 729–30 (1993). This claim is obviously frivolous. Plaintiffs allege that there existed an "ongoing and prospective contractual relationship between Plaintiffs [and Mr. Erne] by which Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit." FAC ¶ 193. This contingency fee agreement was an established contract, not a prospective economic opportunity. Plaintiffs' argument is Orwellian double-speak. It is apriori true that an economic relationship that is established and ongoing cannot be "prospective."

Also, by termianting Plaintiffs, the Davis Defendants did nothing to prevent Plaintiffs from recovering their hourly fees or costs related to the Erne Matter. The Contingency Agreement provided that Mr. Erne would be liable for Claggett & Sykes fees and costs upon withdrawing, and Plaintiffs have asserted an attorney's lien in the Erne Matter. Additionally, as analyzed above, Plaintiffs have not incurred any actionable damages because the Erne Matter is still pending. Plaintiffs would not be entitled to their fee until the Erne matter is settled or results in a judgment in Mr. Erne's favor. For these reasons, Plaintiffs' reliance on an established contract as the basis for their economic advantage claim is obviously frivolous and unsupported with any facts or existing law.

### E. Plaintiffs' Civil Conspiracy Claim Must Be Dismissed

To assert a cognizable claim for civil conspiracy, the plaintiff must show that "two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The plaintiff "must provide

evidence of an explicit or tacit agreement between the alleged conspirators." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998). A "[c]ivil conspiracy is, fundamentally, a conspiracy to commit a tort." *see Beck v. Prupis*, 529 U.S. 494, 501, 503 (2000) ("at common law, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious").

In this case, for the same reasons stated above regarding Plaintiffs' intentional interference and prospective economic advantage claims, Plaintiffs cannot claim that the Davis Defendants conspired to interfere with the Contingency Agreement. This is because the Contingency Agreement itself is void and cannot form the basis of an intentional interference claim. Moreover, as outlined above, the Davis Defendants were parties to the Agreements as Mr. Erne's agents and cannot be liable for intentional interference. Lastly, Plaintiffs have not suffered any damages as a result of any alleged conspiracy. Plaintiffs' damages are too remote and speculative while the Erne Matter is still pending. For these reasons, Plaintiffs' civil conspiracy claim must be dismissed.

### IV.  CONCLUSION

Plaintiffs have failed to assert cognizable claims for intentional interference, prospective economic advantage, and civil conspiracy against the Davis Defendants. Plaintiffs' claims are premised on an invalid contract, and they have otherwise not sustained any appreciable damages. As a result, the Davis Defendants move this Court to dismiss Plaintiffs' claims against Brian Davis and Davis Law Group.

DATED this 26th day of Janaury 2022.

**FOX ROTHSCHILD LLP**

*/s/ Mark J. Connot*
MARK J. CONNOT (10010)
JOHN M. ORR (14251)
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
*Attorneys for Defendants Brian F. Davis and Davis Law Group, P.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 26th day of January 2022, and pursuant to FRCP 5(b), a copy of the foregoing **DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, PA UNDER FRCP 12(B)(6)** was served via the Court's CM/ECF system.

*/s/ Doreen Loffredo*
An Employee of Fox Rothschild LLP