# EXHIBIT E

# EXHIBIT E

# Bar Counsel Report

In Re: JULIUS M. ENGEL
Bar No.: 8057
Case No.: 81768
Filed: 11/05/2020

**ORDER OF GRANTING MOTION TO FILE LATE RESPONSE, IMPOSING RECIPROCAL DISCIPLINE AND DISBARRING ATTORNEY**

*This is a petition for reciprocal discipline of attorney Julius M. Engel pursuant to SCR 114. On October 21, 2020, Engel moved for leave to file a late response to the petition. We grant this motion and direct the clerk to file the response Engel tendered with his motion. Engel is currently suspended from the practice of law in Nevada and has not sought reinstatement. In re Discipline of Engel, Docket No. 73119 (Order Imposing Reciprocal Discipline, Oct. 24, 2017).*

The record establishes that Engel has been disbarred from the practice of law in California. The documents submitted to this court from the California proceeding show that, while representing bankruptcy clients, Engel twice filed a defective payment plan resulting in the dismissal of his clients' bankruptcy petition. When he refiled the petition, he once again filed a defective payment plan and then failed to appear at two hearings, resulting again in the dismissal of his clients' bankruptcy petition. In responding to the California State Bar's inquiries, Engel falsely asserted that the bankruptcy petitions were dismissed because his clients failed to pay the bankruptcy trustee. Engel also accepted a client right before he was suspended in California and failed to inform the client of his suspension when she called after the suspension began, instead telling her he was working on her case. Additionally, he continued to advertise his legal services on his website and on the radio during his suspension. Lastly, he failed to comply with the notice requirements informing his clients and opposing counsel of his suspension and submitted a false statement to the California State Bar that he had complied with the notice requirement.

The California Hearing Department found Engel violated California Rule of Professional Conduct 3-110(A), similar to RPC 1.1 (competence); California Business and Professions Code § 6068(a) and § 6126, similar to RPC 5.5 (unauthorized practice of law); California Rules of Court 9.20(a), (e), similar to SCR 115 (notice of change in license status); and California Business and Professions Code§ 6106, similar to RPC 8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation). "[A] final adjudication in another jurisdiction that an attorney has engaged in misconduct conclusively establishes the misconduct for the purpose of a disciplinary proceeding in this state." SCR 114(5).

The California Supreme court ordered Engel disbarred from the practice of law. SCR 114(4) provides that this court shall impose identical reciprocal discipline unless the attorney demonstrates, or this court finds, that one of four exceptions applies. We conclude that none of the four exceptions is present in this case. Thus, we grant the petition for reciprocal discipline.

Accordingly, attorney Julius M. Engel is hereby disbarred from the practice of law in this state. Engel and the State Bar shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

In Re: SAMEER A. QADRI
Bar No.: 12631
Case No.: 80984
Filed: 10/23/2020

**ORDER IMPOSING RECIPROCAL DISCIPLINE AND DISBARRING ATTORNEY**

*This is a petition under SCR 114 to reciprocally discipline attorney Sameer A. Qadri, based on discipline imposed on him in California. Qadri was disbarred from the practice of law in California on January 22, 2015, and he did not self-report the discipline to the Nevada State Bar. He opposes this petition.*

The California State Bar's Notice of Disciplinary Charges alleged misconduct based on Qadri's representation of 40 clients who retained him for home loan modifications in 2012. Thereafter, Qadri and the California State Bar stipulated to the facts, conclusions of law, and disposition and order approving Qadri's involuntary inactive enrollment and disbarment.[1] The admitted facts establish that after a 90-day suspension from the practice of law in 2013, Qadri failed to file an affidavit under California RPC 9.20(c), confirming that he complied with provisions of that rule, which require that he notify clients and others of his suspension and return clients' papers and any unearned fees. Qadri violated California RPCs 1-300(B) (unauthorized practice of law in another jurisdiction) and 4-200(A) (fees for legal services) by performing loan modification legal services in jurisdictions where he is not licensed to practice law or charge and collect legal fees.[2] He violated California RPCs 3-700(A)(2) (termination of employment) and 3-700(D)(1) (release of file) by sending a letter to at least 16 clients informing them that he would not be performing any additional legal services on their behalf, but failing to return files to the 16 clients who requested their files.[3]

As found by the California State Bar Court and agreed to by Qadri, Qadri's acts of misconduct were willful in nature. Also, as stipulated, one mitigating circumstance (cooperative attitude by entering into a stipulation for discipline before trial) and three aggravating circumstances (prior disciplinary record, vulnerability of victims, and multiple offenses) apply. Under SCR 114(4), this court must impose identical reciprocal discipline unless the attorney demonstrates, or this court finds, that one of four exceptions applies. Qadri argues the third exception applies because the "the misconduct established warrants substantially different discipline in this state." SCR 114(4)(c) We disagree. Qadri has been suspended from the practice of law in Nevada since July 7, 2014, based on an earlier California disciplinary matter involving similar misconduct.[4] *In re Discipline of Qadri,* Docket No. 64797 (Order Imposing Reciprocal Discipline, July 7, 2014). Qadri failed

to report his subsequent 2015 California disbarment, which addressed Qadri's misconduct that harmed 40 vulnerable clients and involved the unauthorized practice of law and collection in multiple jurisdictions. Based on the duties violated, Qadri's willful mental state, the injury to his clients, the public, and the profession caused by his misconduct, and the three aggravating circumstances and one mitigating circumstance, see *In re Discipline of Lerner,* 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (listing factors to consider in determining appropriate discipline), we conclude disbarment is warranted. Thus, we grant the petition for reciprocal discipline. Accordingly, attorney Sameer A. Qadri is hereby disbarred from the practice of law in this state. Qadri and the State Bar shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

---

**In Re: JOSEPH A. SCALIA**
Bar No.: 5123
Case No.: 81672
Filed: 10/15/2020

### ORDER OF SUSPENSION

*This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that attorney Joseph A. Scalia be suspended from the practice of law for six months based on violations of RPC 1.3 (diligence), RPC 1.4 (communication), RPC 1.16 (declining or terminating representation), and RPC 3.2(a) (expediting litigation). Because no briefs have been filed, this matter stands submitted for decision based on the record. SCR 105(3)(b).*

The State Bar has the burden of showing by clear and convincing evidence that Scalia committed the violations charged. *In re Discipline of Drakulich,* 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). Here, however, the facts and charges alleged in the complaint are deemed admitted because Scalia failed to answer the complaint and a default was entered.[5] SCR 105(2). The record therefore establishes that Scalia violated the above-referenced rules by failing to prosecute a divorce case or appear at three hearings in the matter, which led to a default divorce decree being entered against his client. He also failed to keep his client reasonably informed of the status of her case or properly terminate his representation of her.

Turning to the appropriate discipline, we review the hearing panel's recommendation de novo. SCR 105(3)(b). Although we "must … exercise independent judgment," the panel's recommendation is persuasive. *In re Discipline of Schaefer,* 117 Nev. 496, 515, 25 P.3d 191, 204 (2001). In determining the appropriate discipline, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner,* 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008).

Scalia violated duties owed to his client (diligence and communication), the legal system (expediting litigation), and the profession (improper withdrawal from representation). Scalia's mental state was negligent and his client and the legal profession were injured or potentially injured. Scalia's client had a default divorce decree entered against her and believed she remained married for three years thereafter. The baseline sanction for Scalia's misconduct, before consideration of aggravating and mitigating circumstances, is suspension. See Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards,* Standard 4.42(b) (Am. Bar Ass'n 2017) (recommending suspension when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client"). The panel found, and the record supports, two aggravating circumstances (pattern of misconduct and substantial experience in the practice of law) and two mitigating circumstances (personal or emotional problems and remorse). Considering all the factors, we conclude the recommended suspension is sufficient to serve the purpose of attorney discipline. See *State Bar of Nev. v. Claiborne,* 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (observing the purpose of attorney discipline is to protect the public, the courts, and the legal profession).

Accordingly, we hereby suspend attorney Joseph A. Scalia from the practice of law in Nevada for a period of six months commencing from the date of this order. Scalia shall also comply with all CLE Board requirements and resolve any outstanding fee disputes. Further, Scalia shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120, within 30 days from the date of this order. The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

---

**In Re: HAROLD P. GEWERTER**
Bar No.: 499
Case No.: 80198
Filed: 10/26/2020

### ORDER OF SUSPENSION

*This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that a previously stayed one-year suspension be imposed against attorney Harold P. Gewerter for his failure to comply with probation conditions.[6]*

On January 4, 2018, this court suspended Gewerter for one year, with the suspension stayed for two years subject to certain probation conditions approved by the hearing panel. *In re Discipline of Gewerter,* Docket No. 73529 (Order Approving Conditional Guilty Plea Agreement, Jan. 4, 2018). Those conditions included that "the opening of a grievance concerning which a Screening Panel ultimately determines

CONTINUED ON PAGE 38

# Bar Counsel Report

that a formal hearing is warranted ... shall be considered a breach of this stay." This condition applied to grievances, "including but not limited to matters involving any of [Gewerter's] trust accounts prior to [the conditional guilty plea agreement]." On June 26, 2019, a screening panel recommended proceeding to a formal hearing on a grievance, which involved Gewerter's trust account prior to the signing of the conditional guilty plea agreement. Thus, Gewerter breached the conditions of his probation and imposition of the one-year suspension previously stayed in Docket No. 73529 is necessary.

Accordingly, we hereby suspend attorney Harold P. Gewerter from the practice of law in Nevada for one year beginning from the date of this order. Additionally, Gewerter shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120, within 30 days from the date of this order. The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.[7]

---

**In Re: JOSEPH IARUSSI**
Bar No.: 9284
Case No.: 81338
Filed: 10/23/2020

---

### ORDER DENYING PETITION FOR TEMPORARY SUSPENSION AND APPROVING CONDITIONAL GUILTY PLEA AGREEMENT

Docket No. 79030 is a petition under SCR 111, in which the State Bar reported that attorney Joseph B. Iarussi had entered a guilty plea to possession of a controlled substance, a felony in violation of NRS 453.336. In that matter, we deferred a decision on whether to temporarily suspend Iarussi until after sentencing in the criminal case, and we referred the matter to the Southern Nevada Disciplinary Board for formal disciplinary proceedings. From that referral, and based on other unrelated conduct, Iarussi entered into a conditional guilty plea agreement in exchange for a stated form of discipline. Docket No. 81338 is an automatic review of the hearing panel's recommendation that this court approve that agreement pursuant to SCR 113. Under the agreement, Iarussi admitted to violating RPC 1.4 (communication), RPC 1.15 (safekeeping property), and RPC 8.4(b) (misconduct: committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness).

Iarussi has admitted to the facts and violations as part of the disciplinary conditional guilty plea agreement. The record therefore establishes that Iarussi knowingly violated RPC 8.4(b) by committing a criminal offense that adversely reflects on his fitness as a lawyer.[8] Additionally, the record establishes that Iarussi violated RPC 1.15 and RPC 1.4 by depositing settlement funds obtained on behalf of a minor into a bank account not approved as a trust account, waiting several years to petition the court for compromise of the minor's claim and to deposit the funds into a blocked account, and failing to communicate with the minor's representatives regarding the status of the case despite requests for such information. In exchange for his guilty plea, Iarussi agreed to a one-year suspension from the practice of law and to pay the disciplinary proceeding costs.

Based on our review of the record, we approve the conditional guilty plea agreement.[9] SCR 113. Iarussi acted knowingly in violating the above-referenced rules; his conduct resulted in actual or potential injury to his client, the public, the legal system, and the profession; and the record supports the panel's findings of three aggravating circumstances (prior disciplinary offenses, vulnerability of victim, and substantial experience in the practice of law) and four mitigating circumstances (full and free disclosure to disciplinary authority/cooperative attitude, personal or emotional problems, imposition of other penalties, and remorse). See *In re Discipline of Lerner,* 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (setting forth four factors to be considered in determining appropriate discipline: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors"). Considering the factors outlined in *Lerner*, we agree that the one-year suspension recommended in Docket No. 81338 is appropriate and serves the purpose of attorney discipline. See Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards,* Standard 4.12 (Am. Bar Ass'n 2018) ("Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."); see also generally *State Bar of Nev. v. Claiborne,* 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (observing that the purpose of attorney discipline is to protect the public, the courts, and the legal profession, not to punish the attorney).

Accordingly, we hereby suspend attorney Joseph Iarussi from the practice of law in Nevada for a period of one year commencing from the date of this order. Also, Iarussi must pay the costs of the disciplinary proceeding, including $2,500 under SCR 120 within 90 days from the date of this order.[10] The parties shall comply with SCR 115 and SCR 121.1.

It is so ORDERED.

---

**In Re: REINSTATEMENT OF WILLIAM M. O'MARA**
Bar No.: 837
Case No.: 81073
Filed: 10/23/2020

---

### ORDER OF REINSTATEMENT

*This is an automatic review of a Northern Nevada Disciplinary Board hearing panel's recommendation to deny suspended attorney William M. O'Mara's petition for reinstatement. This court suspended O'Mara from the practice of law for one year in 2015, In re Discipline of O'Mara, Docket No. 67908 (Order of Suspension, Nov. 10, 2015), and dismissed his 2018 petition for reinstatement on his request, In re Reinstatement of O'Mara, Docket No. 75065 (Order Approving Stipulation and Dismissing Reinstatement Proceeding, Apr. 12, 2018).*

Our review of the petition for reinstatement is de novo. *Application of Wright*, 75 Nev. 111, 112-13, 335 P.2d 609, 610 (1959) (reviewing a petition for reinstatement de novo). Having considered the record, we agree with the hearing panel's conclusion that O'Mara satisfied most of the criteria set forth in SCR 116(2)(a)-(g) by clear and convincing evidence. We disagree, however, with the hearing panel's conclusion that O'Mara did not satisfy SCR 116(2)(f). And, although we appreciate the hearing panel's lingering concerns as to whether he fully "recognizes the wrongfulness and seriousness of the misconduct" that resulted in his suspension, see SCR 116(2)(d), we are convinced that given the specific and limited nature of that misconduct, those concerns can be ameliorated by requiring that his practice be supervised for a period of time. See SCR 116(5) (allowing for conditions on reinstatement). Because appropriate conditions may be imposed to address the remaining area of concern, we conclude there is "good and sufficient reason" why O'Mara should be reinstated even though he did not satisfy all of the criteria in SCR 116(2)(a)(g). SCR 116(2) (providing that if attorney does not satisfy all criteria stated in the rule, the attorney may be reinstated if he "presents good and sufficient reason why [he] should nevertheless be reinstated"); see also *Shoen v. State Bar of Nev.*, 136 Nev., Adv. Op. 30, 464 P.3d 402, 403-04 (2020) (acknowledging that "an attorney who cannot demonstrate the criteria still may be reinstated if [he] 'presents good and sufficient reason why [he] should be reinstated'" (quoting SCR 116(2))). Accordingly, we grant the petition for reinstatement.

Attorney William M. O'Mara is reinstated to the practice of law in Nevada effective on the date of this order. As a condition of his reinstatement, O'Mara must be supervised for a period of three years from the date of this order by a Nevada licensed attorney who is approved by the State Bar and has experience in estate planning. The attorney supervising O'Mara during that period shall counsel O'Mara on the Rules of Professional Conduct that he violated and provide periodic reports to the State Bar regarding O'Mara's practice. O'Mara shall also pay the costs of the reinstatement proceeding, including $2,500 under SCR 120, within 30 days from the date of this order, if he has not done so already.

It is so ORDERED.

In Re: JOSEPH J. WIRTH
Bar No.: 10280
Case No.: OBC19-0438
Dated: 08/17/2020

### LETTER OF REPRIMAND

To Joseph J. Wirth:

A Formal Hearing Panel of the Southern Nevada Disciplinary Board has reviewed your tender of a Conditional Guilty Plea pursuant to SCR 113 in the above-referenced grievance. The Panel accepted the Plea and, in accordance with it, determined that a Letter of Reprimand be issued for violation of Rule 1.5 (Fees) of the Rules of Professional Conduct (RPC).

FACTS

You were retained to pursue medical malpractice claims on behalf of a client. You were aware that NRS 7.095 governed the amount of attorney's fees available on a contingency basis for recovery of damages in a medical malpractice matter. NRS 7.095 states, in pertinent part:

1. An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of:
   (a) Forty percent of the first $50,000 recovered;
   (b) Thirty-three and one-third percent of the next $50,000 recovered;
   (c) Twenty-five percent of the next $500,000 recovered; and
   (d) Fifteen percent of the amount of recovery that exceeds $600,000.

The statute defines "recovery" as "the net sum recovered by the plaintiff after deducting any disbursements or costs incurred in connection with the prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and general and administrative expenses incurred by the office of the attorney are not deductible disbursements or costs."

You consulted with other lawyers in Las Vegas who represent plaintiffs in medical malpractice cases and, based solely on their representations to you that NRS 7.095 is routinely waived in fee agreements, asked your client to consent to waive the statutory limitations on attorney's fees in the medical malpractice case and pay you a fee equal to 40% of any gross recovery he received. Your client consented to the waiver. You did not review persuasive case law regarding whether the statutory limitation was waivable and you did not consider whether an attorney's fee that was greater than the statutory amount was an unreasonable fee.

At the conclusion of your client's case, you attempted to collect 40% of the $175,000 recovery as your attorney's fee. In an effort to try to finalize the distribution of your client's settlement funds, you agreed to reduce your fee to 35% of the gross recovery. Both amounts exceeded the amount allowed by NRS 7.095.

Your client filed a Fee Dispute with the State Bar of Nevada's Fee Dispute Arbitration Committee, claiming he neither agreed to nor waived the limitations of NRS 7.095. You voluntarily agreed to make the arbitration binding. The arbitrators found that NRS 7.095 limited the amount of attorney's fees that you could recover. You accepted the arbitrators' decision and promptly paid your client his amount due after deducting your attorney's fees consistent with the limitations of NRS 7.095. After you made full payment, the Chair of the Fee Dispute Panel, rather than the client, grieved to the State Bar.

CONTINUED ON PAGE 40

# Bar Counsel Report

### APPLICATION OF THE LAW

RPC 1.5 (Fees) states "(a) [a] lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses."

NRS 7.095 proscribes the amount of a contingency fee available to an attorney and it does not allow for any exceptions to the statutory limitations. This statutory limitation is consistent with the limitations placed on medical malpractice recoveries. The Panel recognizes that the prohibition on contracting around the limitations in NRS 7.095 has not been adjudicated by the Nevada Supreme Court. It also recognizes persuasive case law that suggests such contracts would be disallowed. See *Fineberg v. Harney & Moore*, 255 Cal. Rptr. 299,207 Cal.App.3d 1049 (Cal. App. 1989) (addressing California's substantially similar statute and finding "[a] law established for a public reason cannot be contravened by a private agreement."). You have cited to a 2019 decision from Judge Jim Crockett of the Eighth Judicial District Court in Clark County that held the limitations of NRS 7.095 can be waived by the client based on a knowing and voluntary consent. However, that matter settled before the Nevada Supreme Court could review the decision and we do not find it to be persuasive.

In addition, a client's consent to a particular fee cannot abrogate the unreasonableness of that fee. See *In re Sinnott*, 845 A.2d 373 (Vt. 2004).

Your contract for, and attempt to collect, a fee in the medical malpractice matter was in excess of the statutorily provided amount, and therefore, was unreasonable.

Standard 7.2 of the ABA Standards for Imposing Lawyer Sanctions provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." In this instance, you knew that NRS 7.095 limited the amount of fees you could earn and you specifically attempted to contract around the limitation. Your client would have been monetarily injured if you had collected the unreasonable fee. Thus, the appropriate baseline sanction for your violation of RPC 1.5 (Fees) is suspension.

The Panel takes into consideration your absence of related prior discipline, your cooperative attitude toward the disciplinary proceedings, the fact that you voluntarily paid the client the full amount due to him prior to any opening of a discipline investigation, and your expressed remorse. Based on the mitigating factors, the Panel finds that it is appropriate to deviate downward from the baseline sanction of a suspension and issue a Letter of Reprimand.

### REPRIMAND

Based upon the foregoing, you are hereby REPRIMANDED for your conduct related to representation of the foregoing client, which conduct violated RPC 1.5 (Fees) because you contracted for, and attempted to collect, a contingency fee in excess of the amount allowed by statute.

Finally, in accordance with Nevada Supreme Court Rule 120 you are assessed costs in the amount of $1,500 which is due on the 30th day after issue of this letter.

---

In Re: ANTHONY M. PAGLIA
Bar No.: 11234
Case No.: OBC20-0046
Dated: 11/03/2020

### LETTER OF REPRIMAND

To Anthony M. Paglia:

Attorney Edward Achrem ("Achrem") and you agreed to act as co-counsel on three (3) personal injury cases. The agreement was to share the workload and costs in exchange for sharing the attorney's fees.

In or about September 2019, the relationship with Achrem began to deteriorate and the agreement was terminated. Most of the clients in the personal injury cases chose to keep Achrem as their legal counsel.

On January 3, 2020, you sent a text to Achrem's paralegal, who had applied to Boyd Law School at the University of Nevada, Las Vegas ("Boyd"). You attended Boyd for law school. Your text told her that you were going to send a letter to Boyd's Dean of Admissions requesting that she never be accepted.

The text read as follows:

> I've written or supported two unlv law students in their successful efforts to get into law school.
> For you, I am drafting a letter that you never be accepted because you are helping Ed steal three cases from me.
> Please make this right with Ed by having him pay my fair 50-50 share per our original agreement. Don't be unethical and immoral. I will have to share what is happening to me and my family with UNLV admissions.
> My office will begin drafting the letter today. We will 'cc' you. Money I would be giving to my 6 month, 2 year old and five year old must now be given to an attorney to defend myself against greedy ed ache in my neck. Don't let Ed use you and tarnish your name here in my hometown. Are you getting kick backs for your stealing efforts?
> I'm having another UNLV law alum draft the letter for me today. I'll probably send the letter once a month until our three cases are settled just as a friendly reminder of you and Ed's evil stealing ways. I will cite the precious case where Ed failed to pay his lien or fair share.

The threatened letter to Boyd regarding the paralegal was drafted but never sent. However, you committed a potentially criminal act when your text included a threat to re-send the letter every month until the underlying civil cases were settled.

Accordingly, your text appears to be an attempt to obtain money from Achrem through acts of harassment, blackmail or extortion, not an expression of your opinion about a law school applicant to Boyd officials. However, Respondent's letter was never sent and, therefore, it did not impact her application to law school.

ABA Standard 5.13 states that "[r]eprimand is generally appropriate when a lawyer knowingly engages in conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

Accordingly, you are hereby Reprimanded for violating Rule of Professional Conduct 8.4(c) (Misconduct: Engaging

in conduct involving dishonesty, fraud, deceit or misrepresentation).

---

ENDNOTES:

1. The disbarment order also requires that Qadri pay $143,208.70 in restitution to his clients.
2. All but 1 of the 40 loan modification cases were for properties located outside of California or Nevada, the two states where Qadri is licensed.
3. California amended and renumbered its rules effective November 1, 2018. The Rules listed above are those that were in effect when Qadri was disciplined. Qadri's California rule violations are equivalent to RPC 1.5(a) (fees); RPC 1.16 (declining or terminating representation), RPC 5.5(a)(1) (unauthorized practice of law), and SCR 115 (notice of change of license status; winding down of practice). Qadri also violated California Business and Professions Code (BPC) § 6106.3 (accepting advance fees for loan modification services), for which there is no equivalent Nevada rule.
4. Qadri is also suspended for non-payment of license fees.
5. Despite the default, Scalia participated in the disciplinary proceedings and submitted evidence toward mitigation.
6. Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this matter. We remind the State Bar that hearing panel decisions should be served on the attorney under SCR 105(3)(a) and pursuant to SCR 109(1). As such, the best practice would be for the State Bar to serve the hearing panel's decision on the attorney separate from service of the record of bar proceedings filed in this court. Further, we remind the State Bar that certificates of service must accompany any document filed with this court. NRAP 25(d).
7. To the extent the parties' additional arguments are not addressed herein, we conclude they do not warrant a different result.
8. After accepting Iarussi's guilty plea in the criminal case, the district court stayed adjudication and placed Iarussi on probation for three years subject to a diversion program.
9. Because the conduct addressed in the petition for temporary suspension in Docket No. 79030 was subsequently addressed in Docket No. 81338 in reaching the conditional guilty plea agreement, and by the panel in recommending approval of the agreement, we deny as moot the petition for temporary suspension in Docket No. 79030.
10. The conditional guilty plea agreement included a condition that Iarussi must pay the costs of a previous disciplinary matter before applying for reinstatement, but as we explained in *Shoen v. State Bar of Nevada*, 136 Nev., Adv. Op. 30, 464 P.3d 402, 405 (2020), a 2018 amendment to SCR 116(2) renders such ad hoc reinstatement-based conditions unnecessary. The condition is not included in the panel's written recommendation to approve the agreement.

# TIP FROM THE BAR COUNSEL

## Diversity and Inclusion: Strengthening the Legal Profession

The Meeting of Waters is the confluence of two rivers, the Rio Negro and the Solimoes River, in the Brazilian Amazon. The two rivers' waters run side by side, one black and one cocoa in color, for six kilometers (3.7 miles) without mixing. Scientists credit this phenomenon to the differences in temperature, speed and sediment.

Sadly, like the Meeting of Waters, the legal profession has been slow to merge with new people of diverse backgrounds. The legal profession remains one of the least diverse of any profession.

American Bar Association National Surveys found that women in the legal profession rose only slightly from 30 percent to 35 percent, respectively, from 2007 to 2017. In those same surveys, both African Americans and Hispanic or Latino numbers, rose only from 4 percent to 5 percent each from 2007 to 2017. U.S. Census Bureau data indicates that African Americans and Hispanic or Latino individuals made up 13.3 percent and 17.8 percent of the total U.S. population, respectively, in 2016. Asian and Native Americans have even more disparate numbers.

What can we do? Studies show that diversity is good for business. Hiring and promotion are great ideas. But in the courtroom and across the table, we can be more professional and welcoming. In fact, anything less could be misconduct.

Take the case of *Florida Bar v. Martocci,* 791 So. 2d 1074 (2001). The Florida Supreme Court affirmed a public reprimand and two years of probation for a lawyer who told opposing counsel to "go back to Puerto Rico." The lawyer argued for a private reprimand, but the court reiterated an earlier holding:

> [W]e find the conduct of the lawyers involved in the incident giving rise to these proceedings to be patently unprofessional. … We should be and are embarrassed and ashamed for all bar members that such childish and demeaning conduct takes place in the justice system. It is our hope that by publishing this opinion and thereby making public the offending and demeaning exchanges between these particular attorneys, that the entire bar will benefit and realize an attorney's obligation to adhere to the highest professional standards of conduct …

Interestingly, the court sanctioned the attorney under Rules of Professional Conduct (RPC) 8.4(d), conduct that is prejudicial to the administration of justice. Most states, like Nevada, have not adopted RPC 8.4(g), which explicitly prohibits discriminatory conduct. So, although Nevada does not have an explicit discrimination rule, we all must avoid discrimination under RPC 8.4(d). Better yet, we should actively promote diversity and inclusion.