LIPSON NEILSON P.C.
JOSEPH P. GARIN
Nevada Bar No. 6653
MEGAN H. THONGKHAM
Nevada Bar No. 12404
AMBER M. WILLIAMS
Nevada Bar No. 12301
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
Phone: (702) 382-1500
Fax: (702) 382-1512
jgarin@lipsonneilson.com
mthongkham@lipsonneilson.com
awilliams@lipsonneilson.com

*Attorneys for Defendants*
*Don C. Keenan; D.C. Keenan & Associates, P.A.; and*
*William Entrekin*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL | Case No.: 2:21-cv-02237-GMN-DJA |
| Plaintiffs, | **DEFENDANTS DON C. KEENAN, KEENAN & ASSOCIATES, P.A., AND WILLIAM ENTREKIN'S JOINDER TO KEENAN'S KIDS FOUNDATION, INC. AND DAVID J. HOEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT [ECF NO. 17]** |
| v. | |
| DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDEUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHTLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE, | |
| Defendants. | |

Defendants Don C. Keenan ("Keenan"); D.C. Keenan & Associates, P.A.

("Keenan Law Firm"); and William Entrekin ("Entrekin"), (at times collectively hereinafter

- 1 -

1
2
3
4
5
6

"Defendants,") by and through their counsel of record at the law firm of LIPSON NEILSON P.C., hereby join Defendants Keenan's Kids Foundation, Inc. and David J. Hoey's Motion to Dismiss Plaintiffs' Amended Complaint ("Motion"), ECF No. 17, and adopt all arguments set forth therein. In addition to joining the arguments set forth in the Motion, Defendants assert the following arguments, set forth more fully in the Memorandum of Points and Authorities below.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

7

**I.**     <u>**INTRODUCTION AND SUPPLEMENTAL STATEMENT OF FACTS**</u>

8

9
10
11
12
13

Don Keenan needs no introduction. In fact, Mr. Keenan is perhaps one of the most well-known personal injury lawyers in the nation. For forty plus years, Mr. Keenan, through Keenan Law Firm, has been dedicated to handling complex damages cases around the country, involving everything from catastrophic personal injury claims to medical negligence, product liability, aviation claims – and more. ECF No. 17-2 at ¶ 6.

14
15
16
17
18
19
20
21

Mr. Keenan is also the founder of co-defendant Keenan's Kids Foundation ("KKF"), a non-profit dedicated to the education of the general public, law students, and practicing lawyers to increase awareness of the needs of children at-risk in the legal system. *Id*. at ¶¶ 13 – 14. KKF is the owner of intellectual property exclusively used by co-defendant Keenan Trial Institute, which offers educational curriculum instructing lawyers on how to win their trials, protect their communities, and deter wrongdoers, through confidential and proprietary techniques, developed by Mr. Keenan and Keenan Law over the course of many years. *Id*. at ¶ 15.

22
23
24
25
26
27
28

Notwithstanding his long and prolific career, Mr. Keenan has no substantial or continuous contact with the State of Nevada. In fact, he was admitted just once, *pro hac vice*, in 2014, for a case which he tried to verdict in or around 2018. *Id*. at ¶ 9. Keenan Law does not maintain a Nevada office, does not purchase advertising in Nevada-based media, and does not engage in any advertising specifically targeted towards Nevada residents. *Id*. at ¶¶ 44 & 50. In fact, Keenan Law estimates that Nevada has accounted

/ / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

for less than 1% of the firm's overall legal representation and services since the firm was founded in 1981. *Id.* at ¶ 10.

Similarly, Mr. Entrekin is a resident of Dahlonega, Georgia and an employee at Keenan Law. *See* Declaration of William Entrekin, attached hereto as **Exhibit 1**. Mr. Entrekin is not a lawyer. *Id.* at ¶ 8. He began his career at Keenan Law as an Executive Assistant and was promoted shortly thereafter to Director of Operations. *Id.* at ¶ 4. Mr. Entrekin works primarily in Keenan Law's Atlanta office. *Id.* at ¶ 6. Prior to the pandemic, he traveled to Florida a few times a year for firm business. However, he has not set foot in the State of Nevada since approximately 2003, when he spent a weekend in Las Vegas while stationed with the Navy in San Diego. *Id.* at ¶ 10. Relative to his work for Keenan Law, Mr. Entrekin's sole contact with Nevada was to push "send" on an April 27, 2020 email that was sent to members only Listserv. See ECF No. 12 at ¶ 53-55; *see also* Exhibit 1 at ¶ 14.

Despite the lack of any substantial or continuous contact with Nevada, Mr. Keenan, Mr. Entrekin, and Keenan Law have become the targets of the instant lawsuit, filed by Plaintiff Sean K. Claggett and his law firm, Sean K. Claggett & Associates, LLC dba Claggett & Sykes Law Firm ("Claggett& Sykes"), in direct retaliation for a 2020 lawsuit brought by KKF against Mr. Claggett in the Northern District of Georgia ("Georgia Action"). *See generally* ECF No. 12.

Mr. Claggett was an instructor for KKF's Trial College and attended destination trainings on KKF course material. ECF No. 12 at ¶ 33. The Georgia Action alleged, among other things, that after Mr. Claggett ended his instructor relationship with KKF in 2018, he misappropriated various trade secret voir dire techniques that he had received directly from Mr. Keenan, and used those trade secrets in voir dire seminars offered through third parties without authorization from KKF. ECF No. 17-2 at ¶ 16. Though the pleadings in the Georgia Action do not directly reference Mr. Entrekin's April 27, 2020 email, the email conveys the exact same facts as set forth in the complaint and

/ / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

amended complaint., and in fact, specifically discusses the filing of the Georgia Action. *Id.* at ¶ 37.

After the district court denied his motion to dismiss, Mr. Claggett filed an answer in the Georgia Action. Neither his motion nor his answer challenged the court's jurisdiction, nor did Mr. Claggett ever attempt to file any counterclaims against KKF, even after he was expressly invited to do so by the district court in order to reach a merits judgment in the case. *Id.* at ¶¶ 19, 20 & 25.

Instead, Mr. Claggett waited until after KKF voluntarily dismissed the Georgia Action to bring a separate, retaliatory action against Defendants in a forum more convenient to Mr. Claggett. Mr. Claggett and Claggett & Sykes brought claims against Defendants for (1) Defamation; (2) Defamation Per Se; (3) Civil Conspiracy; (4) Intentional Interference with Contractual Relations; (5) Intentional Interference with Prospective Economic Advantage; (6) Civil Conspiracy; and (7) Declaratory Relief.

All of the allegations and claims asserted against Defendants are barred by Nevada's anti-SLAPP statute, codified at NRS § 41.660, et. seq. The anti-SLAPP statute was enacted to protect persons from civil liability arising out of good faith communications made in furtherance of the right to petition, or the right to free speech in direct connection with an issue of public concern. *See* Nev. Rev. Stat. § 41.660. The allegations that form the basis of Plaintiffs' claims against Defendants fall directly within the purview of the statute's protection. Namely, Plaintiffs' Amended Complaint is premised on the allegations made by KKF against Mr. Claggett in the Georgia Action, as well as communications and activities leading up to the filing of suit in the Georgia Action. Plaintiffs filed suit in Nevada in a transparent and prohibited attempt to punish KKF, and related persons and entities, and to litigate claims that should have been filed as compulsory counterclaims in the Georgia Action.

KKF's good faith communications in the Georgia Action, which necessarily included communications made by Mr. Keenan and/or Keenan Law, as well as Mr. Keenan, Mr. Entrekin, and Keenan Law's communications leading up to the filing of the

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

1  Georgia Action, are protected from disclosure by the application of the absolute litigation
2  privilege, the scope of which is quite broad, and applies to communications and
3  activities that need only be "in some way pertinent to the subject of the controversy."
4  *Fink v. Oshins*, 118 Nev. 428, 430, 49 P.3d 640, 641 (2002). Even beyond the privilege,
5  Plaintiffs' claims are compulsory counterclaims, now barred, and their various causes of
6  action for defamation, intentional interference, and conspiracy fail as a matter of law.
7  Against this background, Plaintiffs cannot demonstrate a probability of prevailing on any
8  of the claims and their Amended Complaint is subject to dismissal accordingly.

9  Secondarily, there is no basis for the District Court of Nevada to exercise
10  personal jurisdiction over Mr. Keenan, Mr. Entrekin, or Keenan Law. Mr. Keenan and
11  Mr. Entrekin live and work in Florida and Georgia, respectively, and Mr. Keenan has
12  been unable to travel for the past year due to health restrictions. Additionally, the
13  anticipated primary witnesses and crucial documents are located in Georgia and
14  Keenan Law is a Georgia/Florida-based law firm, with no Nevada office. Therefore,
15  Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint
16  against Mr. Keenan, Mr. Entrekin, and Keenan Law group pursuant FRCP 12(b)(2) and
17  12(b)(3). Alternatively, Defendants request that the Court transfer this Action to the
18  Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

19  **II.    STANDARD OF REVIEW**

20      **A.    Dismissal Pursuant to Nevada's anti-SLAPP Statute**

21  In 1993, the Nevada legislature enacted statutory provisions to protect persons
22  making "good faith communication in furtherance of the right to petition" from being
23  subjected to retaliatory litigation arising from those communications. See *John v.*
24  *Douglas County School Dist.*, 219 P.3d 1276 (Nev. 2009) (superseded by statute); *see*
25  *also* Nev. Rev. Stat. § 41.660.

26  The primary purpose of these retaliatory lawsuits, known as Strategic Lawsuits
27  Against Public Participation or "SLAPP" suits, is "to chill the defendant's exercise of First

28

Amendment rights."[1] *Id.* (internal citations omitted). In most cases, this is accomplished "by increasing litigation costs until the adversary's case is weakened or abandoned." *Id.*, citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 969-70 (9th Cir. 1999). "Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions (suits for malicious prosecution and abuse of process, and requests for sanctions) are inadequate to counter SLAPPs." *Lockheed*, 190 F.3d at 970-71.

Nevada's anti-SLAPP statute levels the playing field by providing defendants "with a procedural mechanism to dismiss the meritless lawsuit… **before** incurring the costs of litigation." *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019) (emphasis added); *see also* Nev. Rev. Stat. §41.660(1)(a). Specifically, if a SLAPP action is filed "based upon a good faith communication in furtherance of the right to petition … the person against whom the action is brought may file a special motion to dismiss." See Nev. Rev. Stat. §41.660(1)(a). "The purpose of Nevada's anti-SLAPP statute is similar to the purpose behind the *Noerr-Pennington* immunity doctrine, which holds that, those who petition all departments of the government for redress are generally immune from liability." *Allstate Ins. Co. v. Belsky*, No. 2:15-cv-02265-MMD-CWH, 2017 U.S. Dist. LEXIS 224167, at *6-7 (D. Nev. Mar. 31, 2017) (internal quotations omitted).

In analyzing the special motion to dismiss, the Court must first "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.660(3)(a); *see also Coker*, 432 P.3d at 749. If the moving party meets this burden, the court must then "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." Nev. Rev. Stat. 41.660(3)(b); *see also Williams v. Lazer, 137 Nev. Adv. Op. 44* (Sep 16, 2021)

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." First Amendment.

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

1   (statements protected by litigation privilege are relevant to second prong of anti-SLAPP

2   analysis and are a complete defense to claims.); *Delucchi v. Songer*, 396 P.3d 826

3   (Nev., 2017) (the applicable version of NRS 41.660(3)(a) is the version in effect at the

4   time of the events in question).

5          Dismissal under this section operates as dismissal on the merits. Nev. Rev. Stat.

6   § 41.660(4). Further, if the court grants a special motion filed pursuant to NRS 41.660,

7   the court must award reasonable costs and attorney's fees and may award an additional

8   amount up to $10,000 to the person against whom the action was brought. Nev. Rev.

9   Stat. § 41.670.

10         **B.   Dismissal for Lack of Personal Jurisdiction**

11         A defendant may move for dismissal for lack of personal jurisdiction under FRCP

12  12(b)(2). Fed. R. Civ. P. 12(b)(2). Once the motion is made, "the plaintiff bears the

13  burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin*

14  *Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004), *citing Sher v. Johnson*, 911 F.2d 1357,

15  1361 (9th Cir. 1990); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

16  1066, 1073 (9th Cir. 2011).

17         The nature of the court's legal inquiry on a Rule 12(b)(2) motion largely depends

18  on the type of challenge made and how the motion is supported. See generally

19  *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (the

20  showing a plaintiff is required to make to a claim that a court lacks jurisdiction "varies

21  depending on the procedural posture of the litigation").

22         If the motion is based on written materials alone, the court must inquire as to

23  whether "the plaintiff's pleadings and affidavits make a *prima facie* showing of personal

24  jurisdiction." *Schwarzenegger*, 374 F.3d at 800, citing *Caruth v. International*

25  *Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). "This prima facie showing

26  must include an averment of facts that, if credited by the ultimate trier of fact, would

27  suffice to establish jurisdiction over the defendant." *O'Neill v. Asat Tr. Reg. (In re*

28  *Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659, 673 (2d Cir.

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

2013) (internal citations omitted). However, in determining whether a plaintiff has met this burden, the court must "not draw argumentative inferences in plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (internal citations omitted).

When there is no applicable federal statute governing personal jurisdiction, the law of the forum state prevails. *Schwarzenegger,* 374 F.3d at 800. Relative to this action, 15 U.S.C.A. § 78aa vests the district courts of the United States with exclusive subject-matter jurisdiction over violations of the Exchange Act, and the rules and regulations thereunder. 15 U.S.C.S. § 78aa. For the claims where no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Where a forum state has a "long-arm" statute or rule providing its courts with jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada does, a court need only apply federal due process standards to determine personal jurisdiction." *Corbello v. Devito*, 844 F. Supp. 2d 1136, 1148 (D. Nev. 2012) (internal citations omitted); *see also* Nev. Rev. Stat. § 14.065.

## C.   Dismissal for Improper Venue, or Alternatively, Transfer of Venue

A defendant may move to dismiss a complaint for improper venue under FRCP 12(b)(3). *See* Fed. R. Civ. P. 12(b)(3). "Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 958-59 (N.D. Cal. 2015), citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

In resolving the motion to dismiss for improper venue, the court is not required to accept the allegations in the complaint as true. See *Nat'l Fitness Co. v. Procore Labs., LLC*, No. 2:10-CV-2168 JCM (RJJ), 2011 U.S. Dist. LEXIS 65416, at *3 (D. Nev. June 20, 2011), citing See *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). Instead, it may rely on facts outside of the pleadings to make its determination,

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

including affidavits from the parties and documents properly subjected to judicial notice. *Id.*; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); and *Ross v. Davis*, 74 F. Supp. 3d 231, 235 (D.D.C. 2014).

If the court determines that venue is improper (or proper, but inconvenient for parties and witnesses), it must either dismiss the action pursuant to FRCP 12(b)(3) or, "if it is in the interests of justice, transfer the case to a district or division in which it could have been brought" pursuant to 28 U.S.C. § 1406(a). *Adobe Sys.,* 125 F. Supp. 3d at 958-59; *see also Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) ("Section 1404(a) … serves as a statutory substitute for forum non conveniens in federal court when the alternative forum is within the territory of the United States.").

Whether dismissal or transfer is the appropriate relief is left within the sound discretion of the court. *Id.*, citing *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). Transfers should be considered on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The court should analyze the location where relevant agreements were negotiated and executed, the state most familiar with the governing law, the plaintiff's choice of forum, the differences in the costs of litigation, the availability of compulsory process to compel attendance of unwilling non-party witnesses, and the ease of access to sources of proof. *Id.* "The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S. Ct. 828, 833 (1947).

## D.   Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted

A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable theory of law." *Balistreri v. Pacific Police Dept.*, 901 F. Supp. 2d 696, 699 (9th Cir. 1990). The Federal Rules require that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pr. 8(a)(2). In order to survive

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

1
2
3
4
5
6
7

a motion to dismiss, a plaintiff must allege facts that are enough to raise his right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement' to relief." *Id*. This requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

8
9
10
11
12
13
14

"A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 868 (2009). The *Iqbal* court identified two "working principles" governing motions to dismiss. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 679.

15
16
17
18
19
20
21
22
23

If matters outside the pleadings are presented to the Court, the Rule 12(b)(6) motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. Pr. 12(b)(5). "The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to *see* whether there is a genuine need for trial." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

24
25
26
27
28

To survive a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings," *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986), nor may it "simply show there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co.*, 475 U.S. at 586. It is the nonmoving / / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

1  party's burden to "come forward with specific facts showing that there is a **genuine** issue
2  for trial." *Id.* at 587 (emphasis added).

3      An issue is only genuine if there is a sufficient evidentiary basis for a reasonable
4  jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248 (1986).
5  Further, a dispute will only preclude the entry of summary judgment if it could affect the
6  outcome of the suit under governing law. *Id.* "The amount of evidence necessary to raise
7  a genuine issue of material fact is enough 'to require a judge or jury to resolve the
8  parties' differing versions of the truth at trial." *Id.* at 249. In evaluating a summary
9  judgment motion, a court views all facts and draws all inferences in the light most
10 favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793
11 F.2d 1100, 1103 (9th Cir. 1986).

## III.   LEGAL ARGUMENT

### A.   Defendants Satisfy the First Prong of Nevada's anti-SLAPP Analysis Because Plaintiffs' Claims are Based Upon Good Faith Communications Pursuant to NRS 41.637.

16      The Amended Complaint makes very few express allegations of wrongdoing
17 against Mr. Keenan, Mr. Entrekin, or Keenan Law. *See generally* ECF No. 12. Instead,
18 the bulk of the factual allegations are speculative and based "upon information and
19 belief." *See generally* ECF No. 12. In short, Plaintiffs assert "upon information and
20 belief," that Defendants conspired together and intentionally interfered with Plaintiffs'
21 contractual relationship with Las Vegas client Logan Erne, and that Defendants sent
22 emails that were "direct attacks" on Plaintiffs and their focus group company, and were
23 at times defamatory in nature. *See e.g.*, *Id.* at ¶¶ 3 – 5, 43, 70-75. The only specific
24 allegation that Defendants can identify relates to the April 27, 2020 email sent by Mr.
25 Entrekin to members of KKF's listserv, notifying them of Mr. Claggett's misappropriation
26 of KKF's intellectual property and the pending federal lawsuit. *Id.* at ¶¶ 53 – 55.

27 / / /
28 / / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

The declarations attached to the Motion and this Joinder disprove Plaintiffs' claims, but even "proof" is unnecessary for the Court to dismiss the Amended Complaint because the allegations in the Amended Complaint are premised on good faith communications made in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern. *See* Nev. Rev. Stat. § 41.637.

NRS 41.637(3) enumerates four categories of speech which constitute "good faith communication[s] made in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.637. Relative to this matter, these categories include a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive, or judicial body, or any other official proceeding authorized by law," and "[c]ommunications made in direct connection with an issue of public interest in a place open to the public or in a public forum," as long as the communications are "truthful or made without knowledge of falsehood." Nev. Rev. Stat. § 41.637(3).

Notably, "[t]he statute has no temporal requirement that only communications that come after the filing of a complaint are protected…" *LHF Productions, Inc. v. Kabala*, 2018 WL 4053324, at *3 (D. Nev., 2018), citing *GeneThera, Inc. v. Troy & Gould Prof'l Corp.* 90 Cal. Rptr. 3d 218, 222–23 (2009) (attorney communications pending litigation are protected by anti-SLAPP statute) and *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (California and other states protect prelitigation communications).

Plaintiffs' claims against Mr. Keenan, Mr. Entrekin, and Keenan Law Group are premised on allegations and claims first raised by KKF in the Georgia Action. KKF had an absolute right to petition a judicial body to adjudicate allegations of trade secret violations, on behalf of Mr. Keenan, his firm, and the trial institute that utilized the intellectual property at issue. None of the allegations asserted against Mr. Claggett were untruthful, or made with knowledge of their falsehood. This is evidenced by the fact that / / /

1  KKF moved to voluntarily dismiss the lawsuit, once it appeared that Mr. Claggett was no
2  longer misappropriating KKF's intellectual property.

3      Relative to the April 27, 2020 email, the content of the email is nearly identical to
4  the factual allegations set forth in the complaint filed by KKF in the Georgia Action, and
5  therefore should fall within the purview of NRS 41.637(3). Alternatively, the email also
6  constitutes a communication in direct connection with an issue of public interest made in
7  a place open to the public, or a public forum. *See* Nev. Rev. Stat. § 41.637(4); *see also*
8  *Abrams v. Sanson*, 458 P.3d 1062, 1067-1068, 2020 Nev. LEXIS 8 *11-13, 136 Nev.
9  Adv. Rep. 9, 2020 WL 1071440 ("We hold that an email listserv may constitute a public
10 forum for purposes of the anti-SLAPP statutes…").

11     There is no question that a communication to "all of the state Reptile listservs,"
12 regarding a federal lawsuit filed because of alleged misappropriation of intellectual
13 property is an issue of public interest, made in a public forum. Nev. Rev. Stat. §
14 41.637(4); *see also* ECF No. 12 at ¶ 53-55. The statements set forth in the email cannot
15 be false because they were only matters of opinion, and as the Nevada Supreme Court
16 has recognized, "there is no such thing as a false idea." *Abrams v. Sanson*, 458 P.3d
17 1062, 1068 (Nev. 2020), citing *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714,
18 57 P.3d 82, 87 (2002) (internal quotation marks omitted).

19     Further, as alleged in the Amended Complaint, "the email went out to over 4,000
20 lawyers across the country." ECF No. 12 at ¶ 54. In *Abrams v. Sanson*, the Nevada
21 Supreme Court determined that emails sent to a listserv of approximately 50,000
22 subscribers provided a medium through which public matters are disseminated and,
23 therefore, the emails sent to the listserv "were communicated in a public forum,
24 satisfying the second element of a protected good-faith communication." *Sanson*, 458
25 P.3d at 1068. In support of this conclusion, the Nevada Supreme Court reasoned that,
26 "Unlike a single email exchange between two private parties or a communication sent to
27 a small number of people in a private email chain, the communications at issue here
28 were sent to about 50,000 subscribers in a modern manner akin to a radio or television

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

broadcast or newsletter." *Id.*, citing *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 448, 134 S. Ct. 2498, 189 L. Ed. 2d 476 (2014) (holding that individual subscribers who received transmissions constituted "the public" when the same contemporaneously perceptible images and sounds were communicated to them as a large group of people); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 102 Cal. Rptr. 2d 205, 210-11 (Ct. App. 2000) (finding that a newsletter distributed to 3000 recipients constituted a public forum, because it was a "vehicle for communicating a message about public matters to a large and interested community"). Here too, the email sent to the listerv were communicated to a large group of people as a "vehicle for communicating a message about public matters to a large and interested community," which constitutes a public forum under Nevada law. For all of these reasons, Defendants' communications and activities are good faith communications, and satisfy the first prong of Nevada's anti-SLAPP statute.

**B.    Plaintiffs' Cannot Meet Their Burden on the Second Prong of Nevada's anti-SLAPP Bcause They Cannot Demonstrate with Prima Facie Evidence the Probability of Prevailing on Their Claims.**

**i.    The Communications and Conduct at Issue are Protected by the Absolute Litigation Privilege.**

Nevada has long held that the absolute litigation privilege applies to any "communications made in the course of judicial proceedings even if known to be false are absolutely privileged." *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502, 125 Nev. 374, 382 (Nev. 2009) (internal quotations omitted), citing *Circus Hotels v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983). "[T]he privilege applies not only to communications made during the actual judicial proceedings, but also to communications preliminary to a proposed judicial proceeding." *Fink v. Oshins*, 49 P.3d 640, 644, 118 Nev. 428, 433 (Nev. 2002). In *Williams v. Lazer, 137 Nev. Adv. Op. 44* (Sep 16, 2021), the Nevada Supreme Court clarified that the litigation privilege even applies in quasi-judicial administrative proceedings.

/ / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

The policy behind the absolute privilege, as it applies to attorneys participating in judicial proceedings, is to grant them "as officers of the court the utmost freedom in their efforts to obtain justice for their clients." *Fink*, 49 P.3d at 644, 118 Nev. at 433. To that end, "a court determining whether the privilege applies should resolve any doubt in favor of a broad application." *Clark County School Dist.*, 213 P.3d at 502 (internal citations omitted). To that end, the privilege protects communications even when they are "alleged to be fraudulent, perjurious, unethical, or even illegal." *Kashian v. Harriman*, 98 Cal.App.4th 892, 895 (Cal. App. 5 Dist.); *see also GeneThera, Inc.*, 171 Cal. App. 4th at 909 (litigation privilege applies even to conduct at variance with the rules of professional conduct); *see also Fink*, 118 Nev. at 432-33 (the absolute litigation privilege is, at its name indicates, absolute: it precludes liability even where the defamatory statements are published with personal ill will towards the plaintiff).

Additionally, the privilege applies to communications made by a non-attorney that is related to ongoing litigation or future litigation contemplated in good faith. *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc., 125 Nev. 374, 383, 213 P.3d 496, 503 (2009); Ademiluyi v. Phillips*, 2:14-cv-005-7, 2015 WL 5146898, at *6 (D. Nev. Sept. 2, 2015); *Jacobs v. Adelson*, 130 Nev. 408, 413, 325 P.3d 1282, 1285 (2014) ("[T]he privilege applies to communications made by either an attorney or a nonattorney. . . .").

Although rooted in defamation, *Fink v. Oshins*, 118 Nev. 428, 49 P.3d 640 (2002), the privilege has been applied to protect attorneys in a broad range of other claims, including defense of claims for bad faith and breach of fiduciary duty, interference with business relationships, civil conspiracy and racketeering. *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) (tortious interference and conspiracy to defraud); *Crockett & Myers Ltd. v. Napier, Fitzgerald & Kirby LLP*, 440 F. Supp. 2d 1184 (D. Nev. 2006) (bad faith and breach of fiduciary duty); *Boca Investors Group, Inc. v. Potash*, 835 So.2d, 273 (Fla. Dist. Ct. App. 2002) (interference with business relationships); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 151 P.2d 979 (Utah 1999) (judicial proceedings privilege extends not only to defamation, but

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

to all claims arising from the same statements). "**The privilege applies as long as the statements are in some way pertinent to the subject of the controversy**." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (emphasis added).

Here, Plaintiffs' defamation, defamation per se, and interference claims against Defendants are premised on allegedly "false" statements by KKF and Hoey during ongoing litigation in the Georgia Action, as well as the April 27, 2020 email that Mr. Entrekin sent to a listserv, notifying members of the ongoing litigation. Though Mr. Keenan, Mr. Entrekin, and Keenan Law were not named plaintiffs in the Georgia Action, the action was initiated in large part based on Mr. Keenan's communications and interactions with Mr. Claggett leading up to the filing of the Georgia Action. Had the case proceeded on its merits, Mr. Keenan, Mr. Entrekin, and Keenan Law were likely to be called as witnesses to testify on the exact same communications and activities that are now at issue in this lawsuit, all of which took place in the context of pending or active litigation, including the April 20, 2020 email, which on its face discussed the pending Georgia Action. These activities are therefore privileged and subject to dismissal under Nevada's anti-SLAPP statute.

### ii. Plaintiffs Fail to Properly State a Claim for Defamation or Defamation Per Se.

To establish a claim for defamation, a plaintiff must prove four elements: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *VESI*, 125 Nev. at 385 (internal citations omitted). If the statement "imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se," which means the Court may presume damages. *Id.*, 213 P.3d at 503.

Plaintiffs' defamation claim fails because the April 27, 2020 email, on its face, was not "an unprivileged publication to a third person." *Id.* The allegations in the April 27

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

email were "already published in every sense of the word" in the Georgia Action, where the pleadings were publicly filed. *Vail v. Pioneer Mut. Life Ins. Co.*, 2:10-CV-233 JCM (LRL), 2010 U.S. Dist. LEXIS 107994, at *4 (D. Nev. Oct. 6, 2010). The email also went out only to members of KKF's listservs, which are exclusively available to KKF course instructors and attendees. *See, e.g., Wang v. Nev. Sys. of Higher Educ.*, Case No. 3:18-cv-00075-MMD-CBC, 2018 U.S. Dist. LEXIS 189632, at *11 (D. Nev. Nov. 6, 2018) (agreeing that "communications between members of the same organization" are not publications to third persons); *see also Carter v. Willowrun Condominium Ass'n*, 179 Ga. App. 257, 258 (1986) (noting information has been found not published via communications between members of corporations, unincorporated groups, and associations.").

Plaintiffs further fail to plead that any particular statement in the April 27, 2020 is actually false. In fact, Plaintiffs simply copied and pasted the entire email into their complaint without comment. ECF No. 12 at ¶¶ 53-55. A vague and conclusory statement that the email is "false and defamatory" is insufficient to survive a motion to dismiss. The Amended Complaint leaves open that the April 27, 2020 email is true and therefore cannot plausibly support a claim for defamation or defamation per se. *See, e.g., Smith v. Craig*, Case No.: 2:19-cv-00824-GMN-EJY, 2020 U.S. Dist. LEXIS 38774, at *25-26 (D. Nev. Mar. 4, 2020).

### iii.   Plaintiffs Fail to Properly State a Claim for Civil Conspiracy.

To establish a claim for civil conspiracy, a plaintiff must show that defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming plaintiff; and that plaintiff sustained damages resulting from defendants' act or acts. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 971 P.2d 1251 (1999); *see also Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98 (1998).

When pleading a claim for civil conspiracy, a plaintiff must "plead with particular specificity as to the manner in which a defendant joined in the conspiracy and how he

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

participated in it." *Sharda v. Sunrise Hospital and Medical Center, LLC*, 2017 WL 2870086, at *10 (D. Nev., 2017), citing *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D.C. Nev., 1984). Additionally, for a claim of civil conspiracy to succeed, "the primary purpose of a conspiracy must be to cause injury to another …So long as the object of the combination is to further its own fair interest or advantage, its members are not liable for any injury which is merely incidental." *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1532 (D.Nev.,1989).

Here, Plaintiffs have not plead with specificity their conspiracy claim against Defendants. The Amended Complaint merely recites the requirements of the cause of action, mostly "upon information and belief," with no reference to the time or place of the conspiracy, how Defendants individually joined the conspiracy, that the purpose of their activities were to harm Plaintiffs, or that their activities somehow constituted an unlawful objective. ECF No. 12 at ¶¶ 133-159.

Further, there can be no conspiracy between Mr. Keenan, Mr. Entrekin, and Keenan Law Group under the preclusive weight of the intra-corporate conspiracy doctrine, which stands for the proposition that "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *See Collins v. Union Federal Sav. & Loan Ass'n*, 662 P.2d 610, 622, 99 Nev. 284, 303 (Nev.,1983); *see also Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 407, 347 Ark. 941, 962 (Ark.,2002) (to sustain a claim for conspiracy against agents and their corporation, a plaintiff must prove that one or more of the agents acted outside of the scope of their employment "to render them a separate person for the purposes of conspiracy.").

There are no allegations in the Amended Complaint that Defendants acted outside the scope of their employment. In fact, to the contrary, Plaintiffs assert that Mr. Keenan, Mr. Hoey, and Mr. Entrekin were all employees of KKF and/or Keenan Law Firm, acting *in* the scope of their employment with respect to, at the very least, the so-

called defamatory conduct, and that the entities are therefore "vicariously liable" for Plaintiffs' damages. ECF No. 12 at ¶¶ 82-84, 137-140, 155, 157. Plaintiffs' belief and assertion that the various defendants share a unity of interest and are not severable cannot be ignored. For this reason, and in the absence of any specific allegation of any conduct whatsoever outside the scope of the defendants' employment, Plaintiffs' conspiracy claim must be dismissed accordingly.

### iv. Plaintiffs Fail to Properly State a for Intentional Interference with Contractual Relations or Interference with Prospective Economic Advantage.

To prevail on a theory of intentional interference with existing contractual relations, a plaintiff must establish the following: (1) a valid and existing contract; (2) that defendant had knowledge of the contract; (3) that defendant's acts were intentional and designed to disrupt the contractual relationship; (4) that actual disruption occurred; and (5) that plaintiff incurred damage. *J.J. Industries, LLC v. Bennet*, 71 P.3d 1264, 1267, 119 Nev. 269, 274 (Nev.,2003).

The defendant's "mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* at 276, 71 P.3d at 1268.

Plaintiffs cannot establish that Defendants acted to disrupt their contract with Mr. Erne. There is nothing more than speculation and conjecture, based "upon information belief," to support Plaintiff's "allegation" that Defendants interfered with the legal services at all. ECF No. 12 at ¶ 70. In fact, Plaintiffs are so unsure how Mr. Keenan was involved, or if he was at all, that they plead two separate potential hypotheticals as to how he could have interfered, hoping that one will stick. *Id.* at ¶ 71 ("Alternatively, upon information and belief, Defendant Davis fired Claggett & Sykes due to Defendant Keenan, Defendant Hoey, and Defendant Entrekin's April 27, 2020 email.")

Plaintiffs' claim for intentional interference with prospective economic advantage similarly fails. To prevail on this claim, a plaintiff must establish the following: (1) a

prospective contractual relationship between the plaintiff and a third party; (2) defendant's knowledge of this prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) absence of privilege or justification by the defendant; and, (5) actual harm to plaintiff as a result of defendant's conduct. *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304 (Nev. 1998). To establish actual harm, the plaintiff must also allege that he "would have been awarded the contract but for the defendant's interference." *Matthys v. Barrick Gold of N. Am.*, No. 3:20-cv-00034-LRH-CLB, 2020 U.S. Dist. LEXIS 228762, at *14 (D. Nev. Dec. 4, 2020) (citation omitted). The Amended Complaint fails to meet the requirements of this claim on all counts. Like the claim for tortious interference, there is nothing but speculation and conjecture tying Mr. Keenan, Mr. Entrekin, or Keenan Law Firm to this cause of action. Moreover, for both intentional interference and interference with prospective business relations, Plaintiffs forget that a client has an unconditional right to discharge his or her attorney, at any time, with or without cause. *Cashman v. Colo. Cas. Ins. Atty. Lien Co.*, No. 2:10-cv-01852-RLH-GWF, 2011 U.S. Dist. LEXIS 58517 at *5-6 (D. Nev. June 1, 2011) (stating that equitable remedies as opposed to contract claims are appropriate when a client ends the attorney-client relationship). Therefore, Mr. Claggett's termination cannot constitute a "breach" that gives rise to a claim for tortious interference.

### v. Plaintiffs' Claim for Declaratory Relief Fails Because Piercing the Corporate Veil is Not a Separate Cause of Action.

Piercing the corporate veil – or the "alter ego doctrine" – is not an independent cause of action. *Waterfall Homeowners Ass'n v. Viega. Inc.*, 283 F.R.D. 571, 579 (D. Nev. 2012); *see also Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067, 1074 (C. D. Cal. 2008) ("[T]he alter ego doctrine, sometimes referred to as piercing the corporate veil doctrine, is not a cause of action onto itself…."). Instead, piercing the corporate veil is a procedural means to *seek* remedies by attaching personal liability. *Winer v. Strickland*, 2:13-cv-0231-JAD-CWH, 2017 U.S. Dist. LEXIS 184960, at *9 (D. Nev. Nov.

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

7, 2017) (citing cases). Absent viable claims for defamation or tortious interference, Plaintiffs' "claim" for a remedy through piercing the corporate veil should be dismissed.

## C. The Complaint Should be Dismissed Pursuant to FRCP 12(b)(2) Because Plaintiffs Cannot Establish that General or Specific Jurisdiction is Appropriate in the District Court of Nevada.

A court may exercise personal jurisdiction over a non-resident defendant only when "that defendant has "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The minimum contacts requirement can be satisfied by establishing general jurisdiction or specific jurisdiction. *Adobe Sys.*, 125 F. Supp at 958, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

### i. General Jurisdiction

General jurisdiction exists when a defendant has substantial or "continuous and systematic" contact with the forum state. *Corbello*, 844 F. Supp. 2d at 1149, citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006). Specific jurisdiction, on the other hand, exists where there are sufficient minimal contacts with the forum to find that "a defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). Additionally, when deciding if a corporation is "at home" in a state, "the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction." *See Daimler AG*, 571 U.S. at 137 (quotation omitted).

Here, though Plaintiffs allege, upon information and belief, that Defendants have "continuous and substantial presence in the State of Nevada," they failed to plead specific allegations on which this Court could base the exercise of general jurisdiction over either the individual defendants or the firm. Vaguely referring to "training

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

materials" or participation in seminars, without reference to dates, years, or locations, is not enough to establish continuous and systematic contact with the forum. *See* ECF No. 12 at ¶ 3. Point in fact, Mr. Keenan has been practicing law for over forty years. In that forty-year time span, it is estimated that Nevada accounted for less than 1% of Keenan Law Firm's overall legal representation and services. Additionally, Keenan Law does not maintain an office in Nevada or advertise in Nevada. Mr. Entrekin is even further removed as he is not a lawyer and has not set foot in Nevada since 2003. If sporadic activities over the span of four decades were enough to create general jurisdiction, "than the same global reach would presumably be available in every other State" where some activity occurred. *Daimler AG v. Bauman,* 571 U.S. 117, 119, 134 S. Ct. 746, 750 (2014). Defendants urge this Court not to adopt "a view of general jurisdiction so grasping." *Id.*

### ii. Specific Jurisdiction

The Ninth Circuit has adopted a three-part test for analyzing a claim of specific personal jurisdiction: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 801-02, citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). It is the plaintiff's burden to satisfy the first two prongs. *Id.* Once that occurs, the burden shifts to defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174 (1985). For the reasons that follow, Plaintiffs cannot meet this burden.

Purposeful direction requires that a defendant commit an intentional act, expressly aimed at the forum state, knowing that "the brunt of the harm was likely to be suffered in the forum state." *Id.* Similarly, a showing that a defendant purposefully availed himself to a forum "generally turns on evidence of a defendant's action in the forum, "such as executing or performing a contract there." *Id.* No intentional acts,

1   express aims, or activity within Nevada are present here. Mr. Keenan is a resident of

2   Walton County, Florida and travels between Keenan Law's Atlanta, Georgia and Santa

3   Rosa Beach, Florida offices. Neither he nor the firm maintain an office in Nevada,

4   advertise in Nevada, or provide consistent legal services to Nevada residents. Mr.

5   Keenan has only appeared in one case here in Nevada in his forty-year career, and that

6   case did not involve Mr. Claggett and resolved in 2018.

7       Similarly, Mr. Entrekin lives and works near Atlanta, Georgia. He has no Nevada

8   business contacts whatsoever, and his last personal visit was as far back as 2003. The

9   only activity that Mr. Entrekin "directed" at Nevada was pushing the "send" button the

10   April 27, 2020 email. But the email was not directed specifically at Nevada. The email

11   as received by thousands of members on the Listserv. There is no reasonable argument

12   that the mere act of sending an email, at the behest of his employer, was intended to

13   affect Plaintiffs in Nevada or was otherwise "directed" at Nevada in any way that

14   reasonably gives rise to specific jurisdiction. As plead, "upon information and belief,"

15   Plaintiffs' claims simply do not arise out of Defendants' "forum-related activities" and

16   therefore, Plaintiffs also fail to meet their burden on the second prong of the three-part

17   test.

18       Because Plaintiffs cannot meet their burden on the first two prongs, the

19   jurisdictional inquiry ends and the case must be dismissed. *Boschetto v. Hansing*, 539

20   F.3d 1011, 1014 (9th Cir. 2008). However, by means of Rule 12(b)(3), discussed in

21   depth below, this Motion will also address the third prong of the three-part test: the

22   burden of the defendant to present a compelling case that the presence of some other

23   considerations would render the exercise of jurisdiction unreasonable. *Schwarzenegger*,

24   374 F.3d at 802; *see also Burger King*, 471 U.S at 476-78 (a defendant claiming

25   substantial inconvenience may *seek* a change of venue).

26   / / /

27   / / /

28   / / /

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

**D.    The Amended Complaint Should be Dismissed for Improper Venue or Alternatively, Transferred to the Northern District of Georgia.**

"If a case has been filed in the wrong district, the district court in which the case has been incorrectly filed has the discretion to transfer such case to any district in which it could have been brought." *Trottier v. Knapp*, No. 2:21-cv-00822-JAD-NJK, 2021 U.S. Dist. LEXIS 144865, at *2 (D. Nev. Aug. 3, 2021), citing 28 U.S.C. §1406(a). A motion to transfer venue requires the court to weigh multiple factors in determining whether transfer is appropriate, including but not limited to (1) the location where any relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498-99.

Further, while a plaintiff's choice of venue is afforded "considerable deference," particularly when there is a forum selection clause at issue, "the deference is minimized if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Worley v. Montgomery*, No. 2:21-CV-1024 JCM (BNW), 2021 U.S. Dist. LEXIS 153756, at *5 (D. Nev. Aug. 5, 2021); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The threshold question on a motion to dismiss for improper venue or to transfer venue, is therefore: should the case have been brought in another district?

The record shows that Nevada is not the proper venue for Plaintiffs' claims. First, there is no forum selection clause in play. Second, none of the Defendants are registered Nevada entities or reside in Nevada. By Plaintiffs' own admission, the individual Defendants are residents of Florida, Georgia, Massachusetts, and North Carolina, and the corporations are largely Georgia corporations "located in, doing business in, and residing in the State of Georgia." ECF No. 12 ¶¶ 5 – 15. Third, other than the April 27, 2020 email, which was sent out on a Listserv with some Nevada

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

1    members on it, the Amended Complaint forges no connection to the District with respect

2    to the events at issue, particularly not in the wake of the Georgia Action. Again, it cannot

3    be understated, Georgia is the forum with "a substantial interest in the dispute." *In re Air*

4    *Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1203 (C.D. Cal.

5    2004). Fourth, forcing the defendants to travel to Nevada throughout discovery and

6    ultimately for trial is costly and inconvenient. Against this background, Plaintiffs' forum

7    choice bears little weight, and the defendants' contact with the State of Georgia bodes

8    strongly in favor of dismissal, or alternatively, transfer to the Northern District of

9    Georgia.

10   **IV.    CONCLUSION**

11        Based on the foregoing arguments, Defendants respectfully request that this

12   Court dismiss Plaintiffs' Amended Complaint Pursuant to NRS 41.660 and/or FRCP

13   12(b)(3) and 12(b)(6). Alternatively, Defendants request that the Court transfer this

14   Action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

15        DATED this 26th day of January, 2022.

16                             LIPSON NEILSON P.C.

17

18                             By:_____

19                                 JOSEPH P. GARIN
                                   Nevada Bar No. 6653
20                                 MEGAN H. THONGKHAM
                                   Nevada Bar No. 12404
21                                 AMBER M. WILLIAMS
                                   Nevada Bar No. 12301
22                                 9900 Covington Cross Drive, Suite 120
                                   Las Vegas, Nevada 89144
23
                                   *Attorneys for Defendants*
24                                 *Don C. Keenan; D.C. Keenan & Associates,*
                                   *P.A.; and William Entrekin*
25

26

27

28

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of January, 2022, service of the foregoing **DEFENDANTS DON C. KEENAN, KEENAN & ASSOCIATES, P.A., AND WILLIAM ENTREKIN'S JOINDER TO KEENAN'S KIDS FOUNDATION, INC. AND DAVID J. HOEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT [ECF NO. 17]** was made upon each party in the case who is registered as an electronic case filing user with the Clerk, pursuant to Fed. Rule Civ. P. 5(b)(3), and Local Rule 5-4, as follows:

| | |
|---|---|
| Jared B. Anderson, Esq.<br>David J. Churchill, Esq.<br>INJURY LAWYERS OF NEVADA<br>4001 Meadows Lane<br>Las Vegas, NV 89107<br>jared@injurylawyersnv.com<br>david@injurylawyersnv.com<br><br>*Attorneys for Plaintiffs* | Mark J. Connot, Esq.<br>John M. Orr, Esq.<br>FOX ROTHSCHILD LLP<br>1980 Festival Plaza Dr., Suite 700<br>Las Vegas, NV 89135<br>mconnot@foxrothschild.com<br>jorr@foxrothschild.com<br><br>*Attorneys for Defendants<br>Brian F. Davis and Davis Law Group, P.A.* |
| James J. Pisanelli, Esq.<br>Debra L. Spinelli, Esq.<br>PISANELLI BICE PLLC<br>400 South 7th Street, Suite 300<br>Las Vegas, NV 89101<br>JJP@pisanellibice.com<br>DLS@pisanellibice.com<br><br>John M. Bowler, Esq.<br>Lindsay Mitchell Henner, Esq.<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>600 Peachtree Street, N.E., Ste. 3000<br>Atlanta, GA 30308<br>John.bowler@troutman.com<br>Lindsay.henner@troutman.com<br><br>*Attorneys for Defendants<br>Keenan's Kids Foundation, Inc. and David J. Hoey* | Travis E. Shetler, Esq.<br>LAW OFFICE OF TRAVIS E. SHETLER, P.C.<br>3202 W. Charleston Blvd.<br>Las Vegas, NV 89102<br>travisshetlerlaw@gmail.com<br><br>*Pro Se Defendant* |

*/s/ Kim Glad*

_____
An employee of
Lipson Neilson P.C.

Lipson Neilson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, Nevada 89144
(702) 382-1500 – fax (702) 382-1512