MARK J. CONNOT (10010)
JOHN M. ORR (14251)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
*Attorneys for Defendants Brian F. Davis
and Davis Law Group, P.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br>V.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C., KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** |

Defendants Brian F. Davis ("Mr. Davis") and Davis Law Group, P.A. ("Davis Law Group" collectively referred to with Mr. Davis as "Davis Defendants"), by and through their counsel of record, Mark J. Connot and John M. Orr of the law firm Fox Rothschild LLP, submit their Opposition to Plaintiffs' Motion to Remand (the "Motion"). This opposition is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument the Court may entertain during the hearing on this matter.

**I.    INTRODUCTION**

On November 3, 2021, a civil action was filed in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C. The thrust of Plaintiffs' claim against the Davis Defendants is that they conspired with other defendants in that action to have Claggett & Sykes fired as counsel for Logan Erne, the plaintiff in a medical malpractice lawsuit filed in the Clark County, Nevada Eighth Judicial Court on April 25, 2018, styled *Logan Erne v. Margaret Williams LCPC et al*, Case. No. A-18-773499-C (the "Erne Matter").

This Court has jurisdiction over this matter under 28 U.S.C. § 1332 (§ 1332). Each of the Defendants in this action are diverse from both Plaintiffs with the exception of Defendant Travis Shetler. However, Plaintiffs fraudulently joined Mr. Shetler for the sole purpose of defeating diversity jurisdiction. His citizenship should therefore be disregarded for purposes of assessing diversity under § 1332. Plaintiffs have asserted claims against Mr. Shetler for intentional interference with contractual relations ("intentional interference"), intentional interference with prospective economic advantage ("prospective economic advantage"), and civil conspiracy. *See generally* First Amended Compl, ("FAC"), ECF No. 12. As set forth below, Plaintiffs' claims against Mr. Shetler are obviously frivolous and not actionable under Nevada law. Plaintiffs have no good-faith factual basis for their claims against Mr. Shetler, and the summary evidence cited herein disproves these claims. Consequently, this Court should disregard Mr. Shetler's citizenship and retain jurisdiction over this matter under § 1332.

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Defendant Brian Davis is a resident of North Carolina where he is a licensed attorney and the founding partner of Defendant Davis Law Group, a North Carolina professional association. In or around May 23, 2017, Mr. Davis contacted Claggett & Sykes about serving as local counsel for Logan Erne in a medical malpractice case that arose in Clark County, Nevada. FAC ¶¶ 57–62. Claggett & Sykes agreed to act as local counsel. Claggett and Sykes and Mr. Erne signed a Medical Malpractice Contingency Fee Agreement (the "Contingency Agreement") on May 31, 2017. Mr. Erne, Claggett & Sykes, and the Davis Defendants then signed a Joint Representation and Fee-Split Agreement (the "Fee-Split Agreement" referred to with the Contingency Agreement as the "Agreement"). The Fee-Split Agreement "incorporates by reference the Claggett & Sykes Contingency Agreement with [Mr. Erne]…" True and accurate copies of the Contingency Agreement and Fee-Split Agreement are attached hereto as **Exhibit "A."** Although NRS § 7.095 limits that amount of attorney's fees that an attorney may collect in a medical malpractice matter, the Contingency Agreement states:

> NRS 7.095. You have been given a copy of NRS 7.095, which limits fee which can be charged to the party of a medical malpractice case by their attorney. In our opinion, this statute is unconstitutional, as applied to the U.S. Constitution as well as the State of Nevada Constitution. We have explained to you that we will not represent you pursuant to the fee limitation of NRS 7.095, and that we will only represent you in accordance with the fees listed in this medical malpractice contingency fee agreement. We have advised you to contact an attorney of your choice regarding this issue prior to signing this agreement.

Ex. A. at p. 2. Despite the statutory limitation on fees, the Agreement provides that Claggett & Sykes may collect between 33%–50% of all amounts recovered via a settlement of judgment. *Id.*

Over the course of the litigation in the Erne Matter, Mr. Erne became dissatisfied with Plaintiffs' representation, so he chose to terminate the Agreement with Claggett & Sykes and to retain new counsel. FAC ¶ 69. Mr. Erne terminated Claggett & Sykes on May 15, 2020. *Id.* Following its termination, Claggett & Sykes filed a Notice of Attorney's Lien in the Erne Matter. The lien is for a total $288,512.06. Notice of Attorney's Lien, attached hereto as **Exhibit "B."** The

Erne Matter is still in active litigation and it is currently scheduled for trial on October 10, 2022. Amended Order Setting Civil Jury Trial, July 1, 2021, attached hereto as **Exhibit "C."**

Rather than accept the simple truth that Mr. Erne was dissatisfied with Plaintiffs' representation, Plaintiffs allege that each of the Defendants in this matter were part of a cabal to sabotage Plaintiffs and to cause Mr. Erne to terminate his Agreement with Claggett & Sykes. *See generally* FAC. Plaintiffs filed their initial Complaint on November 3, 2021, in the Eighth Judicial District Court of the State of Nevada in and for Clark County, captioned *Sean Claggett & Associates LLC dba Claggett & Sykes Law Firm et al. v. Don C. Keenan et al*, A-21-843639-C. ECF 1-1. The initial Complaint contains bare-bones factual allegations relative to Mr. Shetler.

Plaintiffs allege that upon information and belief, Mr. Shetler along with Defendant Don Keenan "called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes." ECF 1-1 ¶ 68. This unnamed attorney refused to accept the case. *Id.* After this, Mr. Shetler agreed to act as local counsel for the Erne Matter. *Id.* ¶ 70. With respect to Mr. Davis, Plaintiffs allege "Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case." FAC ¶ 70. Plaintiffs further allege that Mr. Davis "convinced the client, upon false pretenses, to terminate the attorney client relationship" with Claggett & Sykes. *Id.* ¶ 165.

The FAC's allegations relative to Mr. Shetler are contrived and lack any good-faith factual basis. Mr. Shetler did not have any conversations with Mr. Davis, Mr. Keenan, or any other defendant regarding the Erne Matter until at least May 17, 2020, two days after Mr. Erne terminated Claggett & Sykes. ECF 1-4 ¶ 10. Mr. Davis corroborates this. Davis, B. Dec. ¶¶ 7–9, Jan. 27, 2022, attached hereto as **Exhibit "D."** Also, Mr. Shetler was never on a call with Mr. Keenan wherein they discussed replacing Claggett & Sykes as counsel in the Erne Matter. ECF 1-4 ¶ 11. Mr. Keenan also corroborates this. ECF 17-2 ¶¶ 58–60. Mr. Shetler obviously could not interfere with or conspire to interfere with an agreement that he had no knowledge of at the time it was terminated.

The Davis Defendants then filed a Motion to Dismiss on December 29, 2021. ECF No. 7. In their Motion to Dismiss, the Davis Defendants argued that Plaintiffs' claims must be dismissed because the agreement that forms the basis of Plaintiffs' claims is illegal and void under Nevada law. ECF No. 7 pp. 7–10. After the Davis Defendants highlighted the insufficiency of the initial

- 4 -

Complaint in their Petition and Motion to Dismiss, Plaintiffs filed the FAC on January 12, 2022 in an attempt to salvage their claims. The FAC attempts to augment the tenuous allegations against Mr. Shetler. But the FAC's allegations are equally hollow and contradicted by the declarations of Mr. Shetler, Mr. Keenan, and Mr. Davis. The FAC alleges that "***upon information and belief***":

- Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client.

- Defendant Keenan held one or more meetings with Defendant Davis and/or Defendant Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes' relationship with the client.

- Defendant Keenan and/or Defendant Davis recruited Defendant Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client.

ECF 12 ¶¶ 73–75. Plaintiffs then filed the instant Motion to Remand on January 14, 2022, relying on the new allegations in the FAC to assert the viability of their claims against Mr. Shetler. The Davis Defendants have since filed a Motion to Dismiss the FAC. ECF No. 16.

### III.   LEGAL ARGUMENT

#### A.   Plaintiffs' Fraudulently Joined Mr. Shetler Because Their Claims Against Him Are Obviously Frivolous and Lack Any Factual Basis

Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). In fraudulent joinder determinations, "[d]efendants alleging a fraudulent joinder are permitted to make a showing of facts indicating fraudulent joinder." *Knutson v. Allis-Chalmer Corp.*, 358 F. Supp. 2d 983, 996 (D. Nev. 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998)). "[F]raudulent joinder claims may be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition testimony." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995)).

Federal courts have struggled to adopt a clear, uniform standard for fraudulent joinder and to balance the need to assess the merits of a claim without arrogating jurisdiction of the claim. *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999). To constitute fraudulent joinder, "the non-diverse claim must not only be unsuccessful, it must be untenable ab initio." *Ansara v. State Farm Prop. & Casualty Co.*, 2:15-cv-00365, 2015 WL 7573195, at *2 (D. Nev. Nov. 24. 2015). The fraudulent joinder standard is higher than the burden on a motion to dismiss or motion for summary judgment. *Ansara*, 2015 WL 7573195, at *2 (citing *Morris*, 236 F.3d at 1067). Courts have found a defendant has been fraudulently joined when the removing party presents "extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Grancare, LLC v. Thrower ex rel Mills*, 889 F.3d 543, 549 (9th Cir. 2018). Although courts may consider evidence in a fraudulent joinder determination, courts decline to do so when the removing party asserts defenses "that require a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* (internal citations omitted). "A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Hunter*, 582 F.3d at 1044.

In this case, Plaintiffs' claims against Mr. Shetler are obviously frivolous for two reasons. First, even when the allegations in the FAC are assumed true, Plaintiffs have not pled actionable claims against Mr. Shetler. This failure is obvious in light of the strong evidence cited herein. Plaintiffs' failure to cite any specific facts to support their claims in both the initial Complaint and FAC is further evidence that Plaintiffs lack a good-faith basis for their claims against Mr. Shetler. Plaintiffs are trying to hijack this Court's jurisdiction by manufacturing allegations that are not based on any facts but contrived "information and belief." Plaintiffs' bare allegations, when stacked against the irrefutable evidence cited herein, reveal that Plaintiffs' claims against Mr. Shetler are frivolous and that Plaintiffs merely named Mr. Shetler to avoid diversity jurisdiction.

**(1)   Plaintiffs Intentional Interference Claim Against Mr. Shetler Is Obviously Frivolous**

To assert a claim for intentional interference under Nevada law, the plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. Plaintiffs failed to allege that Mr. Shetler intentionally and actually interfered with the Agreement and caused Mr. Erne to terminate the Agreement with Plaintiffs. In their initial Complaint Plaintiffs' sole allegation relative to Mr. Shetler was:

> As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, **Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.**

Ex. E. ¶ 68. The Davis Defendants then filed their Petition for Removal and pointed out that Plaintiffs failed to allege that Mr. Shetler did anything to actually interfere with the Agreement between Claggett & Sykes and Mr. Erne. Specifically, Plaintiffs did not allege that Mr. Shetler did anything to influence, persuade, or otherwise cause Mr. Erne to terminate the Agreement. Plaintiffs then filed the FAC on January 12, 2021, and attempted to augment their allegations against Mr. Shetler. The FAC includes three more allegations relative to Mr. Shetler. Each are merely based on "*information and belief*." The FAC alleges that upon information and belief:

- Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client.

- Defendant Keenan held one or more meetings with Defendant Davis and/or Defendant Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes' relationship with the client.

- Defendant Keenan and/or Defendant Davis recruited Defendant Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client.

ECF No. 12 ¶¶ 73–75. As set forth fully below, these allegations are obviously frivolous and fail to state an actionable claim against Mr. Shetler for intentional interference. More importantly, these allegations are clearly false in light of the undisputed evidence cited herein, and Plaintiffs have failed to identify any credible factual basis for these allegations to rebut this evidence.

      (a)      **Plaintiffs' Claim for Intentional Interference Is Based on an Invalid, Illegal Contract**

Federal Courts have found joinder of resident defendant to be fraudulent when there is a clear question of law precluding relief. *Hunter*, 582 F.3d at 1044. A fundamental principle of contract law is that courts will not generally enforce illegal contracts and such contracts are void. *Local Union 525, United Association of Journeyman v. Stine*, 76 Nev 189, 210, 351 P.2d 965, 976; 17A Am. Jur. 2d Contracts § 317 (2004). "A party cannot exercise his or her contractual rights in violation of the law." 17A Am. Jur. 2d Contracts § 317 (2004). Thus, a court's preference for enforcing bargains may give way where a contract conflicts with the applicable law or violates or conflicts with a statute, rule of law, or public policy." *Id.* Nevada courts adhere to these principles and "have long refused to enforce contracts that are illegal or contravene public policy." *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 290, 300 P.3d 718, 723 (2013). In Nevada, "a contract is unenforceable on public policy grounds where the policy against enforcement of a contract clearly outweighs the interest in its enforcement." *Id.* (quoting *Picardi v. Eighth Judicial Dist. Court*, 127 Nev. ——, ——, 251 P.3d 723, 727 (2011)).

In this case, Plaintiffs' Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095. This statute mandates the fee structure for professional negligence cases as follows:

> An attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of: (a) Forty percent of the first $50,000 recovered; (b) Thirty-three and one-third percent of the next $50,000 recovered; (c) Twenty-five percent of the next $500,000 recovered; and (d) fifteen percent of the amount of recovery that exceeds $600,000.

NRS § 7.095. This statute proscribes the amount of a contingency fee that an attorney may collect from a client in a medical malpractice action and it does not allow for any exceptions to the statutory

limitations. The Claggett Contingency Agreement in this case states:

> NRS 7.095. You have been given a copy of NRS 7.095, which limits fee which can be charged to the party of a medical malpractice case by their attorney. In our opinion, this statute is unconstitutional, as applied to the U.S. Constitution as well as the State of Nevada Constitution. We have explained to you that we will not represent you pursuant to the fee limitation of NRS 7.095, and that we will only represent you in accordance with the fees listed in this medical malpractice contingency fee agreement. We have advised you to contact an attorney of your choice regarding this issue prior to signing this agreement.

Ex. A. at p. 2. Despite the clear statutory limitation on fees, the Agreement provides that Claggett & Sykes may collect between 33%–50% of all amounts recovered via a settlement of judgment. *Id.* As set forth more fully in the Davis Defendants' Motion to Dismiss, ECF No. 16 at pp. 7–11, this Fee Agreement is obviously illegal and cannot function as the basis for an intentional interference claim. For convenience, and in the interest of judicial economy, The Davis Defendants incorporate by reference the arguments made in their Motion to Dismiss the FAC, ECF No. 16, as though set forth fully herein.

  **(b)**  **It Is Obvious that Plaintiffs Lack Any Factual Basis for Their Allegation that Mr. Shetler Performed Any Intentional Acts That Caused Mr. Erne to Terminate Claggett & Sykes**

Mr. Shetler's, Mr. Davis's, and Mr. Keenan's respective declarations irrefutably reflect the frivolous nature of Plaintiffs' allegation that Mr. Shetler intentionally interfered with the Agreement between Claggett & Sykes and Mr. Erne. These declarations set forth that Mr. Davis never spoke with Mr. Shetler about the Erne Matter until after Mr. Erne fired Claggett & Sykes. ECF 1-4 ¶ 11, Ex. D ¶. Mr. Keenan further outlines that he never discussed firing Claggett & Sykes with Mr. Shetler or had any phone calls with Mr. Shetler where they attempted to find new local counsel for the Erne Matter. ECF 17-1 ¶¶ 58–60. It is obvious that Mr. Shetler could not intentionally interfere with a contract that he was unaware of prior its termination.

Citing *Ansara*, Plaintiffs argue that it is inappropriate for the Court to refer to affidavits or other summary judgment-type evidence when assessing fraudulent joinder. ECF No. 13 at 13:1–4. This argument, however, overlooks the instructive differences between this case and the facts of *Ansara*. In *Ansara*, 2015 WL 7573195, defendant State Farm asserted in its petition for removal

that there was complete diversity between the parties because two of the resident defendants had been fraudulently joined. State Farm's opposition to the plaintiff's motion to remand was 31-pages in length and included 280-pages of exhibits. The opposition was a de facto motion for summary judgment or motion to dismiss and argued that the plaintiff's claims would ultimately be unsuccessful, not that plaintiffs had failed to assert a cognizable claim against the resident defendants. This Court reasoned that in order to find in State Farm's favor, "it would need to decide several disputed issues of fact in favor of Defendants by conducting an extensive review of the evidence and a thorough analysis of Plaintiff's claims." *Id.* at * 3. Such an extensive, deep-dive into the pleadings, however, revealed State Farm could not show that plaintiff's failure to state claims against the resident defendants was "obvious." *Id.* This Court cited *Hunter* for the proposition that a "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.*

Here, the Davis Defendants have not proffered a 280-page deluge of evidence that merely shows Plaintiffs would not prevail in state court. They have submitted three declarations that establish discrete, irrefutable facts that expose the frivolous nature of Plaintiffs' claims against Mr. Shetler. Specifically, the Defendants' declarations show that neither Mr. Keenan nor Mr. Davis had any communications with Mr. Shetler about firing Claggett & Sykes. Plaintiffs' dismiss Mr. Shetler's declaration as self-serving but do nothing to identify even a ***single fact*** that forms of the basis of the claims against him. Plaintiffs merely base their allegations on ***information and belief***. If the removing party may not rest on mere averments to assert federal jurisdiction, Plaintiffs should not be allowed to divest a federal court's jurisdiction without offering some good-faith *factual* basis for their claims in the face of such powerful, irrefutable evidence.

The practical nature of Plaintiffs' allegations underscores that they are obviously frivolous. If Mr. Shetler, Mr. Keenan, and Mr. Davis really did have phone conversations or other communications about firing Claggett & Sykes, Mr. Claggett could have only learned of these communications through a third-party or other external source. Mr. Claggett and his law firm staff are not omniscient. The entire universe of evidence that would provide the factual predicate for Plaintiffs' allegations relative to Mr. Shetler would be in the form of oral testimony, emails,

recordings, or other correspondence. Plaintiffs only cite "common sense" to support their argument. ECF 13 at p.18:19–21. Logic, however, dictates that Plaintiffs could have no plausible basis for their allegations without already obtaining such information from an external source prior to filing the FAC.

For example, Plaintiffs, even if through hearsay, should be able to allege that they were made privy to these conversations or communications by a third-party witness or by obtaining copies of text messages, emails, or other correspondence between the Defendants. Instead, Plaintiffs' allege ***upon information and belief*** that "Mr. Shetler and Mr. Keenan called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes." FAC ¶ 72. They further claim Mr. Shetler and Mr. Keenan "were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case." *Id.* ¶ 72. If Plaintiffs' had a good-faith, plausible basis for this allegation, they would necessarily need to know the approximate date of this call, the identity of the attorneys on this call, and the source of such information. But Plaintiffs want this Court to accept that Plaintiffs were omnisciently aware of some phone call, sometime, somewhere, with some attorney. Such obviously baseless allegations, when weighed against the declarations cited herein, show that Plaintiffs' claims against Mr. Shetler are frivolous.

The juxtaposition of Plaintiffs' initial Complaint and FAC reinforces that Plaintiffs' claims against Mr. Shetler are frivolous. In the Complaint, Plaintiffs allege that Mr. Shetler and Mr. Keenan were on a phone call at an unspecified time with an unspecified attorney. ECF No. 1-1 ¶ 68. The Davis Defendants then filed their Petition for Removal and Motion to Dismiss on December 22, and December 29, 2021, respectively. In these papers, the Davis Defendants highlighted the factual insufficiency of these allegations relative to this alleged phone call. After reviewing these papers, and surely after realizing the attenuated basis for this allegation, Plaintiffs filed the FAC on January 12, 2022. Plaintiffs added three allegations relative to Mr. Shetler:

- Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client.
- Defendant Keenan held one or more meetings with Defendant Davis and/or Defendant Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett &

Sykes' relationship with the client.

- Defendant Keenan and/or Defendant Davis recruited Defendant Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client.

ECF 12 ¶¶ 73–75. These allegations are, once again, devoid of facts. Plaintiffs do not identify the specific who, what, where, why, or how of any of these allegations. Again, if Plaintiffs had any good-faith basis for these allegations, they would be able to identify some combination of the date, time, contents, and circumstances surrounding these alleged meetings and communications, along with the source of their "information and belief." Plaintiffs' inability to allege a single specific *fact*, even after having a second bite of the apple, necessarily suggests their claims against Mr. Shetler are frivolous.

To be sure, Plaintiffs may argue that they should be entitled to conduct discovery on this intentional interference claim. This argument, however, is further evidence that their allegations against Mr. Shetler are frivolous. The proof of facts Plaintiffs would seek in discovery would be evidence of these alleged communications between Mr. Shetler and the other Defendants via verbal testimony and documents. Plaintiffs, however, would have required access to such documents or information prior to filing the FAC to form the basis of their new allegations. The fact Plaintiffs cannot and have not cited such new evidence reflects that they have no good-faith factual basis for these new allegations.

### (c) It Is Obvious that Plaintiffs Have Not Sustained Any Actionable Damages that Were Caused by Mr. Shetler's Alleged Intentional Interference

To assert a cognizable claim for intentional interferenc, Plaintiffs must allege that they were damaged as a result of the interference. *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. To be compensable, damages must be appreciable and not speculative. *Nelson v. Burr*, No. 81456-COA, 2021 WL 3701471492, at * 3 (Nev. Ct. App. Aug. 18, 2021) (citing *Sorenson v. Pavlikowski*, 94 Nev. 440, 444, 581 P.2d 851, 854 (1978)). In the context of legal malpractice, the Supreme Court of Nevada has held that that a "where it is too early to know whether damage has been sustained, a legal malpractice action is premature and should be dismissed." *Semenza v. Nev. Med. Liability Ins. Co.*, 104 Nev. 666, 666, 765 P.2d 184, 184 (1988).

The same logic outlined in *Semenza* applies here. The Agreement provdes that Claggett & Sykes would recover a percentage of any settlement of judgment. Ex. A. Thus, Plaintiffs would not have any damages as a result of the termination of the Agreement until after the Erne Matter is settled or results in a judgment in Mr. Erne's favor. Until that point, Plaintiffs' damages are too remote and speculative to be compensable. Plaintiffs have even acknowleged in writing that their attorney's fees are not recoverable until the conclusion of the Erne Matter. On July 21, 2020, Claggett & Sykes wrote to the Davis Defendants: "our fee split agreement entitles Claggett & Sykes Firm to collect 50% of the attorney's fees at the conclusion of the case." Letter from Claggett & Sykes to Davis Law Group, July 21, 2021, attached hereto as **Exhibit "E."** This Court may take judicial notice of the fact that the Erne matter remains in active litigation and is currently scheduled for trial on October 10, 2022.[1] ECF 16-4. As a result, Plaintiffs' intentional interference claim must be dimissed because their alleged damages are too remote and speculative at this time. *See id.*

Such a conclusion does not require the Court to cipher through myriad exhibits and resolve dense factual issues in Defendants' favor. It is a discrete and irrefutable fact that the Agreement between Claggett & Sykes is a contingency agreement and that the Erne Matter is still pending. As a result, it is obvious that Plaintiffs cannot possibly prevail on their intentional interference claim against Mr. Shetler because their alleged damages are too remote and speculative to be actionable.

**B.    It Is Obvious Plaintiffs Cannot Prevail on Their Prospective Economic Advantage Claim Against Mr. Shetler**

To prevail on a prospective economic advantage claim, Plaintiffs must show:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Wichinsky v. Mosa*, 109 Nev. 84, 87–88, 847 P.2d 727, 729–30 (1993). This claim is obviously frivolous. Plaintiffs allege that there existed an "ongoing and prospective contractual relationship

---

[1] Federal courts may take judicial notice of facts where the fact is not subject to reasonable dispute and capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b).

- 13 -

between Plaintiffs [and Mr. Erne] by which Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit." FAC ¶ 193. This Contingency Fee Agreement was an established contract, not a prospective economic opportunity. Plaintiffs' argument is Orwellian double-speak. It is apriori true that an economic relationship that is established and ongoing cannot be "prospective."

Also, by substituting in as counsel for Mr. Erne in the Erne Matter, Mr. Shetler did nothing to prevent Plaintiffs from recovering their hourly fees or costs. The Agreement provided that Mr. Erne would be liable for Plaintiffs' fees and costs. Plaintiffs have asserted an attorney's lien in the Erne Matter. Additionally, as analyzed above, even if Mr. Shetler interfered with the Agreement, Plaintiffs have not incurred any actionable damages because the Erne Matter is still pending. Plaintiffs would not be entitled to their fee until the Erne matter is settled or results in a judgment in Mr. Erne's favor. For these reasons, Plaintiffs' reliance on an established contract as the basis for their prospective economic advanatge claim is so illogical, so divorced from reality, it is obviously frivolous.

### C. It Is Obvious Plaintiffs Cannot Prevail on Their Civil Conspracy Claim Against Mr. Shetler

To assert a claim for civil conspiracy, the plaintiff must show that "two or more persons undertake some concerted action with the intent to accomplish an unlawful objective for the purpose of harming another, and damage results." C*onsol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The plaintiff "must provide evidence of an explicit or tacit agreement between the alleged conspirators." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486, 970 P.2d 98, 110 (1998).

The basis for Plaintiffs' civil conspiracy claim is the the threadbare allegation that Mr. Shetler, Mr. Keenan, and Mr. Davis "acted with the objective of intentionally interfering with Plaintiff's contractual relations and prospective contractual relations by causing Plaintiff's client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff." FAC ¶ 225. As set forth above, the Defendants' respective declarations reflect that Mr. Davis, Mr.

Shetler, and Mr. Keenan never discussed terminating Claggett & Sykes as counsel in the Erne Matter. If Plaintiffs had any good-faith factual basis for that allegation, it would be cited in their FAC. The fact Plaintiffs cannot proffer such evidence in the face of such clear, contradictory evidence further underscores that there is no possibility that Plaintiffs' could prevail on their civil conspiracy claim against Mr. Shetler. Moreover, it is obvious that Plaintiffs lack an actionable civil conspiracy claim because the Erne Matter is still pending, so Plaintiffs' alleged damages are too remote and speculative to be actionable. For these reasons, it is obvious that Plaintiffs civil conspiracy claim is frivolous.

## IV.   CONCLUSION

Based on the foregoing facts and analysis, Plaintiffs allegations and claims against Mr. Shetler are obviously frivolous. There is no possibility that a Nevada court would find Plaintiffs' claims actionable in light of the evidence cited herein and Plaintiffs' failure to identify a single concrete fact to support these allegations. The Davis Defendants therefore move this Court to disregard Mr. Shetler's citizenship for purposes of diversity jurisdiction. Given there is no dispute that the amount in controversy exceeds $75,000 and that the each of other named Defendants are diverse from Plaintiffs, the Davis Defendants request that this Court retain jurisdiction of this case under 28 USC § 1332.

DATED this 28th day of January, 2022.

**FOX ROTHSCHILD LLP**

/s/ Mark J. Connot
MARK J. CONNOT (10010)
JOHN M. ORR (14251)
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
*Attorneys for Defendants Brian F. Davis and Davis Law Group, P.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 28th day of January, 2022, and pursuant to FRCP 5(b), a copy of the foregoing **DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** was served via the Court's CM/ECF system.

*/s/ Doreen Loffredo*
An Employee of Fox Rothschild LLP