JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN: 7308
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702:868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>                Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>                Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND** |

- 1 -

1  Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

2  SYKES LAW FIRM and SEAN K. CLAGGETT, by and through their attorneys of record,

3  Injury Lawyers of Nevada, hereby file their Reply in Support of Motion to Remand. This

4  Reply is based upon the records and pleadings on file herein, the attached Memorandum of

5  Points and Authorities, and any argument made by counsel at the hearing of this matter.

6  Dated this 4th day of February 2022.

7  INJURY LAWYERS OF NEVADA

8  /s/ *Jared Anderson*

9  Jared B. Anderson, Esq. (SBN: 9747)
   David J. Churchill, Esq. (SBN: 7308)
   **INJURY LAWYERS OF NEVADA**

10  4001 Meadows Lane
    Las Vegas, Nevada 89107

11

12  **INTRODUCTION**

13  This case arises out of Defendants' disparagement of Plaintiffs and intentional

14  interference with the contractual relationship Claggett & Sykes Law Firm had with its client,

15  Logan Erne, the plaintiff in the underlying personal injury lawsuit. A central figure in the

16  effort to interfere with Claggett & Sykes' contractual relationship with Erne is Defendant

17  Travis Shetler, a Nevada resident and attorney. Plaintiffs alleged three claims against Shetler

18  for his role in the conspiracy to terminate Claggett & Sykes from the underlying case: (1)

19  Intentional Interference with Contractual Relations; (2) Intentional Interference with

20  Prospective Economic Advantage; and (3) Civil Conspiracy. ECF No. 12. Although

21  Plaintiffs properly named Shetler as a defendant, Defendants removed this case to federal

22  court. ECF No. 1. Plaintiffs filed their Motion to Remand on January 14, 2022. ECF No. 13.

23  On January 28, 2022, Defendants Brian F. Davis and Davis Law Group, P.A.

24  ("Davis Defendants") filed their Opposition to Plaintiffs' Motion to Remand. ECF No. 22.

- 2 -

That same day, Defendants Keenan's Kids Foundation, Inc. and David J. Hoey filed their Opposition and Joinder to Davis Defendants' Opposition. ECF No. 24. In their Opposition, Defendants admit Defendant Travis Shetler is a Nevada resident and, thus, non-diverse from Plaintiffs. *See* ECF 22 at 2:15-17 ("Each of the Defendants in this action are diverse from both Plaintiffs with the exception of Defendant Travis Shetler"). Nevertheless, Defendants maintain that diversity jurisdiction exists because Shetler was "fraudulently joined…for the sole purpose of defeating diversity jurisdiction." *Id.* at 2:17-18.

The Court should take nothing from Defendants' Opposition and instead grant Plaintiffs' Motion to Remand because Defendants failed to overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir. 2009). In their Opposition, Defendants were burdened with demonstrating Plaintiffs cannot possibly recover against Defendant Shetler in Nevada State Court. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). Defendants disregard this standard and instead ask the Court to assess the merits of Plaintiffs' Amended Complaint, even going so far as to copy and paste whole sections from their recently filed motion to dismiss. *Compare* ECF No. 22 at 7-15 *with* ECF No. 16 at 7-14. However, "[s]uch a review…is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 159365, *9 (Nov. 24, 2015) (citations omitted). Moreover, while Defendants certainly dispute the allegations in Plaintiffs' Amended Complaint, at this stage, all disputed questions of fact are resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Therefore, because Defendants fail to demonstrate that Plaintiffs' claims against Shetler will

1 'obviously' fail, the Court should grant Plaintiffs' motion and remand this matter back to

2 state court.

### LEGAL ARGUMENT

3

4 **I.    DEFENDANTS FAILED TO DEMONSTRATE THAT PLAINTIFFS FRAUDULENTLY JOINED SHETLER TO THIS ACTION**

5        Although Defendants admit that Shetler is a non-diverse Defendant, they baselessly

6 allege that "Plaintiffs merely named Mr. Shetler to avoid diversity jurisdiction." ECF No. 22

7 at 6:25. However, Defendants were burdened with demonstrating, "by clear and convincing

8 evidence, either that there has been ***outright fraud*** committed in [Plaintiffs'] pleadings, or

9 that there is no possibility, based on the pleadings, that [Plaintiffs] can state a cause of action

10 against the non-diverse defendant in state court." *Hamilton Materials, Inc. v. Dow Chem.*

11 *Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). (emphasis added).

12       Defendants improperly request that the Court determine merits of Plaintiffs' claims

13 at the pleading stage. "A standard that equates fraudulent joinder with Rule 12(b)(6)

14 conflates a jurisdictional inquiry with an adjudication on the merits." *GranCare, LLC*, 889

15 F.3d at 549. Further, "[b]ecause the purpose of the fraudulent joinder doctrine is to allow a

16 determination whether the district court has subject matter jurisdiction, the standard is

17 similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule

18 12(b)(1) for lack of federal question jurisdiction." *Id.* (citations omitted). Here, the removing

19 Defendants fall well short of satisfying their burden of fraudulent joinder or otherwise

20 demonstrating that Plaintiffs committed ***outright fraud*** by making Defendant Shetler a party

21 to this action.

21 / / /

22 / / /

23 / / /

24
                                           - 4 -

II.   **PLAINTIFFS PLEAD A COGNIZABLE CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANT SHETLER**

Plaintiffs' first claim against Shetler is for intentional interference with contractual relations. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)). In their Opposition, Defendants include several arguments regarding this claim, all of which are unavailing under the applicable standards.

A.    **Plaintiffs had a Valid Contract with Erne**

Defendants first argue that Plaintiffs' claim for intentional interference with contractual relations fails because "Plaintiffs' Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095." ECF No. 22 at 8:20-21. Defendants are incorrect for several reasons.

First, Plaintiffs' claim is based, not only on Claggett & Sykes' written fee agreement with Erne, but also on Claggett & Sykes' oral agreement with Erne to provide legal services in exchange for compensation. *See* ECF No. 12 at ¶¶ 161 – 162 (noting that the "contract between Plaintiff and the Las Vegas personal injury plaintiff was made in writing and orally"). This contractual agreement between Claggett & Sykes and Erne "provided that [Claggett & Sykes] would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit." *Id.* at ¶ 163. Davis Defendants had knowledge of this contractual relationship "because [Davis] referred the client to Plaintiff, was co-counsel on the case, and

executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client." *Id.* at ¶ 164. Indeed, Defendants concede in their Opposition and in other filings before this Court that **"[t]his Contingency Fee Agreement was an established contract…."** *See* ECF No. 22 at 14:3-4 (emphasis added); *see also* ECF No. 16 at 13:11-12. Defendants should be estopped from denying what they have admitted elsewhere, namely, that Plaintiffs had a valid and enforceable contractual relationship with Erne. *See Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1171 (D. Nev. 2011) ("Judicial estoppel is designed 'not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'") (citation omitted).

Second, NRS 7.095 applies only to contingent fee arrangements. *See* NRS 7.095. However, Plaintiffs' fee agreement with Erne contained an alternative hourly fee structure: "Should litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees, or if the client discharges The Firm, the Attorney's Fee shall be the greater of the above contingency fee or the Attorney's Hourly Rate whichever is greater." ECF No. 22-1 at 1. Also, the fee agreement states that "[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more." *Id.* at 3. Thus, based on the plain language of the statute, NRS 7.095's statutory cap does not apply to the hourly rate provisions in Claggett & Sykes' fee agreement with Erne. *See Branch Banking & Trust Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158 (2015) ("In interpreting a

1 statute, this court looks to the plain language of the statute and, if that language is clear, this

2 court does not go beyond it.") (citation omitted).

3       Third, NRS 7.095's fee cap applies only to actions "against a provider of health care

4 based upon professional negligence[.]" *See* NRS 7.095(1). "Provider of health care" is

5 defined in the statute as "a physician licensed under chapter 630 or 633 of NRS, dentist,

6 registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric

7 physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical

8 laboratory director or technician, licensed dietitian or a licensed hospital and its employees."

9 NRS 7.095(4)(b). In their opposition, Defendants ignore that the *Erne* case includes claims

10 against defendants who fall outside NRS 7.095's statutory definition of a "provider of health

11 care". *See Erne* Amended Complaint attached hereto as Exhibit 1 at 6-8 (detailing Erne's

12 common law negligence claim against counselors Margaret Williams, LCPC, and Marilyn

13 Abel, CPC, as well as their employer, PHC of Nevada, Inc. dba Harmony Healthcare).

14 These claims do not meet NRS 7.095's statutory definition of a claim "against a provider of

15 health care based upon professional negligence" and, so, the statute's cap on attorney's fees

16 does not apply. *See, e.g., Szymborski v. Spring Mt. Treatment Ctr.*, 133 Nev. 638 (2017);

17 *Deboer v. Sr. Bridges of Sparks Fam. Hosp.*, 128 Nev. 406, 411-412, 282 P.3d 727, 731-732

18 (2012) ("a healthcare-based corporation's status as a medical facility cannot shield it from

19 other forms of tort liability when it acts outside the scope of medicine").

20       Finally, Erne knowingly, intelligently, and voluntarily waived any potential

21 applicability of NRS 7.095 when he executed the fee agreement with Claggett & Sykes.

22 Waiver requires "an existing right, a knowledge of its existence, and an actual intention to

23 relinquish it." *McKeeman v. General Am Life Ins. Co.*, 111 Nev. 1042 (1995). Here, Erne

24 knowingly, intelligently, and voluntarily waived his rights under NRS 7.095, both orally *and*

in writing. *See* ECF No. 22-1. Erne's waiver was valid as there is no language in Chapter 7 of the Nevada Revised Statutes prohibiting or limiting attorneys from informing clients or potential clients about the statutory fee scheme under NRS 7.095 and asking them to waive it. The absence of any such language can be interpreted to be nothing other than intentional because there are other Chapters in the Nevada Revised Statutes that *do* expressly prohibit the waiver of statutory rights. *See, e.g.*, NRS 598.772 ("Waiver of statutory rights prohibits"..."Any waiver of a buyer of the provisions of NRS 598.746 to 598.777 inclusive, is contrary to public policy and is void and unenforceable"); *see also* NRS 108.2453 ("Waiver or modification of right, obligation or liability set forth in NRS 108.221 to 108.246, inclusive, prohibited..."). Based on the foregoing, Defendants have not demonstrated the absence of a valid and existing contract between Claggett & Sykes and Erne.

**B.**   **Plaintiffs' Claim for Intentional Interference with Contractual Relations was Sufficiently Plead Within Nevada's Liberal Pleading Standard**

Next, Defendants attack the factual basis for Plaintiffs' intentional interference with contractual relations claim, alleging "Mr. Shetler's, Mr. Davis's, and Mr. Keenan's respective declarations irrefutably reflect the frivolous nature of Plaintiffs' allegation that Mr. Shetler intentionally interfered with the Agreement between Claggett & Sykes and Mr. Erne." ECF No. 22 at 9:17-19. In doing so, Defendants ask that the Court delve into the facts of the case and decide all factual disputes in favor of the Defendants without allowing Plaintiffs the benefit of any discovery. However, as this Court has explained previously, "[s]uch a review...is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara*, 2015 U.S. Dist. LEXIS 159365 at *9 (citations omitted). Further, "a denial, even a sworn denial of allegations does not prove their falsity[.]" *Grancare, LLC*, 889 F.3d at 551.

As such, Defendants' declarations should be disregarded for purposes of determining whether remand is appropriate.

Further, Defendants mistakenly believe that Plaintiffs must plead their claims with particularity, even going so far as to complain that Plaintiffs have not identified "the specific who, what, where, why, or how of any of these allegations." ECF No. 22 at 12:4-5. However, Nevada's pleading standard, which is set forth in NRCP 8, states that a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" NRCP 8(a). Nevada is a notice-pleading jurisdiction, and a pleading is sufficient so long as it gives fair notice of the nature and basis of the claim. *Crucil v. Carson City*, 95 Nev. 583, 585 (1979). In this regard, "the pleading of conclusions, either of law or fact, is sufficient so long as the pleading gives fair notice of the nature and basis of the claim." *Id.* Judged under this standard, the allegations contained in Plaintiffs' Amended Complaint adequately notice claims against Shetler and satisfy NRCP 8(a)'s liberal standard.

Moreover, Defendants' own declarations reveal substantial factual disputes which, at this stage, must be resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Defendants allege that, "Mr. Erne terminated Claggett & Sykes on May 15, 2020." ECF No. 22 at 3:26. In fact, Mr. Erne did not personally terminate Claggett & Sykes until four days later, May 19, 2020. *See* Email attached hereto as Exhibit 2. **Shetler admits that before that date, he had already spoken with Davis about replacing Claggett & Sykes as counsel for Erne.** *See* ECF No. 1-4 at ¶ 10 ("I had no knowledge of the Erne Matter or Claggett & Sykes' involvement in the Erne Matter until May 17, 2020, after Mr. Erne fired Claggett & Sykes. It was on this date when Defendant Brian Davis contacted me about substituting in as counsel in the Erne Matter."). Claggett & Sykes remained on as counsel of record for Erne

until May 29, 2020. *See* Substitution of Attorneys attached hereto as Exhibit 3. This timeline is consistent with the allegations contained in Plaintiff's Amended Complaint. *See, e.g.,* ECF No. 12 at ¶¶ 73 (alleging that "Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client"). This, alone, demonstrates that it is possible for Plaintiffs to recover against Defendant Shetler in state court for intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy. *See, e.g., J.J. Indus., LLC*, 119 Nev. at 275 ("'At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations....'").

### C.   Plaintiffs Incurred Damages as a Result of Defendants' Intentional Interference with Contractual Relations

Finally, Defendants argue that "Plaintiffs' intentional interference claim must be dismissed because their alleged damages are too remote and speculative at this time." ECF No. 22 at 13:11-12. However, Plaintiffs incurred damages as a result of Defendants' intentional interference with Claggett & Sykes' contractual relations with Erne. As explained above, Claggett & Sykes' fee agreement with Erne provided that **"[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more.**" ECF No. 22-1 at 3 (emphasis added). Claggett & Sykes has asserted a lien for fees and costs in the amount of $288,512.06. *See* Notice of Lien attached hereto as Exhibit 4. To date, that entire amount remains outstanding and due as a result of Defendants' interference.

### III. Plaintiffs Plead a Cognizable Claim for Intentional Interference with Prospective Economic Advantage Against Defendant Shetler

Plaintiffs' second claim against Shetler is for intentional interference with prospective economic advantage related to his efforts to interfere with Claggett & Sykes' ongoing and prospective contractual relationship with Erne. "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 88-89 (1993) (citation omitted).

Defendants argue that this claim fails because Claggett & Sykes' fee agreement with Erne "was an established contract, not a prospective economic opportunity." ECF No. 22 at 14:3-4. However, as a result of Defendants' wrongful and unjustified conduct, Claggett & Sykes "was harmed and denied fees and remuneration it otherwise would have been entitled to within its ongoing and prospective contractual relationship with the client." ECF No. 12 at ¶ 199. In fact, Defendants concede earlier in their Opposition that Claggett & Sykes would have been entitled to a full contingency fee and/or additional hourly fees had Erne not terminated them. *See* ECF No. 22 at 13:1-5. Plaintiffs were denied these prospective economic benefits as a result of Defendants' intentional interference with Claggett & Sykes' relationship with Erne. *See* ECF No. 12 at ¶¶ 192-223.

Defendants further claim that Shetler "did nothing to prevent Plaintiffs from recovering their hourly fees or costs." ECF No. 22 at 14:7-8. As explained above, Shetler admits in his declaration that he discussed the *Erne* case with Defendant Davis prior to the date Erne terminated Claggett & Sykes. *Compare* ECF No. 1-4 at ¶ 10 *with* Email, Ex. 2;

Substitution of Attorney, Ex. 3. As a result of Defendants' intentional acts, Claggett & Sykes suffered damages, including additional prospective fees arising out of their relationship with Erne.

**IV.    Plaintiffs Plead a Cognizable Claim for Civil Conspiracy Against Defendant Shetler**

Finally, Plaintiffs brought a claim against Shetler for civil conspiracy arising out of his concerted efforts with his Co-Defendants to have Claggett & Sykes Law Firm fired off the *Erne* case. In Nevada, "[a]n actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consol. Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (citations omitted). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (citing 16 AM.JUR. 2D, *Conspiracy*, § 57 (1998)). As the Supreme Court of California noted, "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, **irrespective of whether or not he was a direct actor and regardless of the degree of his activity**." *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 40 (1989) (emphasis added).

In their Opposition, Defendants repeat their denial of any wrongdoing. ECF No. 22 at 14:28 – 15:2. However, as discussed above, Shetler has admitted to discussing the *Erne* matter with Defendant Davis on May 17, 2020, while Claggett & Sykes remained counsel of record for Erne. *See* ECF No. 1-4 at ¶ 10. Then, only days later, Erne reached out to

personally terminate Claggett & Sykes. *See* Email, Ex. 2. Simply, Defendants have not demonstrated that Plaintiffs fraudulently joined Shetler. Instead, Defendants own proffered timeline of events supports Plaintiffs' contention that Defendants conspired to have Claggett & Sykes terminated off the *Erne* case. To the extent Defendants dispute Plaintiffs' factual allegations, all disputed questions of fact are resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Therefore, Defendants have not demonstrated that this Court has jurisdiction over this case and, as such, the Court must remand this matter back to state court.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court grant their Motion to Remand in its entirety.

Dated this 4th day of February 2022.

INJURY LAWYERS OF NEVADA

*/s/ Jared Anderson*

_____
Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

## CERTIFICATE OF SERVICE

XXXX

JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN: 7308
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>        Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>        Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND** |

- 1 -

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN K. CLAGGETT, by and through their attorneys of record, Injury Lawyers of Nevada, hereby file their Reply in Support of Motion to Remand. This Reply is based upon the records and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument made by counsel at the hearing of this matter.

Dated this 4th day of February 2022.

INJURY LAWYERS OF NEVADA

/s/ *Jared Anderson*

Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

**INTRODUCTION**

This case arises out of Defendants' disparagement of Plaintiffs and intentional interference with the contractual relationship Claggett & Sykes Law Firm had with its client, Logan Erne, the plaintiff in the underlying personal injury lawsuit. A central figure in the effort to interfere with Claggett & Sykes' contractual relationship with Erne is Defendant Travis Shetler, a Nevada resident and attorney. Plaintiffs alleged three claims against Shetler for his role in the conspiracy to terminate Claggett & Sykes from the underlying case: (1) Intentional Interference with Contractual Relations; (2) Intentional Interference with Prospective Economic Advantage; and (3) Civil Conspiracy. ECF No. 12. Although Plaintiffs properly named Shetler as a defendant, Defendants removed this case to federal court. ECF No. 1. Plaintiffs filed their Motion to Remand on January 14, 2022. ECF No. 13.

On January 28, 2022, Defendants Brian F. Davis and Davis Law Group, P.A. ("Davis Defendants") filed their Opposition to Plaintiffs' Motion to Remand. ECF No. 22.

That same day, Defendants Keenan's Kids Foundation, Inc. and David J. Hoey filed their Opposition and Joinder to Davis Defendants' Opposition. ECF No. 24. In their Opposition, Defendants admit Defendant Travis Shetler is a Nevada resident and, thus, non-diverse from Plaintiffs. *See* ECF 22 at 2:15-17 ("Each of the Defendants in this action are diverse from both Plaintiffs with the exception of Defendant Travis Shetler"). Nevertheless, Defendants maintain that diversity jurisdiction exists because Shetler was "fraudulently joined…for the sole purpose of defeating diversity jurisdiction." *Id.* at 2:17-18.

The Court should take nothing from Defendants' Opposition and instead grant Plaintiffs' Motion to Remand because Defendants failed to overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1042 (9th Cir. 2009). In their Opposition, Defendants were burdened with demonstrating Plaintiffs cannot possibly recover against Defendant Shetler in Nevada State Court. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). Defendants disregard this standard and instead ask the Court to assess the merits of Plaintiffs' Amended Complaint, even going so far as to copy and paste whole sections from their recently filed motion to dismiss. *Compare* ECF No. 22 at 7-15 *with* ECF No. 16 at 7-14. However, "[s]uch a review…is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 159365, *9 (Nov. 24, 2015) (citations omitted). Moreover, while Defendants certainly dispute the allegations in Plaintiffs' Amended Complaint, at this stage, all disputed questions of fact are resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Therefore, because Defendants fail to demonstrate that Plaintiffs' claims against Shetler will

1   'obviously' fail, the Court should grant Plaintiffs' motion and remand this matter back to

2   state court.

3   ## LEGAL ARGUMENT

4   ### I.   DEFENDANTS FAILED TO DEMONSTRATE THAT PLAINTIFFS FRAUDULENTLY JOINED SHETLER TO THIS ACTION

5       Although Defendants admit that Shetler is a non-diverse Defendant, they baselessly

6   allege that "Plaintiffs merely named Mr. Shetler to avoid diversity jurisdiction." ECF No. 22

7   at 6:25. However, Defendants were burdened with demonstrating, "by clear and convincing

8   evidence, either that there has been *outright fraud* committed in [Plaintiffs'] pleadings, or

9   that there is no possibility, based on the pleadings, that [Plaintiffs] can state a cause of action

10  against the non-diverse defendant in state court." *Hamilton Materials, Inc. v. Dow Chem.*

11  *Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). (emphasis added).

12      Defendants improperly request that the Court determine merits of Plaintiffs' claims

13  at the pleading stage. "A standard that equates fraudulent joinder with Rule 12(b)(6)

14  conflates a jurisdictional inquiry with an adjudication on the merits." *GranCare, LLC*, 889

15  F.3d at 549. Further, "[b]ecause the purpose of the fraudulent joinder doctrine is to allow a

16  determination whether the district court has subject matter jurisdiction, the standard is

17  similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule

18  12(b)(1) for lack of federal question jurisdiction." *Id.* (citations omitted). Here, the removing

19  Defendants fall well short of satisfying their burden of fraudulent joinder or otherwise

20  demonstrating that Plaintiffs committed *outright fraud* by making Defendant Shetler a party

21  to this action.

21  / / /

22  / / /

23  / / /

24                                    - 4 -

II.     **PLAINTIFFS PLEAD A COGNIZABLE CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DEFENDANT SHETLER**

Plaintiffs' first claim against Shetler is for intentional interference with contractual relations. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)). In their Opposition, Defendants include several arguments regarding this claim, all of which are unavailing under the applicable standards.

A.     **Plaintiffs had a Valid Contract with Erne**

Defendants first argue that Plaintiffs' claim for intentional interference with contractual relations fails because "Plaintiffs' Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095." ECF No. 22 at 8:20-21. Defendants are incorrect for several reasons.

First, Plaintiffs' claim is based, not only on Claggett & Sykes' written fee agreement with Erne, but also on Claggett & Sykes' oral agreement with Erne to provide legal services in exchange for compensation. *See* ECF No. 12 at ¶¶ 161 – 162 (noting that the "contract between Plaintiff and the Las Vegas personal injury plaintiff was made in writing and orally"). This contractual agreement between Claggett & Sykes and Erne "provided that [Claggett & Sykes] would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit." *Id.* at ¶ 163. Davis Defendants had knowledge of this contractual relationship "because [Davis] referred the client to Plaintiff, was co-counsel on the case, and

executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client." *Id.* at ¶ 164. Indeed, Defendants concede in their Opposition and in other filings before this Court that **"[t]his Contingency Fee Agreement was an established contract...."** *See* ECF No. 22 at 14:3-4 (emphasis added); *see also* ECF No. 16 at 13:11-12. Defendants should be estopped from denying what they have admitted elsewhere, namely, that Plaintiffs had a valid and enforceable contractual relationship with Erne. *See Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1171 (D. Nev. 2011) ("Judicial estoppel is designed 'not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'") (citation omitted).

Second, NRS 7.095 applies only to contingent fee arrangements. *See* NRS 7.095. However, Plaintiffs' fee agreement with Erne contained an alternative hourly fee structure: "Should litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees, or if the client discharges The Firm, the Attorney's Fee shall be the greater of the above contingency fee or the Attorney's Hourly Rate whichever is greater." ECF No. 22-1 at 1. Also, the fee agreement states that "[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more." *Id.* at 3. Thus, based on the plain language of the statute, NRS 7.095's statutory cap does not apply to the hourly rate provisions in Claggett & Sykes' fee agreement with Erne. *See Branch Banking & Trust Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158 (2015) ("In interpreting a

statute, this court looks to the plain language of the statute and, if that language is clear, this court does not go beyond it.") (citation omitted).

Third, NRS 7.095's fee cap applies only to actions "against a provider of health care based upon professional negligence[.]" *See* NRS 7.095(1). "Provider of health care" is defined in the statute as "a physician licensed under chapter 630 or 633 of NRS, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees." NRS 7.095(4)(b). In their opposition, Defendants ignore that the *Erne* case includes claims against defendants who fall outside NRS 7.095's statutory definition of a "provider of health care". *See Erne* Amended Complaint attached hereto as Exhibit 1 at 6-8 (detailing Erne's common law negligence claim against counselors Margaret Williams, LCPC, and Marilyn Abel, CPC, as well as their employer, PHC of Nevada, Inc. dba Harmony Healthcare). These claims do not meet NRS 7.095's statutory definition of a claim "against a provider of health care based upon professional negligence" and, so, the statute's cap on attorney's fees does not apply. *See, e.g., Szymborski v. Spring Mt. Treatment Ctr.*, 133 Nev. 638 (2017); *Deboer v. Sr. Bridges of Sparks Fam. Hosp.*, 128 Nev. 406, 411-412, 282 P.3d 727, 731-732 (2012) ("a healthcare-based corporation's status as a medical facility cannot shield it from other forms of tort liability when it acts outside the scope of medicine").

Finally, Erne knowingly, intelligently, and voluntarily waived any potential applicability of NRS 7.095 when he executed the fee agreement with Claggett & Sykes. Waiver requires "an existing right, a knowledge of its existence, and an actual intention to relinquish it." *McKeeman v. General Am Life Ins. Co.*, 111 Nev. 1042 (1995). Here, Erne knowingly, intelligently, and voluntarily waived his rights under NRS 7.095, both orally *and*

in writing. *See* ECF No. 22-1. Erne's waiver was valid as there is no language in Chapter 7 of the Nevada Revised Statutes prohibiting or limiting attorneys from informing clients or potential clients about the statutory fee scheme under NRS 7.095 and asking them to waive it. The absence of any such language can be interpreted to be nothing other than intentional because there are other Chapters in the Nevada Revised Statutes that *do* expressly prohibit the waiver of statutory rights. *See, e.g.*, NRS 598.772 ("Waiver of statutory rights prohibits"…"Any waiver of a buyer of the provisions of NRS 598.746 to 598.777 inclusive, is contrary to public policy and is void and unenforceable"); *see also* NRS 108.2453 ("Waiver or modification of right, obligation or liability set forth in NRS 108.221 to 108.246, inclusive, prohibited…"). Based on the foregoing, Defendants have not demonstrated the absence of a valid and existing contract between Claggett & Sykes and Erne.

**B.    Plaintiffs' Claim for Intentional Interference with Contractual Relations was Sufficiently Plead Within Nevada's Liberal Pleading Standard**

Next, Defendants attack the factual basis for Plaintiffs' intentional interference with contractual relations claim, alleging "Mr. Shetler's, Mr. Davis's, and Mr. Keenan's respective declarations irrefutably reflect the frivolous nature of Plaintiffs' allegation that Mr. Shetler intentionally interfered with the Agreement between Claggett & Sykes and Mr. Erne." ECF No. 22 at 9:17-19. In doing so, Defendants ask that the Court delve into the facts of the case and decide all factual disputes in favor of the Defendants without allowing Plaintiffs the benefit of any discovery. However, as this Court has explained previously, "[s]uch a review…is not only inappropriate for a fraudulent joinder determination, but the need for such a review itself reveals that the failure of Plaintiff's claims is not 'obvious.'" *Ansara*, 2015 U.S. Dist. LEXIS 159365 at *9 (citations omitted). Further, "a denial, even a sworn denial of allegations does not prove their falsity[.]" *Grancare, LLC*, 889 F.3d at 551.

- 8 -

As such, Defendants' declarations should be disregarded for purposes of determining whether remand is appropriate.

Further, Defendants mistakenly believe that Plaintiffs must plead their claims with particularity, even going so far as to complain that Plaintiffs have not identified "the specific who, what, where, why, or how of any of these allegations." ECF No. 22 at 12:4-5. However, Nevada's pleading standard, which is set forth in NRCP 8, states that a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" NRCP 8(a). Nevada is a notice-pleading jurisdiction, and a pleading is sufficient so long as it gives fair notice of the nature and basis of the claim. *Crucil v. Carson City*, 95 Nev. 583, 585 (1979). In this regard, "the pleading of conclusions, either of law or fact, is sufficient so long as the pleading gives fair notice of the nature and basis of the claim." *Id.* Judged under this standard, the allegations contained in Plaintiffs' Amended Complaint adequately notice claims against Shetler and satisfy NRCP 8(a)'s liberal standard.

Moreover, Defendants' own declarations reveal substantial factual disputes which, at this stage, must be resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Defendants allege that, "Mr. Erne terminated Claggett & Sykes on May 15, 2020." ECF No. 22 at 3:26. In fact, Mr. Erne did not personally terminate Claggett & Sykes until four days later, May 19, 2020. *See* Email attached hereto as Exhibit 2. **Shetler admits that before that date, he had already spoken with Davis about replacing Claggett & Sykes as counsel for Erne.** *See* ECF No. 1-4 at ¶ 10 ("I had no knowledge of the Erne Matter or Claggett & Sykes' involvement in the Erne Matter until May 17, 2020, after Mr. Erne fired Claggett & Sykes. It was on this date when Defendant Brian Davis contacted me about substituting in as counsel in the Erne Matter."). Claggett & Sykes remained on as counsel of record for Erne

until May 29, 2020. *See* Substitution of Attorneys attached hereto as Exhibit 3. This timeline is consistent with the allegations contained in Plaintiff's Amended Complaint. *See, e.g.,* ECF No. 12 at ¶¶ 73 (alleging that "Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client"). This, alone, demonstrates that it is possible for Plaintiffs to recover against Defendant Shetler in state court for intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy. *See, e.g., J.J. Indus., LLC*, 119 Nev. at 275 ("'At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations....'").

## C. Plaintiffs Incurred Damages as a Result of Defendants' Intentional Interference with Contractual Relations

Finally, Defendants argue that "Plaintiffs' intentional interference claim must be dismissed because their alleged damages are too remote and speculative at this time." ECF No. 22 at 13:11-12. However, Plaintiffs incurred damages as a result of Defendants' intentional interference with Claggett & Sykes' contractual relations with Erne. As explained above, Claggett & Sykes' fee agreement with Erne provided that **"[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more.**" ECF No. 22-1 at 3 (emphasis added). Claggett & Sykes has asserted a lien for fees and costs in the amount of $288,512.06. *See* Notice of Lien attached hereto as Exhibit 4. To date, that entire amount remains outstanding and due as a result of Defendants' interference.

### III.    Plaintiffs Plead a Cognizable Claim for Intentional Interference with Prospective Economic Advantage Against Defendant Shetler

Plaintiffs' second claim against Shetler is for intentional interference with prospective economic advantage related to his efforts to interfere with Claggett & Sykes' ongoing and prospective contractual relationship with Erne. "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 88-89 (1993) (citation omitted).

Defendants argue that this claim fails because Claggett & Sykes' fee agreement with Erne "was an established contract, not a prospective economic opportunity." ECF No. 22 at 14:3-4. However, as a result of Defendants' wrongful and unjustified conduct, Claggett & Sykes "was harmed and denied fees and remuneration it otherwise would have been entitled to within its ongoing and prospective contractual relationship with the client." ECF No. 12 at ¶ 199. In fact, Defendants concede earlier in their Opposition that Claggett & Sykes would have been entitled to a full contingency fee and/or additional hourly fees had Erne not terminated them. *See* ECF No. 22 at 13:1-5. Plaintiffs were denied these prospective economic benefits as a result of Defendants' intentional interference with Claggett & Sykes' relationship with Erne. *See* ECF No. 12 at ¶¶ 192-223.

Defendants further claim that Shetler "did nothing to prevent Plaintiffs from recovering their hourly fees or costs." ECF No. 22 at 14:7-8. As explained above, Shetler admits in his declaration that he discussed the *Erne* case with Defendant Davis prior to the date Erne terminated Claggett & Sykes. *Compare* ECF No. 1-4 at ¶ 10 *with* Email, Ex. 2;

- 11 -

Substitution of Attorney, Ex. 3. As a result of Defendants' intentional acts, Claggett &

Sykes suffered damages, including additional prospective fees arising out of their

relationship with Erne.

**IV.    Plaintiffs Plead a Cognizable Claim for Civil Conspiracy Against Defendant
Shetler**

Finally, Plaintiffs brought a claim against Shetler for civil conspiracy arising out of

his concerted efforts with his Co-Defendants to have Claggett & Sykes Law Firm fired off

the *Erne* case. In Nevada, "[a]n actionable civil conspiracy 'consists of a combination of two

or more persons who, by some concerted action, intend to accomplish an unlawful objective

for the purpose of harming another, and damage results from the act or acts.'" *Consol.*

*Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256

(1998) (citations omitted). "A civil conspiracy claim operates to extend, beyond the active

wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the

wrongdoer's acts." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (citing

16 AM.JUR. 2D, *Conspiracy*, § 57 (1998)). As the Supreme Court of California noted, "In

such an action the major significance of the conspiracy lies in the fact that it renders each

participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from

the wrong, **irrespective of whether or not he was a direct actor and regardless of the**

**degree of his activity**." *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 40 (1989) (emphasis

added).

In their Opposition, Defendants repeat their denial of any wrongdoing. ECF No. 22

at 14:28 – 15:2. However, as discussed above, Shetler has admitted to discussing the *Erne*

matter with Defendant Davis on May 17, 2020, while Claggett & Sykes remained counsel of

record for Erne. *See* ECF No. 1-4 at ¶ 10. Then, only days later, Erne reached out to

personally terminate Claggett & Sykes. *See* Email, Ex. 2. Simply, Defendants have not demonstrated that Plaintiffs fraudulently joined Shetler. Instead, Defendants own proffered timeline of events supports Plaintiffs' contention that Defendants conspired to have Claggett & Sykes terminated off the *Erne* case. To the extent Defendants dispute Plaintiffs' factual allegations, all disputed questions of fact are resolved in Plaintiffs' favor. *See Kruso*, 872 F.2d at 1426. Therefore, Defendants have not demonstrated that this Court has jurisdiction over this case and, as such, the Court must remand this matter back to state court.

**CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that the Court grant their Motion to Remand in its entirety.

Dated this 4th day of February 2022.

INJURY LAWYERS OF NEVADA

*/s/ Jared Anderson*

_____
Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

1

**CERTIFICATE OF SERVICE**

2      I certify that on the 4th day of February, 2022, I served a true and correct copy of the

3   above and foregoing **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO**

4   **REMAND** on the parties via the Court's Electronic filing system to all parties listed in

5   CM/ECF service listed for this case:

6

7   */s/Lili Salonga*

8   _____
    An employee of Injury Lawyers of Nevada

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24