1  JARED B. ANDERSON, ESQ. (SBN: 9747)
   DAVID J. CHURCHILL, ESQ. (SBN: 7308
2  **INJURY LAWYERS OF NEVADA**
   4001 Meadows Lane
3  Las Vegas, Nevada 89107
   Telephone: 702:868-8888
4  Facsimile: 702-868-8889
   jared@injurylawyersnv.com
5  david@injurylawyersnv.com
   *Attorneys for Plaintiffs*

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8  SEAN K. CLAGGETT & ASSOCIATES,        Case No. 2:21-cv-02237-GMN-DJA
   LLC D/B/A CLAGGETT & SYKES LAW
9  FIRM, A NEVADA LIMITED LIABILITY      **PLAINTIFFS' OPPOSITION TO**
   COMPANY; SEAN K. CLAGGETT, AN         **DEFENDANTS BRIAN F. DAVIS AND**
10 INDIVIDUAL,                           **DAVIS LAW GROUP, P.A.'S**
                                         **MOTION TO DISMISS PLAINTIFFS'**
11            Plaintiffs,                **FIRST AMENDED COMPLAINT**
                                         **AGAINST BRIAN F. DAVIS AND**
12 v.                                    **DAVIS LAW GROUP, P.A. UNDER**
                                         **FRCP 12(B)(6)**
13 DON C. KEENAN, AN INDIVIDUAL; D.C.
   KEENAN & ASSOCIATES, P.A. D/B/A
14 KEENAN LAW FIRM, A GEORGIA
   PROFESSIONAL ASSOCIATION;
15 KEENAN'S KIDS FOUNDATION, INC.,
   D/B/A KEENAN TRIAL INSTITUTE
16 AND/OR THE KEENAN EDGE, A
   GEORGIA NON-PROFIT CORPORATION;
17 BRIAN F. DAVIS, AN INDIVIDUAL;
   DAVIS LAW GROUP, P.A., A NORTH
18 CAROLINA PROFESSIONAL
   ASSOCIATION; DAVID J. HOEY, AN
19 INDIVIDUAL; TRAVIS E. SHETLER, AN
   INDIVIDUAL; WILLIAM ENTREKIN, AN
20 INDIVIDUAL; DOES I-X; AND ROE
   BUSINESS ENTITIES XI-XX, INCLUSIVE,

21
              Defendants.
22

23

24                              - 1 -

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN K. CLAGGETT, by and through their attorneys of record, Injury Lawyers of Nevada, hereby files their Opposition to Defendants Brian F. Davis and Davis Law Group, P.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint Against Brian F. Davis and Davis Law Group, P.A. Under FRCP 12(b)(6). This Opposition is based upon the records and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument made by counsel at the hearing of this matter.

Dated this 9th day of February 2022.

INJURY LAWYERS OF NEVADA

/s/ *Jared Anderson*

_____
Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

**INTRODUCTION**

This case arises out of Defendants' coordinated and concerted efforts to disparage Plaintiff Sean Claggett and to have Plaintiff Claggett & Sykes Law Firm fired as counsel for Logan Erne, the plaintiff in the underlying personal injury lawsuit. On November 3, 2021, Plaintiffs filed their Complaint in the Eighth Judicial District Court of the State of Nevada. Defendants Brian F. Davis and Davis Law Group, P.A. ("Davis Defendants"), filed their Notice of Removal and Petition for Removal on December 22, 2021. *See* ECF No. 1. On January 12, 2022, Plaintiffs filed an Amended Complaint alleging three (3) causes of action against Davis Defendants: (1) intentional interference with contractual relations; (2)

intentional interference with prospective economic advantage; and (3) civil conspiracy. *See* Amended Complaint, ECF No. 12 at ¶¶ 153 – 210.

On January 26, 2022, Davis Defendants filed their motion to dismiss Plaintiffs' First Amended Complaint and requested that the Court dismiss all claims against them. Defendants' arguments are baseless and unsupported by applicable law. Accordingly, the Court should deny Defendants' motion, in its entirety, for the following reasons:

1. A rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the allegations in the complaint in the light that is most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Razaghi v. Razaghi Dev. Co.*, 2021 U.S. Dist. LEXIS 188237, *8 (D. Nev. Sept. 30, 2021) (citation omitted). Here, Plaintiffs have sufficiently plead their claims and supported them with factual allegations which, if true, would entitle them to relief. As such, Davis Defendants' motion should be denied.

2. Plaintiffs' first claim against Davis Defendants is for intentional interference with contractual relations. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264,

1267 (2003) (citation omitted). Davis Defendants argue that Plaintiffs' claim should be dismissed because the underlying agreement between Claggett & Sykes Law Firm and Erne "is illegal and void because it violates NRS § 7.095." Motion, ECF No. 16 at 8:19-20. This argument fails for several reasons. First, Davis Defendants concede in their Motion to Dismiss and in other filings before this Court that "[t]his Contingency Fee Agreement was an established contract…." *See* Motion, ECF No. 16 at 13:11-12; Opposition to Motion to Remand, ECF No. 22 at 14:3-4. Second, NRS 7.095 applies only to contingent fee agreements. *See* NRS 7.095. However, Plaintiff's fee agreement with Erne contained an alternative hourly fee structure and provided that upon discharge, the client would immediately owe the firm all hourly fees and costs incurred to date. *See* Fee Agreement, ECF No. 16-1 at 1, 3. Third, NRS 7.095's fee cap applies only to actions "against a provider of health care based upon professional negligence[.]" *See* NRS 7.095(1). However, the *Erne* case involved claims against defendants who fall outside NRS 7.095's statutory definition of a "provider of health care." *See Erne* Amended Complaint attached hereto as Exhibit 1 at 6-8. Finally, Erne knowingly and voluntarily waived any potential applicability of NRS 7.095 when he executed the fee agreement with Claggett & Sykes. Erne's waiver was valid as there is no language in Chapter 7 of the Nevada Revised Statutes prohibiting attorneys from informing clients about the statutory fee scheme under NRS 7.095 and asking them to waive it. Thus, Davis Defendants' arguments on this point are unavailing.

3.   Davis Defendants also claim that "Plaintiffs' damages are too remote and speculative to be actionable." Motion, ECF No. 16 at 12:14-15. However, Plaintiffs incurred damages as a result of Defendants' intentional interference with Claggett &

Sykes contractual relations with Erne. Specifically, upon discharge, Claggett & Sykes were owed all outstanding fees and costs incurred while representing Erne. *See* Fee Agreement, ECF 16-1 at 3. To date, Claggett & Sykes is owed at excess of $150,000.00. *See* Amended Complaint, ECF No. 12 at ¶ 64.

4. Plaintiff also brought a claim against Davis Defendants for intentional interference with prospective economic advantage. "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 88-89 (1993) (citation omitted). Here, Plaintiffs have alleged that Davis Defendants, along with Shetler and the Keenan Defendants, knowingly and intentionally interfered with Plaintiffs' ongoing and prospective contractual relationship between Claggett & Sykes and Erne by which Claggett & Sykes would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit. *See* Amended Complaint, ECF No. 12 at ¶¶ 193-199. As a result of Defendants' intentional and wrongful acts, Claggett & Sykes was harmed and denied fees it otherwise would have been entitled to. *Id.* at ¶¶ 196-199. Davis Defendants do not provide any cogent or legally supported argument regarding this claim, and, as such, the Court should refuse to dismiss it.

5. Finally, Plaintiff brought a claim against Davis Defendants for civil conspiracy. In Nevada, "[a]n actionable civil conspiracy 'consists of a combination of two or more

persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consol. Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (citations omitted). Davis Defendants argue that since Plaintiffs' other claims should be dismissed, so should this one. *See* Motion, ECF No. 16 at 14. However, Plaintiffs' claims for intentional interference with contractual relations and prospective economic advantage are both viable and well plead and, as such, Plaintiffs' claim for civil conspiracy is likewise proper. Therefore, Plaintiffs respectfully request that the Court deny Davis Defendants' motion, in its entirety.

## STATEMENT OF FACTS

### I.   BACKGROUND OF DEFENDANT DON KEENAN, THE KEENAN TRIAL INSTITUTE, AND THE KEENAN EDGE

Defendant Don Keenan is an attorney who co-authored a trial advocacy book with jury consultant David Ball entitled: <u>Reptile the 2009 Manual of the Plaintiff's Revolution</u>. *See* Amended Complaint, ECF No. 12 at ¶ 19. In the years following the release of the book, Keenan and Ball began conducting seminars to expand on the material in the book. *Id.* at ¶ 21. In or around 2013 or 2014, Keenan and Ball created the Keenan Ball Trial College ("KBC") – a trial college for plaintiff's lawyers based on the Reptile book. *Id.* at ¶ 22. Then, sometime around 2018/2019, Keenan changed the name of the Keenan Ball Trial College to The Keenan Trial Institute. *Id.* at ¶ 26. According to Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all materials taught through those ventures. *Id.* at ¶ 28.

///

///

## II.   BACKGROUND OF CLAGGETT & SYKES LAW FIRM'S INVOLVEMENT WITH KEENAN

Plaintiff Sean Claggett is a trial lawyer in Las Vegas and the founding partner of Claggett & Sykes Law Firm. *Id*. at ¶ 27. In or around 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC. *Id*. at ¶ 28. Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC. *Id*. at ¶ 29. Mr. Claggett and his partners, William Sykes and Matthew Granda, also managed the Nevada Reptile listserv, an email listserv for Nevada plaintiff's attorneys who had attended Reptile seminars and/or KBC courses. *Id*. at ¶ 30. Mr. Claggett became one of the best-known instructors at KBC and became very close with Keenan. *Id*. at ¶ 32.

In 2018, the relationship between Mr. Claggett and Keenan began to suffer. *Id*. at ¶ 34. Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all attorneys from Claggett & Sykes Law Firm were resigning from being KBC instructors and listserv moderators. *Id*. at ¶ 41.

## III.   KEENAN AND HIS CO-DEFENDANTS DISPARAGE MR. CLAGGETT

After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other attorneys at Claggett & Sykes Law Firm began attending other trial courses. *Id*. at ¶ 48. Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. *Id*. at ¶ 49. These programs were done under the name "Case Analysis." *Id*. In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. *Id*. at ¶ 50. Mr. Claggett did not receive any money for teaching this course. *Id*.

In April 2020, Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire

methods. *Id*. at ¶ 52. Shortly thereafter, on April 27, 2020, Defendant William Entrekin sent an email to all of the state Reptile listservs. *Id*. at ¶ 53. The content of the email was written by Hoey. *Id*. Upon information and belief, Hoey wrote the email at the direction of Keenan. *Id*. The email stated:

All-

I write to you all as the Dean of the Keenan Trial Institute.

KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats............Claggett doesn't care and it hurts us all.

Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.

> You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

*Id*. at ¶ 55.

## IV.   DEFENDANTS CONSPIRE TO HAVE CLAGGETT AND SYKES LAW FIRM FIRED FROM A NEVADA PERSONAL INJURY CASE

Defendant Brian Davis is a North Carolina-based attorney who also serves as an instructor at The Keenan Trial Institute. *Id*. at ¶ 57. In or around 2017, Davis asked Claggett & Sykes to co-counsel with him and his law firm on a personal injury case in Las Vegas. *Id*. at ¶ 60. Thereafter, the client, Logan Erne, retained Claggett & Sykes and in 2018, Claggett & Sykes filed a complaint in the Eighth Judicial District Court of the State of Nevada entitled *Logan Erne v. Margaret Williams, et al.*, Case No. A-18-773499-C. *Id*. at ¶ 62.

Over the course of representing the client from 2018 to 2020, Claggett & Sykes completed extensive discovery and engaged in substantial motion practice, including opposing a motion for summary judgment. *Id*. at ¶ 63. In all, Claggett & Sykes incurred close to $150,000.00 in costs litigating the matter. *Id*. at ¶ 64. Between 2018 and May 2020, neither the client, the client's family, Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes' representation or handling of the case. *Id*. at ¶ 66. In fact, as late as April 28, 2020, Claggett & Sykes' lawyers had phone calls with Davis about the case and all was well. *Id*. at ¶ 67.

On or about May 14, 2020 – less than three weeks after Keenan, Hoey, and Entrekin sent the email about Mr. Claggett to the Keenan listservs – Davis asked Mr. Claggett and Claggett & Sykes' lead medical malpractice partner, Jennifer Morales, for a phone call. *Id*. at ¶ 68. The next day when they spoke, Davis stated that the client had decided to fire Claggett & Sykes. *Id*. at ¶ 69. When Mr. Claggett and Ms. Morales asked why, Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. *Id*. After Mr.

Claggett and Ms. Morales pointed out that the notices were prepared and ready to be served, Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. *Id*. Mr. Claggett and Ms. Morales explained this was also incorrect. *Id*. Finally, Davis admitted that he was firing Claggett & Sykes for what Mr. Claggett had allegedly done to Keenan's Reptile group. *Id*. Upon information and belief, Keenan asked or told Davis to fire Claggett & Sykes from the case. *Id*. at ¶ 70. Alternatively, upon information and belief, Davis fired Claggett & Sykes due to Keenan, Hoey, and Entrekin's April 27, 2020 email. *Id*. at ¶ 71.

Shetler, a Nevada resident and instructor at The Keenan Trial Institute, also participated in the conspiracy to have Claggett & Sykes fired off the *Erne* case. Upon information and belief, Shetler had communications with Keenan and/or Davis in furtherance of their conspiracy to interfere with Plaintiffs' relationship with the client. *Id*. at ¶ 73. Upon information and belief, Keenan held one or more meetings with Davis and/or Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes relationship with the client. *Id*. at ¶ 74. Upon information and belief, during those discussions, Keenan and/or Davis recruited Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client. *Id*. at ¶ 75. Upon information and belief, Keenan and Shetler called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes Law Firm. *Id*. at ¶ 72. Shetler eventually agreed to act as local counsel in the *Erne* matter. *Id*. at ¶ 77.

///

///

///

- 10 -

1

**LEGAL STANDARD**

2

**I.      LEGAL STANDARD GOVERNING FRCP 12(b)(6) – MOTION TO DISMISS**

3

4          A rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the

complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *De La Cruz v. Tormey*, 582 F.2d

5

45, 48 (9th Cir. 1978). "When considering a motion to dismiss under Rule 12(b)(6) for

6

failure to state a claim, dismissal is appropriate only when the complaint does not give the

7

defendant fair notice of a legally cognizable claim and the grounds on which it rests."

8

*Razaghi*, 2021 U.S. Dist. LEXIS 188237 at *8 (citing *Twombly*, 550 U.S. at 555). Thus, a

9

Rule 12(b)(6) dismissal is proper only where there is either a lack of cognizable legal theory

10

or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

11

*Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

12          In ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the

13

allegations in the complaint in the light that is most favorable to the plaintiff. *See Cahill v.*

14

*Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, the Court must

15

accept as true all material allegations in the complaint, as well as any reasonable inferences

16

to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

17

This standard does not require detailed factual allegations, but does demand "more than

18

labels and conclusions" or a "formulaic recitation of the elements of a cause of action."

19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

20

**LEGAL ARGUMENT**

21

**I.      PLAINTIFFS PLEAD A COGNIZABLE CLAIM FOR INTENTIONAL
         INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST DAVIS
         DEFENDANTS**

22

23          Plaintiffs' first claim against Davis Defendants is for intentional interference with

contractual relations. "In an action for intentional interference with contractual relations, a

24

plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC*, 119 Nev. at 274, 71 P.3d at 1267 (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)). "Because interference with contractual relations is an intentional tort, the plaintiff must demonstrate that the defendant knew of the existing contract, or at the very least, establish 'facts from which the existence of the contract can be reasonably inferred.'" *Id.* (quoting *Nat. Right to Life P.A. Com. v. Friends of Bryan*, 741 F. Supp. 807, 813 (D. Nev. 1990)); *see also Sebastian Intern., Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001). However, "mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id.* 119 Nev. at 276, 71 P.3d at 1268.

Here, Plaintiffs have alleged that "[t]here existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff [Erne] related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada." Amended Complaint, ECF No. 12 at ¶ 161. Defendants knew of this agreement and, nevertheless, conspired to have Claggett & Sykes terminated from the *Erne* case. *Id.* at ¶¶ 57-77, 164-167. Defendant Davis had specific knowledge of this valid contract "because he referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client." *Id.* at ¶ 164. "Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the contractual relationship." *Id.* at ¶ 165. Specifically, upon information and belief, Defendant Keenan asked or told

Defendant Davis to have Plaintiff's representation of the client terminated." *Id.* "Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff." *Id.* Upon information and belief, "Defendant Shetler…coordinated with Defendant Keenan and/or Defendant Davis to contact at least one other attorney in Las Vegas in an attempt to replace Claggett & Sykes. *Id.* at ¶¶ 72-75. When that attempt – and potentially others – was unsuccessful, Defendant Shetler agreed to step in as local counsel on the *Erne* matter. *Id.* at ¶ 77. As a direct and proximate result of Defendants' intentional acts designed to disrupt the contractual relationship between Plaintiffs and Erne, the client did in fact terminate the contract between himself and Plaintiffs. *Id.* at ¶¶ 165-167.

In their motion, Davis Defendants include several arguments in support of dismissal, all of which are unavailing.

### A.    Plaintiffs had a Valid and Existing Contract with Erne

Davis Defendants first argue that Plaintiffs' claim for intentional interference with contractual relations fails because "Plaintiffs Contingency Agreement with Mr. Erne is illegal and void because it violates NRS § 7.095." Motion, ECF No. 16 at 8:19-20. Davis Defendants are incorrect for several reasons.

### 1.    Davis Defendants Have Conceded Elsewhere That Plaintiff's Contract with Erne Was Valid and Existing

First, Plaintiffs' claim is based, not only on Claggett & Sykes' written fee agreement with Erne, but also on Claggett & Sykes' oral agreement with Erne to provide legal services in exchange for compensation. *See* Amended Complaint, ECF No. 12 at ¶¶ 161 – 162 (noting that the "contract between Plaintiff and the Las Vegas personal injury plaintiff was made in writing and orally"); *see also Stalk v. Mushkin*, 125 Nev. 21, 26, 199 P.3d 838, 841 (2009) (citing *Zimmerman v. Bank of America National T. & S. Ass'n*, 191 Cal. App. 2d 55,

12 Cal. Rptr. 319, 321 (1961) ("**The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable for not enforceable.**")). This contractual agreement between Claggett & Sykes and Erne "provided that [Claggett & Sykes] would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit." *Id.* at ¶ 163. Davis Defendants had specific knowledge of this contractual relationship "because [Davis] referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client." *Id.* at ¶ 164.

Indeed, Davis Defendants concede in their Motion and in other filings before this Court that "**[t]his Contingency Fee Agreement was an established contract….**" *See* Motion, ECF No. 16 at 13:11-12 (emphasis added); *see also* Opposition to Motion to Remand, ECF No. 22 at 14:3-4. Defendants should be estopped from denying what they have admitted elsewhere, namely, that Plaintiffs had a valid and existing contractual relationship with Erne. *See Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1171 (D. Nev. 2011) ("Judicial estoppel is designed 'not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'") (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

///

1

2

### 2. NRS 7.095 Does Not Apply to Claggett & Sykes' Fee Agreement with Erne Because the Fee Agreement Contained an Alternative Hourly Fee Structure

3

Second, NRS 7.095 applies only to contingent fee agreements. *See* NRS 7.095(1)

4

(limiting the scope of the statute's reach to fee arrangements "contingent on the amount of

5

recovery for representing a person seeking damages in connection with an action for injury

6

or death against a provider of health care based upon professional negligence…"). However,

7

Plaintiffs' fee agreement with Erne contained an alternative hourly fee structure: "Should

8

litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees,

9

or if the client discharges The Firm, the Attorney's Fee shall be the greater of the above

10

contingency fee or the Attorney's Hourly Rate whichever is greater." Motion, ECF No. 16-1

11

at 1. Also, the fee agreement states that "[u]pon discharge of the Firm, Client shall

12

immediately pay the Firm all costs advanced, and actual fees incurred for the work

13

performed per hour, or the applicable contingency fee pursuant to the contingency fee

14

structure on page 1 of this Contingency Fee Agreement, whichever is more." *Id.* at 3. Thus,

15

based on the plain language of the statute, NRS 7.095's statutory cap does not apply to the

16

hourly rate provisions in Claggett & Sykes' fee agreement with Erne. *See Branch Banking &*

17

*Trust Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158 (2015) ("In interpreting a

18

statute, this court looks to the plain language of the statute and, if that language is clear, this

19

court does not go beyond it.") (citation omitted).

### 3. NRS 7.095 Does Not Apply to Claggett & Sykes' Fee Agreement with Erne Because the *Erne* Case Involved Claims Against Individuals Who Fall Outside NRS 7.095's Statutory Definition of a "Provider of Health Care"

20

21

22

Third, NRS 7.095's fee cap applies only to actions "against a provider of health care

23

based upon professional negligence[.]" *See* NRS 7.095(1). The statute defines "Provider of

24

health care" as "a physician licensed under chapter 630 or 633 of NRS, dentist, registered

nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractor, doctor of Oriental medicine, medical laboratory director or technician, licensed dietitian or a licensed hospital and its employees." NRS 7.095(4)(b). In their Motion, Davis Defendants ignore that the *Erne* case includes claims against defendants who fall outside NRS 7.095's statutory definition of a "provider of health care". *See Erne* Amended Complaint, Ex. ?? at 6-8 (detailing Erne's common law negligence claim against counselors Margaret Williams, LCPC, and Marilyn Abel, CPC, as well as their employer, PHC of Nevada, Inc. dba Harmony Healthcare).

Although the Nevada Supreme Court has not addressed the scope of NRS 7.095's definition of "provider of health care", it has considered the reach of Nevada's medical malpractice statutes found in Chapter 41A of the Nevada Revised Statutes. *See, e.g., Estate of Curtis v. S. Las Vegas Med. Inv'rs, LLC*, 466 P.3d 1263 (Nev. 2020). For example, in *Szymborski v. Spring Mt. Treatment Ctr.*, 133 Nev. 638 (2017), the plaintiff brought claims against certain licensed social workers and case managers arising out of his son's discharge from Spring Mountain Treatment Center where he had been receiving treatment. *Id*. at 639. Defendant Spring Mountain argued that "because Szymborski's claims involve employees of a hospital rendering services, the claims must be for medical malpractice and NRS 41A.071's affidavit requirement applies." *Id*. at 641. However, the Nevada Supreme Court concluded that "when a hospital performs nonmedical services, it can be liable under principles of ordinary negligence." *Id*. (citing *DeBoer v. Senior Bridge s of Sparkes Fam. Hosp.*, 128 Nev. 406, 411-12, 282 P.3d 727, 731-32 (2012) ("[A] healthcare-based corporation's status as a medical facility cannot shield it from other forms of tort liability when it acts outside of the scope of medicine.")). Thus, when a plaintiff's claim is for injuries resulting from negligent acts that did not affect the medical treatment of a patient,

- 16 -

the claim sounds in ordinary negligence. *Id.* (citing *Gunter v. Lab Corp. of Am.*, 121 S.W. 3d 636, 640 (Tenn. 2003)).

Ultimately, the *Szymborski* Court determined that Mr. Szymborski's claims against various social workers, case managers, and medical assistants could sound in ordinary negligence and, therefore, did not need to meet the requirements of NRS 41A.071. *Id.* Instead, a social worker, or perhaps the Division of Public and Behavioral Health, rather than a medical expert, would be required to aid the jury in determining the applicable standard of care for these claims. *Id.* As such, these claims were determined to be based in ordinary negligence and no expert affidavit was required.

The Nevada Supreme Court's logic in *Szymborski* extends to the *Erne* case, as there, Erne brought multiple negligence-based claims against licensed counselors, who do not fall within NRS 7.095's definition of "provider of health care." *See Erne* Amended Complaint, Ex. 1. As such, NRS 7.095's cap on contingent fees would not apply to Erne's non-medical malpractice negligence claims or, in turn, Claggett & Sykes' fee agreement with Erne.

### 4. Erne Knowingly, Intelligently, and Voluntarily Waived any Potential Applicability of NRS 7.095

Finally, Erne knowingly, intelligently, and voluntarily waived any potential applicability of NRS 7.095 when he executed the fee agreement with Claggett & Sykes. In Nevada, waiver is the voluntary and intentional relinquishment of a known right and waiver can be expressed verbally or in writing. *Udevco Inc. v. Wagner*, 100 Nev. 185 (1984). Waiver requires "an existing right, a knowledge of its existence, and an actual intention to relinquish it." *McKeeman v. General Am Life Ins. Co.*, 111 Nev. 1042 (1995). Here, Erne voluntarily waived his rights under NRS 7.095, both orally *and* in writing. *See* Motion, ECF No. 16-1. Specifically, the fee agreement between Claggett & Sykes and Erne states:

1

2

3

4

5

6

7

**NRS 7.095.** YOU HAVE BEEN GIVEN A COPY OF NRS 7.095, WHICH LIMITS FEES WHICH CAN BE CHARGED TO THE PARTY OF A MEDICAL MALPRACTICE CASE BY THEIR ATTORNEY. IN OUR OPINION, THIS STATUTE IS UNCONSTITUTIONAL, AS APPLIED TO THE U.S. CONSTITUTION, AS WELL AS THE STATE OF NEVADA CONSTITUTION. WE HAVE EXPLAINED TO YOU THAT WE WILL NOT REPRESENT YOU PURSUANT TO THE FEE LIMITATIONS OF NRS 7.095, AND THAT WE WILL ONLY REPRESENT YOU IN ACCORDANCE WITH THE FEES LISTED IN THIS MEDICAL MALPRACTICE CONTINGENCY FEE AGREEMENT. WE HAVE ADVISED YOU TO CONTACT AN ATTORNEY OF YOUR CHOICE REGARDING THIS ISSUE PRIOR TO SIGNING THIS AGREEMENT.

8

9

Motion, ECF No. 16-1 at 2. Thus, there can be no dispute that Erne knew of the existence of NRS 7.095 and agreed to waive the same.

10

11

12

13

14

15

16

17

18

19

20

21

22

Erne's waiver of NRS 7.095 was valid as there is no language in Chapter 7 of the Nevada Revised Statutes prohibiting or limiting attorneys from informing clients or potential clients about the statutory fee scheme under NRS 7.095 and asking them to waive it. The absence of any such language can be interpreted to be nothing other than intentional because there are other Chapters in the Nevada Revised Statutes that *do* expressly prohibit the waiver of statutory rights. *See, e.g.*, NRS 598.772 ("Waiver of statutory rights prohibits"…"Any waiver of a buyer of the provisions of NRS 598.746 to 598.777 inclusive, is contrary to public policy and is void and unenforceable"); *see also* NRS 108.2453 ("Waiver or modification of right, obligation or liability set forth in NRS 108.221 to 108.246, inclusive, prohibited…"). "[I]t is a well-recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded. *Coast Hotels and Casinos, Inc. v. Nevada State Lab. Commn.*, 34 P.3d 546 (Nev. 2001). Therefore, because NRS 7.095 is silent as to waiver, it cannot be interpreted or implied to read that waiver is prohibited.

23

24

Davis Defendants rely heavily on a California case, *Fineberg v. Harney & Moore*, 255 Cal. App. 3d 1049, 255 Cal. Rptr. 299 (1989), wherein the California Court of Appeals considered the issue of whether a medical malpractice client may waive California's cap on medical malpractice attorneys fees found at § 6146 of the California Business and Professions Code. There, the court concluded "there is nothing in the statutory scheme, or its legislative history, indicating that the Legislature intended to permit waiver of the provisions of Business and Professions Code section 6146 by parties to a contingency fee agreement in a medical malpractice case, and moreover, that such waiver is precluded Civil Code section 3513." *Id*. at 1055 (citations omitted). Davis Defendants' reliance on *Fineberg* is unavailing for numerous reasons.

First, the *Fineberg* court based its ruling, in part, on California Civil Code § 3513 which states that "[A] law established for a public reason cannot be contravened by a private agreement." *Id*. Defendants have not pointed the Court to – and Plaintiff's counsel is unaware of - a substantially similar Nevada statute. Instead, as explained above, the general rule in Nevada is that a private right conferred by statute may be waived by private agreement absent an explicit statutory provision indicating otherwise. *See, e.g.,* NRS 598.772; NRS 108.2453.

Also, Davis Defendants argue that *Fineberg*'s reasoning is persuasive because NRS 7.095 was enacted "to address Nevada's health care crisis." Mot., ECF No. 16 at 10:6-7. Defendants go on to suggest that NRS 7.095's cap on fees somehow assists in "lowering insurance premiums, providing greater access to healthcare, and providing protection to physicians[.]" *Id*. at 11:5-6. How, exactly, does a cap on Plaintiff's attorneys fees relate to any of the listed goals? Defendants do not say. *See Tam v. Eighth Judicial Dist. Court*, 131 Nev. 792, 798 (2015) (explaining that to survive an equal protection challenge, a statute

must be "rationally related to a legitimate governmental purpose") (citing *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 520, 217 P.3d 546, 559 (2009)). This is because juries in Nevada do not consider a party's attorneys fees in rendering a verdict and, thus, the statutory cap on contingent fees plays no role in lessening verdicts, lowering premiums, providing access to healthcare, or protecting physicians. Defendants cannot demonstrate otherwise.

Indeed, in *In re Estate of Salerno*, 42 Conn. Supp. 526, 630 A.2d 1386 (1993), the court rejected the very same arguments Davis Defendants put forth in their brief. Specifically, the court in *Salerno* stated the following:

> The general rule is that rights granted by statute may be waived unless the statute is intended to protect the general rights of the public rather than private rights. 28 Am Jur. 2d, Estoppel and Waiver § 164 (1966). The Connecticut Supreme Court has adopted the general rule. "One cannot waiver a public obligation created by statute … but he may waive a statutory requirement the purpose of which is to confer a private right or benefit." (Citation omitted.) *Hatch v. Merigold*, 119 Conn. 339, 343, 176 A.266 (1935).

> Statutes relating to litigation have been construed by the courts as conferring a private right that may be waived. The statute of limitations for tort actions is personal and may be waived. *Orticelli v. Powers*, 197 Conn. 9, 15-16, 495 A.2d 1023 (1985).  The right to trial. By jury may be waived. *Leahey v. Heasley*, 127 Conn. 332, 336, 16 A.2d 609 (194). The defense of the statute of frauds may be waived. *Wolfe v. Wallingford Bank & Trust Co.*, 124 Conn. 507, 512-13, 1 A.2d 146 (1938).

> The fee cap statute, enacted as part of the tort reform legislation adopted in 1986, clearly confers a private right on plaintiffs bringing tort actions. By limiting the attorney's fees of plaintiffs, the statute was intended to increase the portion of the judgment or settlement that was actually received by the plaintiffs. 29 S. Proc. Pt. 10, 1986 Sess., pp. 3465-66. The statute does not protect the general rights of the public. It confers a private right only on those who file tort actions. The fee cap statute therefore satisfies the general rule regarding when statutes can be waived.

*Id*. 42 Conn. Supp. at 533-534.

Similarly, here, NRS 7.095 does not "protect the general rights of the public" but instead confers a private right on medical malpractice plaintiffs who file lawsuits against a "provider of health care," as that term is defined in the statute. Therefore, as explained above, in the absence of an express statutory prohibition on waivers, Erne's knowing and voluntary waiver of his personal rights within NRS 7.095 was valid and does not render the fee agreement void, as Davis Defendants suggest. Based on the foregoing, Davis Defendants have not demonstrated the absence of a valid and existing contract between Claggett & Sykes and Erne.

**B.      Davis Defendants Were Not Parties to the Agreement**

Davis Defendants next suggest that "[e]ven if it were true that the Davis Defendants induced or influenced Mr. Erne to terminate the Contingency Agreement, Plaintiffs' intentional interference claim fails. Because the Davis Defendants are parties to the Contingency Agreement." Motion, ECF No. 16 at 11:11-12. Of course, Davis Defendants were not signatories or parties to the fee agreement between Claggett & Sykes and Erne. *See* Fee Agreement, ECF No. 16-1 at 6 (showing only Erne's signature on the fee agreement). The mere fact that Davis Defendants later executed a separate Fee-Split Agreement with Claggett & Sykes does not retroactively convert them into a party to the earlier fee agreement. Moreover, Davis Defendants' contention that they could not have tortiously interfered with Plaintiffs' contractual relationship with Erne because they were Erne's co-counsel is legally unsound. *See, e.g., Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell*, 70 Cal. App. 3d 331, 339, 138 Cal. Rptr. 670 (1977) ("While 'it has long been recognized in this state that the client's power to discharge an attorney, with or without cause, is absolute…, **it is tortious for one, especially another attorney, to improperly induce the exercise of that power**") (emphasis added).

1

**C.      Plaintiffs Incurred Damages as a Result of Defendants' Intentional
Interference with the Subject Contractual Relationship**

2

3        Davis Defendants also argue that "Plaintiffs' intentional interference claim must be

4   dismissed because their alleged damages are too remote and speculative at this time."

5   Motion, ECF No. 16 at 12:17-18. However, Plaintiffs incurred damages as a result of

6   Defendants' intentional interference with Claggett & Sykes' contractual relations with Erne.

7   *See Stalk,* 125 Nev. at 26 (2009) ("Claims for intentional interference with prospective

8   business advantage and contractual relations seek compensation for damage to business

9   interests." (citing *Zimmerman v. Bank of America National T. & S. Ass'n*, 191 Cal. App. 2d

10  55, 12 Cal. Rptr. 319, 321 (1961)). "Business interests include intangible assets and inchoate

11  rights, as well as other rights incidental to business ownership." *Id.* (citing *Teller v. Teller,*

12  99 Haw. 101, 53 P.3d 240, 248 (Haw. 2002) (indicating that goodwill and trade secrets are

13  intangible assets in which business owners have property rights); *Clark v. Figge*, 181

    N.W.2d 211, 215 (Iowa 1970) (citation omitted).

14       As explained above, Claggett & Sykes' fee agreement with Erne provided that upon

15  discharge, Erne would immediately owe Claggett & Sykes all fees and costs incurred. Fee

16  Agreement, ECF 16-1 at 3. As Plaintiffs explained in their Amended Complaint, "Claggett

17  & Sykes incurred close to $150,000.00 in costs on the case." Amended Complaint, ECF No.

18  12 at ¶ 64. After Erne terminated the firm, Claggett & Sykes asserted a lien for fees and

19  costs in the amount of $288,512.06. To date, that entire amount remains outstanding and due

20  as a result of Defendants' interference.

21  **II.     PLAINTIFFS PLEAD A COGNIZABLE CLAIM FOR INTENTIONAL
            INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
            AGAINST DAVIS DEFENDANTS**

22

23       Plaintiffs have also brought a claim against Davis Defendants for intentional

    interference with prospective economic advantage related to their efforts to interfere with

24

Claggett & Sykes' ongoing and prospective contractual relationship with Erne. "Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky*, 109 Nev. at 88-89 (citing *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987)).

Here, Plaintiffs have alleged that Davis Defendants, along with the Keenan Defendants and Defendant Shetler, knowingly and intentionally interfered with Plaintiffs' ongoing and prospective contractual relationship between Plaintiff and Erne by which Claggett & Sykes would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit. *See* Amended Complaint, ECF No. 12 at ¶¶ 193-199.

Davis Defendant argue this claim fails because Claggett & Sykes' fee agreement with Erne "was an established contract, not a prospective economic opportunity." Motion, ECF No. 16 at 13:11-12. However, as a result of Defendants' wrongful and unjustified conduct, Erne terminated the relationship with Claggett & Sykes and Plaintiff was harmed and denied fees and remuneration it otherwise would have been entitled to as a result of its representation in the *Erne* matter. *Id.* at ¶¶ 196-199; *see also Stalk*, 125 Nev. at 26 (2009) ("Claims for intentional interference with prospective business advantage and contractual relations seek compensation for damage to business interests" and "[b]usiness interests include intangible assets and inchoate rights, as well as other rights incidental to business ownership"). In fact, Davis Defendants concede earlier in their Motion that Claggett &

Sykes would have been entitled to a full contingency fee and/or additional hourly fees had Erne not terminated them. *See* Motion, ECF No. 16 at 12:11-15. Plaintiffs were denied these prospective economic benefits as a result of Defendants' intentional interference with Claggett & Sykes' relationship with Erne. *See* Amended Complaint, ECF No. 12 at ¶¶ 192-223.

Defendants further claim that they "did nothing to prevent Plaintiffs from recovering their hourly fees or costs related to the Erne Matter." Motion, ECF No. 16 at 15-16. As explained above, as a result of Defendants' intentional acts, Claggett & Sykes suffered damages, including loss of fees and costs including additional prospective fees that would have arose out of their relationship with Erne.

## III. PLAINTIFFS PLEAD A COGNIZABLE CLAIM FOR CIVIL CONSPIRACY AGAINST DAVIS DEFENDANTS

Finally, Plaintiffs brought a claim against Davis Defendants for civil conspiracy arising out of their concerted efforts with their Co-Defendants to have Claggett & Sykes Law Firm fired off the *Erne* case. In Nevada, "[a]n actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consol. Generator-Nevada*, 114 Nev. at 1311, 971 P.2d at 1256 (quoting *Hilton Hotels v. Butch Lewis Production*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993) (citation omitted). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (citing 16 AM. JUR. 2D, *Conspiracy*, § 57 (1998)). The essence of civil conspiracy is damages which result from the tort underlying the conspiracy, not the legal relationship between the tortfeasor and the victim.  See 16 AM. JUR. 2D, *Conspiracy*, § 57 (1998); *Flowers*, 266 F.

Supp. 2d at 1249. As the Supreme Court of California noted, "In such an action the major

significance of the conspiracy lies in the fact that it renders each participant in the wrongful

act responsible as a joint tortfeasor for all damages ensuing from the wrong, **irrespective of**

**whether or not he was a direct actor and regardless of the degree of his activity**."

*Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 40 (1989) (emphasis added).

In this case, Plaintiffs have alleged that Shetler, Keenan, and Davis "intended to

accomplish an unlawful objective together with the purpose of harming Plaintiff." *See*

Amended Complaint, ECF No. 12 at ¶ 225. Specifically, "these Defendants acted with the

objective of intentionally interfering with Plaintiff's contractual relations and prospective

contractual relations by causing Plaintiff's client to terminate Plaintiff's representation in

furtherance of Defendant Keenan's grudge against Plaintiff." *Id.* Further, "[t]he association

of these Defendants acted by a concert of action with either an agreement, understanding, or

meeting of the minds regarding the objective of harming Plaintiff." *Id.* at ¶ 226. "Defendants

conspired with each other to unlawfully interfere with Plaintiff's contract and/or prospective

contractual relationship with its client so as to cause Plaintiff's client to terminate Plaintiff's

representation and to replace Plaintiff with Defendant Shetler." *Id.* at ¶ 227.

In their motion, Davis Defendants simply reiterate their earlier arguments regarding

Plaintiffs' intentional interference claims. Therefore, for the reasons stated above,

Defendants' arguments are unavailing and the Court should find that Plaintiff has plead a

cognizable claim against Defendants for civil conspiracy.

/ / /

/ / /

/ / /

/ / /

1

**CONCLUSION**

2       Based upon the foregoing, Plaintiffs respectfully request that the Court deny Davis

3  Defendants' Motion to Dismiss in its entirety.

4       Dated this 9th day of February 2022.

5                                              INJURY LAWYERS OF NEVADA

6                                              /s/ *Jared Anderson*

7                                              _____
                                               Jared B. Anderson, Esq. (SBN: 9747)
                                               David J. Churchill, Esq. (SBN: 7308)
8                                              **INJURY LAWYERS OF NEVADA**
                                               4001 Meadows Lane
9                                              Las Vegas, Nevada 89107

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Injury Lawyers of Nevada and that on the 9th day of February, 2022, and pursuant to Fed. R. Civ. P. 5, a copy of the above and foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A. UNDER FRCP 12(b)(6)** was served via the Court's electronic filing system to the parties listed for CM/ECF service.

/s/ Krystina June
An employee of Injury Lawyers of Nevada

**COMP**
JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**AMENDED COMPLAINT**<br><br>**Jury Demand** |

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

SYKES LAW FIRM and SEAN K. CLAGGETT by and through their attorneys of record,

DAVID CHURCHILL, ESQ. and JARED ANDERSON, ESQ. of the law firm INJURY LAWYERS OF NEVADA, bring their causes of action against Defendants, DON C. KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM; KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY; TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive, and each of them, and alleges as follows:[1]

### JURISDICTION, VENUE, AND PARTIES

1.   This Court has jurisdiction over this matter under NRS 14.065 and NRS 4.370(1), as the facts alleged occurred in Clark County, Nevada and involve an amount in controversy in excess of $15,000.00. Venue is proper pursuant to NRS 13.040, as Defendants, or any one of them, resided in Clark County, Nevada at the commencement of this action.

2.   Further, this Court has jurisdiction over this matter pursuant to NRS 14.065, the Due Process Clause of the Nevada Constitution, and the Due Process Clause of the United States Constitution with regards to Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; David J. Hoey; Travis E. Shetler; and William Entrekin.

---

[1] Plaintiffs will be timely filing their Motion to Remand and nothing in this Amended Complaint should be interpreted or construed as a waiver of Plaintiffs' right to seek remand pursuant to 28 U.S.C. § 1441, et seq. As explained in Plaintiffs' Motion to Remand, Plaintiffs' position is that this Court lacks subject matter jurisdiction as Defendant Travis E. Shetler is a Nevada resident and, thus, is non-diverse from Plaintiffs and has been properly joined to this action.

3.     Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; David J. Hoey; Travis E. Shetler; and William Entrekin maintain a continuous and substantial presence in the State of Nevada through the conduct of regular business, sales, services, marketing, and/or seminars/trainings in the State. Specifically, upon information and belief, these Defendants published and sold training materials and books; organized, offered, lead, and participated in seminars and trainings in Nevada for Nevada attorneys; received compensation and remuneration from Nevada residents for their goods and services; and organized, offered, lead, and participated in one or more Nevada-focused e-mail listserv, all of which is more fully discussed below. At all times relevant herein, Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

4.     Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; David J. Hoey; and/or William Entrekin dictated, drafted, published, sent, and/or distributed the April 27, 2020 email that is at issue in this case, as described below. Alternatively, upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; David J. Hoey; and/or William Entrekin directed or instructed that the April 27, 2020 email that is at issue in this case be sent, published, and/or distributed, as described below. Upon information and belief, these Defendants published, sent, distributed, and/or directed the April 27, 2020 email to thousands of attorneys nationwide, including approximately 100 attorneys here in

Nevada. Further, these acts by these Defendants were specifically and directly targeted at Plaintiff Sean K. Claggett, as detailed below. At all times relevant herein, these Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

5.     Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; and Travis E. Shetler conspired together and intentionally interfered with Plaintiffs' contractual relationship, written, oral, or otherwise, with client Logan Erne, a Nevada resident, as described below. These acts were specifically and directly targeted at Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm, as detailed below. At all times relevant herein, these Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

6.     At all times relevant herein, Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm (hereinafter "Plaintiff" or "Claggett & Sykes"), was and is a limited liability company organized and existing under the laws of the State of Nevada and doing business in Clark County, Nevada.

7.     At all times relevant herein, Plaintiff Sean K. Claggett (hereinafter "Plaintiff" or "Mr. Claggett") was and is a resident of Clark County, Nevada.

8.     Upon information and belief, at all times relevant herein, Defendant Don C. Keenan (hereinafter "Defendant" or "Keenan"), was and is a resident of Walton County, Florida.

9.     Upon information and belief, at all times relevant herein, Defendant D. C. Keenan & Associates P.A. d/b/a Keenan Law Firm (hereinafter "Defendant" or "Keenan

Law Firm"), was and is a professional association organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

10.     Upon information and belief, at all times relevant herein, Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge (hereinafter "Defendant" or "Keenan's Kids Foundation," "Keenan Trial Institute," or "Keenan Edge"), was and is a non-profit corporation organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

11.     Upon information and belief, at all times relevant herein, Defendant Brian F. Davis (hereinafter "Defendant" or "Davis"), was and is a resident of Buncombe County, North Carolina.

12.     Upon information and belief, at all times relevant herein, Defendant Davis Law Group, P.A. (hereinafter "Defendant" or "Davis Law Group"), was and is a professional association organized and existing under the laws of the State of North Carolina and doing business in Clark County, Nevada.

13.     Upon information and belief, at all times relevant herein, Defendant David J. Hoey (hereinafter "Defendant" or "Hoey"), was and is a resident of Middlesex County, Massachusetts.

14.     Upon information and belief, at all times relevant herein, Defendant Travis E. Shetler (hereinafter "Defendant" or "Shetler"), was and is a resident of Clark County, Nevada.

15.     Upon information and belief, at all times relevant herein, Defendant William Entrekin (hereinafter "Defendant" or "Entrekin"), was and is a resident of Lumpkin County, Georgia.

16.     Plaintiffs do not know the true names of Defendants Does I through X and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiffs.  Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

17.     Plaintiffs do not know the true names of Defendants Roe Business Entities XI through XX and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX, are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

18.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

**Background of Defendant Keenan, The Keenan Trial Institute, and the Keenan Edge**

19.    Defendant Keenan is a lawyer who co-authored a trial advocacy book with jury consultant David Ball entitled: Reptile the 2009 Manual of the Plaintiff's Revolution.

20.    Keenan has released several books following the Reptile, mainly books that compile his weekly blog articles.

21.    In the years following the release of the book, Defendant Keenan and Mr. Ball began conducting seminars to expand on the material in the book.

22.    In or around 2013 or 2014, Defendant Keenan and Mr. Ball created the Keenan Ball Trial College ("KBC"), which was a trial college for plaintiff's lawyers based on the Reptile book.

23.    KBC instructors are trial lawyers from around the country who volunteer, with no pay, to instruct at the course.

24.    Defendant Hoey was named the "Dean" of the Keenan Ball Trial College.

25.    Sometime around 2017 or 2018, Defendant Keenan began to phase out use of the Reptile name and began calling it the Keenan Edge. Upon information and belief, Defendant Keenan also phased out Mr. Ball's involvement.

26.    Sometime around 2018 or 2019, Defendant Keenan changed the name of Keenan Ball Trial College to The Keenan Trial Institute.

27.    Upon information and belief, Defendant Shetler is an instructor at The Keenan Trial Institute.

28.     According to Defendant Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all of the material taught through those ventures.

29.     Defendant Keenan says that the Keenan's Kids Foundation is a non-profit organization. Defendant Keenan claims he makes no money off his Reptile or Edge books, or off his Keenan Trial Institute. Defendant Keenan claims he donates all of his proceeds to the Keenan Trial Institute.

30.     Upon information and belief, based on publicly available tax records, Keenan's Kids Foundation made over $2,000,000 in revenue in 2018 from the Keenan Trial Institute and The Keenan Edge ventures. Less than $40,000 of that went to "kids." Upon information and belief, the remainder of the money went to operating The Keenan Trial Institute and The Keenan Edge ventures. Upon information and belief, Keenan uses this money to fund his private jet and to pay his wife a salary of $70,000 a year, despite her having no involvement in the Keenan Trial Institute or The Keenan Edge. Upon information and belief, Keenan Trial College and The Keenan Edge have no paid employees. All staff that organize, manage, and operate Keenan Trial College and The Keenan Edge are employees of Keenan's Kids Foundation.

**Background of Claggett & Sykes's Involvement in the Reptile**

31.     Mr. Claggett is a trial lawyer in Las Vegas. He is the founding partner of Claggett & Sykes Law Firm. Mr. Claggett also owns a focus group company based in Las Vegas.

32.     In about 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC.

33.     Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC.

34.     Mr. Claggett and his partners, William Sykes and Matthew Granda also managed the Nevada Reptile listserv, which is an email listserv for Nevada plaintiff's lawyers who had attended Reptile seminars and/or KBC courses.

35.     The Nevada listserv was one of the largest and most active listservs in the nation.

36.     Mr. Claggett became one of the best-known instructors at KBC and became very close with Defendant Keenan. In 2016, Mr. Claggett was one of four KBC instructors who got invited to attend a trip to Greece with Defendant Keenan to participate in an intense multi-day training on Reptile material.

37.     Around that same time Defendant Keenan co-counseled in Nevada on one of Claggett & Sykes's cases.

38.     In 2018, the relationship between Mr. Claggett and Defendant Keenan began to suffer. Mr. Claggett was conducting trials that, according to Defendant Keenan, did not strictly follow Keenan's teachings. Defendant Keenan made clear that his instructors were not to conduct trials outside of the strict confines of what he taught; as he put it, not to "go off the reservation."

39.     Defendant Keenan, usually through his lead KBC instructors, Defendant Hoey and Mindy Bish, enforced strict loyalty to the Reptile, and only the Reptile. For example, a KBC instructor attended another trial college and sent an email to his state's listserv stating that he found the course useful and recommended the college to others. Defendant Keenan immediately banned this instructor from all things Reptile.

40.     Another example occurred when Mr. Claggett conducted a product liability trial in 2018, where his co-counsel Sam Harding gave an opening statement that lasted over an hour, and where Mr. Claggett settled with one of the defendants before trial—both are against Defendant Keenan's teachings.

41.     Shortly after the trial, KBC conducted a course in Las Vegas. Defendant Keenan appeared via videoconference and announced to all the participants, that he was so disturbed that one of his instructors would give an opening statement over an hour that he had lost sleep and that it went against the Reptile teachings. Defendant Keenan said all of this while one of Claggett & Sykes's lawyers was an instructor at that same KBC course.

42.     Later in 2018, one of Defendant Keenan's fellows (Keenan has a system where he invites lawyers to conduct a "fellowship" with his law firm for a year for $30,000), sent an email to the Nevada Reptile listserv lambasting anyone who would charge more than $250 per hour to conduct a focus group. The fellow also stated that Defendant Keenan or others from his organization would come to Las Vegas and conduct focus groups for $250. Upon information and belief, the fellow sent this email at Defendant Keenan's direction. Upon information and belief, neither Defendant Keenan nor his KBC staff ever lived up to the promise to come to Nevada to conduct these focus groups.

43.     Upon information and belief, this email was a direct attack on Mr. Claggett's focus group company.

44.     Around the same time, Mr. Claggett learned that Defendant Keenan was requiring all of the KBC instructors to sign agreements where if they did not volunteer at least three times a year to teach KBC courses that they would have to pay a fine of $25,000.00.

45.     Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all the attorneys at Claggett & Sykes were resigning from being KBC instructors and listserv moderators.

46.     Keenan and/or his KBC staff immediately removed Claggett & Sykes attorneys from the Nevada listserv.

47.     Upon information and belief, after removing the Claggett & Sykes lawyers from the listserv, participation in the Nevada Reptile listserv declined significantly.

**Mr. Claggett's Involvement with Case Analysis**

48.     After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other lawyers at Claggett & Sykes began to attend other trial courses, such as the Trojan Horse Method, Mark Lanier's Trial Academy, and Rick Friedman's Ethos.

49.     Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. These programs were done under the name, Case Analysis.

50.     In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. Mr. Claggett did not receive any money for teaching this course.

51.     During the COVID-19 shutdown, the Trojan Horse Method/Case Analysis founder organized daily, free webinars for plaintiff's lawyers across the country. Mr. Claggett volunteered his time and frequently taught two webinars a week between March and June of 2020.

52.     In April 2020, Defendant Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire methods. This was somewhat ironic in that Mr. Claggett and his team of

lawyers were chastised and essentially excommunicated from the Reptile group for "going off the reservation" of the way Keenan required trials to be conducted.

53.    On April 27, 2020, Defendant Entrekin, sent an email to all of the state Reptile listservs, including the listserv for Nevada-based attorneys. The content of the email was written by Defendant Hoey. Upon information and belief, Defendant Hoey wrote the email at the direction of Defendant Keenan.

54.    Upon information and belief, the email went out to over 4,000 lawyers across the country, including approximately 100 attorneys located in Nevada.

55.    The email stated:

All-

I write to you all as the Dean of the Keenan Trial Institute.

KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

> There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats…………Claggett doesn't care and it hurts us all.
>
> Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.
>
> You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

56.    In May 2020, The Keenan Edge took out an advertisement in the State Bar of Nevada's magazine, Nevada Lawyer. Upon information and belief, this was the first advertisement The Keenan Edge had ever published in Nevada.

**Defendant Davis, Defendant Davis Law Group, and Defendant Shetler's Involvement**

57.    Defendant Davis is an attorney based in North Carolina. He is also an instructor at the KBC and/or Keenan Trial Institute.

58.    Upon information and belief, Defendant Davis is an owner, officer, and/or director of Davis Law Group, a law firm based in Asheville, North Carolina.

59.    Mr. Claggett met Defendant Davis through the Reptile and KBC courses.

60.    In or around 2017, Defendant Davis asked Claggett & Sykes to co-counsel with him and his law firm on a medical malpractice case in Las Vegas. The client's family was originally from North Carolina and retained Defendant Davis and Davis Law Group.

61.    At the same time, Mr. Claggett asked Defendant Davis to speak with a client who had a potential case in North Carolina. That client retained Defendant Davis and Defendant Law Group, and Defendant Davis filed a lawsuit on behalf of the client in North Carolina.

62.    The Las Vegas client retained Claggett & Sykes and in 2018, Claggett & Sykes filed a complaint on behalf of the client.

63.     Over the course of representing the Las Vegas Client from 2018 to 2020, Claggett & Sykes completed the following discovery (in addition to substantial motion practice at the outset of the case, including a motion for summary judgment)

- Forty (40) Supplements to NRCP 16.1 Disclosures;
- Interrogatories to Dr. Anthony Quinn;
- Requests for Admissions to Dr. Anthony Quinn;
- Requests for Production to Dr. Anthony Quinn;
- Interrogatories to PA Brandon Payzant;
- Requests for Admissions to PA Brandon Payzant;
- Requests for Production to PA Brandon Payzant;
- Two Sets of Interrogatories to Harmony Healthcare;
- Requests for Admissions to PA Harmony Healthcare;
- Two Sets of Requests for Production to Harmony Healthcare;
- Interrogatories to Margaret Williams LCPC;
- Requests for Admissions to Margaret Williams LCPC;
- Requests for Production to Margaret Williams LCPC;
- Interrogatories to Marilyn Abel CPC;
- Requests for Admissions to Marilyn Abel CPC;
- Requests for Production to Marilyn Abel CPC;
- Two Sets of Interrogatories to Summerlin Hospital;
- Requests for Admissions to Summerlin Hospital;
- Three Set of Requests for Production to Summerlin Hospital;
- Depositions of:
  a.  Marilyn Abel;
  b.  Dr. Hammonds;
  c.  Andrew Erne;
  d.  Logan Erne;
  e.  Amber Kerns;
  f.  Kim Mullenix;
  g.  Brandon Payzant, PAC;
  h.  Dr. Quinn;
  i.  Dr. Trombley;
  j.  Dr. Vanduzer;
  k.  Margaret Williams, LCPC
- Subpoenaed LVMPD for the 911 call
- Draft NRCP 30(b)(6) Notice, Summerlin Hospital;
- Draft NRCP 30(b)(6) Notice, Harmony Healthcare;
- Located, requested, and received medical records from all forty-six (46) treating providers;
- Evaluated and outlined all medical records;
- Drafted EDCR 2.34 letters to Dr. Quinn, Summerlin Hospital, and Harmony Healthcare requiring that they update their discovery responses:
- Retained the following expert witnesses:
  a.  Dr. Burroughs, Hospital Administrator;

- 14 -

      b.   Dr. Corvin, Psychiatry
      c.   Deborah Dominick, RN, Behavior Health Administrator;
      d.   Cynthia Wilhelm, CLCP
      e.   Dr. Reynard, Eye Doctor; and
      f.   Vicki Hutman, LCPC

64.     Claggett & Sykes incurred close to $150,000.00 in costs on the case.

65.     Defendant Davis was responsible for retaining a hand doctor expert and never did so.

66.     Between 2018 and May 2020, neither the client, the client's family, Defendant Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes's representation.

67.     In fact, as late as April 28, 2020, Claggett & Sykes lawyers had phone calls with Defendant Davis about the case and everything was fine.

68.     On or about May 14, 2020—less than three weeks after Defendant Keenan, Defendant Hoey, and Defendant Entrekin sent the email about Mr. Claggett to the Keenan listservs—Defendant Davis asked Mr. Claggett and Claggett & Sykes's lead medical malpractice partner, Jennifer Morales, for a phone call. They spoke the next day.

69.     During the May 15, 2020 phone call, Defendant Davis stated that the client had decided to fire Claggett & Sykes. Mr. Claggett and Mrs. Morales asked why, and Mr. Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. After Mr. Claggett & Mrs. Morales pointed out that the notices were ready to go, Defendant Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. Mr. Claggett & Mrs. Morales pointed out that this was also incorrect. Mr. Claggett & Mrs. Morales asked Defendant Davis what was really going on and Mr. Davis said that he was firing Claggett & Sykes for what Mr. Claggett had done to the Reptile group.

- 15 -

70.     Upon information and belief, Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case. This belief is based on the fact that Mr. Claggett has spoken with at least one other former KBC instructor who said that after Mr. Claggett left the Reptile, Defendant Keenan told the former instructor that he should fire Mr. Claggett off a in which case Mr. Claggett and the former instructor were co-counsel.

71.     Alternatively, upon information and belief, Defendant Davis fired Claggett & Sykes due to Defendant Keenan, Defendant Hoey, and Defendant Entrekin's April 27, 2020 email.

72.     As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.

73.     Upon information and belief, Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client.

74.     Upon information and belief, Defendant Keenan held one or more meetings with Defendant Davis and/or Defendant Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes' relationship with the client.

75.    Upon information and belief, Defendant Keenan and/or Defendant Davis recruited Defendant Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client.

76.    Further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, and not due to Claggett & Sykes's performance on the case, is that during the May 15, 2020 phone call, Defendant Davis also informed Mr. Claggett and Mrs. Morales that he was withdrawing from the North Carolina case that Mr. Claggett had referred to him. Mr. Davis ultimately did not withdraw from that case but upon information and belief convinced the client to fire Claggett & Sykes from representation.

77.    Defendant Davis and/or the client chose to retain Defendant Shetler as new local Las Vegas counsel. Upon information and belief, Defendant Shetler is a Keenan Trial Institute instructor.

## FIRST CLAIM FOR RELIEF

### (Defamation)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. D/B/A Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. D/B/A Keenan Trial Institute Or The Keenan Edge; Defendant David J. Hoey; And Defendant William Entrekin**

78.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

79.     In the April 27, 2020 email, Defendants, and each of them, made and/or caused to be made unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

80.     Defendants made and/or caused to be made unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

81.     Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

82.     Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

83.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

84.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

85.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

86.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

87.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

88.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

89.     Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

90.     As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual special damages and/or will continue to suffer actual special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages

in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

91.     Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

92.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

93.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

94.     Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

95.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

96.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

97.     Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

98.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

99.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

100.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

101.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

102.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

103.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

104.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

# SECOND CLAIM FOR RELIEF

## (Defamation Per Se)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

105.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

106.    In the April 27, 2020 email, Defendants, and each of them, made, or upon information and belief, caused to be made, unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

107.    Defendants made, and/or caused to be made, unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

108.    Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

109.    Additionally, the statements made, or caused to be made, by Defendants were defamatory per se, as the statements involved allegations or imputations injurious to Plaintiff in his trade, business, or profession.

110.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in

the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

111.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

112.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

113.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

114.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

115.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

116.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

117.    Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual and/or presumed general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

118.    As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual and/or presumed special damages and/or will continue to suffer actual and/or presumed special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

119.    Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

120.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

121.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

122.    Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

123.    Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

124.    Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

125.    Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

126.    Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

127.    Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

128.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

129.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

130.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

131.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

132.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (Civil Conspiracy)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

133.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

134.     Defendant Keenan, Defendant Hoey, and Defendant Entrekin, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff.

Specifically, these Defendants acted with the objective defaming Plaintiff and causing harm to his reputation in the community and his reputation as a lawyer.

135.    The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff by defaming him.

136.    Upon information and belief, Defendants conspired with each other to publish a false, unprivileged, defamatory statement about Plaintiff to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

137.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

138.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

139.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

140.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

141.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

142.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

143.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

144.    Defendants' actions in conspiring to defame Plaintiff is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

145.    As a further actual and proximate or legal result of Defendants' actions in conspiring to defame Plaintiff, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

146.     Defendant Keenan's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

147.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

148.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

149.     Defendant Hoey's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

150.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

151.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

152.     Defendant Entrekin's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

153.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

154.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

155.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

156.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

157.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

158.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

159.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

///

///

**FOURTH CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

160.   Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

161.   There existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada.

162.   The valid contract between Plaintiff and the Las Vegas personal injury plaintiff was made in writing and orally.

163.   The valid contract provided that Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit.

164.   Defendant Davis had knowledge of this valid contract because he referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client. Upon information and belief, the remaining Defendants also had knowledge of the contract or had reason to know of its existence.

165.   Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the contractual relationship. Specifically,

upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

166.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the contract.

167.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

168.    Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

169.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

170.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

171.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

172.     Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

173.     Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

174.     Defendants' intentional interference is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

175.     As a further actual and proximate or legal result of Defendants' intentional interference, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

176.     Defendant Keenan's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

177.   Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

178.   Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

179.   Defendant Davis's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

180.   Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

181.   Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

182.   Defendant Shetler's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

183.   Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

184.   Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

185.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

186.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

187.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

188.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

189.     Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

190.     Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

191.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

192.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

193.     There existed an ongoing and prospective contractual relationship between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada, by which Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit.

194.     Defendant Davis had knowledge of this ongoing and prospective contractual relationship between Plaintiff and the Las Vegas personal injury plaintiff because he referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client. Upon information and belief, the remaining Defendants also had knowledge of the prospective contractual relationship

between Plaintiff and the Las Vegas personal injury plaintiff or had reason to know of its existence.

195.    Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the prospective contractual relationship. Specifically, upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

196.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the ongoing and prospective contractual relationship.

197.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

198.    Defendants' wrongful conduct was unjustified and wholly unprivileged.

199.    As a result of Defendants' wrongful and unjustified conduct, Plaintiff was harmed and denied fees and remuneration it otherwise would have been entitled to within its ongoing and prospective contractual relationship with the client.

200.    Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

201.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

202.   Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

203.   Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

204.   Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

205.   Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

206.   Defendants' intentional interference is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

207.   As a further actual and proximate or legal result of Defendants' intentional interference, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation

and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

208.    Defendant Keenan's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

209.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

210.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

211.    Defendant Davis's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

212.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

213.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

214.     Defendant Shetler's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

215.     Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

216.     Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

217.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

218.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

219.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm

220.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

221.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

222.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

223.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### SIXTH CLAIM FOR RELIEF

#### (Civil Conspiracy)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; and Defendant Travis E. Shetler**

224.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

225.    Defendant Keenan, Defendant Davis, and Defendant Shetler, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective of intentionally interfering with Plaintiff's contractual relations and prospective contractual relations by causing Plaintiff's

client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff.

226. The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff.

227. Upon information and belief, Defendants conspired with each other to unlawfully interfere with Plaintiff's contract and/or prospective contractual relationship with its client so as to cause Plaintiff's client to terminate Plaintiff's representation and to replace Plaintiff with Defendant Shetler.

228. Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

229. Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

230. Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

231. Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

232.     Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

233.     Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

234.     Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

235.     As a further actual and proximate or legal result of Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

236.    Defendant Keenan's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

237.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

238.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

239.    Defendant Davis's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

240.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

241.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

242.    Defendant Shetler's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

243.    Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

244.    Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

245.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

246.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

247.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

248.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

249.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was

expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

250.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

251.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

**SEVENTH CLAIM FOR RELIEF**

**(Declaratory Relief - Reverse Piercing the Corporate Veil/Alter Ego)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm and Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; and Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge**

252.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

253.    Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan Law Firm.

254.    Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan Law Firm that Keenan Law Firm could not operate separate and apart from Defendant Keenan and is effectively inseparable from Keenan.

255.    Adherence to the fiction of separation between Defendant Keenan and Keenan Law Firm would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

256.   Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan's Kids Foundation.

257.   Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan's Kids Foundation that Keenan's Kids Foundation could not operate separate and apart from Keenan and is effectively inseparable from Keenan.

258.   Adherence to the fiction of separation between Defendant Keenan and Keenan's Kids Foundation would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

259.   A justiciable controversy exists as to the unity of interest between Defendant Keenan and Keenan's Kids Foundation.

260.   Plaintiff seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant Keenan's Kids Foundation, Inc.

261.   Plaintiff also seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant D.C. Keenan & Associates, P.A.

262.   The actions of Defendant have forced Plaintiff to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable sum as attorney's fees and costs of suit.

WHEREFORE, Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN CLAGGETT, expressly reserving their right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demands judgment against Defendants, DON C. KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM; KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE KEENAN EDGE; BRIAN F.

DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY; TRAVIS E. SHETLER;

WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive,

and each of the defendants as follows:

1.     For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2.     For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

3.     For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4.     For declaratory relief;

5.     For reasonable attorney's fees;

6.     For costs of suit incurred;

7.     For a jury trial on all issues so triable; and

8.     For such other relief as to the Court seems just and proper.

DATED this 12th day of January 2022.


*/s/ Jared B. Anderson*

_____
JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
*Attorneys for Plaintiffs*