JARED B. ANDERSON, ESQ. (SBN: 9747)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; et al.,<br><br><br>        Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' KEENAN'S KIDS FOUNDATION, INC. AND DAVID J. HOEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

        Plaintiffs, by and through their undersigned attorneys of record, hereby file their Opposition to Defendants Keenan's Kids Foundation, Inc., and David J. Hoey's Motion to Dismiss Plaintiffs' First Am. Comp.. This Opposition is based upon the records and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument made by counsel at the hearing of this matter.

        Dated this 9th day of February 2022.

                                INJURY LAWYERS OF NEVADA

                                /s/ *Jared Anderson*
                                _____
                                Jared B. Anderson, Esq. (SBN: 9747)
                                **INJURY LAWYERS OF NEVADA**
                                4001 Meadows Lane
                                Las Vegas, Nevada 89107

## INTRODUCTION

This case arises out of Defendants' coordinated and concerted efforts to disparage Plaintiff Sean Claggett and to have Claggett & Sykes Law Firm fired as counsel for Logan Erne, the plaintiff in the underlying personal injury lawsuit. On November 3, 2021, Plaintiffs filed their Complaint in the Eighth Judicial District Court of the State of Nevada. Defendants removed  this case to federal court and, thereafter, on January 12, 2022, Plaintiffs filed an Amended Complaint ("Am. Comp."). *See* Am. Comp., ECF No. 12 at ¶¶ 78 – 262.

On January 26, 2022, KKF Defendants filed their motion to dismiss Plaintiffs' First Amended Complaint and requested that the Court dismiss all claims against them or, alternatively, transfer the case to the Northern District of Georgia. Defendants' arguments are baseless and unsupported by applicable law and, accordingly, the Court should deny KKF Defendants' motion, in its entirety.

## STATEMENT OF FACTS

Plaintiffs incorporate herein by reference the facts alleged in their Amended Complaint, ECF No. 12, attached hereto as Exhibit 1.

## LEGAL STANDARDS

### I.    LEGAL STANDARD GOVERNING ANTI-SLAPP

A court analyzing a motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. *See* NRS 41.660(3). Under the first prong of the burden-shifting framework, the moving party must establish, "'by a preponderance of the evidence,' that he or she made the protected communication in good faith." *Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019) (citations omitted). If the moving party fails to meet its burden, the inquiry ends. *See Coker*, 432 P.3d at 748. However, if the moving party successfully demonstrates "by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" then the court moves to the second step. *See* NRS 41.650(3)(a)-(b). Under the second prong, the court must determine "whether the [nonmoving] party has demonstrated with prima facie evidence a probability of prevailing on the

claim." NRS 41.660(3)(b). The Ninth Circuit recently clarified that "on the one hand, when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the FRCP 12b(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the FRCP 56 standard applies. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

## II.   LEGAL STANDARD GOVERNING FRCP 12(b)(6) – MOTION TO DISMISS

A rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Razaghi*, 2021 U.S. Dist. LEXIS 188237 at *8 (citing *Twombly*, 550 U.S. at 555). Thus, a Rule 12(b)(6) dismissal is proper only where there is either a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the allegations in the complaint in the light that is most favorable to the plaintiff. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, the Court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## III.   LEGAL STANDARD GOVERNING FRCP 12(b)(2) – MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citations omitted). "However, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the

motion to dismiss.'" *Id.* (citation omitted). "Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff[.]" *Id.*

**LEGAL ARGUMENT**

## I.   PLAINTIFFS' CLAIMS ARE NOT BARRED UNDER NEVADA'S ANTI-SLAPP STATUTE

KKF Defendants ask the Court to dismiss Plaintiffs' claims for defamation, intentional interference with contractual and prospective relations, civil conspiracy, and alter ego pursuant to Nevada's anti-SLAPP statute. Motion, ECF No. 17 at 8:3-10. However, KKF Defendants' anti-SLAPP motion must be denied because it does not "establish[], by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern[.]" NRS 41.660(3)(a). Further, Plaintiff Sean Claggett's attached declaration demonstrates "a probability of prevailing on the claim[s.]" NRS 41.660(3)(b).

### A.   KKF DEFENDANTS HAVE NOT MET THEIR BURDEN WITHIN NRS 41.660(3)(a).

"Under the first prong of the anti-SLAPP statute, [a court] evaluate[s] 'whether the moving party has established, by a preponderance of the evidence,' that he or she made the protected communication in good faith." *Rosen*, 453 P.3d at 1223 (citing NRS 41.660(3)(a)). "The first step of Nevada's anti-SLAPP analysis holds two components: (1) determining if the non-moving party's claims for relief are based on a 'communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern'; and, if so, (2) determining if such communication was in 'good faith.'" *Sessa v. Ancestry.com Operations Inc.*, 2021 U.S. Dist. LEXIS 177337, *49 (D. Nev. Sept. 16, 2021) (citing NRS 41.660(3)(a)). KKF Defendants' anti-SLAPP motion fails on both accounts.

/ / /

/ / /

/ / /

**1.    KKF Defendants Have Not Established, by a Preponderance of the Evidence, That Their False and Defamatory Statements Regarding Plaintiff Sean Claggett Were in Furtherance of the Right to Petition or the Right to Free Speech in Direct Connection with an Issue of Public Concern**

NRS 41.637 defines "[g]ood faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern", in pertinent part, as a "[w]ritten or oral statement made in direct connection with an issue under consideration by a...judicial body, or any other official proceeding authorized by law[.]" NRS 41.637(3). Although KKF Defendants summarily assert that their defamatory statements were "made in direct connection with an issue under consideration by a...judicial body" they completely fail to address on point Nevada Supreme Court case law interpreting and addressing the meaning of that phrase.

In *Patin v. Ton Vinh Lee*, 134 Nev. 722 (2018), attorney Ingrid Patin and Patin Law Group represented a client in a dental malpractice lawsuit against three defendants. *Id*. at 723. At trial, the jury rendered a verdict in favor of the plaintiff for $3.4 million. *Id*. However, in doing so, the jury found that one of the three defendants, Dr. Ton Vinh Lee, had not been negligent. *Id*. Nevertheless, following the verdict, Patin published a post on her law firm's website detailing the verdict but neglecting to mention that the jury had found Dr. Lee not liable. *Id*. Thereafter, Dr. Lee filed an action asserting defamation per se and Patin filed a motion to dismiss pursuant to Nevada's anti-SLAPP statute arguing that the post constituted a good faith communication because it was a "statement made in direct connection with an issue under consideration by a...judicial body[.]" *Id*.

The Nevada Supreme Court concluded that "in order for a statement to be protected under NRS 41.637(3), which requires a statement to be "*in direct* connection with an issue under consideration by a ... judicial body", the statement must (1) relate to the substantive issues in the litigation and (2) be directed to persons having some interest in the litigation." *Id*. at 726. In applying that standard to the facts of *Patin*, the court reasoned that the post did not relate to any substantive issues in the court proceedings, nor was it directed to any specific person or group, "let alone someone with an interest in the litigation." *Id.* at 727.

Here, KKF Defendants have not demonstrated by a preponderance of the evidence that the defamatory email was related to the substantive issues in the prior Georgia litigation or that it was directed only to persons having some interest in the litigation. Indeed, KKF Defendants do not even mention this standard. *See* Motion, ECF No. 17 at 8-9.  A review of the at-issue defamatory email demonstrates that it does not discuss, address, or relate to any substantive or procedural issues in the Georgia litigation. *See* Am. Comp., ECF No. 12 at ¶ 55. Instead, the email contains a number of false and defamatory statements couched as "facts" regarding Mr. Claggett including: (1) that Mr. Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got from KKF Defendants; (2) that Mr. Claggett has been intentionally infringing and disseminating protected and confidential information; (3) that Mr. Claggett "continues to breach his agreements of confidentiality[, i]ncluding today"; and (4) that Mr. Claggett "takes shortcuts" and provides protected information "directly to the Black Hats[.]" If the post in *Patin* detailing the jury's verdict was deemed to be unrelated to the substantive issues in that case, then KKF Defendants' email asserting as fact allegations which have never been adjudicated on the merits are likewise unrelated to the substantive issues in the Georgia litigation. *Patin*, 134 Nev. at 726 ("If we were to accept Patin's argument that simply referencing a jury verdict in a court case is sufficient to be in direct connection with an issue under consideration by a judicial body, we would essentially be providing anti-SLAPP protection to 'any act having any connection, however remote, with [a judicial] proceeding.'").

Moreover, KKF Defendants have made no attempt to show that the thousands of attorneys, including approximately 100 attorneys located here in Nevada, who received KKF Defendants' defamatory email had an "interest" in the litigation. *See Patin*, 134 Nev. at 727. Therefore, because KKF Defendants have not satisfied their burden of demonstrating that their email was in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern, their anti-SLAPP motion should be denied.[1]

---

[1] In a footnote, KKF Defendants argue that alternatively, the defamatory email "is a good-faith communication in furtherance of the right to free speech regarding a matter of public concern, which includes communications (1)

- 6 -

1

2

**2.**     **KKF Defendants Have Not Established, by a Preponderance of the Evidence, That Their False and Defamatory Statements Regarding Plaintiff Sean Claggett Were Made in Good Faith**

3      Next, KKF Defendants had the burden of establishing, by a preponderance of the evidence,

4   that their false statements regarding Mr. Claggett were made in good faith. A person makes a

5   communication in good faith when it "is truthful or is made without knowledge of its falsehood."

6   NRS 41.637; *Rosen*, 453 P.3d at 1223. In making such a determination, courts assess "whether a

7   preponderance of the evidence demonstrates that 'the gist of the story, or the portion of the story that

8   carries the sting of the [statement], is true.'" *Id*. at 1224 (alteration in original) (citing *Pegasus*, 118

9   Nev. at 715 N.17 (2002); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)). "Only

10   after the movant has shown that he or she made the protected statement in good faith" does a court

11   move on to prong two. *Id*. at 1223.

12      Here, KKF Defendants have not provided the Court with any evidence that the 'gist' of the

13   defamatory email – i.e., that Mr. Claggett allegedly misappropriated or improperly distributed

14   confidential, trademarked, and/or protected materials to third parties – is true. The self-serving

15   declarations attached to KKF Defendants' motion do not detail the who, what, where, when, and how

16   of Mr. Claggett's alleged wrongdoing. Instead, the declarations contain identical paragraphs

17   summarily proclaiming that "the April 27 email was sent in good faith and in furtherance of and

18   directly related to the Georgia Action. There is nothing false or untrue contained in the April 27

19   Email." *See* Hoey Declaration, ECF No. 17-1 at ¶ 21, Keenan Declaration, ECF No. 17-2 at ¶ 31.

20   Simply, KKF Defendants have not satisfied their burden and the Court should deny out-of-hand their

21   motion to dismiss pursuant to Nevada's anti-SLAPP statute and refuse to proceed to second prong of

22   the analysis.

23   / / /

24

25

---

"made in direct connection with an issue of public interest," (2) "in a place open to the public or in a public forum," and (3) "which is truthful or made without knowledge of its falsehood[.]" Motion, ECF No. 17 at 8 n.5. KKF Defendants fail to cogently analyze these factors or provide any evidence demonstrating the truth of the matter asserted. As such, the Court should reject this argument as well.

**B.      EVEN ASSUMING, *ARGUENDO*, THAT KKF DEFENDANTS MET THEIR BURDEN WITHIN NRS 41.660(3)(a), PLAINTIFFS HAVE SUBMITTED PRIMA FACIE EVIDENCE DEMONSTRATING A PROBABILITY OF PREVAILING ON THEIR CLAIMS**

Although this issue need not be addressed due to KKF Defendants' failure to meet their burden on the first prong of the test, even assuming, *arguendo*, that they had, there can be no serious question that Plaintiffs have shown "with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b). KKF Defendants argue that Plaintiffs have no probability of success on their claim because the at-issue email "is protected by litigation privilege." Motion, ECF No. 17 at 9:20-21. However, KKF Defendants admit that whether the litigation privilege applies "presents a question of law." *Id.* at 10:3-4. Therefore, the Court must analyze this issue under a FRCP 12(b)(6) standard. *See Planned Parenthood*, 890 F.3d at 834.

**1.      The Litigation Privilege Does Not Protect Defamatory Statements Made to Disinterested Third Parties with No Connection or Significant Interest in the Litigation**

In order for the absolute litigation privilege to apply to a communication, "(1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation." *Williams v. Lazer*, 137 Nev. Adv. Op. 44, 495 P.3d 93, 100 (2021) (citation omitted).  But we have also recognized that "[a]n attorney's statements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege only if the recipient of the communication is 'significantly interested' in the proceeding." *Adelson*, 130 Nev. at 413 (citations omitted).

As to the good faith requirement, as discussed above, KKF Defendants have not demonstrated that the contents of the April 27, 2020, email were true or otherwise sent without knowledge of their falsehood. *See Rosen*, 453 P.3d at 1224 (explaining that in making such a determination, courts assess "whether a preponderance of the evidence demonstrates that 'the gist of the story, or the portion of the story that carries the sting of the [statement], is true.'").

Further, despite claiming absolute privilege, KKF Defendants chose not to analyze or even discuss whether the recipients of the April 27, 2020 email possess a "significant interest" in the proceeding. *Fink*, 118 Nev. at 436, 49 P.3d at 645–46. As stated above, the Nevada Supreme Court imposes a strict standard: "[a]n attorney's statements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege **only if the recipient of the communication is "significantly interested" in the proceedings.** *See Fink, supra,* 118 Nev. at 436 (emphasis added). Assessing the significant interest of the recipient requires review of the recipient's legal relationship to the litigation, **not their interest as an observer**. *Adelson*, 130 Nev. at 416, (citations omitted).

KKF Defendants cite to *Fink v. Oshins*, in support of their Motion, contending "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject controversy." Motion, ECF No. 17 at 9:22-24. Yet, Defendants conveniently omit the above standard from their Motion. Defendants further omit that "[a]lthough the scope of the absolute privilege is quite broad **…[it] does, however, have limits**." *Fink*, 118 Nev. at 433 (emphasis added). The dispositive limitation for purposes of this case is set forth by the Court as follows: "[a]n attorney's statements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege *only if the recipient of the communication is 'significantly interested' in the proceeding.*" S*ee Fink,* 118 Nev. at 436 (emphasis added).  Put simply, if the recipient of the false and defamatory statement has no interest in or connection to the litigation, the absolute privilege does not apply.

Here, the litigation privilege does not immunize KKF Defendants from statements made to the thousands of email recipients who had no direct connection to or significant interest in the litigation. The Defendants sent the April 27, 2020 email to thousands of lawyers who belonged to their state listservs and likewise fell entirely outside the scope of the absolute litigation privilege. To apply the privilege, the Court must make a preliminary finding that approximately "thousands" of recipients of the April 27th email *all* had a "significant interest" in the Georgia litigation. The email

recipients were, at best, observers to the Georgia litigation once they received notice of it in the April 27th email. Further, the recipients had no financial interest or involvement (the Keenan Trial Institute was the only plaintiff in the Georgia action) and no right to intervene, as there was no risk that the recipients could be somehow bound by the outcome of that litigation without adequate representation of their interests. Simply, the recipients had no direct, close, or significant relationship to the Georgia litigation. Therefore, the litigation privilege does not protect Defendants' defamatory statements.

### 2. Plaintiffs Have Produced Prima Facie Evidence Demonstrating a Probability of Prevailing on Their Claims

Further, Plaintiff Sean Claggett has produced prima facie evidence demonstrating a probability of prevailing on Plaintiffs' claims. A defamation action requires the plaintiff to prove four elements: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope*, 121 Nev. at 315. However, if the defamatory communication imputes a "person's lack of fitness for trade, business, or profession," or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed. *K–Mart Corporation*, 109 Nev. at 1192. The Nevada Supreme Court has explained:

> A statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as "mere rhetorical hyperbole." Nor is a statement defamatory if it is absolutely true, or substantially true. **A statement is, however, defamatory if it 'would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt."**

> In determining whether a statement is actionable for the purpose of a defamation suit, the court must ask "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." If the published statements could be construed as defamatory statements of fact, and therefore actionable, then the jury should resolve the matter. However, this court has also stated that comments must be considered in context.

*Pegasus*, 118 Nev. at 715 (emphasis added).

Mr. Claggett's attached declaration reveals the following:

- The April 27, 2020, email contains a number of false and defamatory statements. *See* Sean Claggett Declaration, Ex. 2 at ¶ 4.

- First, the email falsely states, "It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI)." Mr. Claggett has never hosted a seminar/webinar where he revealed confidential, copyrighted, or trademarked materials belonging to any of the Defendants in this case. *Id*. at ¶ 5.

- Second, the email falsely states, "Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!" Mr. Claggett has never intentionally infringed or disseminated protected, confidential information belonging to any of the Defendants in this case. *Id*. at ¶ 6.

- Third, the email falsely states, "This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today." Mr. Claggett did not breach any "confidentiality agreement(s)" between himself and any of the Defendants in this case on any occasion, let alone on an ongoing basis, including on or about April 27, 2020. *Id*. at ¶ 7.

- Fourth, the email falsely states, "There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats…………Claggett doesn't care and it hurts us all." Mr. Claggett does not take "shortcuts" nor has he improperly disseminated any confidential or protected information belonging to any of the Defendants in this case. *Id*. at ¶ 8.

- Defendants published these false and defamatory statements to third parties through KKF Defendants' various email listservs, including their Nevada-based listserv group. *Id*. at ¶ 9.

- At the time they sent the false and defamatory email, Defendants knew that Mr. Claggett and Claggett & Sykes Law Firm were residents of Nevada and primarily conducted business in Nevada. *Id*. at ¶ 11.

- To date, Defendants have not offered any evidence in support of the allegations contained in the subject email. *Id*. at ¶ 12.

- As a result of Defendants' false and defamatory statements, Mr. Claggett suffered injury to his reputation. Additionally, Defendants' false and defamatory statements impugned Mr. Claggett's character and fitness as an attorney and, thus, constituted defamation per se. *Id*. at ¶ 13.

Therefore, even if the Court considers the second prong of the Nevada anti-SLAPP analysis, Plaintiffs have satisfied their burden.

/ / /

/ / /

/ / /

## II.   PLAINTIFFS PROPERLY ALLEGED CLAIMS FOR DEFAMATION, CIVIL CONSPIRACY, INTENTIONAL INTERFERENCE, AND ALTER EGO

### A.   Plaintiffs Properly Alleged a Claim for Defamation and Defamation Per Se

An action for defamation requires the plaintiff to prove four elements: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope*, 121 Nev. at 315. "A statement is defamatory when, 'under any reasonable definition [,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt.' "*Posadas v. City of Reno*, 109 Nev. 448, 453 (1993) (citation omitted). In reviewing an alleged defamatory statement, "'the words must be reviewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning.'" *Lubin*, 117 Nev. at 111 (citation omitted).  However, if the defamatory communication imputes a "person's lack of fitness for trade, business, or profession," or tends to injure the plaintiff in his or her business, it is deemed defamation *per se,* and damages are presumed. *K-Mart Corp.*, 109 Nev. at 1192. If a statement accuses an individual of personal misconduct in his or her business or attacks the individual's business reputation, the claim may be one for defamation per se . . ." *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385 (2009). Defamation per se is actionable without proof of damages (i.e., damages are presumed). *Pope*, 121 Nev. at 315.

Here, Plaintiff brought a claim for defamation and defamation per se against Defendants for their intentional, reckless and/or negligent publication of false and defamatory statements of fact concerning him. *See* Am. Comp., ECF No. 12 at ¶¶ 49-52; 79-81. Defendants defamed Claggett when they disseminated the subject email to each of the state Keenan Trial Institute listservs comprised of thousands of lawyers and third persons. *Id.* The April 27, 2020 email impugns Mr. Claggett's lack of fitness for trade, business, and/or profession, entitling him to actual and presumed damages.

With the hope of overcoming the 12(b)(6) standard, KKF Defendants contend that (1) Claggett never pled the email or any of its statements were false; (2) Defendant Keenan created

KKF's course materials; (3) the information is KKF's protected and confidential property; (4) Claggett used KKF's course materials in his own seminars; (5) Incredibly, Defendants further claim that Plaintiff "does not deny that he used KKF's course materials in his own seminars without authorization; (6) Claggett was warned to stop his conduct; (7) Claggett taught the KKF's methods incorrectly; and (8) the Georgia Action was necessary to stop his conduct. *See* Motion, ECF No. 17 at 11:27-12:11.

As Defendants are aware, FRCP 9(b) and NRCP 9(b) lack a heightened pleading standard with respect to claims for defamation. *See* Fed. R. Civ. P. 9(b); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them."). Thus, the usual standards of notice pleading apply in defamation cases [.]" *Hatfill*, 416 F.3d at 329. Nevertheless, KKF Defendants' arguments all amount to a demand for a heightened pleading standard with respect to Plaintiff's claim for defamation *per se*. As stated above, the Amended Complaint identifies the substance of the false and defamatory statements that form the basis of Plaintiff's defamation per se claim, and those statements are neither vague nor devoid of specificity as Plaintiffs cited the contents of the very email that gave rise to Defendants' defamatory conduct in addition to alleging its falsity. *See* Am. Comp., ECF No. 17 at ¶¶ 55; 79-81. Plaintiffs properly pled that Defendants published the defamatory statements, alleging that Defendants disseminated the April 27, 2020, email to *all* Keenan Trial Institute and/or Reptile listservs. Although Defendants claim this was a "closed environment" of course instructors and attendees, the simple truth is the email went out to thousands of lawyers, including referring attorneys who have previously worked with and/or hired Claggett & Sykes as co-counsel in their cases, namely Defendant Davis. *See* Am. Comp., ECF No. 17 at ¶¶ 69-71; 80.[2]

Even if a heightened pleading standard applies to claims for defamation *per se* (which it does not), Plaintiffs met this burden. The Amended Complaint quotes the false and defamatory statements

---

[2] Plaintiff alleges Defendant Davis terminated Claggett & Sykes Law Firm based on the contents of the email. *See* Am. Compl. at ¶ 69.

made and publicized by the Defendants; alleges the source of the defamatory content and its recipients; and establishes a timeframe for the defamatory conduct. Moreover, Defendants do not dispute that the defamatory conduct implicates Plaintiffs' business. Nonetheless, the Amended Complaint details a specific instance where Plaintiff lost business due to Defendants' conduct. Simply put, accepting all facts as true and drawing all reasonable inferences in favor of Plaintiff, the defamation per se claim is sufficiently detailed and specific for FRCP 12(b)(6) purposes. Thus, the Court should deny KKF Defendants' Motion.

### B.   Plaintiffs Properly Alleged a Claim for Civil Conspiracy

Defendants, along with Defendant Davis and Defendant Shetler, all conspired to not only defame Plaintiffs, but also intentionally interfere with Plaintiffs' contractual relations and prospective economic opportunities by causing Claggett & Sykes' client to terminate the firm's representation in furtherance of Defendant Keenan's grudge against Plaintiff. *See* Am. Comp., ECF No. 12 at ¶ 225.

Civil conspiracy generally requires a plaintiff to demonstrate "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 1048 (1993). A conspiratorial agreement may be either express or tacit. *GES, Inc. v. Corbitt*, 117 Nev. 265, 270-71 (2001).

> [A] conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design.

*Hoffman v. Stamper*, 867 A.2d 276, 291 (Md. 2005). Further, the co-conspirators need not know of the exact details of the agreement, so long as they had a general understanding of it. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000).

KKF Defendants offer two main arguments in support of dismissal of Plaintiff's civil conspiracy claim: (1) absent a valid underlying tort, Claggett's civil conspiracy claim related to his defamation allegations must be dismissed; and (2) Defendants are all members of the Keenan' Kids

Foundation and, therefore, there is no agreement between two or more separate people to harm Claggett. As to the first argument, Plaintiff properly plead a claim for defamation. As such, there is a valid underlying tort for purposes of civil conspiracy. The only remaining argument to dispense with is whether the intra-corporate conspiracy doctrine applies, which it does not.

### 1.   The Intra-Corporate Conspiracy Doctrine Does Not Apply.

The intra-corporate conspiracy doctrine is no defense to Plaintiffs' civil conspiracy claim because, as recognized by the Nevada Supreme Court in *Collins v. Union Federal Savings & Loan Association*, 99 Nev. 284, 662 P.2d 610 (1983), agents or employees of a corporation can conspire with their corporate principal when they are acting "for their individual advantage" or when they are not acting "in their official capacities on behalf of the corporation." 99 Nev. 303, 662 P.2d at 622. Plaintiffs allege, and Defendants should concede, that Defendants Keenan, Hoey, and Entrekin all had a personal interest in the scheme to defame Plaintiff by sending the April 27, 2020, email. As such, intra-corporate conspiracy doctrine does not apply, and a claim for civil conspiracy is appropriate. *See Collins*, 99 Nev. at 303, 662 P.2d at 622.

### C.   Plaintiffs Properly Plead Their Intentional Interference Claims

Intentional interference with contractual relations requires: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003). While a client's power to discharge an attorney is absolute in California, **it is tortious for one, especially another attorney, to improperly induce the exercise of that power**. *Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell*, 138 Cal. Rptr. 670, 673–74 (Ct. App. 1977) (emphasis added).

KKF Defendants contend Plaintiffs cannot state a plausible claim for interference because they cannot show that Plaintiffs' former client was or would have been contractually bound to retain him. Defendants wholly ignore, however, that Defendants orchestrated a scheme to induce Logan Erne to terminate Claggett following the April 27, 2020 email. As alleged in the Plaintiffs' Amended

Complaint, between 2018 and May 2020, neither the client, the client's family, Defendant Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes's representation. *See* Am. Comp., ECF No. 12 at ¶ 66.

At the outset, Plaintiffs' former client certainly *was* contractually bound to him as the Amended Complaint alleges Plaintiff represented Logan Erne for approximately two years before he was terminated. Furthermore, Defendants played an active role in the termination of Plaintiffs' contractual relationship. Defendants disregard the entire incident where they contacted Davis who then proceeded to conspire with Shetler and Keenan to terminate Claggett & Sykes and then retain Shetler. *Id.* at ¶¶ 66-77. Moreover, Plaintiffs allege that Davis admitted he terminated Claggett because of the substance of the false statements contained in the April 27, 2020, email. *Id.* It is therefore baffling that accepting these facts as true, Defendants maintain there was no "breach" or disruption of Claggett's contract with Logan Erne. *See* Mot. at 14:7-9. Indeed, Plaintiff's Amended Complaint meets the pleading requirements for his intentional interference claim. Thus, Defendants' Motion should be denied regarding Plaintiff's intentional interference claim.

## III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE COMPULSORY COUNTERCLAIM RULE

To be compulsory, a counterclaim must arise "…out of the transaction or occurrence that is the subject matter of the opposing party's claim." FRCP 13(a)(1)(A). Courts in the Ninth Circuit apply "the logical relationship test for compulsory counterclaims." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195–96 (9th Cir. 2005) (internal quotation marks omitted). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* at 1196 (internal quotation marks omitted). [E]ven the most liberal construction of ['transaction'] cannot operate to make a counterclaim that arises *out of an entirely different or independent transaction or occurrence* compulsory under Rule 13(a)." *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110

(9th Cir. 2013) (citation omitted) (emphasis added). The Court determines whether a claim arises out of the same transaction or occurrence by analyzing whether the essential facts of the claims are so logically connected that consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995). The Ninth Circuit and other Federal courts have applied the same transaction or occurrence standard to compel counterclaims under Rule 13(a) by analyzing three primary factors: (1) the similarity of factual or legal issues involved in both cases, (2) whether the same evidence supports or refutes the principal claim and counterclaim, and (3) whether a logical relationship exists between the claim and counterclaim. *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1251 (9th Cir. 1987).

Defendants are aware that the Georgia Court only granted Plaintiff leave to assert a counterclaim for declaratory relief in the Georgia Action. Nonetheless, Defendants represent to this Court that Plaintiff had leave to assert *any* counterclaims even those wholly unrelated to the legal issues in the Georgia Action.

Notwithstanding, Plaintiffs' claims do not arise from the same transaction or occurrence as the Georgia Action. It is axiomatic that the Georgia Action involved Mr. Claggett's purported misappropriation of Keenan Trial Institute trade secrets during seminars that occurred before the filing of the Georgia Action. Specifically, the Georgia Action involved the following legal issues: (1) Violation of the Defend Trade Secrets Act of 2018; (2) Violation of the Georgia Trade Secrets Act of 1990; and (3) Breach of the Keenan Trial Institute's Confidentiality Agreement. This is a far cry from Plaintiffs' action for defamation arising from the April 27, 2020 email and the interference with Claggett & Sykes Law Firm's representation of a client, occurrences that transpired *after* the Defendants filed the Georgia Action. There is no overlap or connection between the legal issues asserted by the Defendants in the Georgia Action and this lawsuit.

Additionally, there is no connection between the evidence in the two cases. The evidence supporting or refuting the Georgia Action relates to whether Mr. Claggett specifically taught trade secreted voir dire techniques during a Trojan Horse/Case Analysis seminar. Defendants' primary

evidence in the Georgia Action was the recordings, video, or transcripts of the exact language Mr. Claggett used or taught in comparison to the Keenan Trial Institute techniques, and the confidentiality agreements at issue. The evidence supporting defamation in this lawsuit involves conversations and correspondence between the Defendants before and after the dissemination of the April 27, 2020 email and correspondence, email, conversations, and all communications between the Defendants regarding the termination of Claggett on the Logan Erne case, and between the Defendants and Mr. Erne prior to termination. Indeed, this is just a small sample. The discovery contemplated by Plaintiff in this lawsuit will be comprehensive and far exceed any discovery that was necessary in the Georgia action which, distilled to its essence, amounted to little more than a declaratory relief action on Keenan Trial Institute trade secrets and interpretation of the confidentiality agreement. Thus, there is little overlap or connection between the evidence supporting or refuting this lawsuit as compared to the Georgia Action.

Finally, there is no logical relationship between the claims asserted in this lawsuit and the Georgia Action. As explained above, Plaintiffs bring this lawsuit based on an email not in existence before the Georgia Complaint, conversations involving the conspiracy to defame Mr. Claggett and steal one of his clients away from his business, different time periods, and different evidence. It is immaterial that one or two facts between the two lawsuits may overlap. Thus, Defendants fall well short of invoking the compulsory counterclaim rule because there is no logical relationship between the Georgia Action and this lawsuit. As such, this lawsuit does not arise from the same transaction or occurrence as the Georgia lawsuit.

## IV.   KKF DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN NEVADA

A court may exercise personal jurisdiction over a non-resident defendant when the defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). "Minimum contacts" may be

satisfied through either general or specific jurisdiction.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).[3]

The 9th Circuit employs a three-part test for determining whether a court can exercise specific personal jurisdiction: 1) the non-resident defendant purposefully directed activities or purposefully availed itself of the privilege of conducting activities in the forum[4]; 2) the claim arises out of or relates to the defendant's forum-related activities; and 3) the application of jurisdiction comports with fair play and substantial justice, i.e., it must be reasonable.  *Schwarzenegger*, 374 F.3d at 802 (citation omitted). Once a plaintiff satisfies the first two prongs of the test, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citation omitted).Where a defendant's motion is based on written materials, as opposed to an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted). The court must take uncontroverted allegations in plaintiff's complaint as true. *Schwarzenegger*, 374 F.3d at 800. "'[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit,' but we resolve factual disputes in the plaintiff's favor." *Mavrix*, 647 F.3d at 1223 (citations omitted).As the *Calder* Court observed, "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder*, 465 U.S. at 790; *see also Kumarelas v. Kumarelas*, 16 F. Supp. 2d 1249, 1253–54 (D. Nev. 1998) ("in tort cases, jurisdiction may attach if the defendant's conduct is aimed at **or has an effect in the forum state**.") (emphasis added).

Here, KKF Defendants are subject to personal jurisdiction in Nevada because 1) they purposefully directed activities to Nevada; 2) Plaintiff's claim arises out of KKF Defendants' Nevada

---

[3] Though Plaintiffs do not discuss general jurisdiction here, they reserve the right to argue KKF Defendants are subject to general jurisdiction in Nevada courts, subject to any jurisdictional discovery this Court may permit.
[4] In this case, "purposeful direction" is the proper test. *See Schwazenegger*, 374 F.3d at 802 (Explaining the difference bewtween purposeful availment and purposeful direction and the applicability of each.)

related activities; and 3) jurisdiction over KKF Defendants in Nevada comports with fair play and substantial justice. This section will address each of these three subjects in order.

### A.   KKF Defendants Purposefully Directed Defamatory Conduct to Nevada

A showing of "purposeful direction" generally consists of "evidence of the defendant's actions outside the forum state, that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). To determine whether a defendant purposefully directed conduct at the forum state, courts use an "effects test." Within the effects test, a defendant can be found to have "purposefully directed its activities" to the forum state if the defendant "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*.

### 1.   KKF Defendants Committed an Intentional Act When They Drafted and Published an Email Defaming Plaintiffs

On or about April 27, 2020, KKF Defendants published an email to the Nevada Reptile List-serv defaming Plaintiffs. *See* Am. Comp., ECF No. 12 at ¶¶ 53-55, 79-81; *see also*, Declaration of Sean Claggett ("Claggett Declaration") at ¶¶ 4-9. Plaintiffs allege, upon information and belief, that KKF defendants drafted and published the email intending to reach a Nevada targeted audience. *See* Claggett Declaration at ¶¶ 9-10; *see also* Am. Comp., ECF No. 12 at ¶¶ 79-81. KKF Defendants are silent on this factor and thus do not dispute that an intentional act was committed.

### 2.   KKF Defendants Drafting and Sending of the Defamatory Email was "Expressly Aimed" at Nevada

The "express aiming" requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The conduct need not be limited to or exclusively directed to the forum state to satisfy the "express aiming" requirement. *See id* at 1087-1088. A significant factor differentiating the *Bancroft* court's ruling from other cases in which the effects test was not satisfied was the "presence of individualized targeting" in *Bancroft*. 223 F.3d at 1088.

KKF Defendants pose various arguments on this issue based largely on non-binding rulings from other states' district courts. *See* Motion to Dismiss, ECF No. 17 at 19-21. However, KKF Defendants provide no analysis within *Bancroft*, which is binding upon this court. The *Bancroft* decision completely undermines KKF Defendants' various arguments because KKF Defendants specifically targeted their conduct at Plaintiffs, calling them out by name, knowing that Plaintiffs were Nevada residents and the conduct was directed to, among others, a Nevada specific Reptile list-serv. *See* Am. Comp., ECF No. 12 at ¶¶ 6-7; *see also* Claggett Declaration at ¶ 11 (Plaintiffs are Nevada residents primarily conducting business in Nevada); *See* Am. Comp., ECF No. 12 at ¶¶ 36-37, 53-56, 79-81; *see also* Claggett Declaration at ¶ 11 (KKF Defendants were aware that Plaintiffs were Nevada residents primarily conducting business in Nevada when they published the defamatory email to the Nevada and other Reptile list-servs.). KKF Defendants' argument that the conduct was not "expressly aimed" also fails in light of the *Bancroft* court's holding that the conduct need not be limited to or exclusively directed to the forum state to satisfy the "express aiming" requirement. *See 223 F.3d* at 1087-1088.

Like the defendant's conduct in *Bancroft*, here, KKF Defendants' intentional acts were individually targeted (at Claggett and Claggett & Sykes) and KKF Defendants knew the individuals it targeted were Nevada residents primarily conducting busines in Nevada. Accordingly, the "express aiming" requirement of the "effects" test is satisfied.

### 3. KKF Defendants' Intentional Acts Expressly Aimed at Nevada Were Knowingly Intended to, and Actually Did, Cause Harm to Plaintiffs in Nevada

Plaintiffs are a Nevada trial lawyer and a Nevada law firm. *See* Am. Comp., ECF No. 12 at ¶¶ 6-7. KKF Defendants' conduct was intended to damage Plaintiffs in Nevada by discouraging Nevada lawyers, and other lawyers across the U.S., from associating with, watching, or listening to Plaintiffs. *See* Am. Comp., ECF No. 12 at ¶¶ 53-56. As a result of KKF Defendants' conduct, Plaintiffs suffered harm in Nevada in the form of, *inter alia*, lost revenue, damage to Plaintiffs personal and business reputations, and loss of clientele. *See generally* Am. Comp., ECF No. 12; *see*

*also* Claggett Declaration at ¶ 13. At the time KKF Defendants engaged in the subject defamatory conduct, they knew or should have known that drafting and publishing defamatory statements about Plaintiffs to Plaintiffs' state of residence and primary place of business would result in, or was likely to result in, the harm suffered by Plaintiffs in Nevada. Accordingly, this element of the "effects" test is also satisfied.

**B.      Plaintiffs' Claims Arise Out of or are Related to the Defamatory Conduct KKF Defendants Purposefully Directed to Nevada[5]**

The second prong of the test for specific personal jurisdiction asks whether the plaintiffs' claims arise out of or relate to defendants' contacts with the forum. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1029 (2021). "Or put just a bit differently, 'there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. (citation omitted). The purpose of specific jurisdiction, and of the requirement that claims arise out of or are related to the forum state for specific jurisdiction to lie, is to ensure that a jurisdiction with "little legitimate interest" in a suit does not encroach on the rights of a jurisdiction with a legitimate interest in trying a suit. *See Ford*, 141 S. Ct. 1025 (citation omitted). Here, Plaintiffs were the named subject of the defamatory conduct, the defamatory conduct was directed to Nevada via the Nevada Reptile list, Plaintiffs suffered harm in Nevada, and, thus, Plaintiffs' claims in this matter arise directly out of and are directly related to KKF Defendants' conduct. Accordingly, this prong of the test is satisfied.

**C.      The Exercise of Personal Jurisdiction Over KKF Defendants is Reasonable**

The Ninth Circuit applies a seven-factor test to determine whether exercise of jurisdiction over a nonresident defendant is reasonable (comports with fair play and substantial justice):

---

[5] Defendants did not address this prong of the test in their motion. Accordingly, Plaintiffs will only briefly address this prong herein. Plaintiffs hereby request that they be allowed to provide limited supplemental briefing on this issue if the Court would like additional briefing on the issue or if Defendants choose to make arguments related to this prong in their reply.

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden [**17] on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient [*1488] and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-1488 (9th Cir. 1993). Critically, though, "[w]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Thus, upon Plaintiffs' showing or the Court's determination that "purposeful direction" exists, the burden shifts to KKF Defendants to "present a compelling case" for unreasonableness. *Id.* Defendants' motion offers absolutely no analysis of the seven factors, but, instead, provides one brief paragraph comprised of conclusory statements related to the factors. Far from making a compelling showing, KKF Defendants have made no showing of unreasonableness. Accordingly, this factor falls squarely in Plaintiffs' favor.

### D. Alternatively, Plaintiff Should be Provided Leave to Conduct Jurisdictional Discovery

In the event that the Court finds that Plaintiff has not made a prima facie showing of personal jurisdiction, Plaintiff requests leave to conduct jurisdictional discovery. "'Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.'" *Andes Indus. v. Chen Sun Lan*, 2014 U.S. Dist. LEXIS 163571, *9 (D. Nev. 2014) (citation omitted). In *Laub v. U.S. Department of the Interior*, the Ninth Circuit explained, "A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub*, 342 F.3d 1080, 1093 (9th Cir. 2003). The *Laub* court further stated, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id*. (citation omitted).

"**A plaintiff is not required to make a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery**." *Andes Indus.*, 2014 U.S. Dist. LEXIS 163571 at *10 (emphasis added) (citation omitted). "**Where further discovery on an issue might well demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse of discretion to deny it**." *Id.* (emphasis added) (citation omitted).

Such jurisdictional discovery would likely yield additional facts about: KKF Defendants' relationship and contacts with Nevada; KKF Defendants' relationships with other Nevada-based entities; KKF Defendants' direction of the defamatory conduct to Nevada; KKF Defendants' knowledge of the harm Plaintiffs suffered and where that harm was likely to occur, and various facts related to the various tests governing personal jurisdiction. Further, Plaintiff would seek to, at a minimum, take the depositions of David Hoey, Don Keenan, and William Entrekin to test the veracity of the claims they make in their declarations. As such, Plaintiffs respectfully request that the Court permit them to conduct jurisdictional discovery on this issue.

## V.    VENUE IN NEVADA IS PROPER

This Court uses a two-prong test to evaluate motions to transfer venue under § 1404(a) where venue is otherwise proper but merely allegedly inconvenient:

> A motion to transfer an action pursuant to § 1404(a) presents two questions: (1) whether the action sought to be transferred might have been brought in the proposed transferee district; and (2) whether the transfer would be for the convenience of the parties and witnesses, in the interest of justice.

*Robert Bosch LLC v. Corea Autoparts Producing Corp.*, No. 2:10-cv-01924-RLH-RJ, 2011 WL 4074566, *1 (D. Nev. Sept. 13, 2011) (emphasis added), (citing *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). The burden of proof is on the moving party, and "[t]he moving party must first show that the action could have been brought in the transferee district." *Robert Bosch LLC*, 2011 WL 4074566, *1 (citation omitted). If the movant can make this initial showing, "[t]he court then balances competing public and private interest factors to determine if transfer is appropriate…" *Id.*, 2011 WL 4074566, *1.

The public and private interest factors the Ninth Circuit has identified that a district court may consider, on a case-by-case basis, in deciding whether to transfer venue are:

> 1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) ease of access to sources of proof. Id. The Ninth Circuit has also concluded that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing. *Id.*

In considering these factors, the "burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007). A transfer "should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Robert Bosch LLC*, 2011 WL 4074566, 2001 WL 4074566, *1 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964). There is also "a strong presumption in favor of the plaintiff's choice of forum which must be taken into account when deciding whether transfer is required." Id. at *1, (citing *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003)). This entails a corresponding "heavy burden of proof" on the part of the moving party "to justify the necessity of transfer," and "[t]he plaintiff's choice of forum should not be easily overturned." *Amini*, 497 F.Supp.2d at 1109 (citation omitted).

## A.      Defendants Fail to Demonstrate that Venue is Proper in Georgia

Defendants fail to meet the first prong for transfer of venue because they neither establish nor even analyze whether Plaintiff could have filed this lawsuit against the Defendants in the Northern District of Georgia – Atlanta Division. Defendants' one-paragraph discussion of this point makes only vague, conclusory allegations about the Northern District of Georgia jurisdiction that fail to satisfy the standard. The Court should deny Defendant's motion for failing to satisfy this threshold prong of the two-part test for evaluating motions to transfer venue under 28 U.S.C. § 1404(a).

/ / /

1

2

**B.      The Public and Private Interest Factors Favor Venue in Plaintiffs' Chosen Forum**

Even if the Defendants demonstrated venue in the Northern District of Georgia was

3

appropriate, Defendants fail to show the balance of public and private interest factors favor transfer.

4

First, the location where relevant agreements were negotiated and executed is in Nevada

5

because this is a case concerning defamation and intentional interference with Plaintiff's

6

representation with Logan Erne, a Nevada resident, and prospective business advantage as a referring

7

attorney for Nevada actions.

8

Second, Nevada is the state that is most familiar with the governing law. This lawsuit

9

concerns defamatory conduct resulting in harm to Plaintiff's business and law firm in Nevada. The

10

action involves a conspiracy between Defendant Shetler, a Nevada lawyer, and the remaining

11

Defendants to terminate Plaintiff's representation of a Nevada resident in an effort to harm Plaintiff's

12

Nevada business. This factor favors Plaintiff and denial of the transfer of venue.

13

Third, Nevada is the Plaintiffs' choice of forum. This Court has recognized that [w]hile the

14

plaintiff's choice of forum is not determinative, it is entitled to substantial weight when it is also the

15

plaintiff's place of residence. In such circumstances, the defendant must make a strong showing of

16

inconvenience to warrant upsetting the plaintiff's choice of forum." *Weyerhaeuser NR Co. v. Robert*

17

*Bosch Tool Corp.*, 2:11-CV-01793-JCM, 2012 WL 366967, at *3 (D. Nev. Feb. 3, 2012). The

18

plaintiffs in this case are Sean Claggett, Esq., and his law firm. Both plaintiffs reside in Nevada.

19

Given Plaintiff resides here as a matter of law, Plaintiff's decision to sue here, in his home district, is

20

therefore entitled to substantial weight and even paramount consideration. *Operation: Heros, Ltd. v.*

21

*Proctor and Gamble Productions, Inc.*, 903 F.Supp.2d 1106, 1113 (D. Nev. 2012) (citing *Lou v.*

22

*Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). Moreover, Defendants cannot skirt their corresponding

23

heavy burden of having to make "a strong showing of inconvenience to warrant upsetting the

24

plaintiff's choice of forum. *Weyerhaeuser*, 2012 WL 366967 * 3.

25

Fourth, the parties have extensive contacts with Nevada. Defendants make only impermissibly vague and conclusory statements about its contacts with the Northern District of Georgia. Many of the same documents Defendants claim are located in Georgia can likewise be located in Nevada, as the correspondence giving rise to the conspiracy to defame and disrupt Plaintiff's representation of a Nevada resident reside with Shetler, a Nevada attorney. This factor thus favors Nevada.

Fifth, Plaintiffs' causes of action have extensive contacts with Nevada. Defendants neglect to demonstrate how this factor favors transfer. This factor, like the preceding ones, also favors Nevada due to Plaintiff's incorporation and presence here and the presumption in favor of Nevada as its chosen forum.

Sixth, transferring this case will not only significantly delay court proceedings and resolution of this matter by many months and will greatly inconvenience Plaintiff, but also Plaintiff will incur substantially more costs, which Plaintiff contends is the real motivation behind this Motion. Motions to transfer should not be granted when transfer merely will shift inconvenience to the nonmoving party. *See, e.g., Amini Innovation Corp.*, 497 F.Supp.2d at 1111 (citation omitted). Plaintiff is much more vulnerable to the higher litigation costs that would result from moving this action from Plaintiff's home in Nevada to Georgia.

Seventh, Defendants do not identify any such third-party witnesses or analyze this factor. Without Defendants making a showing sufficient of any third-party witnesses in the proposed transferee district, this factor favors Nevada.

Eighth, Defendants do not analyze or discuss why these documents are difficult or costly to transport to Nevada or anywhere else. *Operation: Heros, Ltd.*, 903 F.Supp.2d at 1106. The documents are presumably available in electronic format, subject to easy transmission, copying, and review, and even if not, Defendants do not demonstrate why they cannot be transported to this District. This prong is thus at best neutral but does not support transfer.

Ninth, a significant concern underlying all of the Ninth Circuit convenience factors is judicial economy. As stated above, these proceedings will experience significant delays as files are transferred, new local counsel retained, and a new court struggles to get up to speed on the issues. Keeping this case in Nevada, on the other hand, will avoid unnecessary delay, expense, and confusion associated with a transfer to the Northern District of Georgia, thus promoting judicial economy. These concerns strongly favor Nevada.

Indeed, the failure to either analyze or satisfy the Ninth Circuit's two-prong test for evaluating motions to transfer venue under 28 U.S.C. 1404(a) is fatal to Defendants' Motion to transfer venue. Even if Defendants could overcome the first prong, its Motion otherwise fails to meet the "heavy burden" of overcoming the "strong presumption" and "paramount consideration" given to Plaintiff's choice of forum, whether Plaintiff resides as a matter of law and fact. Defendants' Motion fails to demonstrate that even a minority of Ninth Circuit convenience factors favor transfer. This Court should deny the Motion and allow this case to continue in Nevada.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court deny KKF Defendants' Motion to Dismiss in its entirety.

Dated this 9th day of February 2022.

INJURY LAWYERS OF NEVADA

/s/ *Jared Anderson*

_____
Jared B. Anderson, Esq. (SBN: 9747)
David J. Churchill, Esq. (SBN: 7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an employee of Injury Lawyers of Nevada and that on the 9th day of February, 2022, and pursuant to Fed. R. Civ. P. 5, a copy of the above and foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' KEENAN'S KIDS FOUNDATION, INC. AND DAVID J. HOEY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** was served via the Court's electronic filing system to the parties listed for CM/ECF service.


/s/ Krystina June
An employee of Injury Lawyers of Nevada

**COMP**
JARED B. ANDERSON, ESQ. (SBN: 9747)
DAVID J. CHURCHILL, ESQ. (SBN:7308)
**INJURY LAWYERS OF NEVADA**
4001 Meadows Lane
Las Vegas, Nevada 89107
Telephone: 702-868-8888
Facsimile: 702-868-8889
jared@injurylawyersnv.com
david@injurylawyersnv.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL,<br><br>                    Plaintiffs,<br><br>v.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION,  INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>                    Defendants. | Case No. 2:21-cv-02237-GMN-DJA<br><br>**AMENDED COMPLAINT**<br><br>**Jury Demand** |

Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT &

SYKES LAW FIRM and SEAN K. CLAGGETT by and through their attorneys of record,

- 1 -

DAVID CHURCHILL, ESQ. and JARED ANDERSON, ESQ. of the law firm INJURY

LAWYERS OF NEVADA, bring their causes of action against Defendants, DON C.

KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM;

KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE

KEENAN EDGE; BRIAN F. DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY;

TRAVIS E. SHETLER; WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS

ENTITIES XI-XX, inclusive, and each of them, and alleges as follows:[1]

## JURISDICTION, VENUE, AND PARTIES

1.      This Court has jurisdiction over this matter under NRS 14.065 and NRS

4.370(1), as the facts alleged occurred in Clark County, Nevada and involve an amount in

controversy in excess of $15,000.00. Venue is proper pursuant to NRS 13.040, as

Defendants, or any one of them, resided in Clark County, Nevada at the commencement of

this action.

2.      Further, this Court has jurisdiction over this matter pursuant to NRS 14.065,

the Due Process Clause of the Nevada Constitution, and the Due Process Clause of the

United States Constitution with regards to Defendants Don C. Keenan; D.C. Keenan &

Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan

Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; David J.

Hoey; Travis E. Shetler; and William Entrekin.

---

[1] Plaintiffs will be timely filing their Motion to Remand and nothing in this Amended
Complaint should be interpreted or construed as a waiver of Plaintiffs' right to seek remand
pursuant to 28 U.S.C. § 1441, et seq. As explained in Plaintiffs' Motion to Remand,
Plaintiffs' position is that this Court lacks subject matter jurisdiction as Defendant Travis E.
Shetler is a Nevada resident and, thus, is non-diverse from Plaintiffs and has been properly
joined to this action.

3.      Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; David J. Hoey; Travis E. Shetler; and William Entrekin maintain a continuous and substantial presence in the State of Nevada through the conduct of regular business, sales, services, marketing, and/or seminars/trainings in the State. Specifically, upon information and belief, these Defendants published and sold training materials and books; organized, offered, lead, and participated in seminars and trainings in Nevada for Nevada attorneys; received compensation and remuneration from Nevada residents for their goods and services; and organized, offered, lead, and participated in one or more Nevada-focused e-mail listserv, all of which is more fully discussed below. At all times relevant herein, Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

4.      Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; David J. Hoey; and/or William Entrekin dictated, drafted, published, sent, and/or distributed the April 27, 2020 email that is at issue in this case, as described below. Alternatively, upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; David J. Hoey; and/or William Entrekin directed or instructed that the April 27, 2020 email that is at issue in this case be sent, published, and/or distributed, as described below. Upon information and belief, these Defendants published, sent, distributed, and/or directed the April 27, 2020 email to thousands of attorneys nationwide, including approximately 100 attorneys here in

Nevada. Further, these acts by these Defendants were specifically and directly targeted at Plaintiff Sean K. Claggett, as detailed below. At all times relevant herein, these Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

5.      Upon information and belief, Defendants Don C. Keenan; D.C. Keenan & Associates, P.A. d/b/a Keenan Law Firm; Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge; Brian F. Davis; Davis Law Group, P.A.; and Travis E. Shetler conspired together and intentionally interfered with Plaintiffs' contractual relationship, written, oral, or otherwise, with client Logan Erne, a Nevada resident, as described below. These acts were specifically and directly targeted at Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm, as detailed below. At all times relevant herein, these Defendants could have reasonably expected to be sued in Nevada for any claims arising out of or relating to Defendants' contacts with the forum.

6.      At all times relevant herein, Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm (hereinafter "Plaintiff" or "Claggett & Sykes"), was and is a limited liability company organized and existing under the laws of the State of Nevada and doing business in Clark County, Nevada.

7.      At all times relevant herein, Plaintiff Sean K. Claggett (hereinafter "Plaintiff" or "Mr. Claggett") was and is a resident of Clark County, Nevada.

8.      Upon information and belief, at all times relevant herein, Defendant Don C. Keenan (hereinafter "Defendant" or "Keenan"), was and is a resident of Walton County, Florida.

9.      Upon information and belief, at all times relevant herein, Defendant D. C. Keenan & Associates P.A. d/b/a Keenan Law Firm (hereinafter "Defendant" or "Keenan

Law Firm"), was and is a professional association organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

10.     Upon information and belief, at all times relevant herein, Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute and/or The Keenan Edge (hereinafter "Defendant" or "Keenan's Kids Foundation," "Keenan Trial Institute," or "Keenan Edge"), was and is a non-profit corporation organized and existing under the laws of the State of Georgia and doing business in Clark County, Nevada.

11.     Upon information and belief, at all times relevant herein, Defendant Brian F. Davis (hereinafter "Defendant" or "Davis"), was and is a resident of Buncombe County, North Carolina.

12.     Upon information and belief, at all times relevant herein, Defendant Davis Law Group, P.A. (hereinafter "Defendant" or "Davis Law Group"), was and is a professional association organized and existing under the laws of the State of North Carolina and doing business in Clark County, Nevada.

13.     Upon information and belief, at all times relevant herein, Defendant David J. Hoey (hereinafter "Defendant" or "Hoey"), was and is a resident of Middlesex County, Massachusetts.

14.     Upon information and belief, at all times relevant herein, Defendant Travis E. Shetler (hereinafter "Defendant" or "Shetler"), was and is a resident of Clark County, Nevada.

15.     Upon information and belief, at all times relevant herein, Defendant William Entrekin (hereinafter "Defendant" or "Entrekin"), was and is a resident of Lumpkin County, Georgia.

16.     Plaintiffs do not know the true names of Defendants Does I through X and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe is legally responsible in some manner for the events alleged in this Complaint and actually, proximately, and/or legally caused injury and damages to Plaintiffs.  Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

17.     Plaintiffs do not know the true names of Defendants Roe Business Entities XI through XX and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX, are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiff herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiff. Plaintiff will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

18.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

**Background of Defendant Keenan, The Keenan Trial Institute, and the Keenan Edge**

19.     Defendant Keenan is a lawyer who co-authored a trial advocacy book with jury consultant David Ball entitled: Reptile the 2009 Manual of the Plaintiff's Revolution.

20.     Keenan has released several books following the Reptile, mainly books that compile his weekly blog articles.

21.     In the years following the release of the book, Defendant Keenan and Mr. Ball began conducting seminars to expand on the material in the book.

22.     In or around 2013 or 2014, Defendant Keenan and Mr. Ball created the Keenan Ball Trial College ("KBC"), which was a trial college for plaintiff's lawyers based on the Reptile book.

23.     KBC instructors are trial lawyers from around the country who volunteer, with no pay, to instruct at the course.

24.     Defendant Hoey was named the "Dean" of the Keenan Ball Trial College.

25.     Sometime around 2017 or 2018, Defendant Keenan began to phase out use of the Reptile name and began calling it the Keenan Edge. Upon information and belief, Defendant Keenan also phased out Mr. Ball's involvement.

26.     Sometime around 2018 or 2019, Defendant Keenan changed the name of Keenan Ball Trial College to The Keenan Trial Institute.

27.     Upon information and belief, Defendant Shetler is an instructor at The Keenan Trial Institute.

28.     According to Defendant Keenan, his Keenan's Kids Foundation owns The Keenan Trial College and The Keenan Edge, and all of the material taught through those ventures.

29.     Defendant Keenan says that the Keenan's Kids Foundation is a non-profit organization. Defendant Keenan claims he makes no money off his Reptile or Edge books, or off his Keenan Trial Institute. Defendant Keenan claims he donates all of his proceeds to the Keenan Trial Institute.

30.     Upon information and belief, based on publicly available tax records, Keenan's Kids Foundation made over $2,000,000 in revenue in 2018 from the Keenan Trial Institute and The Keenan Edge ventures. Less than $40,000 of that went to "kids." Upon information and belief, the remainder of the money went to operating The Keenan Trial Institute and The Keenan Edge ventures. Upon information and belief, Keenan uses this money to fund his private jet and to pay his wife a salary of $70,000 a year, despite her having no involvement in the Keenan Trial Institute or The Keenan Edge. Upon information and belief, Keenan Trial College and The Keenan Edge have no paid employees. All staff that organize, manage, and operate Keenan Trial College and The Keenan Edge are employees of Keenan's Kids Foundation.

**Background of Claggett & Sykes's Involvement in the Reptile**

31.     Mr. Claggett is a trial lawyer in Las Vegas. He is the founding partner of Claggett & Sykes Law Firm. Mr. Claggett also owns a focus group company based in Las Vegas.

32.     In about 2012, Mr. Claggett and other lawyers from his firm began attending Keenan and Ball's Reptile seminars and, in 2014, began attending courses at KBC.

33.     Within the next two to three years, Mr. Claggett and several of the lawyers at Claggett & Sykes became instructors at KBC.

34.     Mr. Claggett and his partners, William Sykes and Matthew Granda also managed the Nevada Reptile listserv, which is an email listserv for Nevada plaintiff's lawyers who had attended Reptile seminars and/or KBC courses.

35.     The Nevada listserv was one of the largest and most active listservs in the nation.

36.     Mr. Claggett became one of the best-known instructors at KBC and became very close with Defendant Keenan. In 2016, Mr. Claggett was one of four KBC instructors who got invited to attend a trip to Greece with Defendant Keenan to participate in an intense multi-day training on Reptile material.

37.     Around that same time Defendant Keenan co-counseled in Nevada on one of Claggett & Sykes's cases.

38.     In 2018, the relationship between Mr. Claggett and Defendant Keenan began to suffer. Mr. Claggett was conducting trials that, according to Defendant Keenan, did not strictly follow Keenan's teachings. Defendant Keenan made clear that his instructors were not to conduct trials outside of the strict confines of what he taught; as he put it, not to "go off the reservation."

39.     Defendant Keenan, usually through his lead KBC instructors, Defendant Hoey and Mindy Bish, enforced strict loyalty to the Reptile, and only the Reptile. For example, a KBC instructor attended another trial college and sent an email to his state's listserv stating that he found the course useful and recommended the college to others. Defendant Keenan immediately banned this instructor from all things Reptile.

40.     Another example occurred when Mr. Claggett conducted a product liability trial in 2018, where his co-counsel Sam Harding gave an opening statement that lasted over an hour, and where Mr. Claggett settled with one of the defendants before trial—both are against Defendant Keenan's teachings.

41.     Shortly after the trial, KBC conducted a course in Las Vegas. Defendant Keenan appeared via videoconference and announced to all the participants, that he was so disturbed that one of his instructors would give an opening statement over an hour that he had lost sleep and that it went against the Reptile teachings. Defendant Keenan said all of this while one of Claggett & Sykes's lawyers was an instructor at that same KBC course.

42.     Later in 2018, one of Defendant Keenan's fellows (Keenan has a system where he invites lawyers to conduct a "fellowship" with his law firm for a year for $30,000), sent an email to the Nevada Reptile listserv lambasting anyone who would charge more than $250 per hour to conduct a focus group. The fellow also stated that Defendant Keenan or others from his organization would come to Las Vegas and conduct focus groups for $250. Upon information and belief, the fellow sent this email at Defendant Keenan's direction. Upon information and belief, neither Defendant Keenan nor his KBC staff ever lived up to the promise to come to Nevada to conduct these focus groups.

43.     Upon information and belief, this email was a direct attack on Mr. Claggett's focus group company.

44.     Around the same time, Mr. Claggett learned that Defendant Keenan was requiring all of the KBC instructors to sign agreements where if they did not volunteer at least three times a year to teach KBC courses that they would have to pay a fine of $25,000.00.

45.     Around late summer of 2018, Mr. Claggett informed Keenan and the KBC staff that all the attorneys at Claggett & Sykes were resigning from being KBC instructors and listserv moderators.

46.     Keenan and/or his KBC staff immediately removed Claggett & Sykes attorneys from the Nevada listserv.

47.     Upon information and belief, after removing the Claggett & Sykes lawyers from the listserv, participation in the Nevada Reptile listserv declined significantly.

**Mr. Claggett's Involvement with Case Analysis**

48.     After their involvement with the Reptile group ended in 2018, Mr. Claggett and the other lawyers at Claggett & Sykes began to attend other trial courses, such as the Trojan Horse Method, Mark Lanier's Trial Academy, and Rick Friedman's Ethos.

49.     Mr. Claggett was asked by the founder of the Trojan Horse Method to teach various courses and to conduct analyses of some of his trials. These programs were done under the name, Case Analysis.

50.     In 2020, Mr. Claggett volunteered to teach a Case Analysis course on the voir dire methods he uses during trial. Mr. Claggett did not receive any money for teaching this course.

51.     During the COVID-19 shutdown, the Trojan Horse Method/Case Analysis founder organized daily, free webinars for plaintiff's lawyers across the country. Mr. Claggett volunteered his time and frequently taught two webinars a week between March and June of 2020.

52.     In April 2020, Defendant Keenan, through his Keenan's Kids Foundation, filed a lawsuit against Mr. Claggett, alleging that Mr. Claggett had misappropriated Keenan's voir dire methods. This was somewhat ironic in that Mr. Claggett and his team of

lawyers were chastised and essentially excommunicated from the Reptile group for "going off the reservation" of the way Keenan required trials to be conducted.

53.     On April 27, 2020, Defendant Entrekin, sent an email to all of the state Reptile listservs, including the listserv for Nevada-based attorneys. The content of the email was written by Defendant Hoey. Upon information and belief, Defendant Hoey wrote the email at the direction of Defendant Keenan.

54.     Upon information and belief, the email went out to over 4,000 lawyers across the country, including approximately 100 attorneys located in Nevada.

55.     The email stated:

All-

I write to you all as the Dean of the Keenan Trial Institute.

KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

The material and training comes from close to 40 years of experience and material of Mr. Keenan's own creation.

It is highly protected information by copyright, trademark and confidentiality nondisclosure agreements.

In the past we have had to pursue infringement and breaches. Some, not all, infringements were non-intentional. However, some were intentional.

It has come to our attention that Sean Claggett has been hosting seminars/webinars revealing confidential, copyright, trademarked material that he got when he was a referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

> There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats...........Claggett doesn't care and it hurts us all.
>
> Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.
>
> You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

56.     In May 2020, The Keenan Edge took out an advertisement in the State Bar of Nevada's magazine, Nevada Lawyer. Upon information and belief, this was the first advertisement The Keenan Edge had ever published in Nevada.

**Defendant Davis, Defendant Davis Law Group, and Defendant Shetler's Involvement**

57.     Defendant Davis is an attorney based in North Carolina. He is also an instructor at the KBC and/or Keenan Trial Institute.

58.     Upon information and belief, Defendant Davis is an owner, officer, and/or director of Davis Law Group, a law firm based in Asheville, North Carolina.

59.     Mr. Claggett met Defendant Davis through the Reptile and KBC courses.

60.     In or around 2017, Defendant Davis asked Claggett & Sykes to co-counsel with him and his law firm on a medical malpractice case in Las Vegas. The client's family was originally from North Carolina and retained Defendant Davis and Davis Law Group.

61.     At the same time, Mr. Claggett asked Defendant Davis to speak with a client who had a potential case in North Carolina. That client retained Defendant Davis and Defendant Law Group, and Defendant Davis filed a lawsuit on behalf of the client in North Carolina.

62.     The Las Vegas client retained Claggett & Sykes and in 2018, Claggett & Sykes filed a complaint on behalf of the client.

63.     Over the course of representing the Las Vegas Client from 2018 to 2020, Claggett & Sykes completed the following discovery (in addition to substantial motion practice at the outset of the case, including a motion for summary judgment)

- Forty (40) Supplements to NRCP 16.1 Disclosures;
- Interrogatories to Dr. Anthony Quinn;
- Requests for Admissions to Dr. Anthony Quinn;
- Requests for Production to Dr. Anthony Quinn;
- Interrogatories to PA Brandon Payzant;
- Requests for Admissions to PA Brandon Payzant;
- Requests for Production to PA Brandon Payzant;
- Two Sets of Interrogatories to Harmony Healthcare;
- Requests for Admissions to PA Harmony Healthcare;
- Two Sets of Requests for Production to Harmony Healthcare;
- Interrogatories to Margaret Williams LCPC;
- Requests for Admissions to Margaret Williams LCPC;
- Requests for Production to Margaret Williams LCPC;
- Interrogatories to Marilyn Abel CPC;
- Requests for Admissions to Marilyn Abel CPC;
- Requests for Production to Marilyn Abel CPC;
- Two Sets of Interrogatories to Summerlin Hospital;
- Requests for Admissions to Summerlin Hospital;
- Three Set of Requests for Production to Summerlin Hospital;
- Depositions of:
    a.  Marilyn Abel;
    b.  Dr. Hammonds;
    c.  Andrew Erne;
    d.  Logan Erne;
    e.  Amber Kerns;
    f.  Kim Mullenix;
    g.  Brandon Payzant, PAC;
    h.  Dr. Quinn;
    i.  Dr. Trombley;
    j.  Dr. Vanduzer;
    k.  Margaret Williams, LCPC
- Subpoenaed LVMPD for the 911 call
- Draft NRCP 30(b)(6) Notice, Summerlin Hospital;
- Draft NRCP 30(b)(6) Notice, Harmony Healthcare;
- Located, requested, and received medical records from all forty-six (46) treating providers;
- Evaluated and outlined all medical records;
- Drafted EDCR 2.34 letters to Dr. Quinn, Summerlin Hospital, and Harmony Healthcare requiring that they update their discovery responses;
- Retained the following expert witnesses:
    a.  Dr. Burroughs, Hospital Administrator;

- 14 -

b.  Dr. Corvin, Psychiatry
c.  Deborah Dominick, RN, Behavior Health Administrator;
d.  Cynthia Wilhelm, CLCP
e.  Dr. Reynard, Eye Doctor; and
f.  Vicki Hutman, LCPC

64.     Claggett & Sykes incurred close to $150,000.00 in costs on the case.

65.     Defendant Davis was responsible for retaining a hand doctor expert and never did so.

66.     Between 2018 and May 2020, neither the client, the client's family, Defendant Davis, nor anyone from Davis Law Group ever expressed displeasure with Claggett & Sykes's representation.

67.     In fact, as late as April 28, 2020, Claggett & Sykes lawyers had phone calls with Defendant Davis about the case and everything was fine.

68.     On or about May 14, 2020—less than three weeks after Defendant Keenan, Defendant Hoey, and Defendant Entrekin sent the email about Mr. Claggett to the Keenan listservs—Defendant Davis asked Mr. Claggett and Claggett & Sykes's lead medical malpractice partner, Jennifer Morales, for a phone call. They spoke the next day.

69.     During the May 15, 2020 phone call, Defendant Davis stated that the client had decided to fire Claggett & Sykes. Mr. Claggett and Mrs. Morales asked why, and Mr. Davis first stated that the client was upset about 30(b)(6) depositions not being conducted. After Mr. Claggett & Mrs. Morales pointed out that the notices were ready to go, Defendant Davis changed the reason and said that the client was upset that policies and procedures had not been obtained from the defendants. Mr. Claggett & Mrs. Morales pointed out that this was also incorrect. Mr. Claggett & Mrs. Morales asked Defendant Davis what was really going on and Mr. Davis said that he was firing Claggett & Sykes for what Mr. Claggett had done to the Reptile group.

- 15 -

70.     Upon information and belief, Defendant Keenan asked or told Defendant Davis to fire Claggett & Sykes from the case. This belief is based on the fact that Mr. Claggett has spoken with at least one other former KBC instructor who said that after Mr. Claggett left the Reptile, Defendant Keenan told the former instructor that he should fire Mr. Claggett off a in which case Mr. Claggett and the former instructor were co-counsel.

71.     Alternatively, upon information and belief, Defendant Davis fired Claggett & Sykes due to Defendant Keenan, Defendant Hoey, and Defendant Entrekin's April 27, 2020 email.

72.     As further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, upon information and belief, Defendant Keenan and Defendant Shetler, and not Defendant Davis, called at least one other lawyer in Las Vegas in an attempt to find new counsel to replace Claggett & Sykes. Upon information and belief, Defendant Keenan and Defendant Shetler were on at least one phone call together with at least one Las Vegas attorney, who refused to accept the case.

73.     Upon information and belief, Defendant Shetler had communications with Defendant Keenan and/or Defendant Davis in furtherance of their conspiracy to interfere with Plaintiffs' contractual relationship with the client.

74.     Upon information and belief, Defendant Keenan held one or more meetings with Defendant Davis and/or Defendant Shetler on the phone, through text, email, and/or in person prior to the date the client terminated Claggett & Sykes to discuss interfering with Claggett & Sykes' relationship with the client.

75.     Upon information and belief, Defendant Keenan and/or Defendant Davis recruited Defendant Shetler to assist in finding a new attorney in Nevada to replace Claggett & Sykes as counsel for the client.

76.     Further proof that Defendant Davis fired Claggett & Sykes due to Defendant Keenan's direction or due to the April 27, 2020 email, and not due to Claggett & Sykes's performance on the case, is that during the May 15, 2020 phone call, Defendant Davis also informed Mr. Claggett and Mrs. Morales that he was withdrawing from the North Carolina case that Mr. Claggett had referred to him. Mr. Davis ultimately did not withdraw from that case but upon information and belief convinced the client to fire Claggett & Sykes from representation.

77.     Defendant Davis and/or the client chose to retain Defendant Shetler as new local Las Vegas counsel. Upon information and belief, Defendant Shetler is a Keenan Trial Institute instructor.

### FIRST CLAIM FOR RELIEF

### (Defamation)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. D/B/A Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. D/B/A Keenan Trial Institute Or The Keenan Edge; Defendant David J. Hoey; And Defendant William Entrekin**

78.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

79.    In the April 27, 2020 email, Defendants, and each of them, made and/or caused to be made unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

80.    Defendants made and/or caused to be made unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

81.    Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

82.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

83.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

84.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

85.     Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

86.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

87.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

88.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

89.     Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

90.     As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual special damages and/or will continue to suffer actual special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages

in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

91.     Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

92.     Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

93.     Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

94.     Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

95.     Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

96.     Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

97.     Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

98.     Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

99.     Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

100.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

101.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

102.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

103.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

104.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

## SECOND CLAIM FOR RELIEF

### (Defamation Per Se)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

105.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

106.     In the April 27, 2020 email, Defendants, and each of them, made, or upon information and belief, caused to be made, unprivileged publication of false and defamatory statements concerning Plaintiff, as set forth above.

107.     Defendants made, and/or caused to be made, unprivileged publication of these statements to third persons, specifically to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

108.     Defendants, and each of them, were at least negligent in making these false and defamatory statements, but based on the statements, Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, acted with malice in making the aforementioned statements.

109.     Additionally, the statements made, or caused to be made, by Defendants were defamatory per se, as the statements involved allegations or imputations injurious to Plaintiff in his trade, business, or profession.

110.     Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in

the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

111.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

112.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

113.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

114.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

115.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

116.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

117.    Defendants' defamation is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff experienced injury to his reputation and suffered actual and/or presumed general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

118.    As a further actual and proximate or legal result of Defendants' defamation, Plaintiff has suffered actual and/or presumed special damages and/or will continue to suffer actual and/or presumed special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

119.    Defendant Keenan's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

120.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

121.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

122.    Defendant Hoey's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

123.    Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

124.    Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

125.    Defendant Entrekin's actions in defaming Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

126.    Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

127.    Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

128.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

129.     Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

130.     Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

131.     Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

132.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (Civil Conspiracy)

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant David J. Hoey; and Defendant William Entrekin**

133.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

134.     Defendant Keenan, Defendant Hoey, and Defendant Entrekin, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff.

Specifically, these Defendants acted with the objective defaming Plaintiff and causing harm to his reputation in the community and his reputation as a lawyer.

135.    The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff by defaming him.

136.    Upon information and belief, Defendants conspired with each other to publish a false, unprivileged, defamatory statement about Plaintiff to thousands of lawyers across the United States, including approximately 100 lawyers in Nevada.

137.    Upon information and belief, at the time of his actions defaming Plaintiff, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

138.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Hoey was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

139.    Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan's Kids Foundation and was in the course and scope of his employment or relationship with Defendant Keenan's Kids Foundation at the time of his aforementioned actions.

140.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's, Defendant Hoey's, and/or Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

141.     Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

142.     Upon further information and belief, at the time of his actions defaming Plaintiff, Defendant Entrekin was an employee, agent, or servant of Defendant Keenan Law Firm and was in the course and scope of his employment or relationship with Defendant Keenan Law Firm at the time of his aforementioned actions.

143.     Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's and Defendant Entrekin's actions in defaming Plaintiff and for any and all damages flowing therefrom.

144.     Defendants' actions in conspiring to defame Plaintiff is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

145.     As a further actual and proximate or legal result of Defendants' actions in conspiring to defame Plaintiff, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages.

146.    Defendant Keenan's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

147.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

148.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

149.    Defendant Hoey's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

150.    Defendant Hoey's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Hoey with willful and conscious disregard for the rights of Plaintiff.

151.    Defendant Hoey's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

152.    Defendant Entrekin's actions in conspiring to defame Plaintiff were undertaken knowingly, wantonly, willfully and maliciously.

153.    Defendant Entrekin's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Entrekin with willful and conscious disregard for the rights of Plaintiff.

154.    Defendant Entrekin's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

155.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan, Defendant, Hoey, and Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

156.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan, Defendant Hoey, and/or Defendant Entrekin.

157.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan and/or Defendant Entrekin. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

158.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan and/or Defendant Entrekin.

159.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

///

///

///

///

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

160.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

161.    There existed a valid contract between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada.

162.    The valid contract between Plaintiff and the Las Vegas personal injury plaintiff was made in writing and orally.

163.    The valid contract provided that Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit.

164.    Defendant Davis had knowledge of this valid contract because he referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client. Upon information and belief, the remaining Defendants also had knowledge of the contract or had reason to know of its existence.

165.    Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the contractual relationship. Specifically,

upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

166.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the contract.

167.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

168.    Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

169.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

170.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

171.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

172.     Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

173.     Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

174.     Defendants' intentional interference is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

175.     As a further actual and proximate or legal result of Defendants' intentional interference, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

176.     Defendant Keenan's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

- 33 -

177.   Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

178.   Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

179.   Defendant Davis's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

180.   Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

181.   Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

182.   Defendant Shetler's actions in intentionally interfering with Plaintiff's contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

183.   Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

184.   Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount

appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

185.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

186.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

187.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm

188.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

189.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

190.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

191.     The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; Defendant Davis Law Group, P.A.; and Defendant Travis E. Shetler**

192.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

193.     There existed an ongoing and prospective contractual relationship between Plaintiff and the Las Vegas personal injury plaintiff related to Plaintiff's representation of that plaintiff in a lawsuit in Clark County, Nevada, by which Plaintiff would be paid for its services through either a contingency fee arrangement or, alternatively, an hourly rate based on hours worked or, alternatively, quantum meruit.

194.     Defendant Davis had knowledge of this ongoing and prospective contractual relationship between Plaintiff and the Las Vegas personal injury plaintiff because he referred the client to Plaintiff, was co-counsel on the case, and executed a Joint Representation and Fee-Split Agreement that specifically incorporated by reference the Claggett & Sykes Contingency Fee Agreement with the client. Upon information and belief, the remaining Defendants also had knowledge of the prospective contractual relationship

between Plaintiff and the Las Vegas personal injury plaintiff or had reason to know of its existence.

195.    Upon information and belief, Defendants, and each of them, committed intentional acts intended or designed to disrupt the prospective contractual relationship. Specifically, upon information and belief, Defendant Keenan asked or told Defendant Davis to have Plaintiff's representation of the client terminated. Upon further information and belief, Defendant Davis convinced the client, upon false pretenses, to terminate the attorney client relationship with Plaintiff.

196.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client did in fact terminate the relationship with Plaintiff, thus disrupting the ongoing and prospective contractual relationship.

197.    Upon information and belief, due to Defendants' wrongful and unjustified conduct, the client then retained Defendant Shetler as his new Las Vegas counsel.

198.    Defendants' wrongful conduct was unjustified and wholly unprivileged.

199.    As a result of Defendants' wrongful and unjustified conduct, Plaintiff was harmed and denied fees and remuneration it otherwise would have been entitled to within its ongoing and prospective contractual relationship with the client.

200.    Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

201.    Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

202.    Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

203.    Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

204.    Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

205.    Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

206.    Defendants' intentional interference is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

207.    As a further actual and proximate or legal result of Defendants' intentional interference, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation

and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

208.    Defendant Keenan's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

209.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

210.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

211.    Defendant Davis's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

212.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

213.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

214.   Defendant Shetler's actions in intentionally interfering with Plaintiff's ongoing and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

215.   Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

216.   Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

217.   Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

218.   Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

219.   Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm

220.   Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

221.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law Group.

222.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable for punitive damages for the wrongful acts of Defendant Davis.

223.    The actions of Defendants have forced Plaintiffs to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SIXTH CLAIM FOR RELIEF

### (Civil Conspiracy)

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm Against Defendant Don C. Keenan; Defendant D.C. Keenan & Associates P.A. d/b/a Keenan Law Firm; Defendant Keenan's Kids Foundation, Inc. d/b/a Keenan Trial Institute or The Keenan Edge; Defendant Brian F. Davis; and Defendant Travis E. Shetler**

224.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

225.    Defendant Keenan, Defendant Davis, and Defendant Shetler, intended to accomplish an unlawful objective together with the purpose of harming Plaintiff. Specifically, these Defendants acted with the objective of intentionally interfering with Plaintiff's contractual relations and prospective contractual relations by causing Plaintiff's

client to terminate Plaintiff's representation in furtherance of Defendant Keenan's grudge against Plaintiff.

226. The association of these Defendants acted by a concert of action with either an agreement, understanding, or meeting of the minds regarding the objective of harming Plaintiff.

227. Upon information and belief, Defendants conspired with each other to unlawfully interfere with Plaintiff's contract and/or prospective contractual relationship with its client so as to cause Plaintiff's client to terminate Plaintiff's representation and to replace Plaintiff with Defendant Shetler.

228. Upon information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan's Kids Foundation and was in the course and scope of his employment with Keenan's Kids Foundation at the time of his aforementioned actions.

229. Defendant Keenan's Kids Foundation is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

230. Upon further information and belief, at the time of his actions alleged above, Defendant Keenan was a Director of and the Owner, Chief Executive Officer, President, Chief Financial Officer, and Secretary of Defendant Keenan Law Firm and was in the course and scope of his employment with Keenan Law Firm at the time of his aforementioned actions.

231. Defendant Keenan Law Firm is vicariously liable for Defendant Keenan's actions and for any and all damages flowing therefrom.

232.    Upon further information and belief, at the time of his actions alleged above, Defendant Davis was an Officer, Director, and/or employee of Defendant Davis Law Group and was in the course and scope of his employment with Defendant Davis Law Group at the time of his aforementioned actions.

233.    Defendant Davis Law Group is vicariously liable for Defendant Davis's actions and for any and all damages flowing therefrom.

234.    Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations is an actual and proximate or legal cause of Plaintiff's injuries. Plaintiff suffered general damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

235.    As a further actual and proximate or legal result of Defendants' actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations, Plaintiff has suffered special damages and/or will continue to suffer special damages into the future. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that he has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00). Defendant Keenan's Kids Foundation and Defendant Keenan Law Firm are vicariously liable for any such damages caused by the conduct of Defendant Keenan. Defendant Davis Law Group is vicariously liable for any such damages caused by the conduct of Defendant Davis.

236.    Defendant Keenan's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

237.    Defendant Keenan's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Keena with willful and conscious disregard for the rights of Plaintiff.

238.    Defendant Keenan's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

239.    Defendant Davis's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

240.    Defendant Davis's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Davis with willful and conscious disregard for the rights of Plaintiff.

241.    Defendant Davis's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

242.    Defendant Shetler's actions in conspiring to intentionally interfere with Plaintiff's contractual relations and prospective contractual relations were undertaken knowingly, wantonly, willfully and maliciously.

243.    Defendant Shetler's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant Shetler with willful and conscious disregard for the rights of Plaintiff.

244.    Defendant Shetler's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages pursuant to NRS 42.005, in an amount appropriate to punish and make an example of Defendant, and to deter similar conduct in the future.

245.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan's Kids Foundation, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan's Kids Foundation.

246.    Pursuant to NRS 42.007, Defendant Keenan's Kids Foundation is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

247.    Upon information and belief, Defendant Keenan is an officer, director, or managing agent of Defendant Keenan Law Firm, and expressly authorized or ratified the wrongful acts of Defendant Keenan. Upon information and belief, Defendant Keenan was expressly authorized to direct or ratify this conduct on behalf of Defendant Keenan Law Firm.

248.    Pursuant to NRS 42.007, Defendant Keenan Law Firm is vicariously liable for punitive damages for the wrongful acts of Defendant Keenan.

249.    Upon information and belief, Defendant Davis is an officer, director, or managing agent of Defendant Davis Law Group, and expressly authorized or ratified the wrongful acts of Defendant Davis. Upon information and belief, Defendant Davis was

expressly authorized to direct or ratify this conduct on behalf of Defendant Davis Law

Group.

250.    Pursuant to NRS 42.007, Defendant Davis Law Group is vicariously liable

for punitive damages for the wrongful acts of Defendant Davis.

251.    The actions of Defendants have forced Plaintiffs to retain counsel to represent

them in the prosecution of this action, and they are therefore entitled to an award of a

reasonable amount as attorney's fees and costs of suit.

## SEVENTH CLAIM FOR RELIEF

**(Declaratory Relief - Reverse Piercing the Corporate Veil/Alter Ego)**

**Plaintiff Sean K. Claggett & Associates, LLC d/b/a Claggett & Sykes Law Firm and**

**Plaintiff Sean Claggett Against Defendant Don C. Keenan; Defendant D.C. Keenan &**

**Associates P.A. d/b/a Keenan Law Firm; and Defendant Keenan's Kids Foundation,**

**Inc. d/b/a Keenan Trial Institute or The Keenan Edge**

252.    Plaintiffs repeat and reallege the allegations as contained in the preceding

paragraphs herein and incorporates the same herein by reference.

253.    Upon information and belief Defendant Keenan owns, controls, governs, and

influences Keenan Law Firm.

254.    Upon information and belief, there is such unity of interest between

Defendant Keenan and Keenan Law Firm that Keenan Law Firm could not operate separate

and apart from Defendant Keenan and is effectively inseparable from Keenan.

255.    Adherence to the fiction of separation between Defendant Keenan and

Keenan Law Firm would sanction a fraud or injustice upon the public, the Court, and/or

Plaintiffs.

256.     Upon information and belief Defendant Keenan owns, controls, governs, and influences Keenan's Kids Foundation.

257.     Upon information and belief, there is such unity of interest between Defendant Keenan and Keenan's Kids Foundation that Keenan's Kids Foundation could not operate separate and apart from Keenan and is effectively inseparable from Keenan.

258.     Adherence to the fiction of separation between Defendant Keenan and Keenan's Kids Foundation would sanction a fraud or injustice upon the public, the Court, and/or Plaintiffs.

259.     A justiciable controversy exists as to the unity of interest between Defendant Keenan and Keenan's Kids Foundation.

260.     Plaintiff seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant Keenan's Kids Foundation, Inc.

261.     Plaintiff also seeks declaratory relief from the Court in the form of a declaration that Defendant Keenan is the alter ego of Defendant D.C. Keenan & Associates, P.A.

262.     The actions of Defendant have forced Plaintiff to retain counsel to represent them in the prosecution of this action, and they are therefore entitled to an award of a reasonable sum as attorney's fees and costs of suit.

WHEREFORE, Plaintiffs, SEAN K. CLAGGETT & ASSOCIATES, LLC d/b/a CLAGGETT & SYKES LAW FIRM and SEAN CLAGGETT, expressly reserving their right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demands judgment against Defendants, DON C. KEENAN; D.C. KEENAN & ASSOCIATES, P.A. d/b/a KEENAN LAW FIRM; KEENAN'S KIDS FOUNDATION, INC. d/b/a KEENAN TRIAL INSTITUTE and/or THE KEENAN EDGE; BRIAN F.

DAVIS; DAVIS LAW GROUP, P.A.; DAVID J. HOEY; TRAVIS E. SHETLER;

WILLIAM ENTREKIN; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive,

and each of the defendants as follows:

1.      For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to
be set forth and proven at the time of trial;

2.      For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to
be set forth and proven at the time of trial;

3.      For exemplary and punitive damages in excess of Fifteen Thousand Dollars
($15,000.00), to be set forth and proven at the time of trial;

4.      For declaratory relief;

5.      For reasonable attorney's fees;

6.      For costs of suit incurred;

7.      For a jury trial on all issues so triable; and

8.      For such other relief as to the Court seems just and proper.

DATED this 12th day of January 2022.

                                        */s/ Jared B. Anderson*

                                        _____
                                        JARED B. ANDERSON, ESQ. (SBN: 9747)
                                        DAVID J. CHURCHILL, ESQ. (SBN:7308)
                                        **INJURY LAWYERS OF NEVADA**
                                        4001 Meadows Lane
                                        Las Vegas, Nevada 89107
                                        *Attorneys for Plaintiffs*

1    JARED B. ANDERSON, ESQ. (SBN: 9747)
     DAVID J. CHURCHILL, ESQ. (SBN: 7308
2    **INJURY LAWYERS OF NEVADA**
     4001 Meadows Lane
3    Las Vegas, Nevada 89107
     Telephone: 702:868-8888
4    Facsimile: 702-868-8889
     jared@injurylawyersnv.com
5    david@injurylawyersnv.com
     *Attorneys for Plaintiffs*

6                  UNITED STATES DISTRICT COURT

7                      DISTRICT OF NEVADA

8    SEAN K. CLAGGETT & ASSOCIATES,        Case No. 2:21-cv-02237-GMN-DJA
     LLC D/B/A CLAGGETT & SYKES LAW
9    FIRM, A NEVADA LIMITED LIABILITY      **DECLARATION OF**
     COMPANY; SEAN K. CLAGGETT, AN         **SEAN K. CLAGGETT, ESQ.**
10   INDIVIDUAL,

11                  Plaintiffs,

12   v.

13   DON C. KEENAN, AN INDIVIDUAL; D.C.
     KEENAN & ASSOCIATES, P.A. D/B/A
14   KEENAN LAW FIRM, A GEORGIA
     PROFESSIONAL ASSOCIATION;
15   KEENAN'S KIDS FOUNDATION, INC.,
     D/B/A KEENAN TRIAL INSTITUTE
16   AND/OR THE KEENAN EDGE, A
     GEORGIA NON-PROFIT CORPORATION;
17   BRIAN F. DAVIS, AN INDIVIDUAL;
     DAVIS LAW GROUP, P.A., A NORTH
18   CAROLINA PROFESSIONAL
     ASSOCIATION; DAVID J. HOEY, AN
19   INDIVIDUAL; TRAVIS E. SHETLER, AN
     INDIVIDUAL; WILLIAM ENTREKIN, AN
20   INDIVIDUAL; DOES I-X; AND ROE
     BUSINESS ENTITIES XI-XX, INCLUSIVE,

21                  Defendants.

22

23

24                                  - 1 -

1

## DECLARATION OF SEAN K. CLAGGETT, ESQ.

2    1.  I declare under penalty of perjury under the laws of the State of Nevada that the

3  statements made herein are true and correct to the best of my knowledge.

4    2.  I have personal knowledge of and am competent to testify to the facts contained in

5  this declaration, except on those matters stated upon information and belief, and as to those

6  matters, I believe them to be true.

7    3.  I make this declaration in support of my and Plaintiff Sean K. Claggett & Associates,

8  LLC dba Claggett & Sykes Law Firm's Opposition to Defendants Keenan's Kids

9  Foundation, Inc. and David J. Hoey's Motion to Dismiss Plaintiffs' Complaint and

10  Opposition to Defendants Don C. Keenan, Keenan & Associates, P.A., and William

11  Entrekin's Joinder to Keenan's Kids Foundation, Inc. and David J. Hoey's Motion to

12  Dismiss Plaintiffs' Complaint.

13    4.  The April 27, 2020, email at issue in this case contains a number of false and

14  defamatory statements about me.

15    5.  First, the email states "It has come to our attention that Sean Claggett has been

16  hosting seminars/webinars revealing confidential, copyright, trademarked material that he

17  got when he was a referring attorney of the Keenan Law Firm and then an Instructor for

18  KBC (now KTI)." This is false. I never hosted a seminar/webinar where I revealed

19  confidential, copyrighted, or trademarked materials belonging to any of the Defendants in

20  this case.

21    6.  Second, the email states "Because of this blatant, intentional infringement and

22  dissemination of protected, confidential information the Keenan's Kids Foundation took

23  action!" This is false. I never intentionally infringed or disseminated protected, confidential

24  information belonging to any of the Defendants in this case.

- 2 -

7.   Third, the email states "This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today." This is false. I did not breach any "confidentiality agreement(s)" between myself and any of the Defendants on any occasion, let alone on an ongoing basis, including on or about April 27, 2020.

8.   Fourth, the email states "There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats…………Claggett doesn't care and it hurts us all." This is false. I do not take "shortcuts" nor have I improperly disseminated any confidential or protected information belonging to any of the Defendants in this case.

9.   Defendants published these false and defamatory statements to third parties through Defendants' various email listservs. Defendants also published the defamatory email to their Nevada-based listserv group, which, at the time, included approximately 100 attorneys located in Nevada.

10. Upon information and belief, Defendants drafted and disseminated the subject email with the intent of publishing it in Nevada to harm myself and my firm.

11. At the time they sent the false and defamatory email, Defendants knew that Claggett & Sykes Law Firm and I were residents of Nevada and primarily conducted business in Nevada.

12. To date, Defendants have not offered any evidence in support of the allegations contained in the subject email. Thus, Defendants, and each of them, were at least negligent in making these false and defamatory statements; however, based on the statements and lack of supporting evidence proffered to date, I believe Defendants acted with malice in making these false and defamatory statements.

13. As a result of Defendants' false and defamatory statements, I suffered injury to my reputation. Further, Defendants' false and defamatory statements impugned my character and fitness as an attorney and, thus, constitute defamation per se.

14. I declare under penalty of perjury and under the laws of the State of Nevada that the foregoing is true and correct.

/s/ Sean K. Claggett                    February 9, 2022
Sean K. Claggett, Esq.                        Date