MARK J. CONNOT (10010)
JOHN M. ORR (14251)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
jorr@foxrothschild.com
*Attorneys for Defendants Brian F. Davis
and Davis Law Group, P.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC D/B/A CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN K. CLAGGETT, AN INDIVIDUAL, <br><br> Plaintiffs, <br> V. <br><br> DON C. KEENAN, AN INDIVIDUAL; D.C., KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHETLER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE, <br><br> Defendants. | Case No. 2:21-cv-02237-GMN-DJA <br><br> **DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, PA UNDER FRCP 12(B)(6)** |

Defendants Brian F. Davis ("Mr. Davis") and Davis Law Group, P.A. ("Davis Law Group" collectively referred to with Mr. Davis as "Davis Defendants"), by and through their counsel of record, Mark J. Connot and John M. Orr of the law firm Fox Rothschild LLP, submit their Reply to Plaintiffs' Opposition to the Davis Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 28). This Reply is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument the Court may entertain during the hearing on this matter.

I.   **INTRODUCTION**

Plaintiffs Sean Claggett ("Mr. Claggett") and Sean K. Claggett & Associates, LLC dba Claggett and Sykes Law Firm's ("Claggett & Sykes," collectively referred to with Mr. Claggett as "Plaintiffs") Opposition to the Davis Defendants' Motion to Dismiss (ECF No. 28) fails to establish that their claims against the Davis Defendants are actionable. Plaintiffs' arguments misapply, misrepresent, and ignore the law and the key facts related to the Erne Matter, the Medical Malpractice Contingency Fee Agreement (the "the Contingency Agreement"), and the Joint Representation and Fee-Spilt Agreement ("Fee-Split Agreement" referred to with the Contingency Agreement as the "Agreements.").

The Contingency Agreement violates NRS § 7.095 because it seeks to recover fees in excess of those allowed in NRS § 7.095. The Contingency Agreement is, therefore, void, and fatal to Plaintiffs' claims. Plaintiffs' intentional interference against the Davis Defendants is also not actionable because the Davis Defendants were not strangers to the Agreement. At all relevant times, they were acting as Mr. Erne's agent and had a legitimate, pecuniary interest in the Agreement. Plaintiffs further fail to allege any facts that show they were damaged as a result of being terminated as counsel in the Erne Matter. Plaintiffs simply ignore the key facts that support this conclusion. As set forth below, Plaintiffs have failed to allege facts that show any of their claims are actionable or that Plaintiffs are entitled to relief.

## II. LEGAL ARGUMENT

### A. Plaintiffs Have Failed to State a Claim for Intentional Interference Against the Davis Defendants

To assert a claim for intentional interference under Nevada law, Plaintiffs must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus.*, 119 Nev. at 274, 71 P.3d at 1267. Plaintiffs' arguments that this claim is actionable or that the Contingency Agreement is valid and enforceable ignore and misapply key facts and the governing Nevada law.

#### (i) The Contingency Agreement Is Illegal and Unenforceable

Plaintiffs argue that the Agreement is enforceable for four reasons. Each of these arguments lack any factual, legal, or logical support. First, Plaintiffs claim that the Davis Defendants should be estopped from arguing the Agreement is unenforceable because the Davis Defendants have somehow conceded in their prior motion practice that the Agreement is valid. This argument distorts the Davis Defendants' prior arguments set forth in their moving papers. Second, Plaintiffs argue that the plain language of the Contingency Agreement does not violate NRS 7.095 because it is not a contingency fee agreement. This Argument disregards the plain language and the practical effect of the Contingency Agreement.

Third, Plaintiffs contend the Agreement is not subject to NRS 7.095 because the Erne Matter involves defendants that are not "providers of health care" as defined in NRS 7.095(4)(b). This argument ignores the fact that most of the defendants in the Erne Matter are providers of healthcare and that as counsel for Logan Erne, Plaintiffs themselves drafted the complaint in the Erne matter as one for professional negligence. Also, this argument misapplies fundamental principles of contract law and interpretation. Lastly, Plaintiffs state that Mr. Erne waived NRS 7.095. This argument overlooks the public purpose of the 2004 ballot initiative known as "Keep Our Doctors in Nevada" ("KODIN"). NRS 7.095 serves a public purpose and therefore cannot be waived.

### (a) The Davis Defendants Are Not Judicially Estopped From Arguing The Contingency Agreement Is Unenforceable

Judicial estoppel is only invoked "when a party's inconsistent position arises from intentional wrongdoing or an attempt to obtain an unfair advantage." *NOLM, LLC v. Cty. of Clark*, 120 Nev. 736, 743, 100 P.3d 658, 663 (2004). Plaintiffs argue that because the Davis Defendants have stated in their prior motion practice that the Agreement is an "established contract" they should be estopped from arguing the Agreement is illegal and unenforceable. ECF No. 14 at p. 14. The Davis Defendants have consistently argued that the Contingency Agreement is illegal and unenforceable. Acknowledging the existence of a contract is not the same as admitting that a contract is valid or enforceable. Words have no meaning otherwise. The Davis Defendants have never once argued or acknowledged the Agreement is valid or legal. Plaintiffs cannot cite any moving papers that support this assertion. For this reason, Plaintiffs cannot rely on judicial estoppel to bar the Davis Defendants from arguing that the Contingency Agreement is void and unenforceable.

### (b) The Agreement Is Subject to NRS 7.095

Plaintiffs argue that the Agreement is not subject to NRS 7.095 because it contains an hourly rate provision as an alternative to the contingency fee agreement. This argument distorts the plain language of the Contingency Agreement and its practical application. NRS 7.095(1) states: "[a]n attorney shall not contract for or collect a fee contingent on the amount of recovery for representing a person seeking damages in connection with an action for injury or death against a provider of health care based upon professional negligence in excess of…" the specified fees in this code section. NRS 7.095(1)(a)–(d). Plaintiffs' distinction between the contingent and hourly fee is meaningless. The Agreement states that "should litigation begin, and either a verdict is obtained in which Client is entitled to attorney fees, or if the client discharges The Firm, the Attorney's Fee shall be the *greater of the* above contingency fee or the Attorney's Hourly Rate whichever is greater." ECF No. 16-1. The language of the Contingency Agreement is such that the contingency fee still applies event if Claggett & Sykes is fired. *Id.* It provides: "[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour,

- 4 -

or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, *whichever is more.*" *Id.* (emphasis added)

The Agreement is subject to NRS 7.095 because the contingency structure applies whether Claggett & Sykes is fired or prosecutes a case to its conclusion. The fact that the practical impact of the Agreement remains hypothetical while the Erne matter is pending does not change the fact the Agreement seeks to recover fees in excess of NRS 7.095's limitations. The distinction Plaintiffs attempt to manufacture is therefore meaningless.

    **(c)  The Erne Matter Is Subject to NRS 7.095 Because Most of Mr. Erne's Claims Are Providers of Health Care**

Plaintiffs further argue the Agreement is not subject to NRS 7.095 because some of the defendants in the Erne Matter are not "providers of health care" ("medical providers") as defined in NRS 7.095(4)(b). This argument oversimplifies and overlooks key facts about the Erne Matter and the applicability of NRS 7.095 to cases involving both medical providers and other professionals who are not medical providers. Plaintiffs omit that the defendants in the Erne Matter include Brandon Payzant, PA, Anthony Quinn, M.D., PHC of Nevada, Inc, d/b/a Harmony Healthcare, and Summerlin Hospital and Medical Center. ECF No. 1-3. Each of these defendants are medical providers. NRS 41A.017 (including physicians, physician's assistants, and hospitals as providers of healthcare), in drafting the complaint in the Erne matter Plaintiffs pleaded the Erne Matter as one for medical malpractice / professional negligence. ECF No. 1-3. Plaintiffs disregard these irrefutable facts in their opposition. The fact that the Erne Matter involves claims against both medical providers and alleged non-medical providers does not mean that the case is not subject to NRS 7.095.  At best, it means that some of Mr. Erne's claims may be subject to NRS 7.095 and others may not. Indeed, the Supreme Court of Nevada has held that when assessing whether a claim is one for ordinary negligence or professional negligence, courts must "look to the gravamen or substantial point or essence of each claim rather than its form." *Szymborski v. Spring Mt. Treatment Ctr.*, 133 Nev. 638, 643 (2017). Based on this, because most of Mr. Erne's claims are against medical providers, the Contingency Agreement is subject to NRS 7.095.

**(d)    NRS 7.095 May Not Be Waived Because It Serves a Public Purpose**

Both parties agree that NRS 7.095's silence on waiver is not evidence that it can or cannot be waived. In fact, Plaintiffs acknowledge that the when the legislature uses a term in one place but excludes it another, it should not be implied where excluded. ECF No. 28 at p. 18. The ability to waive NRS 7.095 therefore should not be implied because the statute is silent on that issue. But Plaintiffs then claim that the "general rule in Nevada is that a private right conferred by statute may be waived by private agreement absent an explicit statutory provision indicating otherwise." *Id.* at p. 19. Plaintiffs do not cite any authority for this conclusion. The statutes that they cite do not support this proposition. This argument is even contradicted by the maxim of statutory interpretation that Plaintiffs cite. The prohibition of waiver in NRS 598.772 and NRS 108.2453 does not imply that NRS 7.095 may be waived because it is silent on that issue. *Id.* at p. 18 (citing *Coast Hotels and Casinos, Inc. v. Nevada State Lab. Commn.*, 34 P.3d 546 (Nev. 2001)).

The issue then is whether NRS 7.095 serves a private or public purpose. Indeed, Plaintiffs admit that a statute enacted for a public purpose cannot be waived by a private agreement. Plaintiffs attempt to distinguish *Fineberg v. Harney & Moore*, 255 Cal. App. 3d 1049, 255 Cal. Rptr. 299 (1989), by arguing that this ruling relied in part on California Civil Code § 3513 which states that "[A] law established for a public reason cannot be contravened by a private agreement." *Id.* at 1055. The fact that Nevada does not have a similar statute does not imply that NRS 7.095 may be waived. *Coast Hotels*, 34 P.3d at 546.

Plaintiffs dismiss that NRS 7.095 serves a public function without offering any facts or analysis to support this argument. They rhetorically ask how caps on attorney's fees relate to the public purpose of Nevada's medical practice reform statutes. Plaintiffs' inability to identify NRS 7.095's public purpose is not evidence that it does not serve one. The Supreme Court of Nevada has acknowledged that the larger purpose of KODIN was to "stabilize Nevada's health care crisis and provide protection for both doctors and patients." *Tam v. Eight Judicial Dist. Court*, 131 Nev. 792, 358 P.3d 234 (2015). NRS 7.095 logically furthers this purpose. By limiting the amount of attorney's fees that may be recovered, it incentivizes plaintiffs' attorneys to only prosecute those cases that are meritorious. This

necessarily decreases the volume of frivolous litigation against healthcare providers. In doing so, NRS 7.095 reinforces the purpose of KODIN "to reduce health care-costs to provide greater predictability and reduce costs for health-care insurers and, consequently, providers and patients." *Id.* at 798, 358 P.3d at 239. Based on this, NRS 7.095 may not be waived because it undermines the public purpose of KODIN.

Plaintiffs' reliance on *In re Estate of Salerno*, 42 Conn. Supp. 526, 630 A.2d 1386 (1993), is misplaced. The *Salerno* court acknowledged that Connecticut's statute limiting attorney's fees conferred a private benefit to individuals because "the statute was intended to increase the portion of the judgment or settlement that was actually received by the plaintiffs." ECF No. 28 at p. 20. Plaintiffs suggest that NRS 7.095 functions in the same way by ensuring patients receive a high proportion of any settlement or judgment against a provider of healthcare. This is true. However, Plaintiffs' overlook that the purpose of KODIN was broader than Connecticut's tort reform statutes. KODIN was aimed "to stabilize Nevada's health care crisis and provide protection for both doctors and patients." *Tam*, 131 Nev. at 798, 358 P.3d at 234. KODIN was not meant to just allow patients to recover greater proportions of settlements. It was also designed to reduce health care costs and to protect health care providers. *Id.* NRS 7.095 therefore serves both a private and public function. It increases an injured patients' potential recovery, and it also reduces the volume of litigation against health care providers. Based on this, NRS 7.095 serves a public purpose and therefore may not be waived.

> ii. **The Davis Defendant Could Not Tortiously Interfere With the Agreement Because They Were Parties to It**

Plaintiffs' argument that the Davis Defendants were not parties to the Agreement willfully ignores the case law and relevant facts cited in the Davis Defendants' moving papers.  Under Nevada law, "a party cannot…tortiously interfere with its own contract." *Blanck v. Hager*, 360 F.Supp.2d 1137 at 1155 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*, 81 Nev. 325, 402 P.2d 650, 651 (1965) ("Of course the first theory, that of tortious interference with the oral agreement is wholly unsound, for the defendants' breach of their own contract with the plaintiff is not a tort"). An agent that is acting within the 'scope of his employment cannot tortiously interfere with a contract to which the principal is a party." *Id.*

The Fee Split Agreement between Claggett & Sykes and the Davis Defendants incorporates the Contingency Agreement by reference. ECF No. 16-2 at p. 2. "Incorporate by reference" means nothing if not that Mr. Erne, Claggett & Sykes, and the Davis Defendants were all parties to and subject to both Agreements. The Fee-Split agreement even states that the Contingency Agreement controls in the event there are any conflicts between the two Agreements. *Id.* The Davis Defendants could not be legally or logically bound to the terms of an agreement they were not party to. Plaintiffs simply ignore these facts and conclude with no analysis that the Davis Defendants were not party to the Agreement.

Plaintiffs rely on California law to argue that the Davis Defendants could tortiously interfere even though they were acting on behalf of Mr. Erne as his attorney and agent. Plaintiffs ignore the clear Nevada precedent that "agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties, and therefore cannot tortiously interfere with a contract to which the principal is a party." *Blanck*, 360 F.Supp.2d at 1154 (citing *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911–12 (D.Nev.1993)). Moreover, Plaintiffs' citation merely stands for the proposition that an attorney can also tortiously interfere with an existing agreement between another attorney and a client. This has no bearing on the present case because it does not refer to attorneys that are parties to a joint representation agreement. The Davis Defendants were not third-parties or strangers to the Agreement. The Davis Defendants were both parties to the Agreement and Mr. Erne's agents when they relayed Mr. Erne's decision to fire Claggett & Sykes. Mr. Erne even confirmed that the Davis Defendants were acting on his behalf when they fired Claggett & Sykes on May 15, 2020. On May 19, 2020, Mr. Erne wrote to Claggett & Sykes: "I know from talking to Brian that he followed my instructions to terminate your law firm as part of my legal team." ECF No. 27-2. For these reasons, the Davis Defendants were parties to the Agreement and therefore could not tortiously interfere with it.

        **iii.**    **Plaintiffs Did Not Sustain Any Damages As A Result of Being Terminated**

Plaintiffs argue that they suffered damages as a result of Mr. Erne terminating Claggett & Sykes in the form of hourly fees and litigation costs. They ignore three key facts. First, these costs

- 8 -

were not incurred as a result of Claggett & Sykes termination. The costs were incurred as a result of their prosecution of the Erne Matter. Second, Plaintiffs are not foreclosed from recovering these costs or fees as a result of their termination. They have asserted a lien in the Erne Matter, which would entitle them to recover their reasonable fees and costs. The fact these amounts are still outstanding does not mean Claggett & Sykes are foreclosed from ultimately recovering these amounts from Mr. Erne.

Moreover, the plain language of the Contingency Agreement even shows that Plaintiffs' damages are too speculative to be actionable. The contingency fee still applies in the event of Claggett & Sykes' termination. It provides: "[u]pon discharge of the Firm, Client shall immediately pay the Firm all costs advanced, and actual fees incurred for the work performed per hour, or the applicable contingency fee pursuant to the contingency fee structure on page 1 of this Contingency Fee Agreement, whichever is more." ECF No. 16-2 at p. 4. Based on this language, in the event the Contingency Agreement is enforced, as opposed to the traditional remedy of being able to recover attorney's fees based on quantum meruit, Plaintiffs' actual alleged damages could not be determined until the conclusion of the Erne Matter. Regardless, the fact Claggett & Sykes was terminated did not cause Plaintiffs' to incur their fees or costs or undermine their ability to recovery these amounts. Their intentional interference claim is therefore not actionable.

**B.    Plaintiffs Do Not Have An Actionable Prospective Economic Advantage Claim**

To prevail on a prospective economic advantage claim, Plaintiffs must show:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Wichinsky v. Mosa*, 109 Nev. 84, 87–88, 847 P.2d 727, 729–30 (1993). Plaintiffs do not allege or even argue that they had a prospective contractual relationship with Mr. Erne. They argue that as a result of Mr. Erne terminating the existing Agreements, Claggett & Sykes was "harmed and denied fees and remuneration it otherwise would have been entitled to as a result of its representation in the *Erne* matter." ECF No. 28 at p. 24. They make no attempt to acknowledge the difference between a

prospective and established contract. To prevail on this claim, Plaintiffs must show the existence of a *prospective* contractual relationship. *Id.* The Agreements at issue here were existing and established. The fact that the damages resulting from any alleged breach or tortious interference of these Agreements may not be recovered during the pendency of the Erne Matter is not tantamount to a prospective contractual relationship being harmed. Indeed, Plaintiffs' entitlement to any fees flow from the existing Agreement, not any prospective contract. For these reasons, Plaintiffs do not have an actionable prospective economic advantage claim.

### C. Plaintiffs' Civil Conspiracy Claim Must Be Dismissed

Plaintiffs' arguments related to this claim merely incorporate by reference the arguments cited in the prior sections of their opposition. Given that this claim is based on the Davis Defendants conspiring to commit an underlying tort, the Davis Defendants incorporate by reference the arguments outlined above and those in their Motion to Dismiss (ECF No. 16).

### III. CONCLUSION

Based on the foregoing facts and analysis, Plaintiffs have failed to assert cognizable claims for intentional interference, prospective economic advantage, and civil conspiracy against the Davis Defendants.

DATED this 16th day of February 2022.

**FOX ROTHSCHILD LLP**

*/s/ Mark J. Connot*
MARK J. CONNOT (10010)
JOHN M. ORR (14251)
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Attorneys *for Defendants Brian F. Davis and Davis Law Group, P.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP, and that on the 16th day of February, 2022, and pursuant to FRCP 5(b), a copy of the foregoing **DEFENDANTS BRIAN F. DAVIS AND DAVIS LAW GROUP, P.A.'s REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST BRIAN F. DAVIS AND DAVIS LAW GROUP, PA UNDER FRCP 12(B)(6)** was served via the Court's CM/ECF system.

*/s/ Doreen Loffredo*
An Employee of Fox Rothschild LLP