JAMES J. PISANELLI (Nevada Bar No. 4027)
JJP@pisanellibice.com
DEBRA L. SPINELLI (Nevada Bar No. 9695)
DLS@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Telephone: 702.214.2100
Facsimile:  702.214.2101

JOHN M. BOWLER (*Pro Hac Vice*)
john.bowler@troutman.com
LINDSAY MITCHELL HENNER
lindsay.henner@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Ste. 3000
Atlanta, GA 30308
Telephone: (404) 885-3190/Facsimile: (404) 962-6513
*Attorneys for Defendants Keenan's Kids Foundation, Inc. and David J. Hoey*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC DBA CLAGGETT & SYKES LAW FIRM, A NEVADA LIMITED LIABILITY COMPANY; SEAN CLAGGETT, AN INDIVIDUAL,<br><br>Plaintiffs,<br><br>vs.<br><br>DON C. KEENAN, AN INDIVIDUAL; D.C. KEENAN & ASSOCIATES, P.A. D/B/A KEENAN LAW FIRM, A GEORGIA PROFESSIONAL ASSOCIATION; KEENAN'S KIDS FOUNDATION, INC., D/B/A KEENAN TRIAL INSTITUTE AND/OR THE KEENAN EDGE, A GEORGIA NON-PROFIT CORPORATION; BRIAN F. DAVIS, AN INDIVIDUAL; DAVIS LAW GROUP, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION; DAVID J. HOEY, AN INDIVIDUAL; TRAVIS E. SHELTER, AN INDIVIDUAL; WILLIAM ENTREKIN, AN INDIVIDUAL; DOES I-X; AND ROE BUSINESS ENTITIES XI-XX, INCLUSIVE,<br><br>Defendants. | CASE NO. 2:21-cv-02237-GMN-DJA<br><br>**DEFENDANTS KEENAN'S KIDS FOUNDATION, INC. AND DAVID J. HOEY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

124024083v1

# **TABLE OF CONTENTS**

Page

I. Claggett's Response Violates the Court's Local Rules ............................................... 1

II. Claggett's Complaint Should be Dismissed Under Anti-SLAPP Laws ...................... 1

    a. The Communications Furthered a Right to Petition ......................................... 1

        i. The Communications Relate to the Georgia Action ............................ 1

        ii. The Communications are Directed Toward Interested Persons........... 2

        iii. The Communications were in Good Faith and Not Knowingly False. 3

        iv. The Communications Were Privileged.................................................. 3

        v. Claggett has No Likelihood of Success ................................................ 4

    b. The Communications Furthered the Right to Free Speech.............................. 4

III. Claggett Fails to State a Claim for Defamation & Civil Conspiracy........................... 5

IV. Claggett Fails to State a Claim for Intentional Interference & Civil Conspiracy ........ 6

V. Claggett Fails to State a Claim for Piercing the Corporate Veil.................................. 7

VI. Claggett's Claims are Barred Compulsory Counterclaims to the Georgia Action ...... 7

VII. There is No Personal Jurisdiction in Nevada............................................................... 9

    a. Claggett's Claims do Not Arise From Conduct Directed to Nevada............... 9

    b. Exercise of Jurisdiction in Nevada is Unreasonable........................................ 9

    c. Claggett is Not Entitled to Jurisdictional Discovery..................................... 10

VIII. The Court Should Transfer Venue to the Northern District of Georgia .................... 10

IX. CONCLUSION.......................................................................................................... 12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blandino v. Herndon*,
 No. 2:18-cv-00600, 2018 U.S. Dist. LEXIS 180457 (D. Nev. Oct. 22, 2018) ...................... 7

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
 788 F.2d 535 (9th Cir. 1986) ................................................................................................ 10

*Caesars World, Inc. v. Milanian*,
 247 F. Supp. 2d 1171 (D. Nev. 2003) .................................................................................... 8

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
 No. C 14-0437 CW, 2016 U.S. Dist. LEXIS 9078 (N.D. Cal. Jan. 26, 2016) ...................... 8

*Nevada Power Co. v. Trench France SAS*,
 No. 2:15-CV-264 JCM (NJK), 2015 U.S. Dist. LEXIS 148107 (D. Nev. Oct. 2, 2015) ... 10

*Neville v. Chudacoff*,
 73 Cal. Rptr. 3d 383 (Ct. App. 2008) .................................................................................... 2

*Patin v. Ton Vinh Lee*,
 134 Nev. 722 (2018) ......................................................................................................... 1, 2

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006) ............................................................................................. 10

*Pfister v. Selling Source, LLC*,
 931 F. Supp. 2d 1109 (D. Nev. 2013) .................................................................................. 10

*Rosen v. Tarkanian*,
 453 P.3d 1220 (Nev. 2019) .................................................................................................... 3

*Sahara Gaming Corp. v. Culinary Workers Union Local 226*,
 115 Nev. 212 (1999) .............................................................................................................. 4

*Schneider v. California Dept. of Corrections*,
 151 F.3d 1194 (9th Cir. 1998) ............................................................................................... 4

*Terracom v. Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) ...................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).......................................................................................................................4

Fed. R. Civ. P. 16 ................................................................................................................................9

LR IA 10-1 ..........................................................................................................................................1

LR 7-3 .................................................................................................................................................1

Defendants Keenan's Kids Foundation, Inc. ("KKF") and David J. Hoey ("Hoey"), (together, "KKF and Hoey"), respectfully submit this reply in support of their motion to dismiss all counts of the Complaint filed by Plaintiffs Sean K. Claggett & Associates, LLC and Sean K. Claggett ("Claggett"). Claggett's response brief lacks substantive rebuttal and contrary case authority, instead choosing to rely on demonstrably false assertions that KKF and Hoey failed to analyze standards and issues that are *expressly addressed* in KKF and Hoey's opening brief. Claggett's opposition brief begs the question throughout whether Claggett actually read KKF and Hoey's motion closely at all. For the reasons that follow, KKF and Hoey's motion should be granted and Claggett's claims dismissed.

## I. Claggett's Response Violates the Court's Local Rules

As a preliminary matter, Claggett's brief violates the Court's Local Rules regarding page limits and formatting. The Local Rules require that oppositions not exceed 24 pages absent leave from the Court (LR 7-3), which Claggett did not seek. Although KKF and Hoey complied with the limitations, Claggett's brief makes extensive improper use of single-spaced text to recite contents of a belated declaration offering new allegations (LR IA 10-1(a)(1)) and footnotes in an improperly sized font smaller than 12-point (LR IA 10-1(a)(3)), yet *still* exceeds the page limit by nearly four pages. The Court may strike the brief as a result. LR IA 10-1(d).

## II. Claggett's Complaint Should be Dismissed Under Anti-SLAPP Laws

As set out below, Claggett's response to the motion to dismiss misrepresents the standards that apply in analyzing cases under the Nevada Anti-SLAPP statute and ignores KKF and Hoey's arguments and evidence in support of each relevant factor.

### a. The Communications Furthered a Right to Petition

#### i. The Communications Relate to the Georgia Action

Claggett relies heavily on an inapposite case, *Patin v. Ton Vinh Lee*, 134 Nev. 722 (2018), to argue that the April 27 Email was not made in connection with an issue under consideration by a judicial body. In *Patin*, an attorney made an allegedly defamatory statement about a jury verdict *after* consideration of issues related to the trial had ended and were not appealed. *Id.* at 723. It is the procedural posture of the attorney's case that makes the fatal

1

difference. Here, the Georgia Action became "under consideration" by a judicial body when it was filed with the same allegations in the April 27 Email. The Georgia Action was still pending and the issues therein still "under consideration" by a judicial body at the time of the April 27 Email relaying those allegations. Whereas, in *Patin*, the attorney's statements failed to meet the statute requiring an issue be "under consideration" to be protected, the Georgia Action and April 27 Email meet the statute precisely. There is no serious dispute that the allegations in the Georgia Action and the April 27 Email relaying those allegations were "related to the substantive issues in the prior Georgia litigation" (Br. p. 6) – they literally *are* the substantive issues in the Georgia Action. Claggett's contention that the April 27 Email specifically discussing the Georgia Action somehow "does not discuss" the Georgia Action's substance is nonsensical.

### ii. The Communications are Directed Toward Interested Persons

Claggett is also wrong that KKF and Hoey made no attempt to show recipients of the April 27 Email had an interest in the Georgia Action. Persons with interest include current and former employees, potential witnesses, and customers. *See, e.g.*, *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 391 (Ct. App. 2008) (adopted by Nevada as explained in *Patin*, 134 Nev. at 726-27, finding letter to customers regarding trade secret misappropriation and breach of contract lawsuit protected by the anti-SLAPP statute and privileged). KKF representative, Don Keenan, swore under penalty of perjury in support of the instant motion the following:

> Sending the April 27 Email to the listserv distribution list, which comprises the instructors and students for Keenan's Kids Trial College, was important, because although I am the founder of the College, I firmly believe the College is "theirs." Indeed, the individuals on the distribution list had a significant interest in and a right to know about the judicial proceedings brought against Claggett in Georgia involving the confidential intellectual property of Keenan's Kids Foundation and the College and the April 27 Email was sent in good faith and in furtherance of and directly related to the Georgia Action. There is nothing false or untrue contained in the April 27 Email.

Dkt. 17-2, ¶ 31. Claggett reviewed this content because he cites it in his brief. Br. p. 7. Even if he had not done so, Claggett's pleadings alone establish that the recipients of the April 27 Email include KKF's customers and employees. Am. Compl. ¶¶ 34, 53. Claggett's Answer in the Georgia Action denying that employees and class participants had confidentiality obligations further establishes that the recipients of the April 27 Email are potential witnesses.

### iii. The Communications were in Good Faith and Not Knowingly False

Claggett concedes that KKF and Hoey have submitted sworn testimony that the April 27 Email was sent in good faith for the reasons noted above, and that its contents were not false or knowingly false. Dkt. 17-2, ¶ 31, Dkt. 17-2, ¶ 31. Claggett's own case, *Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019), acknowledges the sufficiency of a sworn affidavit and that, even in the absence of an affidavit, the entirety of a defendant's evidence on this prong must be considered. Here, that "other" evidence consists *at least* of the fact that (i) KKF so believed in the veracity of its allegations that it approved the filing and litigation of the Georgia Action, which was meritorious enough to survive a motion to dismiss, and (ii) when Claggett was given an opportunity to pursue a merits judgment disproving the allegations in the Georgia Action and the April 27 Email, with full knowledge of the April 27 Email's contents, he declined to do so. Claggett voluntarily let the opportunity to prove those allegations were knowingly false, untrue, and not in good faith, pass. Even now, Claggett does not argue the communications were knowingly false. Communications without knowledge of falsity do not require a preponderance of evidence to show the "gist" of the content is true. *Rosen*, 453 P.3d at 1124-25 (analyzing knowledge of falsity separately from whether the gist of a statement is true in fact). As a result, the Court must move to the next step in the analysis even under Claggett's recitation of the law.

### iv. The Communications Were Privileged

Claggett disputes that the communications at issue were privileged because the recipients of the April 27 Email were not significantly interested in the Georgia Action. As detailed above, KKF and Hoey gave sworn testimony specifically explaining why the recipients of the April 27 Email had a significant interest. As paying investors in KKF's proprietary information used to sway jury verdicts worth substantial sums of money, KKF's customers are perhaps the *most* interested class of persons in whether that information continues to be protected or is in the public domain compromising their chance at favorable outcomes in high-stakes cases. Claggett offers nothing to support his *ipse dixit* lawyer arguments otherwise.

Claggett also disregards that the allegations in the April 27 Email were simply a recitation of the substance of allegations made in the Georgia Action pleadings directly to the

3

judicial body itself. Even assuming the allegations were defamatory, "[d]efamatory statements contained in pleadings are absolutely privileged if they are relevant to the subject of inquiry." *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 218 (1999) (collecting cases). Again, these allegations are so relevant to the Georgia Action that they literally *are* the allegations forming the basis of the Georgia Action. Surely, the litigation privilege extends to instances where a litigant files a formal complaint with a judicial body. The principal purpose of Nevada's absolute litigation privilege is to afford litigants the utmost freedom of access to courts without fear of being harassed subsequently by derivative civil actions like the poorly cloaked action Claggett brings here. *See Sahara*, 115 Nev. at 216.

### v. Claggett has No Likelihood of Success

Given absolute privilege, Claggett can prove no set of facts that would entitle him to relief because the allegations in the Georgia Action Complaint cannot form the basis of the Defendants' civil liability and Claggett has no probability of success on his asserted claims. Regardless, the only "prima facie" demonstration Claggett makes regarding probability of success is a brand new declaration lodging conclusory alleged facts that the communications at issue were false. Br. p. 10. Even if, as Claggett asserts, this special motion should be decided under Rule 12(b)(6) standards, offering supplemental alleged facts beyond the pleading under review through briefing is well-established as improper. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (Court cannot consider new facts asserted in opposition to a motion to dismiss.)

### b. The Communications Furthered the Right to Free Speech

Claggett offers no substantive dispute that the communications at issue also furthered the Defendants' right to free speech, only saying that the issue was not sufficiently analyzed in the opening brief. Claggett is, again, wrong in its characterization of KKF and Hoey's arguments. KKF and Hoey argued with particularity that, here, the communications fall within the public interest and are in a public forum because (i) conduct by a trusted person like an attorney is of public interest under the law, (ii) listserv distribution is a public forum under the law, and (iii) the statements were at least opinion statements and made without knowledge of

their falsity. The same issues were also further analyzed as to other parties alleged to be unified in interest with KKF and Hoey in another motion to dismiss filed in this case. Dkt. 18, pp. 13-14. Although the content of the other motion to dismiss differs somewhat from KKF and Hoey's motion, Claggett's opposition to the free speech argument is identical in its failure to substantively respond. Dkt. 30, pp. 6-7. This issue should therefore be treated as conceded, and the motion to dismiss granted.

### III. Claggett Fails to State a Claim for Defamation & Civil Conspiracy

Claggett's defense of his defamation claims rests primarily on a false claim that KKF and Hoey seek to apply a heightened pleading standard. That is not the case. KKF and Hoey assert that it is not enough for notice pleading to point to correspondence with a variety of contents and say vaguely that something in it (we won't tell you what) is false. Even with KKF and Hoey's dismissal arguments in hand as to the original Complaint, Claggett still failed to assert in his Amended Complaint that any particular statement in the April 27 Email was false. If Claggett genuinely deemed his allegations to be a sufficient pleading he would not have improperly submitted an entirely new declaration in response to the instant motion in order to try and allege falsity with respect to specific contents.

Claggett does not respond to KKF and Hoey's argument that the contents of the April 27 Email had already been published, for all intents and purposes, through the Complaint in the Georgia Action and therefore cannot meet the defamation standard as a matter of law. Claggett also does not dispute that the listserv distribution of the April 27 Email was to a closed environment of people who are members of an exclusive group, which further excludes the conduct from constituting defamation as a matter of law. Claggett's only response is to point without argument to the number of lawyers in the group, but the size of the group does not dictate whether the communication meets the definition of an unprivileged publication to third persons, and Claggett cites no authority otherwise.

Claggett's defense of his civil conspiracy defamation claim likewise depends on allegations that are entirely missing from the Amended Complaint. He asserts that the individually named defendants cannot rely on the intra-corporate conspiracy doctrine

5

prohibiting conspiracy claims against agents of the same organization because they were acting for their own individual advantage. The problem is, Claggett's Amended Complaint specifically *does not* allege that these individuals acted for their own benefit. In fact, the Amended Complaint goes out of its way to allege that the individual defendants were acting for the benefit of their employer organizations. The conspiracy to defame claim must be dismissed as a result.

**IV.    Claggett Fails to State a Claim for Intentional Interference & Civil Conspiracy**

Claggett's defense of his intentional interference claims is essentially a summarization of the deficient Amended Complaint allegations with bald, sweeping references to an orchestrated "scheme" and an "incident" of contacting Defendant Davis to have Claggett terminated. Claggett cannot plead intentional interference and conspiracy by invoking the rhetoric "orchestrated a scheme," and there is no "entire incident" pleaded for KKF and Hoey (who is not named for these claims) to allegedly "disregard." Claggett cites paragraphs 66-77 of the Amended Complaint as those stating his claim, but in the light most favorable to Claggett, these paragraphs only allege the following "facts" requiring an immense logical leap to arrive at a strained and incomplete interference of conspiracy:

1)    Claggett's former client fired him because of an unspecified thing "done to the Reptile group," that he does not and cannot allege was communicated to his former client through the April 27 Email.

2)    Defendant Keenan may have told Defendant Davis to fire Claggett because someone told Claggett that Defendant Keenan told them that they should fire Claggett from another case, but not the one for which Claggett alleges interference.

3)    *Defendant Davis* actually fired Claggett, maybe at Defendant Keenan's direction or maybe because of the April 27 Email because various defendants called a lawyer to find counsel for Claggett's former client, and that lawyer specifically *did not* ultimately represent Claggett's former client.

4)    Various defendants talked about Claggett to discuss "interfering" with him.

5)    Defendants Keenan and Davis had Defendant Shetler help find another attorney for Claggett's former client.

   6)  Defendant Davis convinced Claggett's former client to fire Claggett.

   7)  Defendant Davis, or alternatively, Claggett's former client, chose a new lawyer.

The Counts of Claggett's Amended Complaint regurgitate the legal elements of intentional interference but do not piece together a coherent plausible interference and conspiracy narrative against KKF from the foregoing alleged "facts." *Blandino v. Herndon*, No. 2:18-cv-00600, 2018 U.S. Dist. LEXIS 180457, at *8 (D. Nev. Oct. 22, 2018) (granting dismissal where reaching plaintiff's desired inference "requires a long and simply implausible series of logical leaps").

Claggett's extensive use of pleading in the alternative, and on information and belief, highlights that his allegations against KKF (through Defendant Keenan's alleged conduct) are pure speculation. At best, Claggett alleges Defendant Keenan (i) sent the April 27 Email in general, (ii) told a third party to fire Claggett from a case that is not at issue in Claggett's interference claims, (iii) made a call to find counsel for Claggett's former client of which nothing came, and (iv) talked to other defendants before Claggett was fired. These are not by any measure "acts intended or designed to disrupt" or resultant "actual disruption" of the former client relationship on which Claggett's claims are based. Moreover, Claggett's opposition does not respond at all on the absence of damage from the alleged interference. He cannot specify even in his amended pleadings whether his alleged contract was oral, written, or "other," and he cannot specify what the terms were or what kind of fee arrangement he had or planned to have under this contract, and therefore he has failed to plead damage with survivable specificity.

**V. Claggett Fails to State a Claim for Piercing the Corporate Veil**

Claggett's opposition brief does not address his count for piercing the corporate veil at all, and thereby concedes that the claim should be dismissed on the grounds that it does not state an independent cause of action.

**VI. Claggett's Claims are Barred Compulsory Counterclaims to the Georgia Action**

Claggett's own recitation of the compulsory counterclaim standard is fatal to his argument against dismissal on this basis. Whether a claim is compulsory depends on whether there is a "logical relationship" between the initial claim and the counterclaim where the "same operative facts serve as the basis of both claims or the aggregate core of facts upon which the

7

claim rests." Br. p. 16. The relationship here is simple. Whether the allegations in the Georgia Action and April 27 Email are true or false would have been decisive of Claggett's liability in the Georgia Action and would be decisive on whether the same allegations are defamatory or caused interference here. If the allegations are true, they are not defamatory, and if they are not defamatory, they do not create a tortious interference.

The fact that the legal elements of trade secret misappropriation and defamation are different in some respects does not make them unrelated. "[T]he general rule is that if the allegedly defamatory statements are sufficiently related to subject matter of the original action the defamation claim is a compulsory counterclaim even if the alleged statements were made after the complaint was filed." *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2016 U.S. Dist. LEXIS 9078, at *27 (N.D. Cal. Jan. 26, 2016) (quotation omitted). Here, the alleged defamatory statements were made *before* the operative Georgia Action Amended Complaint was filed in June 2020. And, both Claggett's claims here and the Georgia Action claims depend on the merits of the Georgia Action trade secret claim.

Claggett alleges in his brief that the evidence supporting defamation is different because it involves "conversations and correspondence… before and after dissemination of the April 27, 2020 email" and regarding Claggett's termination. Conversations and correspondence in general are not defamatory or tortious. But how, then, does Claggett propose to meet his burden to prove the contents of the April 27 Email regarding his trade secret misappropriation conduct are not true or substantially true? Br. p. 10. Without the entirety of the discovery already once available to seek in the Georgia Action, he couldn't. Again, "[a]s long as the facts of the later asserted claim 'are sufficiently related to subject matter of the original action, they must be barred [in the later action] as compulsory claims [to the original action].'" *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1201 (D. Nev. 2003).

Finally, Claggett was provided an opportunity in the Georgia Action well past the deadline to amend to assert a counterclaim to "resolve [KKF's] claims against him," but he "chose not to file a counterclaim." GA Doc. 44, n.2. If Claggett had filed a declaratory judgment counterclaim on the trade secret misappropriation allegations, the veracity of the statements in

8

the April 27 Email would have been litigated to judgment. Even assuming the Court in the Georgia Action would not consider a defamation counterclaim to be part of the particular ruling inviting Claggett to amend, Claggett never lost his ability to move the Georgia Court for leave to amend his pleadings under a good cause standard pursuant to Fed. R. Civ. P. 16. There were multiple avenues to amendment in the Georgia Action, and Claggett forwent them all only to raise the same issues in a new suit, in a new jurisdiction, months later. Those claims are barred.

## VII.  There is No Personal Jurisdiction in Nevada

The entire substance of Claggett's defense to dismissal for lack of jurisdiction is argument that KKF and Hoey did not mention or argue the relevant standards when, in fact, they were directly addressed. Claggett offers no rebuttal on the merits of the analyses in question.

### a. Claggett's Claims do Not Arise From Conduct Directed to Nevada

Claggett inexplicably alleges that KKF and Hoey did not address whether the claims arise from conduct purposefully directed to Nevada as the basis for his perfunctory opposition. KKF and Hoey have a heading dedicated to this topic and briefed the issue for more than two pages, explaining with case citations that any touches on the state of Nevada in this case were a mere fortuity and that the listserv distribution of the April 27 Email was not directed toward Nevada. Claggett does not rebut these arguments other than to say, conclusorily and without citation, the opposite – that the April 27 Email was directed to Nevada and the claims arise from Nevada conduct. An opposition with no substantive rebuttal or counter-authority is insufficient to survive the instant motion to dismiss.

### b. Exercise of Jurisdiction in Nevada is Unreasonable

Claggett also inexplicably claims KKF and Hoey did not address the factors for assessing the reasonableness of Nevada jurisdiction. KKF and Hoey have an entire brief heading and argument section on unreasonableness, citing and analyzing the seven factor test from the same case that Claggett cites. Claggett offers no substantive rebuttal, only arguing this factor weighs in his favor because KKF and Hoey's argument is contained in one paragraph. Again, an opposition with no substantive rebuttal or counter-authority is insufficient to survive the motion.

////

### c. Claggett is Not Entitled to Jurisdictional Discovery

Where, as here, Claggett's "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). To show entitlement to discovery, Claggett "must provide some basis to believe that discovery will lead to relevant evidence providing a basis for the exercise of personal jurisdiction and courts are within their discretion to deny requests based on little more than a hunch that discovery might yield jurisdictionally relevant facts." *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1118 (D. Nev. 2013) (quotation and alteration omitted). He has not provided a basis for discovery.

Claggett's jurisdictional allegations are pleaded almost exclusively on information and belief, and he offers no substantive basis in his brief for believing discovery would yield evidence to establish jurisdiction other than a hunch that he could collect information about general contacts with Nevada, the merits of his defamation claim, and "various facts" related to personal jurisdiction. Claggett does not even allege that this discovery is likely to reveal facts that *support* (as opposed to merely relate to) his jurisdictional speculation. Claggett's "contentions are plainly insufficient to allow jurisdictional discovery." *Nevada Power Co. v. Trench France SAS*, No. 2:15-CV-264 JCM (NJK), 2015 U.S. Dist. LEXIS 148107, at *13 (D. Nev. Oct. 2, 2015) (citing *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (plaintiffs' statement that they "believe" discovery will enable them to demonstrate personal jurisdiction insufficient to require jurisdictional discovery)). Claggett has not rebutted that jurisdiction is improperly exercised here over KKF and Hoey and has failed to establish a genuine basis for jurisdictional discovery.

## VIII. The Court Should Transfer Venue to the Northern District of Georgia

Continuing the theme of falsely claiming KKF and Hoey failed to analyze an issue, Claggett falsely claims that KKF and Hoey failed to analyze the Ninth Circuit's two-prong test for non conveniens transfer. KKF and Hoey specifically invoked the two-prong test of establishing an available alternative forum and the weight of public and private interest factors,

and then dedicated separate sections to analyzing each. Claggett further falsely alleges that KKF and Hoey did not establish this suit could have been filed in the Northern District of Georgia. KKF and Hoey specifically acknowledged that the first requirement for forum non conveniens dismissal is that an alternative forum exists, and that this requirement is met where the defendants indicate they are amenable to service in the forum. KKF and Hoey attested they are amenable to service in the Northern District of Georgia, and they are also either businesses operating in Georgia or employees of the Georgia business. Claggett offers zero rebuttal.

Claggett's assertions that the public and private interest weigh against transfer are unpersuasive for at least the following reasons:

1) Claggett references "relevant agreements" being executed in Nevada, but this refers only to Claggett's alleged agreement with his former client, the terms of which Claggett has failed to plead, but in any event, which has no impact on the substance of Claggett's intentional interference claims or the alleged conspiracy, which did not take place in Nevada.

2) Claggett has asserted Nevada claims, but intentional interference and defamation are not particularly nuanced and similar in many states. Regardless, it is the Georgia courts that will best address Claggett's claims because they depend on the veracity of trade secret claims in Georgia and whether Claggett's claims were compulsory counterclaims to the Georgia Action.

3) Claggett did choose Nevada as his forum, but he did so strategically as an end run around litigating the merits of his claims in the Georgia Action, which was in Georgia pursuant to KKF's choice of forum as plaintiff. Claggett's forum shopping for a friendly local audience should not be credited. Claggett's preferred forum also does not outweigh the numerous other considerations that KKF and Hoey presented in their motion.

4) Claggett relies on an allegation that the parties have "extensive contacts" with Nevada, but the jurisdictional discussion above demonstrates that this conclusory allegation is mere speculation. Claggett says many of the documents "can likewise be located in Nevada" because a small percentage of the April 27 Email recipients are in Nevada. This ignores that most recipients are not in Nevada and that KKF and Hoey's business records are in Georgia.

5) Claggett asserts his causes of action have "extensive contacts" with Nevada.

Again, the preceding jurisdictional discussion and KKF and Hoey's opening brief establish this is not the case, and that the locus of activity forming the basis of Claggett's claims is Georgia.

6) Claggett makes conclusory allegations that transfer will delay the case and cause Claggett to incur more costs but provides no explanation why. This case is in its early stages and transfer would not require any duplication of efforts or delay. The case is currently "delayed" by the motion practice to which the defendants are entitled but could resume in substantially the same posture in Georgia with no impact on Claggett. Claggett also consented to jurisdiction and venue in the Georgia Action, which belies his vague claims that Georgia litigation is somehow cost prohibitive.

7) Claggett alleges that because KKF and Hoey have not named third party witnesses, the ability to compel witness participation weighs in his favor. That is false at least because Claggett has not identified any non-party witness in Nevada that are within the Court's subpoena power. If he relies on Nevada recipients of the April 27 Email, he has not established that any are close enough to the Court for subpoena enforcement and, again, the bulk of those recipients are outside of the state of Nevada.

8) Claggett asserts that because electronic files may be easy to transport from Georgia to Nevada, the ease of access to sources of proof is "neutral" but the case that he cites actually finds that the factor still favors defendants in such circumstances, even if "slightly." *Operation: Heros, Ltd.*, 903 F. Supp. 2d at 1106.

9) Claggett claims judicial economy is hurt by a transfer because of speculative delays. Ironically, he also claims the "new court" would struggle to get up to speed, but the "new court" is actually the *original* court that spent months in the Georgia Action and hours in hearing understanding the parties' positions. It is the Nevada Court that must get up to speed. Transfer to the Northern District of Georgia is strongly favored.

IX. **CONCLUSION**

For all of the foregoing reason, each of Claggett's Counts I-VI of the Complaint should be dismissed. In the alternative, KKF and Hoey respectfully request that the Court transfer this case to the Northern District of Georgia – Atlanta Division.

1       RESPECTFULLY SUBMITTED this 16th day of February, 2022.

2                                     PISANELLI BICE PLLC

By:   */s/ Debra L. Spinelli*
       James J. Pisanelli, Esq., #4027
       Debra L. Spinelli, Esq., #9695
       400 South 7th Street, Suite 300
       Las Vegas, Nevada 89101

JOHN M. BOWLER
(Admitted *Pro Hac Vice*)
LINDSAY MITCHELL HENNER
(*Pro Hac Vice Forthcoming*)
TROUTMAN PEPPER HAMILTON
  SANDERS LLP
600 Peachtree Street, N.E., Ste. 3000
Atlanta, GA 30308

*Attorneys for Defendants Keenan's Kids Foundation, Inc. and David J. Hoey*

13

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Pisanelli Bice PLLC and that on the 16th day of February 2022, and pursuant to Fed. R. Civ. P. 5, a copy of the foregoing was served via the Court's electronic filing system to all parties registered for electronic service.

        */s/ Kimberly Peets*
An Employee of Pisanelli Bice PLLC