# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SEAN K. CLAGGETT & ASSOCIATES, LLC,       )<br>            )<br>    Plaintiff,  )<br>            )<br>  vs.       )<br>            )<br>DON C. KEENAN, *et al.*,  )<br>            )<br>    Defendants. )<br>            ) | Case No.: 2:21-cv-02237-GMN-DJA<br><br>**ORDER** |

Pending before the Court are the Motion to Dismiss, (ECF Nos. 7, 8), separately filed by Defendants Brian F. Davis and Davis Law Group, P.A. ("Davis Defendants") and Defendants D.C. Kennan and Associates, P.A., William Entrekin, David J. Hoey, Don C. Kennan, and Kennan's Kids Foundation, Inc.  Plaintiff did not file Responses.[1]

Also pending before the Court is the Motion to Remand filed by Plaintiff Sean K. Claggett and Associates, LLC ("Plaintiff").  Defendants Brian F. Davis and Davis Law Group, P.A. filed a Response, (ECF No. 22), as did Defendants David J. Hoey and Kennan's Kids Foundation, (ECF No. 23).[2]  Plaintiff filed a Reply, (ECF No. 27).

Also pending before the Court is the Motion to Dismiss, (ECF No. 16), filed by Davis Defendants.  Plaintiff filed a Response, (ECF No. 28), to which Davis Defendants filed a Reply, (ECF No. 35).

///

---

[1] Given that Plaintiff filed an Amended Complaint, (ECF No. 12), Defendants' Motions to Dismiss, (ECF Nos. 7, 8), are denied as moot. *See Ramirez v. County of San Bernardino<i>*, 806 F.3d 1002, 1008 (9th Cir. 2015).

[2] Defendants David J. Hoey and Kennan's Kids Foundation filed a Joinder to Davis Defendants' Response. (*See* Joinder, ECF No. 24).

1   Also pending before the Court is the Motion to Dismiss, (ECF No. 17), filed by

2   Defendants David J. Hoey and Kennan's Kids Foundation, Inc.[3]

3   For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Remand and

4   **DENIES as moot** the Motions to Dismiss.

5   **I.   BACKGROUND**

6   This case arises from Defendants' alleged interference with Plaintiff Claggett & Sykes's

7   representation of its client, Logan Erne, in a medical malpractice suit. (*See* Am. Compl., ECF

8   No. 12).  Plaintiff alleges the following information.

9   **A.   MR. CLAGGETT'S INVOLVEMENT WITH KENNAN TRIAL INSTITUTE**

10

11   Around 2013 or 2014, Defendant Don Kennan ("Mr. Kennan") started Kennan Ball Trial

12   College ("KBC"), which is an institute for plaintiff's side attorneys to learn trial skills.[4] (*Id*. ¶

13   22).  Various trial attorneys from around the country volunteer as KBC instructors. (*Id*. ¶ 23).

14   Defendant David J. Hoey is the dean of the KBC. (*Id*. ¶ 24).  Kennan also started the Kennan's

15   Kids Foundation, which is a non-profit organization that owns The Kennan Trial College and

16   The Kennan Edge. (*Id*. ¶¶ 28–29).

17   Sean Claggett is a trial attorney and founding partner of Claggett & Sykes Law Firm in

18   Las Vegas. (*Id*. ¶ 31).  He began attending courses at KBC in 2014, and within the next two to

19   three years, became an instructor at KBC. (*Id*. ¶ 33).  Mr. Claggett and Mr. Kennan worked

20   closely in a professional setting.  Around 2016, Defendant Kennan co-counseled in Nevada on

21   one of Claggett & Sykes's cases. (*Id*. ¶ 37).

22

23   _____

24   [3] Defendants D.C. Kennan and Associates, P.A., William Entrekin, and Don C. Kennan filed a Joinder to the
Motion to Dismiss, (ECF No. 17). (*See* Joinder to MTD, ECF No. 18).

25   [4] Around 2018 or 2019, Defendant Kennan changed the name of the institute to "The Kennan Trial Institute."
(Am. Compl. ¶ 26).

1    In 2018, their relationship began to deteriorate.  According to Mr. Kennan, Mr. Claggett

2 began conducting trials that did not strictly follow Kennan's teachings. (*Id*. ¶ 38).  Mr. Kennan

3 made clear that his instructors were not to conduct trials outside of the strict confines of what

4 he taught. (*Id*.).  Later that same year, Mr. Claggett informed Mr. Kennan that all attorneys at

5 Claggett & Sykes were resigning from KBC where they had volunteered as instructors and

6 listserv moderators. (*Id*. ¶ 45).

7    Though Mr. Claggett and other attorneys ended their relationship with the Kennan Trial

8 Institute, they continued to attend and teach other trial courses, such as the Trojan Horse

9 Method, Mark Lanier's Trial Academy, and Rick Friedman's Ethos. (*Id*. ¶ 48).  In 2020, Mr.

10 Claggett volunteered to teach a Case Analysis course on the *voir dire* methods he uses during

11 trial. (*Id*. ¶ 50).  In April 2020, Mr. Kennan filed a lawsuit against Mr. Claggett, alleging that he

12 misappropriated Mr. Kennan's *voir dire* methods. (*Id*. ¶ 52).

13    On April 27, 2020, Defendant Entrekin sent an email to all attorneys on the listserv,

14 which included Nevada-based attorneys. (*Id*. ¶ 53).  The contents were allegedly written by

15 Defendant Hoey. (*Id*.).  The email stated the following:

16   All-

17   I write to you all as the Dean of the Keenan Trial Institute.

18   KTI prides itself on the quality of what it teaches by trained faculty and co-deans.

19
20   The material and training comes from close to 40 years of experience and material
   of Mr. Keenan's own creation.

21
22   It is highly protected information by copyright, trademark and confidentiality
   nondisclosure agreements.

23   In the past we have had to pursue infringement and breaches. Some, not all,
24   infringements were non-intentional. However, some were intentional.

25   It has come to our attention that Sean Claggett has been hosting seminars/webinars
   revealing confidential, copyright, trademarked material that he got when he was a

referring attorney of the Keenan Law Firm and then an Instructor for KBC (now KTI).

Because of this blatant, intentional infringement and dissemination of protected, confidential information the Keenan's Kids Foundation took action!

Please be advised that a Federal lawsuit has been filed against Mr. Claggett in Georgia for his misuse and breaches. The suit is filed by one of the most prominent IP law firms in the country. This lawsuit was necessary as Mr. Claggett, after having been warned to stop, continues to breach his agreements of confidentiality. Including today.

There are reasons it's important NOT to watch or listen to Claggett. For starters, he gets it wrong and takes shortcuts and, WORSE, his info has no safeguards and goes directly to the Black Hats…………Claggett doesn't care and it hurts us all.

Now, let this be a lesson to you all about the protection of the material you are learning and teaching and the depth we will go to protect.

You are the Country's best and brightest Trial Lawyers because of what you learn from Poppa Don.

(*Id*. ¶ 55).

## B.   MR. CLAGGETT'S REPRESENTATION OF LOGAN ERNE IN NEVADA

Defendant Brian Davis is an attorney based in North Carolina and is also an instructor at the Kennan Trial Institute. (*Id*. ¶ 57).  In 2017, Mr. Davis asked Claggett & Sykes to act as local counsel on a medical malpractice suit in Las Vegas. (*Id*. ¶ 60).  The Las Vegas client, Logan Erne, retained Claggett & Syke, and, in 2018, Claggett & Sykes filed a complaint on behalf of the client. (*Id*. ¶ 62).  Claggett & Sykes incurred close to $150,000.00 in costs on the case. (*Id*. ¶ 64).

On May 15, 2020, Mr. Davis suddenly informed Mr. Claggett that the client decided to fire Claggett & Sykes. (*Id*. ¶ 69).  Mr. Davis explained that the client wanted to terminate their Claggett & Sykes's representation because he was upset that the firm did not conduct 30(b)(6) depositions. (*Id*.).  After Mr. Claggett pointed out that the notices were ready to go, Mr. Davis

changed his reason and stated that the client was upset that policies and procedures had not been obtained from the defendants. (*Id*.).  Finally, Mr. Davis allegedly confessed that he was firing Claggett & Sykes for what Mr. Claggett did to the Kenann Trial Institute. (*Id*.).  Plaintiff alleges that Mr. Davis fired Claggett & Sykes due to the April 27, 2020 email sent to the entire listserv. (*Id*. ¶ 71).

Plaintiff claims that Mr. Kennan and Mr. Shetler called at least one other attorney in Las Vegas in an attempt replace Claggett & Sykes. (*Id*. ¶ 72).  Mr. Davis and/or the client then chose to retain Mr. Shetler as new local counsel in Las Vegas. (*Id*. ¶ 77).

On November 3, 2021, Plaintiff filed a civil action in the Eighth Judicial District of the State of Nevada. (*See* Compl., Ex. A to Pet. Removal, ECF No. 1-1).  Defendants later removed the case to federal court, claiming that this Court had diversity jurisdiction under 28 U.S.C. § 1332. (*See* Pet. Removal, ECF No. 1).  Defendants filed Motions to Dismiss, (ECF Nos. 7, 8).  Plaintiff then amended its Complaint. (*See* Am. Compl., ECF No. 12).  Thereafter, Plaintiff filed the instant Motion to Remand, (ECF No. 13), and Defendants filed their Motions to Dismiss the Amended Complaint, (ECF Nos. 16, 17).

## II.   <u>LEGAL STANDARD</u>

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

The removability of a civil action filed in state court is "generally determined as of the time of the petition for removal." *Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th

Cir. 1988).  Thus, "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal." *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

The federal removal statute provides that a defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction. 28 U.S.C. § 1441.  To remove an action based upon diversity jurisdiction, a removing defendant must show that the parties are completely diverse and that the matter in controversy exceeds the sum or value of $75,000.00. 28 U.S.C. § 1332(a).  "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles*, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III.   <u>DISCUSSION</u>

The parties do not dispute that the amount in controversy exceeds $75,000.00 or that Plaintiff and Defendant Travis Shetler are Nevada residents.  Indeed, Defendants, in their Petition for Removal, concede that one defendant, Travis Shetler, is not diverse; however, alternatively argue that Plaintiff fraudulently joined Mr. Shetler to avoid removal to federal court. (Pet. Removal at 5–7.)  The key issue, therefore, is whether Mr. Shetler was fraudulently joined.

The Ninth Circuit recognizes "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). "Rather than focusing on the 'mental state' of the plaintiff, the fraudulent

joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant." *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999).

The problem with the fraudulent joinder inquiry lies in the fact that in order to determine if it possesses jurisdiction over claims against an allegedly fraudulent party, the Court must, to some degree, determine the validity of those same claims over which the Court may not have jurisdiction.  Therefore, the Court must walk a very fine line: "it must consider the merits of a matter without assuming jurisdiction over it." *See id.*; *see also B.*, *Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981) (stating the Court must not "lose sight of the important questions of federal jurisdiction" implicated in fraudulent joinder cases).

In fraudulent joinder determinations, "[d]efendants alleging a fraudulent joinder are permitted to make a showing of facts indicating fraudulent joinder." *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 996 (D. Nev. 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also Morris*, 236 F.3d at 1068 (citing a 5th Circuit opinion for the principle that "[f]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence").  However, though courts may look to a showing of facts in conducting a fraudulent joinder analysis, the burden on the defendant to prove fraudulent joinder is higher than the burden required for Rule 56 summary judgment or even Rule 12(b)(6) dismissal. *See Morris*, 236 F.3d at 1067 ("Joinder of a non-diverse defendant is deemed fraudulent . . . if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *Davis*, 66 F. Supp. 2d at 1115 ("[S]ome room must exist between the standard for dismissal under Rule 12(b)(6) . . . and a finding of fraudulent joinder.  A court's Rule 12(b)(6) inquiry is whether the complaint states a cognizable legal theory.  To constitute fraudulent joinder, the non-diverse claim must not only be unsuccessful, it must be untenable *ab initio*.") (citations omitted).  Some district courts in the Ninth Circuit have compared the standard for fraudulent

joinder to the one under Rule 11, where joinder would not be fraudulent unless the claim is shown to be frivolous. *See*, *e.g.*, *Davis*, 66 F.Supp.2d at 1114. Still others have articulated a standard of mere possibility that the plaintiff will be able to establish a cause of action against the party in question. *See*, *e.g.*, *Soo v. United Parcel Servs., Inc.*, 73 F.Supp.2d 1126, 1128 (N.D. Cal. 1999) (A defendant will be deemed to be fraudulently joined only if "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.") (citation omitted). Accordingly, regardless of the exact standard, the party seeking removal bears "a very heavy burden of proving that the joinder of the in-state party was improper." *Hunter*, 582 F.3d at 1044.

Here, Defendants fail to meet their heavy burden. Plaintiff alleges three viable claims in its Amended Complaint against Defendant Shetler: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; and (3) civil conspiracy. (*See* Mot. Remand at 15–22). As to the intentional interference with contractual relations claim, Plaintiff alleges a plausible claim. "In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003) (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)). Defendants argue that the contract is void because it violates NRS § 7.095, which limits the amount of attorney's fees for contingent fee agreements in professional negligence cases. *See* Nev. Rev. Stat. Ann. § 7.095. Plaintiff, however, did not solely allege that the parties structured a contingent fee agreement. Rather, Plaintiff alleges that "[t]he valid contract provided that Plaintiff would be paid for its services through either a contingency fee arrangement *or, alternatively, an hourly rate based on hours*

1    *worked or, alternatively, quantum meruit*." (*Id.* ¶ 163) (emphasis added).  The standard is not

2    whether Plaintiff will succeed on the merits of the claims but whether the failure of the claims

3    is "obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067; *see also*

4    *Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1169 (N.D. Cal. 2003) ("In

5    considering fraudulent joinder, the court does not review the merits of [the] claim but only

6    determines whether a cause of action exists under [state] law.") (citing *McCabe*, 811 F.2d at

7    1339).  Since Plaintiff alleges that the agreement contained an alternative fee structure, the

8    contract is not automatically void as a matter of law.

9         Plaintiff further provides specific allegations that Defendant Davis knew of the valid

10   contract and intentionally disrupted the contractual relationship. (Am. Compl. ¶¶ 164–166).

11   Defendants seemingly argue that Plaintiff's sparse allegations show that it would not prevail in

12   state court because Plaintiff has only submitted three declarations compared to the 280-page

13   "deluge of evidence" in *Ansara v. State Farm Fire & Cas. Co.*  This Court, however, did not

14   solely determine the claims' validity in *Ansara* based on the volume of exhibits.  This Court

15   reasoned that "[i]n order to find in favor of Defendants on all of Plaintiff's claims [against the

16   non-diverse defendants[, the Court would need to decide several disputed issues of fact in favor

17   of Defendants by conducting an extensive review of evidence and a thorough analysis of

18   Plaintiff's claims." *Ansara*, No. 2:15-cv-00365-GMN-NJK, 2015 U.S. Dist. LEXIS 159365, at

19   *9 (D. Nev. Nov. 24, 2015).  Though the number of exhibits here pale in comparison to those in

20   *Ansara*, the Court's reasoning applies to the present case.  The Court still needs to decide

21   several disputed issues as to Davis's knowledge and intentionality in allegedly disrupting the

22   contractual relationship.

23        Furthermore, Mr. Shetler's denial of ever talking to Mr. Claggett does not prove falsity.

24   *GranCare, LLC v. Thrower*, 889 F.3d 543, 551 (9th Cir. 2018) (finding that, in the context of

25   fraudulent joinder, "a denial, even a sworn denial, of allegations does not prove their falsity").

Finding in favor of Defendants would further require the Court to decide disputed issues of fact as to the validity of the contract and intentionality of Mr. Shetler.  Such review of the evidence suggests that Plaintiff has demonstrated at least one plausible claim against Mr. Shetler that could prevail in Nevada state court.

As to the other two claims of intentional interference with prospective economic advantage and civil conspiracy, the Court similarly finds that these claims could survive in state court.  Under NRCP 8(a), a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Davenport v. GMAC Mortg.*, No. 56697, 2013 Nev. Unpub. LEXIS 1457, at *1 (Sep. 25, 2013).  Plaintiff alleges that it was denied an economic opportunity and fees that it would've otherwise been titled to but for the client terminating its legal representation. (Am. Compl. ¶ 199).  Thus, as to the intentional interference with prospective economic advantage, the Amended Complaint contains facts showing that Plaintiff is entitled to relief.  Regarding the civil conspiracy claim, the Court finds that Plaintiff also provides sufficient facts to meet the pleading standard under NRCP 8(a).  Simply put, Defendants have not demonstrated by clear and convincing evidence "there that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).  Defendants mostly dispute the factual nature of Plaintiff's claims, which, at this stage, are construed in Plaintiff's favor. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).  Thus, Defendants have failed to carry their "heavy burden of proving that the joinder of the in-state party [Mr. Shetler] was improper." *Hunter*, 582 F.3d at 1044. Because the Court finds that Mr. Shetler was not fraudulently joined, the parties are no longer

1   diverse, and this Court is divulged of its jurisdiction.  The case must be remanded to state

2   court.[5]

3   **IV.      CONCLUSION**

4           **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 13), is

5   **GRANTED.**

6           **IT IS FURTHER ORDERED** that Defendants Brian F. Davis and Davis Law Group,

7   P.A.'s Motion to Dismiss, (ECF No.7), is **DENIED as moot.**

8           **IT IS FURTHER ORDERED** that Defendants D.C. Kennan and Associates, P.A.,

9   William Entrekin, David J. Hoey, Don C. Kennan, and Kennan's Kids Foundation, Inc.'s

10  Motion to Dismiss, (ECF No. 8), is **DENIED as moot.**

11          **IT IS FURTHER ORDERED** that Defendants Brian F. Davis and Davis Law Group,

12  P.A.'s Motion to Dismiss, (ECF No. 16), is **DENIED as moot.**

13          **IT IS FURTHER ORDERED** that Defendants David J. Hoey and Kennan's Kids

14  Foundation, Inc.'s Motion to Dismiss, (ECF No. 17), is **DENIED as moot.**

15          The Clerk of the Court shall accordingly close this case.

16          **DATED** this ___28___ day of August, 2022.

17

18          _____

19          Gloria M. Navarro, District Judge
            UNITED STATES DISTRICT COURT

20

21

22

23

24

25

_____

[5] Because the Court remands this case to state court, the Court accordingly denies as moot the pending Motions
to Dismiss, (Nos. 16, 17).